IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

LEQAA KORDIA,

     Petitioner-Plaintiff,

v.

KRISTI NOEM, *et al.*,

     Respondents-Defendants.

Civil Action No. 3:25-CV-1072-L-BT

## **RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  (214) 659-8626
Facsimile:  (214) 659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

## Table of Contents

I.     Introduction ................................................................................................. 1

II.    Background.................................................................................................... 2

       A.    Kordia, a student-visa overstay, is arrested and placed in removal
             proceedings.......................................................................................... 2

       B.    The Attorney General and DHS Secretary have discretionary
             authority to decide whether to detain an alien pending the
             completion of removal proceedings. .................................................. 2

       C.    Proceedings remain ongoing in Kordia's immigration case to
             determine whether she may be released on bond. ............................. 4

       D.    Kordia files suit and seeks a preliminary injunction to obtain an
             immediate release. .............................................................................. 6

III.   Legal Standard.............................................................................................. 7

IV.    Argument and Authorities ............................................................................ 7

       A.    No jurisdiction exists to review the government's discretionary
             decision to detain Kordia pending completion of her removal
             proceedings.......................................................................................... 7

       B.    Kordia is not otherwise entitled to a preliminary injunction...................... 11

             1.    No likelihood of success on the merits is shown. ............................ 11

             2.    The remaining preliminary-injunction factors do not favor
                   relief. .............................................................................................. 15

V.     Conclusion.................................................................................................... 17

# Table of Authorities

## Cases

*Ahmed v. Warden*,
  No. 1:24-CV-1110, 2024 WL 5104545 (W.D. La. Sept. 25, 2024)......................16

*Atemafac v. Wolf*,
  No. 6:20-CV-01697, 2021 WL 1972577 (W.D. La. Mar. 8, 2021) ............2, 12, 13

*Barrera-Romero v. Cole*,
  No. 1:16-CV-148, 2016 WL 7041710 (W.D. La. 2016)......................................13

*Black Fire Fighters Ass'n v. City of Dallas*,
  905 F.2d 63 (5th Cir. 1990).......................................................................7

*Canal Auth. v. Callaway*,
  489 F.2d 567 (5th Cir. 1974).......................................................................7

*Cardoso v. Reno*,
  216 F.3d 512 (5th Cir. 2000).....................................................................14

*Demore v. Kim*,
  538 U.S. 510 (2003) ..........................................................................3, 11

*Driggers v. Cruz*,
  740 F.3d 333 (5th Cir. 2014)....................................................................15

*Garcia v. Lacy*,
  No. H-12-3333, 2013 WL 3805730 (S.D. Tex. 2013) ..........................................13

*Hernandez-Esquivel v. Castro*,
  No. 5-17-CV-0564-RBF, 2018 WL 3097029 (W.D. Tex. June 22, 2018) ............10

*Holland Am. Ins. Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir. 1985)......................................................................7

*In re D-J-*,
  23 I. & N. Dec. 572 (A.G. 2003)...............................................................3–4

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ..............................................................................11

*Kim v. Obama*,
  No. EP-12-CV-173, 2012 WL 10862140 (W.D. Tex. 2012)................................13

*Loa-Herrera v. Trominski*,
   231 F.3d 984 (5th Cir. 2000) ................................................................ 9, 10

*Maramba v. Mukasey*,
   No. 3:08-CV-351-K, 2008 WL 1971378 (N.D. Tex. Apr. 28, 2008) ..................... 9

*Munaf v. Geren*,
   553 U.S. 674 (2008) ............................................................................. 11

*Nianga v. Wolfe*,
   435 F. Supp. 3d 739 (N.D. Tex. 2020) ...................................................... 11

*Petgrave v. Aleman*,
   529 F. Supp. 3d 665 (S.D. Tex. 2021) ........................................................ 3

*Reno v. American-Arab Anti-Discrimination Committee*,
   525 U.S. 471 (1999) ............................................................................. 14

*Rice v. Gonzalez*,
   985 F.3d 1069 (5th Cir. 2021) ................................................................ 16

*Shabaj v. Holder*,
   718 F.3d 48 (2d Cir. 2013) ...................................................................... 3

*Singh v. ICE*,
   No. H-22-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023) .................... 14, 15

*United States ex rel. Barbour v. Dist. Dir. of Immigr. & Naturalization Serv.*,
   491 F.2d 573 (5th Cir. 1974) .................................................................... 4

*Wang v. Ashcroft*,
   260 F.3d 448 (5th Cir. 2001) ............................................................. 14–15

## Statutes and Rules

6 U.S.C. § 557 ......................................................................................... 3

8 C.F.R. § 236.1(g) ................................................................................... 3

8 C.F.R. § 1003.1(a)(1) .............................................................................. 4

8 C.F.R. § 1003.1(g) .................................................................................. 4

8 C.F.R. § 1003.1(h) .................................................................................. 4

8 C.F.R. § 1003.6(c) ................................................................................................ 4, 13

8 C.F.R. § 1003.6(c)(3) .................................................................................................. 5

8 C.F.R. § 1003.6(c)(4) .................................................................................................. 5

8 C.F.R. § 1003.6(d) ...................................................................................................... 4

8 C.F.R. § 1003.19(a) .................................................................................................... 3

8 C.F.R. § 1003.19(d) .................................................................................................... 6

8 C.F.R. § 1003.19(*i*)(2) ....................................................................................... 4, 12

8 C.F.R. § 1236.1(d) ...................................................................................................... 3

8 C.F.R. § 1236.1(d)(3) .......................................................................................... 4, 12

8 U.S.C. § 1226(a) ............................................................................................... 2, 3, 8

8 U.S.C. § 1226(e) ........................................................................................... 1, 8, 9, 13

8 U.S.C. § 1252(a)(2)(B) ................................................................................... 1, 9, 13

# I.     Introduction

Petitioner-plaintiff Leqaa Kordia seeks a preliminary injunction to require her release from immigration detention.  (*See* ECF No. 13.)  She last entered the United States on a tourist visa and later obtained a student visa.  She then forfeited that (temporary) lawful status in this country—well before attending the April 2024 protest referenced in her pleadings—after failing to comply with the conditions of her student visa by voluntarily leaving school.  (*See* ECF No. 1, ¶¶ 3, 33.)  Based on these undisputed facts, Kordia has been charged with removability and placed in removal proceedings in immigration court.

Kordia now challenges her detention in connection with those proceedings.  But a federal statute expressly authorizes the government to detain persons who are subject to removal proceedings, and per 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B), the federal courts lack jurisdiction to review the discretionary decision to hold Kordia in detention pending the completion of her immigration case.  For that reason alone, Kordia cannot obtain the relief of release that she seeks.  And even if her claims were reviewable on the merits, she also fails to meet her burden to obtain the extraordinary relief of a preliminary injunction.  Kordia seeks to overturn the government's discretionary decision to detain her, but that decision is still subject to administrative review and is not yet finalized, meaning that Kordia has not exhausted available administrative remedies.  She also fails to show any First Amendment or due process violation (substantive or procedural) in connection with her brief detention pending a final administrative decision on her bond, or otherwise.  She is not entitled to any preliminary injunction and her motion should be denied.

## II.    Background

**A.    Kordia, a student-visa overstay, is arrested and placed in removal proceedings.**

Kordia is a Palestinian who entered the United States in 2016 on a tourist visa. (ECF No. 1, ¶ 3.)  She later obtained a student visa and was enrolled at Bergen County Career Advancement Training, Inc. until she withdrew from that school in 2022.  (ECF No. 1, ¶¶ 27, 29; ECF No. 14-1 at 67.)  As of that time, she was no longer in compliance with the terms of her student visa and no longer had the temporary lawful status in the United States that the student visa provided.  (*See* ECF No. 1, ¶ 3.)  In March 2025, Kordia was arrested by the U.S. Department of Homeland Security (DHS) and removal proceedings were commenced in immigration court.  (ECF No. 1, ¶ 62; ECF No. 14-1 at 66.)

**B.    The Attorney General and DHS Secretary have discretionary authority to decide whether to detain an alien pending the completion of removal proceedings.**

Federal statute provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that "pending such decision, the Attorney General . . . may continue to detain the arrested alien" or may release her on bond or parole.  8 U.S.C. § 1226(a).  Such detention is referred to as "discretionary detention," in recognition of the statute's use of "may" and to differentiate it from the mandatory detention provision that applies to certain aliens in § 1226(c).  *See Atemafac v. Wolf*, No. 6:20-CV-01697, 2021 WL 1972577, at *1 (W.D. La. Mar. 8, 2021).  There generally is no constitutional right to be released from detention during the

limited period of time during which removal proceedings are pending.  *See Demore v.*
*Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a
constitutionally permissible part of that process.").

After the creation of DHS as part of the Homeland Security Act of 2002, the
Attorney General's discretionary § 1226(a) authority to decide whether to detain or
release an alien charged with removability has been delegated to a variety of actors
within both DHS and the Department of Justice.  *See* 6 U.S.C. § 557; *Shabaj v. Holder*,
718 F.3d 48, 51 n.3 (2d Cir. 2013) (explaining that "the Homeland Security Act of 2002
mandates that references to the Attorney General are deemed to include DHS where, as
here, the relevant agency functions have been transferred from the Department of Justice
to DHS").

In particular, upon the arrest of an alien charged with removability, DHS first
exercises discretion—through its component U.S. Immigration and Customs Enforcement
(ICE)—to determine whether the alien should be detained or released on bond or parole.
*See* 8 C.F.R. § 236.1(g); *see also Petgrave v. Aleman*, 529 F. Supp. 3d 665, 673–74 (S.D.
Tex. 2021).

Next, if DHS opts for detention, that decision may be "redetermined" by an
immigration judge (an employee of the Department of Justice) at the alien's request.  *See*
8 C.F.R. §§ 1003.19(a), 1236.1(d); *see also Petgrave*, 529 F. Supp. 3d at 674.  During
this time, the alien typically continues to remain in custody pending a decision on
whether the alien is to be removed from the United States, unless the alien is released on
bond or with conditional parole.  *See* 8 U.S.C. § 1226(a); *In re D-J-*, 23 I. & N. Dec. 572,

575–76 (A.G. 2003); *United States ex rel. Barbour v. Dist. Dir. of Immigr. & Naturalization Serv.*, 491 F.2d 573, 578 (5th Cir. 1974).

Once the immigration judge acts on a custody redetermination, that decision is subject to further administrative review and revision at the option of the alien and/or DHS.  Either party has the ability to take an administrative appeal to the Board of Immigration Appeals (BIA), which is a tribunal whose members are appointed by the Attorney General within the Department of Justice's Executive Office for Immigration Review.  *See* 8 C.F.R. §§ 1003.1(a)(1), 1236.1(d)(3).  Additionally, if DHS has previously determined that the alien should not be released and is appealing an immigration judge's determination otherwise, DHS may invoke an "automatic stay" provision to stay the alien's release until the earlier of (a) when the BIA rules on the matter or (b) the expiration of 90 days.  *See id.* §§ 1003.6(c), 1003.19(*i*)(2).

Finally, if the BIA orders an alien's release, the DHS Secretary or another designated official may refer the matter for the Attorney General's personal consideration and decision, in which case the stay of the alien's release will be extended an additional 15 days.  *See id.* § 1003.6(d).  The Attorney General possesses the ultimate final decisionmaking authority over matters that come before the BIA.  *See id.* § 1003.1(g), (h).

## C.    Proceedings remain ongoing in Kordia's immigration case to determine whether she may be released on bond.

Consistent with the above provisions by which the Attorney General and DHS Secretary, either through their delegees or personally, decide whether to detain an alien

pending removal proceedings, DHS made an initial determination in Kordia's case to detain her at the time of her arrest in March 2025. (ECF No. 1, ¶ 105.)

Kordia then sought redetermination of this decision by an immigration judge, who decided that Kordia could be released on bond. (ECF No. 1, ¶¶ 149–53.) But shortly after the immigration judge issued that decision, DHS exercised its discretion to appeal the bond decision to the BIA and invoked the automatic-stay provision to temporarily stay Kordia's release pending the BIA's decision. (ECF No. 1, ¶¶ 158–59.) Stated differently, the immigration judge's decision to release Kordia did not go into effect and instead DHS's decision to detain Kordia remains in effect until the BIA decides the appeal (or until the limited period of the stay lapses, if no decision is timely made).

With respect to the timing of DHS's administrative appeal in the bond proceedings, the immigration judge's decision was rendered on April 3, 2025; DHS submitted its briefing to the BIA on April 15, 2025; and Kordia filed her response brief with the BIA on May 8, 2025. (*See* App.[1] 001 (briefing schedule for bond proceedings).) The matter is therefore fully briefed and awaiting a decision from the BIA, which is expected to rule quickly. The BIA is required to "track the progress of each custody appeal which is subject to an automatic stay in order to avoid unnecessary delays," 8 C.F.R. § 1003.6(c)(3), and if 90 days from the date of DHS's appeal has passed with no decision, the automatic stay lapses at that time, *id.* § 1003.6(c)(4).

Additionally, Kordia's removal proceedings, which are separate and apart from the

---

[1] "App. __" citations refer by page number to the materials in the accompanying appendix.

bond proceedings (*see* 8 C.F.R. § 1003.19(d)), are also moving forward in front of the immigration judge, with a hearing scheduled for July 25, 2025. (App. 004.)

### D.    Kordia files suit and seeks a preliminary injunction to obtain an immediate release.

Meanwhile, prior to submitting her brief to the BIA, Kordia filed a combined petition for a writ of habeas corpus and civil complaint in this Court on April 30, 2025. (ECF No. 1.) In connection with her habeas corpus claims, Kordia alleges that she has been detained in her removal proceedings in retaliation for her attendance at an April 2024 protest event in New York City, and that this constitutes a violation of the First Amendment and of substantive due process. (ECF No. 1, ¶¶ 163–70, 177–87.) She additionally asserts that DHS's appeal of the immigration judge's decision and related use of the automatic stay to temporarily maintain her in custody pending the BIA's determination violate procedural due process principles, and she asserts an entitlement to release pending further proceedings. (ECF No. 1, ¶¶ 171–76, 188–92.) Kordia also asserts a non-habeas claim for alleged violations of her religious rights in connection with the conditions of her detention (including with respect to what food she has been provided and requests for a prayer mat and specific clothes). (ECF No. 1, ¶¶ 193–98.)

In her motion for a preliminary injunction, Kordia seeks relief in connection with her habeas claims, by arguing that she is likely to succeed in establishing that her detention at this time is in violation of the First Amendment and substantive and procedural due process principles. (*See* ECF No. 13 at 20–21.)

### III.   Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).  As such, it is "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). "The four prerequisites are as follows:  (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth.*, 489 F.2d at 572. A preliminary injunction should be granted only if the movant has "clearly" carried the burden of persuasion on all four of these prerequisites.  *Id.* at 573.

### IV.   Argument and Authorities

**A.   No jurisdiction exists to review the government's discretionary decision to detain Kordia pending completion of her removal proceedings.**

Kordia's motion is largely premised on her claims that challenge the government's decision to detain her pending her removal proceedings (or, to be precise, the government's detention decision thus far—Kordia actually filed suit before the administrative process has finished and therefore a final decision has not yet been issued by the BIA).  Specifically, Kordia argues that the decision to detain her was improperly taken for retaliatory reasons based on Kordia's participation in a New York City protest

in April 2024, allegedly in violation of the First Amendment or substantive due process.

As discussed above, though, a federal statute gives the government discretion to decide whether to detain or release an alien pending removal proceedings: "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and "pending such decision, the Attorney General . . . may continue to detain the arrested alien" or may release her on bond or parole. 8 U.S.C. § 1226(a). And in a subsection titled "Judicial review," this same statute forecloses judicial review of the government's determination in this regard, as follows:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* § 1226(e).

Additionally, a separate statute within the same subchapter of the U.S. Code further insulates the government's discretionary decision to deny a release to an alien in Kordia's position—including, specifically, in the habeas context:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> * * *
>
> (ii)  any other decision or action of the Attorney General

**Response to Motion for Preliminary Injunction – Page 8**

> or the Secretary of Homeland Security the authority
> for which is specified under this subchapter to be in
> the discretion of the Attorney General or the
> Secretary of Homeland Security, other than the
> granting of relief under section 1158(a) of this title.

*Id.* § 1252(a)(2)(B).

The combined effect of 8 U.S.C. §§ 1226(a), (e) and 1252(a)(2)(B) is clear:  no jurisdiction exists to review Kordia's claims challenging the government's decision to detain her at this time.  As the Fifth Circuit explained in *Loa-Herrera v. Trominski*, "§ 1226(a) . . . authorizes [the Attorney General] to grant parole," but "'[t]he Attorney General's discretionary judgment regarding the application of parole'—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is 'not . . . subject to review'" given the statutory limitation on judicial review.  231 F.3d 984, 991 (5th Cir. 2000) (quoting 8 U.S.C. § 1226(e)).

The Fifth Circuit's analysis of a court's power to review the Attorney General's discretionary determination of whether to grant parole under § 1226(a) applies equally to that same subsection's bond-release authority—and to the flip side of both parole and bond under that subsection, detention.  "[U]nder 8 U.S.C. § 1226(e) and the Fifth Circuit's decision in *Loa-Herrera*[], as well as 8 U.S.C. § 1252(a)(2)(B)(ii), [a district court] lack[s] jurisdiction to review the decision to deny release on bond itself or the Attorney General's discretionary judgment regarding the application of § 1226(a), 'including the manner in which that discretionary judgment is exercised . . . .'"  *Maramba v. Mukasey*, No. 3:08-CV-351-K, 2008 WL 1971378, at *3 (N.D. Tex. Apr. 28, 2008)

(quoting *Loa-Herrera*, 231 F.3d at 991).

As another court in this circuit has summarized, a "review process exists to determine whether a detainee may be released on bond," and "[t]his administrative process gives the Attorney General discretion in determining whether there is a likelihood of removal as well as whether a detainee may be released and, if so, under what conditions." *Hernandez-Esquivel v. Castro*, No. 5-17-CV-0564-RBF, 2018 WL 3097029, at *10 (W.D. Tex. June 22, 2018). Thus, "[i]nsofar as [a petitioner] challenge[s] this discretionary decision on the merits, this Court lacks jurisdiction because the Attorney General's exercise of discretion is not reviewable." *Id.*

In light of the above authorities, to the extent Kordia is arguing that the government's decision to detain her was based on allegedly improper factors in claimed violation of the First Amendment or substantive due process, her motion for preliminary injunction is premised on claims attacking the government's discretionary detention decision, and no judicial review is available. And therefore, no jurisdiction exists for these claims, and she cannot obtain a preliminary injunction. To be sure, as the Fifth Circuit noted in *Loa-Herrera*, "the executive branch . . . has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review." 231 F.3d at 991. But the fact that Kordia contends that some constitutional violation occurred in connection with the decision to detain her in her removal proceedings—a contention that, as explained below, is meritless—does not grant this Court jurisdiction. *See id.* The law is clear that "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney

General has made regarding [her] detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore*, 538 U.S. at 516). Accordingly, Kordia is not entitled to any relief on her claims challenging her detention based on the First Amendment or due process principles. *See Nianga v. Wolfe*, 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020) (explaining that a plaintiff "can not establish a substantial likelihood of success on the merits of his claim" when there is no jurisdiction (internal quotation marks and citation omitted)); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008).

**B.      Kordia is not otherwise entitled to a preliminary injunction.**

Even apart from the jurisdictional bar discussed above, Kordia does not meet the requirements to obtain a preliminary injunction.

### 1.      No likelihood of success on the merits is shown.

Procedural Due Process. Kordia will presumably argue that habeas jurisdiction remains available for her procedural due process claim as a "challenge[] [to] the statutory framework that permits [the alien's] detention without bail." *Jennings*, 583 U.S. at 295. In particular, with respect to DHS's decision to appeal the immigration judge's bond determination and to invoke the automatic stay to hold her in custody pending a ruling from the BIA, she argues that her procedural due process rights are being violated because she can be held in custody for an additional 90 days (and possibly another 30 days if a discretionary stay is requested) in an alleged "due-process-free zone." (ECF No. 13 at 28.) But even assuming this type of argument constitutes a challenge to the regulatory "framework" so as to allow for habeas jurisdiction, it has no merit.

To begin with, Kordia is hardly in a "due-process-free zone." On the contrary,

Kordia seems to take exception to the fact that both parties in the immigration court—the alien and DHS—have the procedural right to administratively appeal the immigration judge's bond determination, and that when DHS elects this option, it may automatically stay the alien's release for a limited period of time pending that appeal. *See* 8 C.F.R. §§ 1003.19(*i*)(2), 1236.1(d)(3). But this does not result in any deficit of process, given that multiple opportunities exist for administrative review of immigration detention decisions.

Indeed, Kordia has received—and currently is still receiving—ample and meaningful process in connection with her request for bond in conjunction with the process she is receiving in her removal proceedings. She is represented by counsel. And after DHS made an initial bond determination in her case, she had the right—and exercised that right—to seek redetermination from an immigration judge. She also has the right to submit briefing to the BIA, and has now done so, to oppose DHS's request to reverse the immigration judge's bond determination. There is no shortage of process available to Kordia, and she has availed herself of that process and will no doubt continue to do so. As one court has explained, "[a]liens like Petitioner who are detained under § 1226(a) receive numerous procedural protections," and "[a]though § 1226(a) does not grant Petitioner an automatic right to release while her immigration proceedings are pending . . . it grants her a number of meaningful opportunities to raise arguments in support of her release." *Atemafac*, 2021 WL 1972577, at *2. Whatever procedural requirements the due process clause imposes are satisfied here.

Nor is there any merit to Kordia's argument that a due process violation arises

from the fact that she must remain in detention pending the BIA's ruling on DHS's administrative appeal.  There is generally a 90-day time limit on this period of detention (with the possibility of an additional 30 days).  *See* 8 C.F.R. § 1003.6(c).  This relatively modest and limited time period is neither excessive nor indefinite in nature so as to run afoul of due process principles.  In fact, courts have found far longer periods of immigration detention to pass constitutional muster.  *See Atemafac*, 2021 WL 1972577, at *2 ("Here, the Petitioner has been in custody for approximately twelve (12) months. The Court finds that this period is neither excessive nor of an indefinite nature.  Petitioner will be subject to removal from the United States or will be granted asylum.  There is no indication that her custody will last longer than the duration of her removal proceedings. A twelve-month period of pre-removal order detention in this case is reasonable."); *see also Barrera-Romero v. Cole*, No. 1:16-CV-148, 2016 WL 7041710, at *5 (W.D. La. 2016) (20 months); *Kim v. Obama*, No. EP-12-CV-173, 2012 WL 10862140, at *3 (W.D. Tex. 2012) (one-and-a-half years); *Garcia v. Lacy*, No. H-12-3333, 2013 WL 3805730, *5 (S.D. Tex. 2013) (27 months).

    <u>Substantive Due Process</u>.  To the extent Kordia might argue that her First Amendment and substantive due process claims should somehow be cognizable in habeas, the government disagrees for all the reasons previously discussed.  Those claims directly challenge the discretionary decisionmaking of the Attorney General and DHS Secretary (and their delegees) on the issue of whether to detain or rather release Kordia, so they are not reviewable on habeas or otherwise.  *See* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B).

Even so, Kordia's claims would also fail on the merits. Her allegations of First Amendment and substantive due process violations boil down to an argument that she has been selectively targeted for removal proceedings due to her attendance at a New York City protest in April 2024. Importantly, though, Kordia does not dispute that the legal and factual predicates for her placement in removal proceedings exist independently of this protest activity—to wit, she concedes that she lost her student-visa status upon withdrawing from school in 2022. (*See* ECF No. 1, ¶ 3.) She is, therefore, subject to removal proceedings even under her own allegations, and "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against [her] deportation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999). Well before her presence at any protest event, Kordia had lost her student-visa status due to her own actions in withdrawing from school, and thus her placement in removal proceedings—and her corresponding, statutorily-authorized detention—offends nothing in the Constitution.

There is an additional reason any First Amendment or substantive due process claim of Kordia's fails: she has not exhausted available administrative remedies. As outlined above, the administrative process is still ongoing and Kordia has recently filed a brief with the BIA arguing that she ought to be released on bond. "Immigration habeas petitioners must exhaust administrative and judicial remedies available to them prior to seeking habeas relief through the district courts under 28 U.S.C. § 2241." *Singh v. ICE*, No. H-22-3432, 2023 WL 3571958, at *2 (S.D. Tex. Apr. 26, 2023) (citing *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000); *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th

Cir. 2001)).  "In the instant case, [Kordia] has not exhausted [her] available remedies for challenging [her] current detention."  *Id.*  Specifically, she can—and is—arguing to the BIA that she ought to be released on bond as administrative proceedings are ongoing, and those efforts may yet result in a favorable bond outcome for Kordia.  Habeas relief is therefore "unwarranted."  *Id.*

### 2.    The remaining preliminary-injunction factors do not favor relief.

With respect to the remaining equitable factors, Kordia first argues that her detention has resulted in a violation of her First Amendment rights.  (ECF No. 13 at 33.) But Kordia does not contest that she is properly subject to removal proceedings given her status as a student-visa overstay, and there is no suggestion that Kordia's loss of her student visa (which was the source of her temporary lawful status in the country) had anything to do with any of her speech.  This argument essentially collapses into the merits of her claims, which as discussed above do not have any likelihood of success.  In addition, although Kordia is at this time in immigration detention, she identifies no way in which her speech is currently being restricted.  It is instead apparent that she has access to lawyers and is presumably able to say or write whatever she wants, including in submissions to this Court, to the immigration judge, and to the BIA.  No irreparable harm in this respect is shown, and Kordia is in fact actively exercising her First Amendment rights as these proceedings and the administrative proceedings unfold.  *See Driggers v. Cruz*, 740 F.3d 333, 336–37 (5th Cir. 2014) (explaining that access to the courts is a component of the First Amendment's right to petition for redress of grievances).

Kordia also argues that the conditions of confinement at her place of immigration

detention are burdening her religions freedom because of alleged deficiencies in the type of food that is available, her access to a prayer mat, and similar issues relating to clothes and the cleanliness of her cell.  (ECF No. 13 at 33–34.)  Even crediting, just for purposes of this response, those allegations, these arguments do not provide any basis for Kordia's release on a habeas claim.  *See Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) (rejecting a habeas petitioner's argument that alleged deficiencies in the conditions of confinement would entitle him to release, with the explanation that "[s]imply stated, habeas is not available to review questions unrelated to the cause of detention," and its "sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose" (internal quotation marks and citation omitted)); *Ahmed v. Warden*, No. 1:24-CV-1110, 2024 WL 5104545, at *1 (W.D. La. Sept. 25, 2024) (applying this rule to an immigration detainee's claims of religions discrimination in custody as well as other alleged deficiencies in the conditions of confinement).

Finally, with respect to the balancing of the equities and public interest, it cannot be disputed that (1) Kordia is properly the subject of removal proceedings and the government is entitled to detain aliens in removal proceedings, and (2) both the government and the public at large have a strong interest in the enforcement of the immigration laws and the removal of aliens who are unlawfully present in the United States.  Kordia's own voluntary decision to over-stay her student visa—a decision in which the government had no involvement—resulted in the current state of affairs. Kordia withdrew from school and thereby forfeited her student-visa status, did not depart from the United States, and instead opted to remain in the country unlawfully.  Under

these circumstances, equity does not support Kordia's claims for relief from this Court.

## V.    Conclusion

Kordia's motion should be denied.

Respectfully submitted,

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

<u>Certificate of Service</u>

On May 15, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
