UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| LEQAA KORDIA, | § | |
| | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-1072-L-BT |
| | § | |
| KRISTI NOEM et al., | § | |
| | § | |
| Respondents-Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION ORDERING
RELEASE PENDING FINAL JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

    A. This Court Has Habeas Jurisdiction............................................................................ 2

        1.   Sections 1226(e) and 1252(a)(2) do not bar judicial review of Ms. Kordia's constitutional claims..................................................................................... 3

        2.   Adopting Respondents' view would raise serious constitutional questions. .......... 7

    B. Petitioner Presents Substantial Constitutional Questions Likely to Succeed on the Merits. ............................................................................................................................ 8

        1.   Ms. Kordia's First Amendment claim presents a substantial constitutional question likely to succeed on the merits. ........................................................ 9

        2.   Ms. Kordia's procedural due process claim presents a substantial constitutional question likely to succeed on the merits. ...................................................... 12

        3.   Ms. Kordia's substantive due process claim presents a substantial constitutional question likely to succeed on the merits. ...................................................... 15

        4.   No exhaustion requirement applies, and Ms. Kordia satisfied any exhaustion requirement that could apply....................................................................... 17

    C. This Case Presents Extraordinary Circumstances, and the Equities Favor Release. ... 18

III. CONCLUSION ........................................................................................................... 21

CERTIFICATE OF SERVICE ........................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**

*Aditya W. H. v. Trump*,
No. 25-cv-01976, 2025 WL 1420131 (D. Minn. May 14, 2025) .................................................. 2

*Alexis v. Sessions*,
18-cv-1923, 2018 WL 5921017 (S.D. Tex. Nov. 13, 2018) ...................................................... 20

*Ashley v. Ridge*,
288 F. Supp. 2d 662 (D.N.J. 2003) ............................................................................................. 14

*Atemafac v. Wolf*,
No. 6:20-cv-01697, 2021 WL 1972577 (W.D. La. Mar. 8, 2021) ............................................. 14

*Barrera-Romero v. Cole*,
No. 1:16-cv-00148, 2016 WL 7041710 (W.D. La. Aug. 19, 2016) ........................................... 13

*Boumediene v. Bush*,
553 U.S. 723 (2008) ................................................................................................................ 2, 8

*Calley v. Callaway*,
496 F.2d 701 (5th Cir. 1974) ...................................................................................................... 21

*Cantu-Delgadillo v. Holder*,
584 F.3d 682 (5th Cir. 2009) ...................................................................................................... 17

*Counterman v. Colorado*,
600 U.S. 66 (2023) ................................................................................................................ 19, 20

*Demore v. Kim*,
538 U.S. 510, 517 (2003) ..................................................................................................... 2, 5, 6

*Doe v. Noem*,
No. 2:25-cv-00633, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ....................................... 21

*Elrod v. Burns*,
427 U.S. 347 (1976) .................................................................................................................... 18

*Ercelik v. Hyde*,
1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025) ....................................................... 2

*Foucha v. Louisiana*,
504 U.S. 71 (1992) ...................................................................................................................... 15

*Gallegos-Hernandez v. United States*,
688 F.3d 190 (5th Cir. 2012) ................................................. 17

*Garcia v. Lacy*,
No. 12-cv-3333, 2013 WL 3805730 (S.D. Tex. July 19, 2013) ................................................. 13

*Gilani v. Gonzales*,
206 F. App'x 381 (5th Cir. 2006) ................................................. 17

*Gul v. Rozos*,
163 F. App'x 317 (5th Cir. 2006) ................................................. 6

*Gunaydin v. Trump*,
No. 25-cv-01151, 2025 WL 1459154 (D. Minn. May 21, 2025) ....................................... 2, 13, 14

*Gutierrez-Sosa v. Sessions*,
317 F. Supp. 3d 917 (W.D. Tex. 2018) ................................................. 5, 8, 11

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004) ................................................. 2

*Hernandez-Esquivel v. Castro*,
No. 5-17-cv-0564, 2018 WL 3097029 (W.D. Tex. June 22, 2018) ................................................. 7

*INS v. St. Cyr*,
533 U.S. 289 (2001) ................................................. 2

*Jackson v. Indiana*,
406 U.S. 715 (1972) ................................................. 16

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ................................................. 4, 8, 11

*Kim v. Obama*,
No. 12-cv-173, 2012 WL 10862140, (W.D. Tex. July 10, 2012) ................................................. 14

*Loa-Herrera v. Trominski*,
231 F.3d 984 (5th Cir. 2000) ................................................. 6

*Mahdawi v. Trump*,
No. 2:25-cv-389, 2025 WL 1243135 (D. Vt. Apr. 30, 2025) ....................................... 2, 9, 21

*Maramba v. Mukasey*,
No. 3:08-cv-351-K, 2008 WL 1971378 (N.D. Tex. Apr. 28, 2008) ................................................. 7

*Matter of C-,*
20 I & N 529, 532 (1992) ........................................................................ 17

*McCarthy v. Madigan,*
503 U.S. 140 (1992) ................................................................................. 18

*Mohammed H. v. Trump,*
No. 25-cv-1576, 2025 WL 1334847 (D. Minn. May 5, 2025) ................... 2, 14, 15, 16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
429 U.S. 274 (1977) ................................................................................. 9

*Najera v. United States,*
926 F.3d 140 (5th Cir. 2019) ............................................................. passim

*Nat'l Rifle Assoc. v. Vullo,*
602 U.S. 175 (2024) ................................................................................. 11

*Nielsen v. Preap,*
586 U.S. 392 (2019) ................................................................................. 5

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ................................................................................. 12

*Opulent Life Church v. City of Holy Springs,*
697 F.3d 279 (5th Cir. 2012) ................................................................... 19

*Oyelude v. Chertoff,*
125 F. App'x 543 (5th Cir. 2005) ......................................................... 5, 17

*Ozturk v. Hyde,*
No. 25-1019, 2025 WL 1318154 (2d Cir. May 7, 2025) ........................... 2

*Ozturk v. Trump,*
No. 2:25-cv-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ................... 1, 8

*Ozturk v. Trump,*
No. 2:25-cv-374, 2025 WL 1420540 (D. Vt. May 16, 2025) ................... 2, 9

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
525 U.S. 471 (1999) ................................................................................. 10

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
592 U.S. 14 (2020) ................................................................................... 19

*Singh v. ICE*,
No. 22-cv-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023).................................................. 18

*Suri v. Trump*,
No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025).................................................. 2

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
732 F.3d 535 (5th Cir. 2013) ...................................................................................................... 21

*Tran v. Mukasey*,
515 F.3d 478 (5th Cir. 2008) ...................................................................................................... 16

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) ....................................................................................................... 19

*Wages & White Lion Invests., L.L.C. v. U.S. F.D.A.*,
16 F.4th 1130 (5th Cir. 2021) ..................................................................................................... 21

*Wang v. Ashcroft*,
260 F.3d 448 (5th Cir. 2001) ...................................................................................................... 18

*Webster v. Doe*,
486 U.S. 592 (1988)...................................................................................................................... 8

*Weinberg v. Salfi*,
422 U.S. 749 (1975)...................................................................................................................... 8

*Zadvydas v. Davis*,
533 U.S. 678 (2001)............................................................................................................. passim

**Statutes**
28 U.S.C. § 2241 ........................................................................................................................... 2
8 U.S.C. § 1226(a) ........................................................................................................... 3, 7, 8, 20
8 U.S.C. § 1226(e) ................................................................................................................. passim
8 U.S.C. § 1231(a)(6)................................................................................................................... 5
8 U.S.C. § 1252(a)(2)(B) ......................................................................................................... passim

**Other Authorities**
Suppl. Br., *Khalil v. Joyce*, 2:25-cv-01963, Dkt. 256 (D.N.J. May 14, 2025) ............................ 10

**Constitutional Provisions**
U.S. Const. art. I, § 9, cl. 2........................................................................................................... 8

## I.    INTRODUCTION

Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Josh Johnson, and Thomas Bergami (collectively, "Respondents") are confining Petitioner, Leqaa Kordia, 1,500 miles from her home because this presidential administration disagrees with Ms. Kordia's support for Palestinian rights and her association with other Palestinians. Incarcerating Ms. Kordia based on her protected speech and conduct is a textbook constitutional violation. As a result of her confinement, Ms. Kordia is suffering daily deprivations of religious liberty, has been unable to engage in protected expression due to the restrictions of her confinement and the chilling effect it has had on her, and is separated from her family and close community. What is more, because the Department of Homeland Security ("DHS") has invoked an automatic stay of the immigration judge's release order, there is no procedure by which she can challenge her unconstitutional confinement through the administrative process.

Both on jurisdiction and the merits, Respondents have one response: there is nothing this Court can do about Ms. Kordia's unlawful confinement. *See* Dkt. 28 ("Resp."). But, in recent weeks, numerous courts in different circuits have held otherwise, and have not hesitated to exercise their duty to enforce the Constitution in closely similar circumstances. *See, e.g.*, *Ozturk v. Trump* ("*Ozturk I*"), No. 2:25-cv-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) (ordering transfer and bail hearing) *aff'd as amended sub. nom.*, *Ozturk v. Hyde* ("*Ozturk II*"), No. 25-1019, 2025 WL 1318154 (2d Cir. May 7, 2025); *Ozturk v. Trump* ("*Ozturk III*"), No. 2:25-cv-374, 2025 WL 1420540 (D. Vt. May 16, 2025) (ordering immediate release pending final judgment); *Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL 1243135 (D. Vt. Apr. 30, 2025) (same) *stay denied*, No. 25-1113, 2025 WL 1353665 (2d Cir. May 9, 2025); *Aditya W. H. v. Trump*, No. 25-cv-01976, 2025 WL 1420131 (D. Minn. May 14, 2025) (same); *Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1334847 (D. Minn. May 5, 2025) (same); *Gunaydin v. Trump*, No. 25-cv-01151, 2025 WL

1

1459154 (D. Minn. May 21, 2025) (same); *Suri v. Trump*, No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025) (same); *Ercelik v. Hyde*, 1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025) (same). This Court should do the same because Ms. Kordia's substantial constitutional claims and extraordinary circumstances merit interim release. She has provided this Court clear evidence of her releasability, including the decision of the immigration judge finding her releasable—which Respondents have not controverted in this Court.

## II.    ARGUMENT

### A.  This Court Has Habeas Jurisdiction.

This case falls squarely within the Court's habeas jurisdiction. 28 U.S.C. § 2241(a). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). To effectuate this vital constitutional protection, this Court "must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008).  "And, where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (citing *INS v. St. Cyr*, 533 U.S. 289, 308–309 (2001)).

Respondents' principal argument is that even if "the government's decision to detain her was based on . . . violation[s] of the First Amendment or substantive due process[,]" this Court lacks jurisdiction. Resp. at 15.[1] Respondents claim that 8 U.S.C. § 1226(a), which permits  them to "arrest[] and detain[]" noncitizens pending removal proceedings, grants "the government discretion to decide whether to detain or release" Ms. Kordia for ***any reason***—including her First Amendment activity, her religion, or the color of her skin. Resp. at 13. On their view, those bases

---

[1] All page citations to Ms. Kordia's Motion and Respondents' Response are to the ECF page number rather than the page number in the footer of the document.

for detention are "discretionary determination[s]" under 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B), Resp. at 14, which they claim this Court has no jurisdiction to review.

That novel theory is wrong. First, neither section 1226(e) nor section 1252(a)(2)(B)(ii) bars judicial review of Ms. Kordia's constitutional claims. Respondents' argument ignores binding Supreme Court and Fifth Circuit precedent and relies on a misreading of cases that are either distinguishable or actively undermine their position. Second, Respondents' argument that confinement under section 1226(a) is unreviewable would raise serious constitutional questions the Supreme Court has instructed lower courts to avoid by rejecting such broad interpretations of the Immigration and Nationality Act's ("INA") jurisdiction-stripping provisions.

*1. Sections 1226(e) and 1252(a)(2) do not bar judicial review of Ms. Kordia's constitutional claims.*

Ms. Kordia challenges as unconstitutional the executive's authority to confine her in retaliation for her speech, for no lawful purpose, and through constitutionally deficient procedures. These claims turn upon the constitutional limits of Respondents' power, not their exercise of any lawful discretion, falling squarely within this Court's habeas jurisdiction.

Sections 1226(e) and 1252(a)(2)(B) only preclude judicial review of certain decisions made by immigration officials pursuant to their lawful exercise of discretion. Section 1226(e) prohibits review of the government's "discretionary judgment" regarding the "detention of any [noncitizen]." 8 U.S.C. § 1226(e). Section 1252(a)(2)(B) limits judicial review of "[d]enials of discretionary relief" by prohibiting courts from reviewing "any other decision or action . . . specified . . . to be in the discretion of" the government. *Id.* § 1252(a)(2)(B)(ii).

For more than two decades, the Supreme Court has permitted constitutional challenges to the government's power to undertake civil immigration confinement as consistent with these provisions because such challenges contest neither a "discretionary judgment," *id.* § 1226(e), nor

a "decision or action . . . in the discretion" of the government, *id.* § 1252(a)(2)(B)(ii). *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[H]abeas corpus proceedings remain available [] for statutory and constitutional challenges to [discretionary] post-removal-period detention."). Likewise, the Fifth Circuit has "permit[ted] constitutional challenges to statutes authorizing the detention of [noncitizens]." *Najera v. United States*, 926 F.3d 140, 143 (5th Cir. 2019).

As to section 1226(e), the Supreme Court could not be more clear: 1226(e) does not bar habeas claims that challenge the extent of the government's detention authority under section 1226(a), because the government has no discretion to violate the Constitution. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the petitioners comprised classes of people held respectively under various statutes governing pre-removal immigration confinement, including 1226(a). *Id.* at 291. The plurality found it had jurisdiction to consider the merits of the challenge, reasoning that "§ 1226(e) does not preclude 'challenges [to] the statutory framework,'" *id.* at 295 (quoting *Demore*, 538 U.S. at 516), because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,'" *id.* at 296 (quoting *Demore* 538 U.S. at 517). A year later, in *Najera*, the Fifth Circuit applied *Jennings* to a plaintiff's claim that his detention under section 1226(a) was unlawful. 926 F.3d at 143–44. *Najera* recognized that section 1226(e) "permit[s] constitutional challenges to statutes authorizing the [discretionary] detention of [noncitizens]." *Id.* at 143.[2] *Jennings*'s and *Najera*'s interpretation of section 1226(e) as permitting constitutional and statutory challenges to confinement under section 1226(a) is consistent with how the Supreme Court has, for decades, permitted challenges to discretionary confinement under

---

[2] *Jennings*'s jurisdictional holding garnered a plurality of justices, but, as the Fifth Circuit recognized, the dissent "would have granted the relief sought," "suggesting [the dissent] agreed with the plurality that the district court properly exercised jurisdiction." *Najera*, 926 F.3d at 144 n.2

other INA provisions. *See, e.g.*, *Zadvydas*, 533 U.S. at 688 (permitting "challenge [to] the extent of the [government's] authority" to confine discretionarily under section 1231(a)(6)); *Demore* 538 U.S. at 517 (finding 1226(e)'s "clear text does not bar [the noncitizen's] constitutional challenge . . . [to] his detention without bail.").

Ms. Kordia's claims fall precisely within this unbroken line of precedent: Ms. Kordia challenges the extent of the government's power, not its discretionary decisions within the lawful limits of that power. This Court thus has jurisdiction "to review statutory and constitutional challenges," *Najera*, 926 F.3d at 144 (quoting *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005)), which her Verified Petition and motion for preliminary injunction clearly present. *See also Gutierrez-Sosa v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (DHS "does not have the discretion to violate the Constitution, so the [] First Amendment claim[] charge[s] the Attorney General with exceeding his lawful authority.").

The Supreme Court has applied the same analysis to section 1252(a)(2)(B)(ii). In *Zadvydas*, habeas petitioners challenged their prolonged confinement under 8 U.S.C. § 1231(a)(6), which states "the Government *'may'* continue to detain [a noncitizen]" during the "post-removal-period." *Zadvydas*, 533 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)) (emphasis added). The government argued that confinement under section 1231(a)(6) was discretionary and that courts lacked jurisdiction to review its legality under section 1252(a)(2)(B)(ii). *Id.* at 688. The Court rejected that argument by distinguishing between "exercise[s] of discretion" and challenges to "the extent of the [government's]" authority." *Id.* at 688. Section 1252(a)(2)(B)(ii) bars the former but not the latter because "the extent of that [detention] authority is not a matter of discretion." *Id.* Just like section 1226(e), then, section 1252(a)(2)(B)(ii) presents no bar here, because Ms. Kordia challenges whether Respondents have power to confine her in violation of the Constitution, not

their discretionary judgments within the meaning of 1252(a)(2)(B)(ii).

Respondents do not even cite, let alone engage with, this binding Supreme Court precedent. Instead, they craft their jurisdictional argument by stitching together selective quotes from *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2000), and a myriad of district court cases that actually undercut their position. *Loa-Herrera* involved a lawsuit brought by a class of non-detained plaintiffs who sought "notice and a hearing to determine whether they should be paroled." *Id.* at 986. Accordingly, *Loa-Herrera* was not a habeas case involving someone confined by the executive. *Cf. Demore*, 538 U.S. at 517 (1226(e) has "no explicit provision barring habeas review"). More obviously, though, that case predates *Zadvydas*, *Demore*, and *Jennings*, which directly address habeas jurisdiction. Recognizing the Supreme Court's binding interpretation of section 1226(e) in these cases, the Fifth Circuit recently concluded that "§ 1226(e) did not strip the district court of jurisdiction" to review constitutional and statutory challenges to discretionary detention. *Najera*, 926 F.3d at 143–44; *see also Gul v. Rozos*, 163 F. App'x 317, 318–19 (5th Cir. 2006).

The district court cases Respondents cite do not support their position either. They merely reiterate *Zadvydas*'s distinction between the exercise of lawful discretion and the extent of the government's constitutional authority to confine. For example, in *Maramba v. Mukasey*, Magistrate Judge Stickney found sections 1226(e) and 1252(a)(2)(B)(ii) precluded judicial review of a petitioner's "claims seeking release on supervision or a lower bond" after receiving a bond. No. 3:08-cv-351-K, 2008 WL 1971378, *3 (N.D. Tex. Apr. 28, 2008). However, Judge Stickney also recognized "federal courts 'retain habeas ***jurisdiction to review statutory and constitutional claims***,'" *id.* at *4 (quotation omitted) (emphases added), including whether the petitioner's "detention under § 1226(a) . . . raises due process concerns," *id.* Similarly, *Hernandez-Esquivel v.*

*Castro* involved a petitioner confined under section 1231(a)(6), which "includes language materially similar to the pertinent language in § 1226(a)." No. 5-17-cv-0564, 2018 WL 3097029, *9 (W.D. Tex. June 22, 2018). That court exercised jurisdiction over the petitioner's due process claim recognizing that "[f]ederal courts [] can adjudicate ***claims challenging the constitutionality of [a noncitizen's] continued detention***" because such claims "do not involve a challenge to any discretionary decision of the [government]." *Id.* at *2 (emphases added).

Consistent with subsequent Supreme Court and Fifth Circuit precedent, the cases Respondents have relied on confirm that sections 1226(e) and 1252(a)(2)(B)(ii) do not divest this Court of jurisdiction. Instead, they underscore that this case presents critical legal questions this Court has jurisdiction to review: whether section 1226(a) gives Respondents the power to confine Ms. Kordia in violation of the First and Fifth Amendments. The Supreme Court, the Fifth Circuit, and even the cases that Respondents cite all resoundingly demonstrate the Court has jurisdiction to answer those questions.

   2.  *Adopting Respondents' view would raise serious constitutional questions.*

Respondents argue that section 1226(a) grants them discretion to decide "whether to detain or rather release" noncitizens, which is "not reviewable on habeas or otherwise" under sections 1226(e) and 1252(a)(2)(B)(ii). Resp. at 18. The Supreme Court, though, has expressly instructed courts "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (quoting *Weinberg v. Salfi*, 422 U.S. 749, 762 (1975)). That is exactly what Respondents' argument does—it construes sections 1226(e) and 1252(a)(2)(B)(ii) to mean "no jurisdiction exists to review" Ms. Kordia's confinement. Resp. at 14.

This Court should reject Respondents' "absurd" and "staggering" arguments precluding any judicial review of unconstitutional confinement, *Jennings*, 583 U.S. at 293 (plurality op.),

because their interpretation would violate the Suspension Clause, Article I, § 9, cl. 2 of the Constitution. The Suspension Clause requires that "the writ must be effective," meaning "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene*, 553 U.S. at 783.

In contravention of this vital protection, Respondents' position "boils down to a bold statement that no matter how egregious the type or quantity of First Amendment or due process violations committed by the government in detaining an individual," *Ozturk I*, 2025 WL 1145250, at *15, Ms. Kordia cannot present those constitutional claims because section 1226(a) gives Respondents unchecked discretion. That is, Respondents' INA interpretation would "grant[] practically limitless, unreviewable power to detain individuals for weeks or months, even if the detention is patently unconstitutional." *Id.* That result violates the Suspension Clause by preventing Ms. Kordia (or any other noncitizen) from using the writ to "contest the legality of executive detention." *Boumediene*, 553 U.S. at 802; *see also Gutierrez-Soto*, 317 F. Supp. 3d at 926 ("[B]arring habeas jurisdiction with regard to Petitioners' [] First Amendment claim[], [] would implicate constitutional concerns[.]").

This Court should reject Respondents' novel and unsupported interpretation of the INA, as it would raise numerous constitutional questions that the Supreme Court has instructed courts to avoid, and, instead, should assume jurisdiction over Ms. Kordia's habeas claims.

**B. Petitioner Presents Substantial Constitutional Questions Likely to Succeed on the Merits.**

Respondents barely contest the merits of Ms. Kordia's constitutional claims. And the arguments they do make fail to engage with the applicable law and concede the factual bases of her claims. *Cf.* Resp. at 16–20. The Court should find Ms. Kordia's constitutional claims present substantial legal questions likely to succeed on the merits. *See Mohammed H.*, 2025 WL 1334847,

at *7 (finding similar claims were "clear enough to warrant release pending final adjudication"); *Mahdawi*, 2025 WL 1243135, at *11 (finding similarly situated petitioner "ha[d] raised important issues concerning potential constitutional violations and that these questions satisf[ied]" the standard for release on bond); *Ozturk III*, 2025 WL 1420540, at *5 (finding, for similarly situated petitioner, "release was appropriate").

> *1. Ms. Kordia's First Amendment claim presents a substantial constitutional question likely to succeed on the merits.*

Respondents had the burden to prove "by a preponderance of the evidence that [they] would have" confined Ms. Kordia "even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). They fell woefully short.

Respondents do not contest that DHS confined Ms. Kordia because the government disagrees with her support for Palestinian rights. *Cf.* Resp. at 19. They also do not contest the volume of evidence demonstrating their viewpoint-discriminatory intent, including contemporaneous statements targeting Ms. Kordia's viewpoint, Dkt. 14-1, Pet'r's App. at 29, 39–40 (PX 1-G & 1-I, Decl. of Georgina Guzman) ("Guzman Decl."); the explicit statements reflecting a policy of targeting noncitizens because of their viewpoints, *id.* at 5–27, 30–36 (PX 1-A–1-F, 1-H–1-I, Guzman Decl.); the pattern of law-enforcement targeting of others associated with support for Palestinian rights, Mot. at 14–16; or that the government's handling of bond proceedings reflects viewpoint-discriminatory animus, Pet'r's App. at 131 (PX 2-B, Decl. of Mallory Manfredini) ("Manfredini Decl."). And just recently the government described Ms. Kordia's confinement as "related to" the "Israel-Palestine conflict," Suppl. Br. at 16, *Khalil v. Joyce*, 2:25-cv-01963, Dkt. 256 (D.N.J. May 14, 2025), confirming that she would not be confined but for her protected activity.

Instead, Respondents offer one response: "Well before her presence at any protest event,

Kordia had lost her student-visa status." Resp. at 19. On their view, because Ms. Kordia had a lapse in status, she "has no constitutional right to assert selective enforcement as a defense against [her] deportation." Resp. at 19 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 488 (1999)). This is irrelevant or otherwise wrong for at least three reasons.

**First**, Respondents' reliance on *AADC* conflates the initiation of removal proceedings with constitutional challenges to confinement. In *AADC*, the petitioners were not challenging immigration confinement but rather the government's initiation of removal proceedings against them based on their protected speech and conduct. *Id*. at 473–75. The Court held that 8 U.S.C. § 1252(g) barred judicial review of claims that challenged the decision to "commence proceedings, adjudicate cases, or execute removal orders." 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)). The Court concluded that, because the plaintiffs' First Amendment claims of selective enforcement fell "squarely within § 1252(g)," *id.* at 487, it lacked jurisdiction—although the Court acknowledged that jurisdiction could lie over claims asserting viewpoint-driven initiation of removal proceedings under "outrageous" circumstances, *id.* at 491. Here, by contrast, Ms. Kordia has brought a habeas action to contest the legality of her immigration confinement during the pendency of her removal proceedings. This habeas action does not challenge the initiation or pendency of the removal proceedings themselves, and Respondents agree that the bond and detention proceedings are "separate and apart" from the "removal proceedings." Resp. at 10–11.

The language Respondents quote from *AADC*—that there is no right to bring a "selective enforcement" defense to "deportation" in federal court—is *dicta* addressing defenses to *removal proceedings*, *not habeas claims* challenging unconstitutional confinement. So, *AADC* is inapposite and other precedents control Ms. Kordia's habeas claims challenging the legality of her confinement during the pendency of her removal proceedings. *See Jennings*, 583 U.S. at 840–41

10

(plurality op.) (reasoning that applying *AADC* to detention claims would "lead to staggering results" by making detention claims "effectively unreviewable"); *Gutierrez-Soto*, 317 F. Supp. 3d at 925 (finding "courts have balked at applying" jurisdiction-stripping provisions "where habeas petitions assert constitutional claims" (collecting cases)); *see also Najera*, 926 F.3d at 143–44.

**Second,** while Respondents argue they can confine Ms. Kordia on the basis of her protected expression because she also had a lapse in status, the Supreme Court unanimously rejected precisely this kind of argument last term.  In *National Rifle Association v. Vullo*, 602 U.S. 175 (2024), the Court found the National Rifle Association ("NRA") stated a First Amendment claim against a New York financial regulator who used the threat of penalties to convince insurance companies to stop doing business with the NRA. *Id.* at 183–85. The government argued that "pursuing conceded violations of the law" precluded finding a First Amendment violation. *Id.* at 195. The unanimous Court rejected that argument because, while the regulator could "pursue violations of state insurance law, she [could not] do so in order to punish or suppress the NRA's protected message." *Id.* at 196. Critical to the Court was the fact "that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech." *Id.* at 198. Thus, Ms. Kordia's inadvertent lapse of lawful status cannot justify her confinement in violation of the First Amendment.

**Third,** even if the lack of lawful status could meet Respondents' First Amendment burden under some circumstances, it does not meet the burden here. Ms. Kordia has presented uncontested evidence—from immigration practitioners with collective experience representing thousands of clients in removal and bond proceedings—that similarly situated individuals are, with a single exception, never confined for any meaningful amount of time. *See* Pet'r's App. at 165–67 (PX 3, Decl. of Anne Chandler Decl. ¶¶ 7–8, 11) ("Chandler Decl."); *id.* at 170–71 (PX 4, Decl. of Cori

Hash ¶¶ 5–6, 9) ("Hash Decl."); *id.* at 175 (PX 5, Decl. of Charles Gillman ¶ 5) ("Gillman Decl.");
*id.* at 179 (PX 6, Decl. of Jodi Goodwin ¶ 7–8, 10) ("Goodwin Decl."); *id.* at 211 (PX 10, Decl. of
Kerry Doyle ¶ 7) ("Doyle Decl."). Nor have Respondents contested that the invocation of the
automatic-stay provision here is "highly unusual," *id.* at 212 (PX 10, Doyle Decl. ¶ 11); *see also*
*id.* at 171 (PX 4, Hash Decl. ¶ 10); *id.* at 178–79 (PX 6, Goodwin Decl. ¶ 7–8), evincing viewpoint-
discriminatory animus directed at Ms. Kordia. Thus, to the extent Ms. Kordia's lapsed status
matters to her First Amendment claim, she established "objective evidence that . . . similarly
situated individuals not engaged in the same sort of protected speech" would not have been
confined. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019).

Ultimately, what Respondents seek is the right to keep Ms. Kordia confined based on
viewpoints they do not like. That is a blatant violation of the Constitution, and Ms. Kordia is likely
to succeed on the merits of her First Amendment claim.

2. *Ms. Kordia's procedural due process claim presents a substantial constitutional question
   likely to succeed on the merits.*

Respondents rightly do not meaningfully contest this Court's jurisdiction to review Ms.
Kordia's procedural due process challenge to DHS's automatic stay power. Resp. at 16; *see also*
*Najera*, 926 F.3d at 143. Nor do Respondents dispute that DHS's automatic stay power creates a
substantial risk of erroneous deprivations of liberty and that their interest in using the procedure is
minimal. *Cf.* Mot. § V.A.2.iv–v. Respondents do not even try to explain or justify their invocation
of the automatic stay in this case. Instead, Respondents argue that Ms. Kordia's private interest in
avoiding one hundred days of confinement after an immigration judge has already determined she
may be released is "modest and limited," Resp. at 18, and her confinement pending appeal is
constitutional because she had the right to seek a bond hearing and respond to DHS's bond appeal,
*id.* at 17. These arguments mischaracterize Ms. Kordia's claims and misstate the law. This Court

should reject them.

**First,** Ms. Kordia has a strong private interest in avoiding 100 days of confinement pursuant to the government's invocation of the automatic stay of the immigration judge's order releasing Ms. Kordia on bond. *See Zadvydas*, 533 U.S. at 690 (Freedom "from government. . . detention. . . lies at the heart of the liberty [the Due Process] Clause protects."); *Gunaydin*, 2025 WL 1459154, at *7 (finding "the private interest affected by" the automatic stay provision "weigh[ed] heavily in [petitioner's] favor"). Respondents claim this confinement does not "run afoul of due process" because other courts "have found far longer periods of immigration detention to pass constitutional muster." Resp. at 18. Most significantly, none of the cases Respondents cite addresses the situation here: an individual confined pursuant to 8 U.S.C. § 1226(a), who was granted release by an immigration judge following a custody determination hearing, after which the government invoked the automatic-stay regulation. Rather**,** those cases concerned whether prolonged confinement alone necessitated release or individualized bond determinations. *See Barrera-Romero v. Cole*, No. 1:16-cv-00148, 2016 WL 7041710, at *4 (W.D. La. Aug. 19, 2016) (petitioner sought bond hearing due to prolonged confinement after a final order of removal), *report and recommendation adopted sub nom. Barrera Romero v. Warden, Lasalle Det. Facility*, No. 1:16-CV-00148, 2016 WL 7041614 (W.D. La. Dec. 1, 2016); *Garcia v. Lacy*, No. 12-cv-3333, 2013 WL 3805730, at *4 (S.D. Tex. July 19, 2013) (petitioner mandatorily confined under section 1226(c) "argue[d] only that his detention is unconstitutional because of its duration."); *Kim v. Obama*, No. 12-CV-173, 2012 WL 10862140, at *2 (W.D. Tex. July 10, 2012) (petitioner initially denied bond argued that his prolonged confinement without another hearing violated due process); *Atemafac v. Wolf*, No. 6:20-cv-01697, 2021 WL 1972577, at *2 (W.D. La. Mar. 8, 2021) (petitioner who never requested a bond hearing sought release based on the length of her pre-

removal confinement), *report and recommendation adopted*, No. 6:20-CV-01697, 2021 WL 1964290 (W.D. La. May 17, 2021).

Here, Ms. Kordia's procedural due process claim is premised on neither the length of her confinement by itself nor the lack of an individualized determination by an immigration judge. "Rather than the Government detaining [Ms. Kordia] *until* an individualized determination can be made. . . the Government is detaining [her] *even though* an individualized [bond] determination has been made." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 673 (D.N.J. 2003). In this way, the automatic-stay provision "operates by fiat" to "prolong[] detention even after a judicial officer has determined that release [] is appropriate." *Mohammed H.*, 2025 WL 1334847, at *6. Its "operation here" thus "renders [Ms. Kordia's] continued detention arbitrary as applied." *Id.*

**Second,** Respondents claim their confinement of Ms. Kordia under the automatic stay is constitutional because she had a lawyer, an opportunity to seek an immigration bond, and the opportunity to respond to DHS's bond appeal. Resp. at 17. For one, whether Ms. Kordia is represented by counsel is plainly irrelevant to whether the automatic-stay provision violates due process. And her ability to seek a bond before the immigration judge and respond to DHS's appeal fails to remedy her inability to challenge her confinement *pending* that appeal. Here, DHS's invocation of the automatic stay nullified those procedures because it effectively "overruled the bail decision." *Ashley*, 288 F. Supp. 2d at 670; *Gunaydin*, 2025 WL 1459154, at *8 ("[T]he challenged regulation permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions."); *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) (same as to prior version of the regulation). Ms. Kordia's ability to submit a response brief to the Board of Immigration Appeals ("BIA") is no consolation, because the deprivation of her liberty only compounds while that appeal remains pending and because the

14

appeal does not address any factors purportedly considered by Respondents to justify invocation of the automatic stay. *See* Mot. at 36.

Contrary to Respondents' characterization, Ms. Kordia does not "take exception to the fact" that DHS can appeal an immigration judge's decision. *Cf.* Resp. at 17. Ms. Kordia challenges the fact that the procedure-less automatic-stay provision overrides the immigration judge's decision to release her and does so without "any individualized justification" or providing "notice and the chance to rebut [DHS's] case for continued detention" pending the government's appeal. *Mohammed H.*, 2025 WL 1334847, at *6. Consequently, Ms. Kordia "raises a substantial Fifth Amendment claim." *Id.*

   3. *Ms. Kordia's substantive due process claim presents a substantial constitutional question likely to succeed on the merits.*

Once again, Respondents do not contest the key facts or the law relevant to Ms. Kordia's substantive due process claim. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," and it is unquestionably a fundamental right. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has recognized two justifications for immigration confinement: preventing flight and preventing danger to the community. *Zadvydas*, 533 U.S. at 690. As the immigration judge found, neither justification supports Ms. Kordia's confinement without access even to conditional release. Pet'r's App. at 144–46 (PX 2-C, Manfredini Decl.).

Respondents do not even attempt to justify that Ms. Kordia's confinement has a constitutionally permissible purpose. *Cf.* Resp. at 19. Instead, Respondents argue that Ms. Kordia "does not dispute that the legal and factual predicates for her placement in removal proceedings exist independently of [her] protest activity." *Id.* Respondents continue to misstate Ms. Kordia's claims, which do not challenge her ongoing removal proceedings but her continued,

unconstitutional confinement. Respondents seem to be arguing that they can confine any individual for any purpose if they happen to be placed in removal proceedings. The Supreme Court rejected that argument in *Zadvydas*.

In *Zadvydas*, the petitioners did not dispute that they violated the immigration laws and were subject to removal orders. 533 U.S. at 684, 685 (describing petitioners). Nonetheless, the Court evaluated their due-process claims by determining whether their confinement "had [a] reasonable relation to the purpose for which the individual [was] committed." *Id.* at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). It is irrelevant whether Ms. Kordia has lawful status: "both removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious." *Mahdawi*, 2025 WL 1243135, at *11 (quotation omitted); *see Mohammed H.*, 2025 WL 1334847, at *6 ("Executive detention must rest on more than categorical, unsubstantiated, or facially deficient grounds."). Here, Respondents have not even tried to identify a permissible purpose for Ms. Kordia's initial or continued confinement.

Respondents' argument is also circular: no noncitizen habeas petitioner could ever prevail under it because, to Respondents, the "factual predicate[] for [] placement in removal proceedings" justifies continued confinement no matter the circumstances, Resp. at 19, a proposition which the Fifth Circuit has rejected. *See, e.g.*, *Tran v. Mukasey*, 515 F.3d 478, 485 (5th Cir. 2008) (affirming grant of habeas relief under *Zadvydas* to noncitizen subject to final order of removal); *Oyelude*, 125 F. App'x at 547 (reversing district court that dismissed a habeas petition from a noncitizen allegedly "remaining in the United States without authorization").

Because Respondents have no lawful purpose for Ms. Kordia's continued confinement, her confinement exceeds Respondents' constitutional power and violates the Fifth Amendment. Therefore, Ms. Kordia's substantive due process claim raises a substantial question likely to

16

succeed on the merits.

    *4. No exhaustion requirement applies, and Ms. Kordia satisfied any exhaustion requirement that could apply.*

    No exhaustion requirement applies to Ms. Kordia's claims. Even if one did, she satisfied it. **First,** Ms. Kordia need not exhaust claims "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (quotation omitted). Respondents do not contest that both the immigration judge and BIA lack jurisdiction to even consider Ms. Kordia's constitutional challenges. *Cf.* Mot. at 36 (quoting *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 687 (5th Cir. 2009)) (noting that "the BIA lacked jurisdiction to consider [petitioner's due process] challenges."); *Matter of C-*, 20 I & N 529, 532 (1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the [INA] and the regulations."). Thus, Ms. Kordia need not wait for the BIA to decide DHS's appeal, because the BIA has no authority to review or rule on the claims brought here. *See Gilani v. Gonzales*, 206 F. App'x 381, 383–84 (5th Cir. 2006) ("Because the BIA does not have jurisdiction to decide the constitutionality of acts of Congress, exhaustion is not required." (citation omitted)).

    **Second**, Ms. Kordia has availed herself of the administrative process. She promptly sought a custody redetermination and does not challenge the immigration judge's favorable determination. Pet'r's App. at 145–46 (PX 2-C, Manfredini Decl.). But because of the automatic-stay provision, there is no other administrative procedure for her to challenge her confinement pending the government's appeal of the immigration judge's release order. *Supra* § II.B.2 (describing automatic stay). According to Respondents, Ms. Kordia must remain confined, facing daily inflictions of immense and irreparable harm, *infra* § II.C, awaiting adjudication by an administrative body that has no jurisdiction to consider her constitutional claims and does not

afford her adequate procedural protections. They are wrong. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

The cases Respondents rely on are plainly inapposite. In *Singh v. ICE*, No. 22-cv-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023), the petitioner did not seek a bond hearing before the immigration judge, in contrast to Ms. Kordia, who was found releasable on bond. *Id.* at *2. Next, both *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000), and *Wang v. Ashcroft*, 260 F.3d 448 (5th Cir. 2001), involved review of immigration relief squarely within the jurisdiction of the immigration judge and BIA, not a constitutional challenge to confinement the agency has no power to resolve. *Cf. Cardoso*, 216 F.3d at 518 (finding failure to exhaust "review of the immigration judge's denial of her request for adjustment of status"); *Wang*, 260 F.3d at 452 (finding noncitizen failed to request "the BIA to exercise its authority" to review "the deportation order").

Because Respondents' exhaustion arguments would improperly place an insurmountable obstacle to Ms. Kordia's habeas claims, this Court should reject them.

### C.  This Case Presents Extraordinary Circumstances, and the Equities Favor Release.

Ms. Kordia put forth extensive and undisputed evidence demonstrating her continued confinement presents extraordinary circumstances that weigh the balance of the equities in favor of her release pending a final determination.

**First,** irreparable harm. Because Ms. Kordia is likely to succeed on the merits, her release is necessary to prevent ongoing, daily, irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also* Mot. at 45. Respondents make the incredible argument that Ms. Kordia's speech is not being "restricted" because "she has access to lawyers" and can "say or write whatever she wants." Resp. at 20. But Respondents have not disputed the severe and profound chilling effect their retaliatory confinement has had on Ms. Kordia and others who would

otherwise demonstrate their support for Palestinian rights. Mot. at 31.[3] Respondents' absurd claim that access to courts somehow negates the chilling effect of confinement on her and others will only result in the "'cautious and restrictive exercise' of First Amendment freedoms." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (quotation omitted). This Court cannot countenance First Amendment violations just because Ms. Kordia can come to court to complain about them.

The irreparable harm these constitutional violations inflict is compounded by the daily indignities of religious liberty violations, including Respondents Bergami and Johnson's failure to serve Ms. Kordia a *single* halal meal; the dirty conditions which make her feel unworthy of God, thereby preventing her prayers; and the targeted refusal to provide her a prayer mat while providing one to others. Mot. at 41–42; *see Roman Catholic Diocese of Brooklyn v. Cuomo,* 592 U.S. 14, 19 (2020) ("There can be no question that the challenged restrictions [on religious practice], if enforced, will cause irreparable harm."); *Opulent Life Church v. City of Holy Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (Plaintiff had "satisfied the irreparable-harm requirement because it [] alleged violations of its [religious liberty] rights."). Even where the government has asserted a far weightier interest than Respondents have here, the Fifth Circuit has not hesitated to find irreparable harm for religious liberty violations. *See, e.g.*, *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (declining to stay preliminary injunction where vaccine mandate "pitt[ed] [plaintiffs'] consciences against their livelihoods," even though the Navy claimed the injunction would "seriously impede the military in the performance of vital duties").

Next, Respondents argue their violation of Ms. Kordia's religious liberty does not "provide any basis for Kordia's release on a habeas claim." Resp. at 21. That gravely misunderstands her

---

[3] *See* Angie Orellana Hernandez, *College Newspapers Under Pressure As Immigration Fears Silence Sources*, Wash. Post (May 17, 2025), https://www.washingtonpost.com/education/2025/05/17/college-newspapers-trump-international-students

argument. The violations of religious liberty are relevant to the punitive nature of her ongoing confinement and the deterioration of her physical and mental health. Mot. at 41–42; *Alexis v. Sessions*, 18-cv-1923, 2018 WL 5921017, at *7 (S.D. Tex. Nov. 13, 2018) (Rosenthal, J.) (finding habeas court "must consider . . . the conditions of detention" when evaluating due-process claim).

**Second**, the equities. Respondents have not claimed to this Court that Ms. Kordia cannot be released because of supposed danger to the community or risk of flight—the only legally cognizable justifications that can allow for someone's civil immigration confinement. Instead, Respondents assert simply that they are entitled to: (1) keep her confined during removal proceedings, Resp. at 16, and (2) enforce immigration laws, *id.*

The first justification fails for all the reasons discussed on the merits: section 1226(a) does not give Respondents free reign to confine Ms. Kordia in violation of the Constitution. Respondents cannot confine someone for a punitive, retaliatory, or otherwise impermissible purpose. *See Zadvydas*, 533 U.S. at 690.

Nor would her release prevent "the enforcement of immigration laws." Ms. Kordia does not challenge the initiation of removal proceedings. And releasing Ms. Kordia will not affect her ongoing removal proceedings. As an immigration judge found, her ample avenues for immigration relief and strong family ties demonstrate the near certainty that she will attend all of her removal proceedings. Pet'r's App. at 144–47 (PX 2-C, Manfredini Decl.). Vindicating her constitutional rights will not disturb the immigration process and, therefore, will not harm Respondents' enforcement interest.

Further, "there is generally no public interest in the perpetuation of unlawful agency action." *Wages & White Lion Invests., L.L.C. v. U.S. F.D.A.*, 16 F.4th 1130, 1143 (5th Cir. 2021) (quotation omitted). And "protecting First Amendment freedoms [is] always in the public interest."

*Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quotation omitted). This is particularly true where, as here, Respondents have transferred Ms. Kordia in contravention of their own policies. *See*, *e.g.*, *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (government interest in enforcing immigration law was overcome where government did not follow regulations for revoking a student visa, and government did not articulate injury or harms).

Where Respondents have not substantiated any lawful interest in Ms. Kordia's confinement, the equities that Ms. Kordia possesses in her liberty are extraordinary. *See Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974) (outlining extraordinary circumstances test for release on bond). Currently, Ms. Kordia sleeps on the floor of a detention facility 1,500 miles from home, deprived of halal food and other religious materials, while her health deteriorates. Mot. at 44–45. Meanwhile, Respondents have all but conceded that she is confined because the government does not like what she has to say. That is as extraordinary as it is unconstitutional. *Mahdawi*, 2025 WL 1243135, at *12–13.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Petitioner's Motion and order Respondents to release Ms. Kordia pending resolution of this case on the merits and prohibit them from further confining her during the proceedings' pendency, unless she receives constitutionally adequate procedural protections, including notice and a pre-deprivation judicial hearing.

Dated: May 27, 2025

Respectfully submitted,

*/s/ Travis Walker Fife*
Travis Walker Fife
Texas State Bar No. 24126956
Randall Hiroshige
Texas State Bar No. 24124299
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
travis@texascivilrightsproject.org
randy@texascivilrightsproject.org

Charles S. Siegel
Texas State Bar No. 18341875
Caitlyn Silhan
Texas State Bar No. 24072879
Waters Kraus Paul & Siegel
3141 Hood Street, Suite 200
Dallas, Texas 75219
Telephone: 214-357-6244
Facsimile: 214-357-7252
siegel@waterskraus.com
csilhan@waterskraus.com

Sabrine Mohamad*
Louisiana State Bar No. 39989
Southern Poverty Law Center
P.O. Box 57089
New Orleans, LA 70157
Telephone: 504-418-9877
sabrine.mohamad@splcenter.org

Arthur Ago*
District of Columbia Bar No. 463681
Southern Poverty Law Center
1101 17th Street, NW
Suite 550
Washington, DC 20036
Telephone: 202-961-9325
arthur.ago@splcenter.org

Molly Petchenik
Texas State Bar No. 24134321
Texas Civil Rights Project
P.O. Box 17757
Austin, Texas 78760
Telephone: 512-474-5073
Facsimile: 512-474-0726
molly@texascivilrightsproject.org

Daniel Hatoum*
Texas State Bar No. 24099136
Erin D. Thorn*
Texas State Bar No. 24093261
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
Telephone: 512-474-5073
daniel@texascivilrightsproject.org
erin@texascivilrightsproject.org

Naz Ahmad*
New York State Bar No. 5327424
Amal Thabateh*
New York State Bar No. 5923826
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4630
naz.ahmad@law.cuny.edu
amal.thabateh@law.cuny.edu

Golnaz Fakhimi*
New York State Bar No. 5063003
Sadaf Hasan*
New York State Bar No. 6046023
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

22

\* *Admitted to practice PHV*
**ATTORNEYS FOR PETITIONER-PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on May 27, 2025, a true and correct copy of this document was properly

served on all counsel of record served in accordance with the Federal Rules of Civil Procedure.

*/s/ Travis Walker Fife*
Travis Walker Fife