IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEQAA KORDIA, | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-01072-L-BT |
| | § | |
| KRISTI NOEM, *et al.*, | § | |
| | § | |
| Respondents- | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The Department of Homeland Security (DHS) initiated removal proceedings against an alien[1] who overstayed her visa (Petitioner) and detained her pending resolution of those proceedings. Although an immigration judge (IJ) granted Petitioner bond, DHS appealed—triggering the automatic stay provision under 8 C.F.R. § 1003.19(i)(2) and preventing her release. As a result, Petitioner remains in immigration custody.

Petitioner subsequently filed this federal action seeking, among other things, a writ of habeas corpus, under 28 U.S.C. § 2241. She alleges that her continued detention violates the First Amendment, as well as her rights to procedural and substantive due process. In particular, she challenges the constitutionality of her confinement pursuant to the automatic stay provision.

---

[1] 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

1

Petitioner also filed a motion seeking her immediate release while her habeas petition is pending.

As explained below, the Court has jurisdiction to consider Petitioner's procedural due process claim and, accordingly, her motion for release. And, insofar as Petitioner's motion seeks a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the Court should find that she has met her burden of establishing: (1) there is a substantial likelihood that she will prevail on the merits of her procedural due process claim; (2) there is a substantial threat that she will suffer irreparable harm if the injunction is not granted; (3) the threatened injury to Petitioner outweighs the threatened harm to Respondents; and (4) the granting of the preliminary injunction will not disserve the public interest.[2] Therefore, the Court should order Petitioner released while her habeas petition is pending.

## I. Petitioner's Allegations and Procedural History

### A. Immigration and Initiation of Removal Proceedings

Petitioner Leqaa Kordia alleges that she lawfully entered the United States on a B-2 Visitor Visa (a "tourist visa") in 2016.[3] Shortly thereafter, Petitioner moved in with her mother in Paterson, New Jersey, enrolled in a course of study at a Student and Exchange Visitor Program (SEVP)-certified institution, and

---

[2] *See Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc).

[3] Verified Pet. for Writ of Habeas Corpus, Req. for Order to Show Cause, & Compl. for Declaratory and Injunctive Relief ¶ 25 (ECF No. 1).

adjusted her status to that of an F-1 international student.[4] Her mother—a United States citizen—later filed a Form I-130 (a "family-based visa petition") on Petitioner's behalf.[5] United States Citizenship and Immigration Services (USCIS) received her mother's petition on or about June 5, 2017, and approved it on or about May 6, 2021.[6]

On January 24, 2022, Petitioner signed an official termination notice withdrawing from her F-1 program, which her school approved two days later.[7] By withdrawing from that program, Petitioner fell out of compliance with the terms of her visa ("overstayed" her visa) and lost her temporary lawful status to remain in the United States.[8]

Petitioner has since been charged with removability for failing to maintain her lawful status and has been placed in immigration removal proceedings.[9] She has an upcoming hearing in her removal proceedings next month.[10]

---

[4] *Id.* ¶¶ 26–27.

[5] *Id.* ¶ 28; Pet'r's App. 146 (ECF No. 13-2). Page citations throughout this Recommendation refer to the page number in each respective document, not the page numbers automated by the ECF filing system.

[6] Verified Pet. ¶ 28. Obtaining an "approved" I-130 is a necessary step in the process of obtaining lawful permanent resident (LPR) status, but it does not grant the beneficiary (here, Petitioner) the right to remain in the United States. *See id.*; *see also* 8 U.S.C. § 1255.

[7] *Id.* ¶ 29. Petitioner alleges that she relied on incorrect advice from her school that the government's approval of her mother's family-based visa petition afforded her lawful status to remain in the United States. *Id.* ¶¶ 29–30.

[8] *See id.*

[9] *Id.* ¶ 106.

[10] *See* Resp. 5–6 (ECF No. 28) (citing Resp'ts' App. 004 (ECF No. 29)).

## B. Alleged Protected Speech Activity

Following Hamas's attack on Israel on October 7, 2023, and the ensuing Israeli military action in Gaza, Petitioner attended protests in support of Palestinian rights—including a protest outside Columbia University in New York City on April 30, 2024.[11] New York City police arrested Petitioner and 100 other protesters that day.[12] Petitioner received two citations,[13] but prosecutors dismissed the charges "in the interest of justice."[14]

## C. Detention

The next year, Homeland Security Investigation (HSI) agents investigated Petitioner for overstaying her visa and purported "national security violations" relating to her sending money overseas.[15] Petitioner learned of HSI's investigation on March 6, 2025, and agreed to meet with Immigration & Customs Enforcement (ICE) agents.[16]

On March 13, Petitioner, accompanied by her attorney, went to the ICE Field Office in Newark, New Jersey and presented herself to DHS to be processed for removal proceedings.[17] ICE agents took her into custody pursuant to an ICE

---

[11] Verified Pet. ¶¶ 32–34, 36.
[12] *Id.* ¶¶ 5, 35; Mot. Prelim. Inj. 4 (ECF No. 13); Pet'r's App. 145.
[13] The citations indicated Petitioner was "blocking a gate . . . preventing anyone from entering & exiting" and that she was asked to disperse and "failed to comply" with that command. Pet'r's App. 158.
[14] Verified Pet. ¶ 35; Mot. Prelim. Inj. 4, 15.
[15] Verified Pet. ¶¶ 101–02.
[16] *Id.* ¶ 104.
[17] *Id.* ¶ 105.

detainer and issued her a Notice to Appear (NTA) in immigration court in Buffalo, New York.[18] ICE agents then transferred her to the Prairieland Detention Facility, in the Northern District of Texas, where she continues to be detained.[19]

Petitioner, through counsel, sought a bond hearing before an IJ, where she argued that she has substantial ties to the community, has several bases for potential immigration relief, and is not a flight risk or a danger to the community.[20]

At the conclusion of the bond hearing—held on April 3, 2025—the IJ ordered Petitioner released on a $20,000 bond.[21] The IJ rejected DHS's arguments that Petitioner is a danger to the community because she disregarded police orders to disperse at the April 2024 protest and because she sent money to unidentified recipients in Palestine.[22] The IJ also rejected DHS's arguments that Petitioner is a flight risk because she remained out of legal status and evaded detection by DHS for three years.[23]

---

[18] *Id.* ¶ 106. Generally, DHS may initiate removal proceedings against an individual living in the United States without authorization by issuing that person a "notice to appear" that informs her of, among other things, the charges against her and the time and place of the hearing at which an immigration judge will determine whether she is to be removed. 8 U.S.C. §§ 1229(a)(1)(D), (G)(i); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021).

[19] Verified Pet. ¶¶ 1, 107, 117; Mot. Prelim. Inj. 11–12.

[20] Verified Pet. ¶¶ 149–51; Mot. Prelim. Inj. 14–15. Petitioner did not argue to the IJ that she was being detained as retaliation for her alleged protected speech activity or otherwise in violation of her First Amendment or substantive due process rights. *See generally* Pet'r's App., Ex. 2.

[21] Pet'r's App. at 146; Mot. Prelim. Inj. 16; Verified Pet. ¶¶ 153–54.

[22] *See generally* Pet'r's App. 144–47; Verified Pet. ¶ 154.

[23] Pet'r's App. 146.

Petitioner's family posted the bond on April 4.[24] But on April 5, DHS filed a form EOIR-43; and, on April 15, DHS formally appealed the IJ's bond determination.[25] Filing the appeal automatically prevented the IJ's order from going into effect[26]; thus, Petitioner was not released and will remain in custody until either the Board of Immigration Appeals (BIA) decides the appeal or the appeal lapses.[27]

## C. Claims for Habeas Relief and Immediate Release

On April 30, Petitioner filed this civil action challenging her confinement pending her immigration removal proceedings. Specifically, she seeks a writ of habeas corpus, under 28 U.S.C. § 2241, finding her continued confinement violates the First Amendment (Count I), procedural due process (Count II), and substantive due process (Count III) and ordering her release from immigration detention (Count IV).[28] She also seeks declaratory and injunctive relief (Count V) for violations of her religious liberty under the Religious Freedom Restoration Act

---

[24] Verified Pet. ¶ 155.

[25] Verified Pet. ¶¶ 155, 159; *see also* Mot. Prelim. Inj. 16–17 ("In bond cases where DHS disagrees with an immigration judge's decision, the bond order becomes stayed, meaning the person remains confined, if DHS: (1) files a notice of intent to appeal the custody redetermination within one business day, 8 C.F.R. § 1003.19(i)(2), and (2) effectuates the appeal by filing a notice of appeal within ten days, *id.* § 1003.6(c)(1).").

[26] Verified Pet. ¶¶ 155, 159; *see also* Mot. Prelim. Inj. 16–17.

[27] 8 C.F.R. § 1003.6(c)(4). At the end of the 90-day period, the IJ's release order may remain stayed for up to 30 more days if DHS requests a discretionary stay. 8 C.F.R. § 1003.6(c)(5).

[28] Verified Pet. ¶¶ 13, 163–92.

(RFRA) (42 U.S.C. § 2000bb-1(c)).[29] Although Petitioner asserts she is pursuing legal status and has certain defenses to removal, she does not challenge the government's decision to initiate or pursue removal proceedings in this litigation.[30]

Petitioner alleges that at some point before March 5, 2025, when HSI opened its investigation, Respondents and "others"—including President Donald J. Trump and members of his cabinet—"adopted a policy by which they would retaliate against and punish noncitizens, including [Petitioner], for their actual or perceived advocacy for Palestinian rights," and that under this purported policy, "the U.S. Department of State and DHS would seek to identify any noncitizen associated with protests supportive of Palestinian human rights."[31] According to

---

[29] *Id.* ¶¶ 15, 193–98. Petitioner's RFRA claims are likely not properly before the Court in this habeas action. *See Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (explaining the "sole function" of habeas "is to grant relief from unlawful imprisonment or custody"); *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (internal citations omitted) ("If a favorable determination . . . would not automatically entitle [the petitioner] to accelerated release . . . the proper vehicle is a [civil rights lawsuit]."); *see also Cureno Hernandez v. Mora*, 467 F. Supp. 3d 454, 463 (N.D. Tex. 2020) (noting the "bright-line rule established by decades of Fifth Circuit precedent" that "conditions-of-confinement claims are not the proper subject matter for a writ of habeas corpus"). However, Respondents have not yet asked the Court to sever or dismiss Petitioner's RFRA claim, and the parties were clear at the June 5 hearing that Petitioner's RFRA claim is not at issue in her motion for a preliminary injunction.

[30] *See* Reply 10 (ECF No. 40); Hr'g Tr. 13:14–16 (ECF No. 51) ("[PETITONER'S COUNSEL]: . . . To be absolutely clear, nothing in this case challenges the discretionary decision of the immigration judge or her removal proceedings."); *id.* 21:10–14 ("[N]othing in [Petitioner's] habeas petition challenges the removal proceedings. No matter what this Court recommends, and [the District Judge] ultimately decides, the removal proceedings will be ongoing and unaffected by these habeas proceedings.").

[31] Verified Pet. ¶¶ 53–54.

Petitioner, "one way to target individuals would be to identify any noncitizen who had been arrested during protests associated with Palestinian rights advocacy on or around campuses . . . ."[32] And she directs the Court to the cases and circumstances of other individuals who have recently become the subject of removal proceedings,[33] asserting that "immigration officials have exercised extraordinary and unprecedented power by arresting, detaining, transferring, and initiating removal proceedings against lawful immigrants who the administration perceives as political dissidents," including "individuals who, had they not been somehow associated with advocacy for Palestinian rights, would never be detained."[34] Petitioner claims that she is a target of Respondents' alleged retaliatory policy to punish individuals for their advocacy for Palestinian rights, and that she has been detained "because she attended a Palestinian rights demonstration and because she had sent money to a family member in Palestine."[35]

She further claims that her detention at the Prairieland Detention Facility has subjected her to "miserable" conditions and deprivations of her religious

---

[32] *Id.* ¶ 54.

[33] *See id.* ¶¶ 62–99 (referencing the cases of Mahmoud Khalil, Ranjani Srinivasan, Dr. Badar Khan Suri, Momodou Taal, Rümeysa Öztürk, Yunseo Chung, and Mohsen Mahdawi). Most of these cases do little to inform the Court's analysis here because those cases either did not assert procedural due process claims or the district courts did not reach such claims. Additionally, the Court finds the circumstances of the other petitioners/plaintiffs meaningfully distinguishable from Petitioner's circumstances here.

[34] Verified Pet. ¶ 100.

[35] *Id.* ¶ 9.

8

liberty.[36] Petitioner alleges that she sleeps on a concrete floor with only a thin mattress and blanket, in a room at almost double the maximum capacity, surrounded by cockroaches.[37] She also alleges she has not received a single halal meal that complies with her dietary restrictions as a practicing Muslim.[38] As a result, Petitioner alleges she has lost almost fifty pounds and experiences fainting, migraines, and dizziness.[39] Additionally, Petitioner alleges Prairieland staff have failed to accommodate her religious requirements for prayer—denying her a prayer mat, a clean space for prayer, the ability to clean herself or a garment covering her back—which has forced her to stop praying.[40]

On May 5, Petitioner filed her motion for a preliminary injunction seeking an order requiring her immediate release from immigration detention and forbidding Respondents from confining her again without providing certain procedural protections.[41] She argues that she meets the standards for release under *Calley v. Callaway*[42] and *Mapp v. Reno*[43]—and for a preliminary injunction—

---

[36] *Id.* ¶¶ 117–48.

[37] *Id.* ¶¶ 117, 122.

[38] *Id.* ¶¶ 126–33.

[39] *Id.* ¶¶ 134, 147.

[40] *Id.* ¶¶ 137–43.

[41] Mot. Prelim. Inj. 1. Specifically, Petitioner requests the Court "prohibit [Respondents] from further confining her during the proceedings' pendency unless she receives constitutionally adequate procedural protections, including notice and a pre-deprivation judicial hearing." *Id.* at 37. However, at the hearing on the motion, Petitioner clarified that "the pre-deprivation hearing . . . is in no way necessary to granting the rest of the [p]reliminary [i]njunction" and "simple release can stand alone." Hr'g Tr. 18:6–9.

[42] 496 F.2d 701 (5th Cir. 1974).

[43] 241 F.3d 221 (2d Cir. 2001).

because she "raises substantial constitutional questions about her confinement, which are likely to succeed on the merits," and because her case "presents extraordinary circumstances because of the profound constitutional claims underlying the Petition, the daily and ongoing religious deprivations [her] continued confinement forces her to endure, and her rapidly deteriorating health."[44]

While Respondents have not yet filed a response to Petitioner's habeas petition, they did respond to her preliminary injunction motion. Succinctly stated, Respondents argue that the Attorney General and DHS Secretary have discretionary authority to decide whether to detain Petitioner pending the completion of her removal proceedings, and this court lacks jurisdiction to review their discretionary decision.[45] Respondents also argue that Petitioner is not entitled to a preliminary injunction because she cannot establish a likelihood of success on the merits and the remaining preliminary injunction factors do not favor relief.[46]

Petitioner filed a reply,[47] and the Court held a hearing on Petitioner's motion.[48] Petitioner's motion is ripe for determination.

---

[44] Mot. Prelim. Inj. 19–20 (citing Verified Pet. ¶ 190).
[45] *See generally* Resp. (ECF No. 28).
[46] *Id.* at 11–17.
[47] *See* Reply (ECF No. 40).
[48] *See* Min. Entry (ECF No. 50).

## II. Jurisdiction

Federal courts have jurisdiction under 28 U.S.C. § 2241 to review habeas petitions from individuals claiming they are "in custody in violation of the Constitution or laws or treaties of the United States."[49] But this jurisdiction extends only to statutory or constitutional claims, as federal courts do not have jurisdiction to review discretionary decisions.[50] Congress may divest courts of their habeas jurisdiction, but only by providing "a clear statement of congressional intent" to that effect.[51]

Some of Petitioner's claims in this case raise complex questions about the extent of the Court's jurisdiction[52]—including Respondents' argument that Petitioner's First Amendment and substantive due process claims attack the government's discretionary detention decision, for which no judicial review is

---

[49] 28 U.S.C. § 2241(c)(3); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

[50] *Bravo v. Ashcroft*, 341 F.3d 590, 592–93 (5th Cir. 2003) (citing *St. Cyr*, 533 U.S. at 307) (explaining that habeas corpus does not provide a mechanism for remedying an official's "substantively unwise exercise of discretion").

[51] *St. Cyr*, 533 U.S. at 298; *see also Ex parte Yerger*, 75 U.S. 85, 102 (1868) ("We are not at liberty to except from [habeas corpus jurisdiction] any cases not plainly excepted by law.").

[52] "[T]he intersection of immigration and habeas corpus marks an evolving and challenging area of the law . . . ." *Kambo v. Poppell*, 2007 WL 3051601, at *3 (N.D. Tex. Oct. 18, 2007) (citing *Soberanes v. Comfort*, 388 F.3d 1305, 1312 (10th Cir. 2004)). "Determining the existence and/or extent of this Court's habeas corpus jurisdiction in immigration areas is complicated by the myriad jurisdiction-stripping provisions of the various immigration laws enacted and [] amended by Congress." *Id.*

available, and that because no jurisdiction exists for these claims, she cannot obtain a preliminary injunction.[53] But Respondents do not argue that the Court lacks jurisdiction over Petitioner's procedural due process "framework" challenge to DHS's automatic stay power under 8 C.F.R. § 1003.19(i)(2) (Count II).[54] Indeed, during the hearing on Petitioner's motion, Respondents apparently conceded that the Court does have jurisdiction over that claim.[55] And, at the conclusion of the hearing, Petitioner invited the Court to "write a very narrow opinion," in which the Court relies only on her procedural due process claim to support jurisdiction.[56] The Court should accept that invitation and, for the purpose of determining Petitioner's motion for immediate release, pretermit any discussion of whether it has jurisdiction over Petitioner's claims that her detention violates the First

---

[53] Resp. 10.

[54] *See generally* Resp.

[55] *See* Hr'g Tr. 51:20–52:3 ("THE COURT: Okay. So let me make sure I am not misunderstanding you. You do not dispute that the procedural due process claim is a framework challenge over which the Court would have jurisdiction? [RESPONDENTS' COUNSEL]: I think that's right. Correct. We've said that framework challenges are okay, with the caveat that the decision to invoke the stay is not a framework challenge. But, just, does this regulation comply; that's a framework issue. Yes, Your Honor."); *See also McAlpine v. Ridge*, 2004 WL 2389448, at *3–4 (N.D. Tex. Oct. 25, 2004) (before determining the matter was moot, finding a claim "assert[ing] that the automatic stay provision [of 8 C.F.R. § 1003.19(i)(2)] violates [the alien petitioner's] 'constitutional right to post bail consistent with the due process afforded him' by the Constitution" "falls squarely within the habeas jurisdiction of this court") (citing *Pisciotta v. Ashcroft*, 311 F. Supp. 2d 445, 453–54 (D. N.J. 2004) (finding habeas jurisdiction where petitioner challenged the constitutionality of 8 C.F.R. § 1003.19(i)(2))); *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1074–80 (N.D. Cal. 2004) (finding habeas jurisdiction by necessary implication where the court proceeded to the merits of petitioner's constitutional challenge to 8 C.F.R. § 1003.19(i)(2)).

[56] Hr'g Tr. 74:18-23.

Amendment (Count I) or substantive due process (Count III).[57]

## III. Request for Immediate Release

### A. Legal Standards

To obtain preliminary injunctive relief under Federal Rule of Civil Procedure 65, Petitioner has the burden of establishing that:

> (1) there is a substantial likelihood that she will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to her] outweighs the threatened harm to [Respondents]; and (4) the granting of the preliminary injunction will not disserve the public interest. [58]

Preliminary injunctive relief is "an extraordinary remedy," not available unless Petitioner carries her burden of persuasion as to all of the four prerequisites.[59] And "[t]he decision to grant [such relief] 'is to be treated as the exception rather than the rule.'"[60] Because Petitioner is entitled to relief under Rule 65, the Court does

---

[57] To meet her burden for preliminary injunctive relief under Federal Rule of Civil Procedure 65, Petitioner must show a substantial likelihood of success on the merits, but she "need only show the likelihood of success of one of [her] claims." *Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 694 (S.D. Oh. 2014); *see also Tex. All. for Retired Americans v. Hughs*, 489 F. Supp. 3d 667, 696 n.9 (S.D. Tex. 2020) ("Plaintiffs only need to show likelihood of success on one claim to obtain a preliminary injunction . . . the Court will not address Plaintiffs remaining claims."), *rev'd on other grounds*. As discussed herein, Petitioner shows a likelihood of success on the merits of her procedural due process claim, over which the Court has jurisdiction, so the Court need not address Respondents' jurisdiction-stripping arguments directed to her other claims.

[58] Mot. Prelim. Inj. 19 (citing *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)); *see also Canal Auth.*, 489 F.2d at 572.

[59] *Canal Auth.*,, 489 F.2d at 576; *see also Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (stating that a movant must "clearly carr[y] the burden of persuasion") (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

[60] *Jones*, 122 F. Supp. 2d at 718.

not reach the issue of whether she would also be entitled to relief under *Calley*.[61]

## B. Analysis

Petitioner argues the Court may grant her preliminary injunctive relief under Federal Rule of Civil Procedure 65 because she can establish all four prerequisites.[62] On the record before it, the Court should find that Petitioner has met her burden to obtain preliminary injunctive relief on her procedural due process claim challenging the constitutionality of her confinement pursuant to the automatic stay provision, 8 C.F.R. § 1003.19(i)(2).

1. <u>Substantial Likelihood of Success on Merits</u>

Petitioner has demonstrated a substantial likelihood of success on the merits of her procedural due process claim.

Under federal immigration law, DHS may arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States."[63] A detained alien may generally seek release on bond while the removal proceedings are pending.[64] If an IJ grants the detained alien bond, DHS may

---

[61] *See Calley*, 496 F.2d at 702 (recognizing a federal court has inherent authority to release a habeas petitioner pending resolution of her habeas petition if she (1) has "raised substantial constitutional claims upon which [s]he has a high probability of success," and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective."). "[T]he Fifth Circuit has not explicitly extended *Calley* to apply in alien habeas petitions," *Singh v. Gillis*, 2020 WL 4745745, at *2 (S.D. Miss. June 4, 2020), and the Court does not need to do so in the present case.

[62] Mot Prelim. Inj. 19.

[63] 8 U.S.C. § 1226(a).

[64] 8 U.S.C. §§ 1226(a)(1), (c)(1), (c)(4); 8 C.F.R. § 1003.19(a).

appeal the IJ's decision to the BIA.[65] The regulations also authorize DHS to stay the IJ's bond order and keep the alien detained for 90—or 120—days pending DHS's appeal to the BIA.[66]

Here, ICE agents detained Petitioner when DHS initiated removal proceedings against her. Petitioner, through counsel, then sought a bond hearing before an IJ, and the IJ ordered Petitioner released on a $20,000 bond. Petitioner's family posted the bond, but DHS appealed the IJ's release determination, triggering the automatic stay and preventing her release. Thus, Petitioner, who has been in immigration custody since March 13, 2025, will remain in custody until the BIA decides the bond appeal or the appeal lapses on July 14, 2025 (90 days from April 15, the date the automatic stay commenced).

Petitioner claims the automatic stay provision violates her procedural due process rights because the regulation allows DHS to continue her detention for months without requiring DHS to provide any individualized justification for its action or providing her with any meaningful opportunity to challenge her continued confinement.[67] To succeed on the merits of this claim, Petitioner must show a constitutional deficiency in the procedures resulting in her detention by applying the *Mathews v. Eldridge* balancing test, which considers: (1) "the private

---

[65] 8 C.F.R. § 1003.19(f).

[66] *See* 8 C.F.R. § 1003.19(i)(2); 8 C.F.R. § 1003.6(c)(4), (c)(5) ("DHS may seek a discretionary stay pursuant to 8 CFR 1003.19(i)(1) to stay the immigration judge's order in the event the Board does not issue a decision on the custody appeal within the period of the automatic stay").

[67] Mot. Prelim. Inj. 27–30; Reply 15.

interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through [available] procedures," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[68]

Here, Petitioner has a significant liberty interest in being free from detention—particularly because an IJ determined, after an evidentiary hearing, that she is entitled to release on bond. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."[69] And "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."[70]

Next, the automatic stay provision creates a serious risk of erroneous deprivation of Petitioner's liberty interest. Because the stay takes effect without requiring DHS to meet—or even consider—any threshold standard and Petitioner has no opportunity to challenge the imposition of the stay, there are no procedural safeguards to prevent prolonged, unwarranted detention pending DHS's appeal.[71]

---

[68] *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

[69] *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

[70] *Id.* at 679 (citations omitted); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024) ("Even if Petitioner is a noncitizen in removal proceedings, that does not mean that he does not have a strong private interest in being free from civil detention.").

[71] *See Günaydın v. Trump*, 2025 WL 1459154, at *8–9 (D. Minn. May 21, 2025) (noting that the automatic stay provision "includes no requirement that the agency

Respondents argue that Petitioner's detention because of the automatic stay is not unconstitutional because its duration is "relatively modest and limited" and "neither excessive nor indefinite in nature."[72] But the mere fact that Petitioner's detention will not be indefinite does not mean it comports with due process. Petitioner has already been detained for more than two months since the IJ determined she should be released. And she will continue to be detained until the BIA acts on DHS's appeal or the appeal lapses. Even if the BIA ultimately upholds the IJ's decision to release Petitioner on bond, DHS will have deprived Petitioner

---

official invoking it consider any individualized or particularized facts" and "does not include any standards for the agency official to satisfy"); *see also Mohammed H. v. Trump*, 2025 WL 1334847, at *6 (D. Minn. May 5, 2025) (observing that "[t]he automatic stay provision [] does not require any showing of dangerousness or flight risk. Nor is it subject to immediate review[.]").

[72] Resp. 13. In making their argument, Respondents rely on cases where periods of detention longer than that at issue here passed constitutional muster. *See id.* (citing *Atemafac v. Wolf*, 2021 WL 1972577, at *2 (W.D. La. Mar. 8, 2021) (petitioner had been in custody pending removal proceedings for over twelve months, but never requested a bond hearing), *adopted by*, 2021 WL 1964290 (W.D. La. May 17, 2021); *Barrera-Romero v. Cole*, 2016 WL 7041710, at *5 (W.D. La. Aug. 19, 2016) (petitioner sought bond hearing after he was detained for twenty months pursuant to § 1231(6) and subject to a reinstated final order of removal after illegally reentering the country), *adopted by*, 2016 WL 7041614 (W.D. La. Dec. 1, 2016); *Kim v. Obama*, 2012 WL 10862140, at *3 (W.D. Tex. July 10, 2012) (finding petitioner initially denied bond was not entitled to a bond redetermination because his prolonged detention of one-and-a-half years was "a direct result of his own efforts"); *Garcia v. Lacy*, 2013 WL 3805730, *4 (S.D. Tex. July 19, 2013) (petitioner mandatorily confined pursuant to § 1226(c) for twenty-seven months "argue[d] only that his detention [was] unconstitutional because of its duration")). But those cases are distinguishable. Here, Petitioner is not subject to mandatory detention, and she requested a bond hearing almost immediately. When DHS appealed the IJ's bond determination, triggering the automatic stay, she filed this habeas action within a matter of days. Her prolonged detention is in no way a result of her own efforts.

of her liberty for a significant period of time without any individualized or particularized showing that her continued detention is justified. As Petitioner argues, "the damage will already have been done."[73]

Finally, there is nothing in the record to suggest that imposing additional procedural requirements on DHS's ability to keep Petitioner in custody pending its appeal of the IJ's bond determination would impose any fiscal or administrative burden on the government. Petitioner submitted sworn testimony from a former IJ and former principal legal advisor for ICE that DHS would not be burdened by using the procedure set forth in 8 C.F.R. § 1003.19(i)(1) (the "general discretionary stay" provision), which "follows a more traditional process of requesting a stay from the appellate court" and considers "whether a stay is warranted based on the individual circumstances and merits of the case."[74] Respondents came forward with no argument, much less evidence, to rebut or controvert Petitioner's evidence.[75] Any additional burden presented by a procedure that requires consideration of the individual circumstances and merits of the case does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation of that interest.

Accordingly, on the record before it, the Court finds that Petitioner will be able to satisfy the *Mathews* factors to show a constitutional deficiency in the

---

[73] Mot. Prelim. Inj. 28.
[74] Pet'r's App., Ex. 10, ¶ 12 (Kerry Doyle Decl.) (ECF No. 13-2); *Günaydın*, 2025 WL 1459154, at *9.
[75] *See* Pet'r's App., Ex. 10, ¶ 12 (Kerry Doyle Decl.).

procedures resulting in her detention and, thus, show a substantial likelihood of success on the merits of her procedural due process claim.

### 2. Substantial Threat of Irreparable Harm

Petitioner has also shown a substantial threat of irreparable harm.

For the Court to grant a preliminary injunction, Petitioner must demonstrate that there is a substantial threat of irreparable harm that will result if she is not granted an injunction ordering her release. But "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[76] Because Petitioner alleges—and is likely to succeed on the merits of her claim—that her detention violates her procedural due process rights, no additional showing of irreparable harm is necessary.[77]

---

[76] *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995))).

[77] Nonetheless, the record contains uncontroverted evidence that Petitioner's continued confinement results in physical harm and religious liberty violations. Specifically, Petitioner is experiencing "significant" weight loss, "near-daily" migraines, and "overwhelming" dizziness due to Respondents' failure or refusal to provide her with a nutritious halal diet. *See* Verified Pet. ¶¶ 147–48. Petitioner eats only "the bare minimum" and just "enough [] to survive." *See id.* ¶ 134. She is also "severely" depressed and alienated because she is confined more than 1,500 miles away from her family and friends in a facility where she must sleep in a dirty, overcrowded cell, on a thin mattress on the ground, surrounded by vermin, and is deprived of the necessary requirements to practice her Muslim faith. *See id.* ¶ 147. This evidence is likely relevant to Petitioner's RFRA claims, which are not the subject of her preliminary injunction motion. *See Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) (noting habeas is not available to review questions unrelated to the cause of detention).

3. <u>Balancing the Equities and Public Interest</u>

Petitioner has demonstrated that the balance of equities and public interest favor her release.

When the government is the opposing party, the third and fourth prerequisites for a preliminary injunction—which involve assessing the harm to the opposing party and weighing the public interest—merge into a single factor.[78] Here, Petitioner has a compelling interest in release from detention that likely violates due process. And given the Court's finding that Petitioner has established a substantial threat of irreparable harm, Respondents "would need to present powerful evidence of harm to its interests" to prevent Petitioner from satisfying the third preliminary injunction factor.[79]

Respondents argue the government has "a strong interest in the enforcement of the immigration laws and the removal of aliens who are unlawfully present in the United States."[80] Even Petitioner does not quarrel with this assertion. Rather, she asserts that "[v]indicating her constitutional rights will not disturb the immigration process and therefore, will not harm Respondents' enforcement interest."[81]

In this case, Petitioner does not challenge the validity of the removal proceedings themselves. She represents that she intends to appear at all her

---

[78] *Nken v. Holder*, 556 U.S. 418, 435 (2009).
[79] *Opulent Life Church*, 697 F.3d at 297.
[80] Resp. 16.
[81] Reply 20.

appointments and defend herself with whatever legal arguments are available to her—including that she is approved and awaiting availability for a family-based visa, she has a pending petition for asylum, and she has claims for protection under the Convention Against Torture and the Deferred Enforced Departure Plan for eligible Palestinians.[82] Respondents have not explained how Petitioner's release on bond would impair their ability to conduct the removal proceedings—or to remove Petitioner if she does not prevail on any of her arguments.[83] On this record, Petitioner has clearly shown that her potential injury outweighs the potential harm to Respondents.

Moreover, an injunction protecting Petitioner's interest in being free from unconstitutional detention is in the public interest.[84]

## IV. Recommendation

The District Judge should GRANT Petitioner's motion (ECF No. 13) and

---

[82] Mot. Prelim. Inj. 2; Verified Pet. ¶ 31.

[83] *See, e.g., Peregrino Guevara v. Witte*, 2020 WL 6940814, at *7 (W.D. La. Nov. 17, 2020) (explaining that releasing habeas petitioner from ICE custody "does not imperil his immigration proceedings" and that "93 [percent] of non-detained [immigrants] with counsel [] 'show up to court' for their immigration hearings."), *adopted by*, 2020 WL 6929700 (W.D. La. Nov. 24, 2020); *cf., e.g., Acosta Ortego v. United States Immigr. & Customs Enf't*, 2020 WL 4816373, at *9 (D. N.M. Aug. 19, 2020) (court found that petitioner's release from ICE custody would "likely interfere with the removal process" when the final removal order has been issued or a standing removal order will be renewed, the government is in the process of scheduling flights, and the petitioner's repeated violations of immigration and criminal law makes conditions of release ineffective to ensure appearance).

[84] *See Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 485 (N.D. Tex. June 5, 2023) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (internal citations omitted).

ORDER her immediate release from immigration detention pending a final judgment on her underlying habeas claims.

**SO RECOMMENDED.**

June 27, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The Clerk of Court will serve a copy of this report and recommendation on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within five days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); Agreed Motion to Shorten the Objections Period (ECF No. 49). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).