IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

LEQAA KORDIA,

      Petitioner-Plaintiff,

v.

KRISTI NOEM, *et al.*,

      Respondents-Defendants.

Civil Action No. 3:25-CV-1072-L-BT

**RESPONDENTS' OBJECTION TO THE MAGISTRATE JUDGE'S**
**<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  (214) 659-8626
Facsimile:  (214) 659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

# Table of Contents

I.    Introduction ...................................................................................................... 1

II.   Background........................................................................................................ 2

    A.    Kordia, a student-visa overstay, is arrested and placed in removal
        proceedings....................................................................................... 2

    B.    The Attorney General and DHS Secretary have discretionary
        authority to decide whether to detain an alien pending the
        completion of removal proceedings. ............................................ 3

    C.    DHS initially determines to detain Kordia, the immigration judge
        grants bond, but DHS then appeals that decision and invokes the
        automatic stay to prevent Kordia's release for 90 days pending
        further administrative review. ...................................................... 5

    D.    Most recently, the immigration judge orders Kordia removed from
        the country, and DHS also seeks and obtains a discretionary stay of
        the immigration judge's bond order from the BIA. ...................... 6

    E.    Kordia files suit and seeks a preliminary injunction to obtain an
        immediate release. ......................................................................... 7

    F.    The magistrate judge holds a hearing and recommends that Kordia
        be released under a theory that the automatic stay provision violates
        procedural due process. .................................................................. 8

III.  Legal Standard.................................................................................................. 9

IV.   Argument and Authorities ............................................................................. 10

    A.    Kordia is no longer being detained pursuant to the automatic stay
        provision, and therefore she is not entitled to a preliminary
        injunction on her claim that the automatic stay violates procedural
        due process. .................................................................................. 10

    B.    Alternately, even if the automatic stay were still the basis for
        Kordia's detention, it does not violate procedural due process. ................. 12

V.    Conclusion........................................................................................................ 18

# Table of Authorities

## Cases

*Ahmed v. Gonzales*,
447 F.3d 433 (5th Cir. 2006) ................................................................. 13

*Ashley v. Ridge*,
288 F. Supp. 2d 662 (D.N.J. 2003) .................................................. 15, 18

*Atemafac v. Wolf*,
No. 6:20-CV-01697, 2021 WL 1972577 (W.D. La. Mar. 8, 2021) ............ 3, 14, 16

*Barrera-Romero v. Cole*,
No. 1:16-CV-148, 2016 WL 7041710 (W.D. La. Aug. 19, 2016) ........................ 15

*Black Fire Fighters Ass'n v. City of Dallas*,
905 F.2d 63 (5th Cir. 1990) ..................................................................... 9

*Canal Auth. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) ................................................................... 9

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ........................................................................... 11–12

*Demore v. Kim*,
538 U.S. 510 (2003) .............................................................................. 3

*Garcia v. Lacy*,
No. H-12-3333, 2013 WL 3805730 (S.D. Tex. 2013) ......................................... 15

*Holland Am. Ins. Co. v. Succession of Roy*,
777 F.2d 992 (5th Cir. 1985) ................................................................... 9

*In re D-J-*,
23 I. & N. Dec. 572 (A.G. 2003) ............................................................... 4

*Kim v. Obama*,
No. EP-12-CV-173, 2012 WL 10862140 (W.D. Tex. 2012) ................................ 15

*Macias v. Warden, Rolling Plans Det. Ctr.*,
No. 3:16-CV-849-L, 2017 WL 3616445 (N.D. Tex. May 30, 2017) .................... 11

*Macias v. Warden, Rolling Plans Det. Ctr.*,
No. 3:16-CV-849-L 2017 WL 3601828 (N.D. Tex. Aug. 22, 2017) .................... 11

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................ 9

*McAlpine v. Ridge*,
    No. 3:04-CV-1236-G, 2004 WL 2389448 (N.D. Tex. Oct. 25, 2004)................... 11

*Oyelude v. Chertoff*,
    170 F. App'x 366 (5th Cir. 2006)............................................................. 11

*Parra v. Perryman*,
    172 F.3d 954 (7th Cir. 1999) ................................................................ 13

*Petgrave v. Aleman*,
    529 F. Supp. 3d 665 (S.D. Tex. 2021)....................................................... 4

*Reno v. American-Arab Anti-Discrimination Committee*,
    525 U.S. 471 (1999) ............................................................................. 13

*Riley v. Bondi*,
    606 U.S. ----, 2025 WL 1758502 (June 26, 2025) ................................... 7

*Shabaj v. Holder*,
    718 F.3d 48 (2d Cir. 2013) ................................................................... 4

*United States ex rel. Barbour v. Dist. Dir. of Immigr. & Naturalization Serv.*,
    491 F.2d 573 (5th Cir. 1974) ................................................................ 4

*Zavala v. Ridge*,
    310 F. Supp. 2d 1071 (N.D. Cal. 2004)............................................. 15, 18

Statutes and Rules

6 U.S.C. § 557 ....................................................................................... 4

8 C.F.R. § 236.1(g) ................................................................................. 4

8 C.F.R. § 1003.1(a)(1)............................................................................ 5

8 C.F.R. § 1003.1(g) ............................................................................... 5

8 C.F.R. § 1003.1(h) ............................................................................... 5

8 C.F.R. § 1003.6(c) ............................................................................... 5

8 C.F.R. § 1003.6(c)(1)............................................................................ 14

8 C.F.R. § 1003.6(c)(4) ................................................................................. 6, 14

8 C.F.R. § 1003.6(c)(5) ........................................................................................ 2

8 C.F.R. § 1003.6(d) ............................................................................................. 5

8 C.F.R. § 1003.19(a) ........................................................................................... 4

8 C.F.R. § 1003.19(d) ........................................................................................... 6

8 C.F.R. § 1003.19(*i*)(1) ......................................................................... 2, 5, 7, 10

8 C.F.R. § 1003.19(*i*)(2) ............................................................................... 5, 10

8 C.F.R. § 1236.1(d) ............................................................................................. 4

8 C.F.R. § 1236.1(d)(3) ......................................................................................... 5

8 U.S.C. § 1226(a) .................................................................................... 3, 4, 12

8 U.S.C. § 1231(a)(2) ......................................................................................... 17

8 U.S.C. § 1101(a)(47)(B) ..................................................................................... 7

U.S. Dep't of Justice, *Review of Custody Determinations*,
    71 Fed. Reg. 57,873 (Oct. 2, 2006) ................................................................ 15

# I.    Introduction

Petitioner-plaintiff Leqaa Kordia seeks a preliminary injunction to require her release from immigration detention.  (*See* ECF No. 13.)  There is no dispute that Kordia does not have legal status in this country—she last entered the United States on a tourist visa and later obtained a student visa, but then forfeited that (temporary) lawful status in this country after failing to comply with the conditions of her student visa by voluntarily leaving school.  (*See* ECF No. 1, ¶¶ 3, 33.)  Based on these undisputed facts, Kordia has been charged with removability and placed in removal proceedings in immigration court, and has also been detained pending those proceedings.

On referral from this Court, United States Magistrate Judge Rebecca Rutherford issued a Findings, Conclusions, and Recommendation (FCR) recommending that the Court order Kordia released from immigration detention pending a final judgment on her underlying habeas claims.  (ECF No. 53.)  Specifically, the FCR concludes that Kordia has demonstrated a substantial likelihood of success on the merits of her procedural due process habeas claim that challenges an "automatic stay" provision allowing the U.S. Department of Homeland Security (DHS) to unilaterally keep Kordia in detention for a limited period of time pending an administrative appeal of the immigration judge's decision to grant bond.  But in the time since the FCR was issued, circumstances have materially changed so as to render the FCR's conclusion about the automatic stay provision moot and no longer applicable.  Specifically, with the automatic stay's (automatic) expiration nearing, DHS filed a motion with the Board of Immigration Appeals (BIA) for an emergency discretionary stay of the immigration judge's bond

order, and that motion was granted by the BIA on July 3, 2025.  Stately differently, DHS moved for a separate and different type of stay, and the BIA granted it, which means that the immigration judge's bond order remains stayed under the BIA's discretionary authority.  *See* 8 C.F.R. §§ 1003.6(c)(5), 1003.19(*i*)(1).  Accordingly, Kordia is no longer being detained by operation of the automatic stay, but rather by operation of the BIA's new order, and therefore her claim challenging the automatic stay provision does not provide any basis for the extraordinary relief of a preliminary injunction.

In any event, even if the automatic stay provision were still the source of Kordia's detention (which is it not), the FCR's conclusions about alleged procedural due process infirmities associated with the automatic stay are incorrect and should be rejected.  As explained herein, given its limited time duration and the availability of further administrative review, the automatic stay provision does not violate due process.[1]

The Court should decline to adopt the FCR and should instead deny Kordia's motion for preliminary injunction in full.

## II.    Background

### A.    Kordia, a student-visa overstay, is arrested and placed in removal proceedings.

Kordia is a Palestinian who entered the United States in 2016 on a tourist visa.

---

[1] Furthermore, even if the automatic stay were still in effect and even if the Court were to accept the FCR's reasoning about alleged procedural due process violations, the remedy recommended by the FCR is overbroad insofar as the FCR recommends Kordia's release pending the litigation of her habeas claims in this case, instead of more narrowly tailored relief such as a vacatur of the automatic stay as to her (which would not preclude the government from detaining Kordia under other applicable authority).

(ECF No. 1, ¶ 3.)  She later obtained a student visa and was enrolled at Bergen County Career Advancement Training, Inc. until she withdrew from that school in 2022.  (ECF No. 1, ¶¶ 27, 29; ECF No. 14-1 at 67.)  As of that time, she was no longer in compliance with the terms of her student visa and no longer had the temporary lawful status in the United States that the student visa provided.  (*See* ECF No. 1, ¶ 3.)  In March 2025, Kordia was arrested by DHS and removal proceedings were commenced in immigration court.  (ECF No. 1, ¶ 62; ECF No. 14-1 at 66.)

**B.    The Attorney General and DHS Secretary have discretionary authority to decide whether to detain an alien pending the completion of removal proceedings.**

Federal statute provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that "pending such decision, the Attorney General . . . may continue to detain the arrested alien" or may release her on bond or parole.  8 U.S.C. § 1226(a).  Such detention is referred to as "discretionary detention," in recognition of the statute's use of "may" and to differentiate it from the mandatory detention provision that applies to certain aliens in § 1226(c).  *See Atemafac v. Wolf*, No. 6:20-CV-01697, 2021 WL 1972577, at *1 (W.D. La. Mar. 8, 2021).  There generally is no constitutional right to be released from detention during the limited period of time during which removal proceedings are pending.  *See Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

After the creation of DHS as part of the Homeland Security Act of 2002, the Attorney General's discretionary § 1226(a) authority to decide whether to detain or

release an alien charged with removability has been delegated to a variety of actors

within both DHS and the Department of Justice.  *See* 6 U.S.C. § 557; *Shabaj v. Holder*,

718 F.3d 48, 51 n.3 (2d Cir. 2013) (explaining that "the Homeland Security Act of 2002

mandates that references to the Attorney General are deemed to include DHS where, as

here, the relevant agency functions have been transferred from the Department of Justice

to DHS").

In particular, upon the arrest of an alien charged with removability, DHS first

exercises discretion—through its component U.S. Immigration and Customs Enforcement

(ICE)—to determine whether the alien should be detained or released on bond or parole.

*See* 8 C.F.R. § 236.1(g); *see also Petgrave v. Aleman*, 529 F. Supp. 3d 665, 673–74 (S.D.

Tex. 2021).

Next, if DHS opts for detention, that decision may be "redetermined" by an

immigration judge (an employee of the Department of Justice) at the alien's request.  *See*

8 C.F.R. §§ 1003.19(a), 1236.1(d); *see also Petgrave*, 529 F. Supp. 3d at 674.  During

this time, the alien typically continues to remain in custody pending a decision on

whether the alien is to be removed from the United States, unless the alien is released on

bond or with conditional parole.  *See* 8 U.S.C. § 1226(a); *In re D-J-*, 23 I. & N. Dec. 572,

575–76 (A.G. 2003); *United States ex rel. Barbour v. Dist. Dir. of Immigr. &*

*Naturalization Serv.*, 491 F.2d 573, 578 (5th Cir. 1974).

Once the immigration judge acts on a custody redetermination, that decision is

subject to further administrative review and revision at the option of the alien and/or

DHS.  Either party has the ability to take an administrative appeal to the BIA, which is a

tribunal whose members are appointed by the Attorney General within the Department of Justice's Executive Office for Immigration Review.  *See* 8 C.F.R. §§ 1003.1(a)(1), 1236.1(d)(3).  Additionally, if DHS has previously determined that the alien should not be released and is appealing an immigration judge's determination otherwise, DHS may invoke an "automatic stay" provision to stay the alien's release until the earlier of (a) when the BIA rules on the matter or (b) the expiration of 90 days.  *See id.* §§ 1003.6(c), 1003.19(*i*)(2).  Alternatively, DHS has the option "at any time" to seek a "discretionary stay" from the BIA in order to stay the immigration judge's bond determination.  *See* 8 U.S.C. § 1003.19(*i*)(1).

Finally, if the BIA orders an alien's release, the DHS Secretary or another designated official may refer the matter for the Attorney General's personal consideration and decision, in which case the stay of the alien's release will be extended an additional 15 days.  *See id.* § 1003.6(d).  The Attorney General possesses the ultimate final decisionmaking authority over matters that come before the BIA.  *See id.* § 1003.1(g), (h).

## C.    DHS initially determines to detain Kordia, the immigration judge grants bond, but DHS then appeals that decision and invokes the automatic stay to prevent Kordia's release for 90 days pending further administrative review.

Consistent with the above provisions by which the Attorney General and DHS Secretary, either through their delegees or personally, decide whether to detain an alien pending removal proceedings, DHS made an initial determination in Kordia's case to detain her at the time of her arrest in March 2025.  (ECF No. 1, ¶ 105.)

Kordia then sought redetermination of this decision by an immigration judge, who

decided that Kordia could be released on bond.  (ECF No. 1, ¶¶ 149–53.)  But shortly after the immigration judge issued that decision, DHS exercised its discretion to appeal the bond decision to the BIA and invoked the automatic stay provision to temporarily stay Kordia's release pending the BIA's decision.  (ECF No. 1, ¶¶ 158–59.)  Stated differently, the effect of the automatic stay was that the immigration judge's decision to release Kordia did not go into effect, and instead DHS's decision to detain Kordia remained in effect pending the BIA's consideration of DHS's administrative appeal (or until the limited period of the stay lapses, if no BIA decision has issued by that time).

With respect to the timing of DHS's administrative appeal in the bond proceedings, the immigration judge's decision was rendered on April 3, 2025; DHS submitted its briefing to the BIA on April 15, 2025; and Kordia filed her response brief with the BIA on May 8, 2025.  (*See* ECF No. 29 at 001 (briefing schedule for bond proceedings).)  The matter is therefore fully briefed and awaiting a decision from the BIA, but if 90 days from the date of DHS's appeal passes with no decision, the automatic stay lapses at that time.  8 C.F.R. § 1003.6(c)(4).

## D.    Most recently, the immigration judge orders Kordia removed from the country, and DHS also seeks and obtains a discretionary stay of the immigration judge's bond order from the BIA.

While the issue of bond has been in administrative litigation, Kordia's removal proceedings have also been moving forward in front of the immigration judge, separate and apart from the bond proceedings.  *See* 8 C.F.R. § 1003.19(d)).  And in the removal proceedings, the immigration judge recently issued a decision on June 27, 2025 ordering

that Kordia be removed from the country.  (Obj. App.[2] 001–02.)  Two days later,

Kordia's counsel in the removal proceedings file a motion to reconsider this decision.

(Obj. App. 003.)  That motion remains pending at this time, but as of now the status of

Kordia's removal proceedings is that she has been ordered removed, but the order of

removal is not yet administratively final.  *See Riley v. Bondi*, 606 U.S. ----, 2025 WL

1758502, at *5 (June 26, 2025) ("An order of removal becomes final at the earlier of two

points: (1) a determination by the BIA affirming such order, or (2) the expiration of the

period in which the alien is permitted to petition the BIA for review of the order." (citing

8 U.S.C. § 1101(a)(47)(B) (cleaned up)).

Additionally, on July 2, 2025, with the 90-day lapse date for the automatic stay

approaching, DHS filed a motion with the BIA for a discretionary stay of the immigration

judge's bond order, pursuant to a different regulatory provision, 8 C.F.R. § 1003.19(*i*)(1).

(Obj. App. 012.)  That motion was then granted by the BIA on July 3, 2025.  (Obj. App.

023.)  This means that Kordia is no longer being detained pursuant to the automatic stay

provision, but rather in accordance with the BIA's order under that separate provision

(and in combination with the government's pre-existing discretionary detention authority

and ICE's initial determination, at the inception of the case, to deny bond).

### E.    Kordia files suit and seeks a preliminary injunction to obtain an immediate release.

Meanwhile, prior to submitting her brief to the BIA in support of bond, Kordia

filed a combined petition for a writ of habeas corpus and civil complaint in this Court on

---

[2] "Obj. App. __" citations refer by page number to the appendix that is being filed with this objection.

April 30, 2025.  (ECF No. 1.)  In connection with her habeas corpus claims, Kordia alleges that she has been detained in her removal proceedings in retaliation for her attendance at an April 2024 protest event in New York City, and that this constitutes a violation of the First Amendment and of substantive due process.  (ECF No. 1, ¶¶ 163–70, 177–87.)  She additionally asserts that DHS's appeal of the immigration judge's decision and related use of the automatic stay to temporarily maintain her in custody pending the BIA's determination violate procedural due process principles, and she asserts an entitlement to release pending further proceedings.  (ECF No. 1, ¶¶ 171–76, 188–92.)

In her motion for a preliminary injunction, Kordia seeks relief in connection with her habeas claims, by arguing that she is likely to succeed in establishing that her detention at this time is in violation of the First Amendment and substantive and procedural due process principles.  (*See* ECF No. 13 at 20–21.)

**F.    The magistrate judge holds a hearing and recommends that Kordia be released under a theory that the automatic stay provision violates procedural due process.**

The magistrate judge held a hearing on Kordia's motion for preliminary injunction and subsequently issued the FCR.  (ECF No. 53.)  Importantly, this all occurred prior to the more recent developments in Kordia's removal and bond proceedings in front of the immigration judge and BIA, including the immigration judge's removal order and the BIA's order staying the immigration judge's earlier bond decision.

With respect to Kordia's claims that challenge the government's discretionary decision to detain her pending the removal proceedings, the FCR noted the existence of

"complex questions" about whether this Court has jurisdiction to consider such claims. (ECF No. 53 at 11.)  The FCR recommends that the Court decline to reach these claims in connection with Kordia's motion and instead address only the "narrow" issue of whether the automatic stay provision violates Kordia's procedural due process rights. (ECF No. 53 at 12.)  Applying the *Mathews v. Eldridge* balancing test,[3] the FCR concludes that the automatic stay provision does violate principles of procedural due process and therefore recommends that this Court should grant Kordia's motion and order her "immediate release from immigration detention pending a final judgment on her habeas claims."  (ECF No. 53 at 22.)

### III.        Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy."  *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).  As such, it is "not to be granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion."  *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). "The four prerequisites are as follows:  (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest."  *Canal Auth.*, 489 F.2d at 572.  A preliminary injunction

---

[3] (*See* ECF No. 53 at 16 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).)

should be granted only if the movant has "clearly" carried the burden of persuasion on all four of these prerequisites.  *Id.* at 573.

## IV.    Argument and Authorities

The Court should decline to adopt the FCR and should instead deny Kordia's motion for preliminary injunction.  As discussed above, the situation that was considered in the FCR has now been overtaken by more recent events in the administrative proceedings, including the BIA's issuance of an order under 8 C.F.R. § 1003.19(*i*)(1) staying the immigration judge's bond decision.  Because the BIA has now ruled on this issue, Kordia is no longer being detained pursuant to the automatic stay, and any alleged constitutional infirmities associated with the automatic stay provision are no longer relevant.  Regardless, and contrary to the FCR's conclusion, the automatic stay provision does not violate procedural due process, and even if the automatic stay were still the reason for Kordia's detention, she has not shown any entitlement to the extraordinary remedy of a preliminary injunction.

**A.    Kordia is no longer being detained pursuant to the automatic stay provision, and therefore she is not entitled to a preliminary injunction on her claim that the automatic stay violates procedural due process.**

As described above and shown in the appendix to this objection, the BIA recently issued an order granting a discretionary stay of the immigration judge's bond decision, pursuant to 8 C.F.R. § 1003.19(*i*)(1).  (Obj. App. 023.)  This means that Kordia's challenge to the automatic stay provision (which is in a separate subsection of the regulation, at 8 C.F.R. § 1003.19(*i*)(2)) is now moot and does not provide any basis for a grant of relief, given that the source of authority for Kordia's detention is no longer the

automatic stay provision.[4]  *See McAlpine v. Ridge*, No. 3:04-CV-1236-G, 2004 WL

2389448, at *5 (N.D. Tex. Oct. 25, 2004) (finding that an alien's challenge to the

constitutionality of his detention under the automatic stay provision was rendered moot

by a change in the basis for the alien's detention such that his detention was no longer

under authority of the automatic stay); *see also Oyelude v. Chertoff*, 170 F. App'x 366,

367 n.4 (5th Cir. 2006) (finding that an alien's challenge to detention was mooted with

the issuance of a new administrative decision that resulted in a shift of the government's

authority to detain the alien); *Macias v. Warden, Rolling Plans Det. Ctr.*, No. 3:16-CV-

849-L, 2017 WL 3616445, at *1 (N.D. Tex. May 30, 2017) (explaining that with the

entry of a new administrative order, "the Attorney General's authority to detain

[Petitioner] shifted to 8 U.S.C. § 1231(a)(2), thereby rendering moot [Petitioner's]

claim[s] challenging his detention under 8 U.S.C. § 1226"), *rec. accepted*, 2017 WL

3601828 (N.D. Tex. Aug. 22, 2017).  Thus, even were the Court to hold, as proposed by

the FCR, that the automatic stay provision violates procedural due process, that would

not provide the basis for any relief to Kordia, given that she is no longer detained under

the automatic stay, and at this point any decision from this Court on the automatic stay

provision would be an advisory opinion.  *See Church of Scientology of Cal. v. United*

---

[4] Kordia recognizes as much in her petition, which noted the distinction between the automatic stay that DHS may unilaterally invoke and the separate discretionary or emergency stay that must instead be sought by motion from the BIA.  (*See* ECF No. 1, ¶ 175.)  Kordia also does not claim that a discretionary stay from the BIA somehow violates procedural due process; instead, she explains that "[u]nlike the automatic stay provision here, a discretionary stay requires DHS to justify the confinement of the individual to the BIA and gives the noncitizen the opportunity to respond," and that "[p]ermitting the BIA to determine whether a stay of release is in fact warranted reduces the risk of erroneous deprivation without any meaningful costs to the government."  (ECF No. 1, ¶ 175.)

*States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (internal quotation marks and citation omitted)).  On this basis alone, the Court should decline to accept the FCR, which is now effectively moot, and the Court should instead deny Kordia's motion.

**B.    Alternately, even if the automatic stay were still the basis for Kordia's detention, it does not violate procedural due process.**

Even if it were to reach the "merits" of the alleged constitutional infirmities of the automatic stay provision, this Court should decline to accept the FCR's conclusions on this issue.  The FCR reasons that Kordia has a strong liberty interest in being free from detention and that the automatic stay provision creates a "serious risk of erroneous deprivation" of that liberty interest because it takes effect "without requiring DHS to meet—or even consider—any threshold standard" and offers Kordia "no opportunity to challenge the imposition of the stay."  (ECF No. 53 at 16.)  But as explained below, these conclusions are not correct and do not support any grant of relief to Kordia.

First, with respect to the existence of a liberty interest, while it is undoubtedly true that any person may in a general sense have a desire to avoid detention, the FCR overlooks that for a person like Kordia who is in removal proceedings due to her lack of legal status and unlawful presence in the country, a federal statute expressly provides that she may be detained during those proceedings.  *See* 8 U.S.C. § 1226(a).  The statute does not give a detained alien any *right* to be released on bond.  *See id.*  And notably, Kordia

does not challenge the factual predicate for her removal proceedings—i.e., that she is a student-visa overstay with no legal status in this country.  Moreover, Kordia has the ability to secure her release from detention at any time by simply agreeing to leave the country.  "An alien in [Kordia's] position can withdraw [her] defense of the removal proceeding and return to [her] native land, thus ending [her] detention immediately." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999).  She "has the keys in [her] pocket."  *Id.*  Under these circumstances, the FCR's conclusion that some liberty interest of Kordia's justifies relief is incorrect.  To the extent Kordia might intend to seek some kind of discretionary relief against removal (or seek a discretionary bond), she may be *statutorily* entitled to seek such relief, but that does not translate to a *constitutional* liberty interest.  *See Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006) ("This circuit has repeatedly held that discretionary relief from removal, including an application for an adjustment of status, is not a liberty or property right that requires due process protection.").  The Supreme Court has also explained that when "deportation is sought simply because the time of permitted residence in this country has expired, or the activity for which residence was permitted has been completed" (considerations that apply exactly to Kordia's case), "deportation is necessary to bring to an end *an ongoing violation* of United States law."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999).  Kordia, on the other hand, does not have a valid interest in being permitted to reside freely anywhere within the United States without legal status—a situation that would foster exactly the sort of ongoing violation of the law that the Supreme Court noted.

Nor, even assuming the existence of a liberty interest, do the other considerations identified in the FCR show the existence of a procedural due process violation. The FCR states that the automatic stay may be invoked "without requiring DHS to meet—or even consider—any threshold standard." (ECF No. 53 at 16.) In fact, though, the regulations provide that DHS may only invoke the automatic stay by providing a "certification by a senior legal official that—(i) The official has approved the filing of the notice of appeal according to review procedures established by DHS; and (ii) The official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent." 8 C.F.R. § 1003.6(c)(1). Such a certification was given in Kordia's case and appears in the record. (*See* ECF No. 14-1 at App. 161.) DHS also filed a separate nine-page memo explaining its basis for seeking Kordia's continued detention. (ECF No. 14-1 at App. 152–60.) The automatic stay is not standardless.

The FCR is also wrong to conclude that there are "no procedural safeguards to prevent prolonged, unwarranted detention pending DHS's appeal." (ECF No. 53 at 16.) The 90-day limit on the detention period authorized by the automatic stay is precisely such a "procedural safeguard[]" that ensures there is no "prolonged, unwarranted detention." *See* 8 C.F.R. § 1003.6(c)(4). The relatively modest and limited time period of 90 days is neither excessive nor indefinite in nature so as to run afoul of due process principles. In fact, courts have found far longer periods of immigration detention to pass constitutional muster. *See Atemafac*, 2021 WL 1972577, at *2 ("Here, the Petitioner has

been in custody for approximately twelve (12) months. The Court finds that this period is neither excessive nor of an indefinite nature. Petitioner will be subject to removal from the United States or will be granted asylum. There is no indication that her custody will last longer than the duration of her removal proceedings. A twelve-month period of pre-removal order detention in this case is reasonable."); *see also Barrera-Romero v. Cole*, No. 1:16-CV-148, 2016 WL 7041710, at *5 (W.D. La. Aug. 19, 2016) (20 months); *Kim v. Obama*, No. EP-12-CV-173, 2012 WL 10862140, at *3 (W.D. Tex. 2012) (one-and-a-half years); *Garcia v. Lacy*, No. H-12-3333, 2013 WL 3805730, *5 (S.D. Tex. 2013) (27 months).

The history of the automatic stay provision is also instructive in this regard, and confirms that any due-process requirements are satisfied by the current version of the automatic stay.[5] Prior to 2006, the automatic stay provision did not include the 90-day time limit that is now part of the regulation, and instead allowed for truly indefinite continued detention. *See* U.S. Dep't of Justice, Review of Custody Determinations, 71 Fed. Reg. 57,873, 57,874–76 (Oct. 2, 2006). However, after some courts determined that there were due-process problems associated with the automatic stay's continued indefinite detention of an alien after an immigration judge had determined that bail was appropriate,[6] the regulation was amended to add the 90-day limit on the automatic stay, along with other current constraints such as the need for higher-level supervisory

---

[5] These points about the history of the automatic stay regulation were made to the Magistrate Judge at the hearing. (*See* ECF No. 51 at 46–51.)

[6] *See, e.g.*, *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 673–74 (D.N.J. 2003).

approval.  *See id.*  These provisions adequately protect any possible due-process interests by ensuring that any detention pursuant to the automatic stay is not unlimited in duration and is imposed only upon careful consideration at higher levels within DHS.

To sum up, the due process clause is not offended by Kordia's limited-duration detention under the automatic stay while DHS's administrative appeal of the immigration judge's bond determination is pending before the BIA.  As one court has explained, "[a]liens like Petitioner who are detained under § 1226(a) receive numerous procedural protections," and "[a]though § 1226(a) does not grant Petitioner an automatic right to release while her immigration proceedings are pending . . . it grants her a number of meaningful opportunities to raise arguments in support of her release."  *Atemafac*, 2021 WL 1972577, at \*2.  Whatever procedural requirements the due process clause imposes are satisfied here, and Kordia would not be entitled to a preliminary injunction even if she were still in detention on the basis of the automatic stay (which she is not).[7]

Finally, even if the automatic stay provision were assumed to violate due process, that would not preclude the government from continue to detain Kordia (or re-detaining her) under other applicable authority, and the Court should therefore decline to accept the FCR's recommendation as to remedy.  After concluding that Kordia has shown a likelihood of success on the merits of her procedural due process challenge to the

---

[7] With respect to the remaining preliminary-injunction factors apart from the likelihood of success on the merits, the FCR determined that the alleged due-process violation in effect satisfied the irreparable-harm element as well, such that "no additional showing of irreparable harm is necessary."  (ECF No. 53 at 19.)  The FCR also conclude that the third and fourth factors merged and likewise favored relief, again because of the earlier conclusion that Kordia's detention "likely violates due process."  (ECF No. 53 at 20.)  As discussed above, that underlying conclusion was not correct and should not be accepted, and therefore the FCR's findings on the remaining factors also fail.

automatic stay provision, the FCR recommends that Kordia be released "pending a final judgment on her underlying habeas claims."  (ECF No. 53 at 22.)  However, the FCR provides no reasoned explanation for why that form of remedy (a release of indefinite duration until a final judgment is entered in this Court) would be justified by the FCR's far more limited conclusion that the automatic stay provision—which provides only for a 90-day period of detention—violates procedural due process.  If the FCR's reasoning is accepted about that alleged due process violation, then logically any relief should be limited to the (limited) period of the automatic stay.  In other words, if for example the BIA (or the Attorney General) rules in the pending administrative appeal that Kordia should not be released on bond (or to affirmatively stay the immigration judge's order pending appeal, as the BIA has now done), such a decision would have nothing to do with the alleged infirmities of the automatic stay provision and thus there is no legal basis for enjoining the government from re-detaining Kordia (or keeping her in detention) pursuant to some order to that effect from the BIA or the Attorney General.  Likewise, if Kordia becomes subject to an administratively final order of removal, a statute separately provides that she is to be detained.  *See* 8 U.S.C. § 1231(a)(2).  Again, this has nothing to do with the automatic stay provision or any alleged infirmity therein.

Accordingly, even if the Court were to accept the FCR's reasoning that the automatic stay provision violates procedural due process (and even if it were not the case that the automatic stay has already effectively been superseded and rendered inapplicable by the BIA's recent stay order under a different provision), the Court should nonetheless decline to impose the overbroad remedy recommended by the FCR, and instead should

impose a more tailored remedy by—at most—merely vacating the automatic stay in Kordia's case or prohibiting the government from further detaining Kordia under it (but not under any other potentially applicable detention authority).  That form of relief is what logically follows from the alleged due process violation found by the FCR, and is also consistent with the limited forms of relief granted by courts that had found the prior version of the (unlimited-in-time) automatic stay provision unconstitutional.  *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) (ordering the unlimited automatic stay under a prior version of the regulation to be dissolved at a date one week after the court's ruling, so as to "afford the Government an opportunity" to seek an administrative order for the alien's detention under different authority); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 675 (D.N.J. 2003) (vacating an automatic stay under the prior version of the regulation but then staying that vacatur order for 30 days to give an opportunity for the government to seek other administrative relief to secure the alien's detention by other means).

## V.    Conclusion

The Court should decline to adopt the FCR, and Kordia's motion should instead be denied.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

Certificate of Service

On July 7, 2025, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney