IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

LEQAA KORDIA,

     Petitioner-Plaintiff,

v.

KRISTI NOEM, *et al.*,

     Respondents-Defendants.

Civil Action No. 3:25-CV-1072-L-BT

**APPENDIX TO RESPONDENTS' OBJECTION TO THE MAGISTRATE
JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  (214) 659-8626
Facsimile:  (214) 659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

# Contents

Page Number
(in lower right corner)

*** documents from removal proceedings ***

1.  Order of the Immigration Judge (June 27, 2025)
    (Order of Removal) ............................................................ Obj. App. 001

2.  Motion to Reconsider Decision Ordering Removal Before
    Merits Date (June 29, 2025) ............................................. Obj. App. 003

*** documents from bond proceedings ***

3.  Department of Homeland Security Emergency Discretionary
    Stay Motion in EOIR-43 Case (July 2, 2025) ..................... Obj. App. 012

4.  Stay Order (July 3, 2025) ................................................ Obj. App. 023

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents-Defendants

Certificate of Service

On July 7, 2025, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**PORT ISABEL IMMIGRATION COURT**

Respondent Name:

KORDIA, LEQAA

To:

Marouf, Fatma Essam
Immigrant Rights Clinic
307 W. 7th St. Suite LL50
Fort Worth, TX 76102

A-Number:

█████████

Riders:
In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
06/27/2025

## ORDER OF THE IMMIGRATION JUDGE

Upon consideration of Respondent's Motion to File Oversize Brief, it is HEREBY ORDERED that the motion be DENIED.

Moreover, during the master calendar hearing held on March 27, 2025, Respondent, through counsel, conceded proper service of the NTA, admitted the factual allegations contained therein, and conceded removability. Based on the admissions and concessions of record, the Court found the removability of Respondent established. The Court directed Israel as the country of removal should such become necessary. The Court then scheduled the case for a hearing on the merits of any pending applications to July 24, 2025.
The Court further ordered Respondents to file all relief applications no later May 16, 2025. No application had been received. On June 10, 2025, a motion to substitute was filed by new counsel. The motion was granted by order dated June 10, 2025. In the order the Court specifically notified new counsel that no I-589 application had been received by the Court and that the deadline had long passed. Nevertheless, given the change in counsel, the Court extended the filing deadline for receipt of the I-589 application to June 20, 2025. The parties were further notified that the Court would deem relief applications abandoned and denied if not timely filed. 8 C.F.R. § 1003.31(c); Matter of R-C-R-, 28 I&N Dec. 74, 78, 83 (BIA 2020); Matter of Interiano Rosa, 25 I&N Dec. 264, 265 (BIA 2010). Additionally, the Court notified the parties it would order the removal of Respondent if the applications were not timely filed. Matter of R-C-R-, 28 I&N Dec. at 83.

To date, the Court has not received any application for relief or protection from Respondent. Nor has Respondent provided any explanation for the failure to file the applications as ordered by the Court. Accordingly, the Court finds that Respondent has waived the opportunity to file relief applications. See 8 C.F.R. § 1003.31(c) ("If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived"); Matter of R-C-R-, 28 I&N Dec. at 77-8 (BIA 2020) (Once an Immigration

**Obj. App. 001**

Judge has set a firm deadline for filing an application for relief, the opportunity to file the application may be deemed waived, if the deadline passes without submission of the application and no good cause for noncompliance has been shown).

As no applications have been filed, the Court will enter an order of removal against Respondent. See Matter of R-R-, 20 I&N Dec. 547, 549 (BIA 1992) ("The Board has long held that applications for benefits under the Act are properly denied as abandoned when the [noncitizen] fails to timely file them").

Based on the foregoing, the Court will enter the following Order:

**Order:**

IT IS HEREBY ORDERED that Respondent be REMOVED from the United States to ISREAL on the charge contained in the Notice to Appear.

Immigration Judge: NASELOW-NAHAS, TARA 06/27/2025

Appeal:     Department of Homeland Security: ☐ waived ☐ reserved
            Respondent:                      ☐ waived ☐ reserved

Appeal Due:

### Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Noncitizen | [ P ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

Respondent Name : KORDIA, LEQAA | A-Number : █████████

Riders:

Date: 06/28/2025 By: ARROYO CRUZ, CHELSEA, Court Staff

Obj. App. 002

Fatma E. Marouf, Esq.                                    **DETAINED**
TEXAS A&M SCHOOL OF LAW
IMMIGRANT RIGHTS CLINIC
307 W. 7th Street, Suite LL50
Fort Worth, TX 76102
(817) 212)- 4123 (office phone)
(817) 212- 4124 (fax)
fatma.marouf@law.tamu.edu

Sabrine Mohamad, Esq.
Louisiana State Bar No. 39989
Southern Poverty Law Center
P.O. Box 57089
New Orleans, LA 70157
Telephone: 504-418-9877
sabrine.mohamad@splcenter.org

*Attorneys for Respondent*

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION
## REVIEW IMMIGRATION COURT
## LOS FRESNOS, TX

|  |  |
|---|---|
| IN THE MATTER OF: | ) |
|  | ) |
|  | ) |
| KORDIA, LEQAA | ) ▮▮▮▮▮▮▮ |
| ─────────────────────── | ) |

**Immigration Judge: Hon. Tara Naselow-Nahas**

## MOTION TO RECONSIDER DECISION ORDERING REMOVAL
## BEFORE MERITS DATE

## INTRODUCTION

On June 27, 2025, the Court issued an order denying Respondent's Motion to File an Oversized Brief and instead ordered removal one month before the July 24, 2025, merits hearing. The removal order was based on the alleged failure to submit an I-589 application. Respondent respectfully requests reconsideration of this decision for three reasons. First, Respondent had filed an I-589 asylum application affirmatively with USCIS before an NTA was issued, and this Court previously found that the application had been "referred or filed" with the Court. **Exh. 4** at 20. Second, Respondent's attorneys were not aware of the June 20, 2025, filing deadline until they received the removal order. Respondent's attorneys filed what they thought was an updated I-589 (Tab A) and a detailed declaration by Respondent (Tab P) on June 26 and June 27 respectively. They worked diligently to submit all supporting documents by the June 27 deadline. Third, before issuing a removal order for the alleged failure to submit an I-589, the Court should at least hold a hearing on voluntary departure. Respondent has an approved I-130 that was submitted by her U.S. citizen mother with a priority date that is now current. Voluntary departure to a third country (not Israel or the occupied Palestinian territories where she fears for her life) would allow her to consular process for an immigrant visa for which she is now eligible.

## ARGUMENT

### I.    RESPONDENT'S AFFIRMATIVELY FILED I-589 APPLICATION IS, OR SHOULD BE, PENDING WITH THE COURT.

On March 12, 2025, before an NTA was issued, Ms. Kordia filed an affirmative asylum application with USCIS. *See* **Exh. 1** (*Receipt Notice from USCIS*); **Exh. 2** (*Biometrics Notice from USCIS*); **Exh. 3** (*Copy of I-589 Filed with USCIS Online*). Respondent's attorneys understood that that application was referred by USCIS to this Court once the NTA was issued, based on this Court's findings. During the bond hearing on April 3, 2025, the Court explicitly

stated: "[**Ms. Kordia] has forwarded to the court an I-589 application that was initially filed**

**with CIS <u>and then referred or then filed with this Court</u>** when the NTA was served." *See.*

**Exh.** 4 at 20 (*Transcript for Bond Hearing*) (emphasis added). Based on this statement,

Respondent's attorneys reasonably believed that the I-589 was before this Court. Moreover, the

Court, in its Bond Memorandum granting Respondent bond, found that Ms. Kordia is "*prima*

*facie* eligible for asylum, withholding of removal, and protection under the Convention Against

Torture." **Exh. 16** (*Bond Memorandum*). In making this finding, the Court cited to Respondent's

I-589. *Id*. (citing I-589 filed on March 12, 2025). Respondent's current attorneys, Sabrine

Mohamad and Fatma Marouf, reviewed the recording of the bond hearing, the bond transcript,

and the Court's Bond Memorandum and therefore reasonably believed that the Court had a

pending I-589 before it.

        In addition to the factual record, Respondent's attorneys relied on standard immigration

practices and related case law in reaching the conclusion that this Court had Respondent's I-589

before it. The Immigration Court Practice Manual states that "[a]ffirmative asylum applications

referred to an immigration court by the DHS Asylum Office are contained in the Record of

Proceedings. Therefore, there is no need for the alien to re-file the application with the

immigration court. After being placed in immigration court proceedings, the alien may amend

their asylum application." Immigration Court Practice Manual, Chapter 3.1(b)(3)(B); *cf.* 8 C.F.R

§ 208.14(c). While the regulations addressing referral by the Asylum Office do not specifically

address cases like Respondent's, where an NTA is issued by ICE after the I-589 is filed with

USCIS but *before* an interview, the regulations do address cases where USCIS does not grant

asylum after an interview or deems the interview waived, for example due to failure to appear for

a biometrics appointment. 8 C.F.R § 208.14(c); 8 C.F.R. § 208.10 (waiver). In these situations,

the regulations state that "in the case of an applicant who appears to be inadmissible or

deportable under section 212(a) or 237(a) of the Act, the asylum officer <u>shall refer</u> the [asylum]

application to an immigration judge, together with the appropriate charging document, for

adjudication in removal proceedings." 8 C.F.R § 208.14(c)(1) (emphasis added); *see also* 8

C.F.R. 1208.14(c)(1) (same). The verb "shall" in this sentence is mandatory. *See Matters of Jaso*

*and Ayala,* 27 I. & N. Dec. 557 (BIA 2019) ("<u>As required by</u> 8 C.F.R. §§ 208.14(c)(1)

and1208.14(C)(1)(2018), the USCIS referred their applications to the Immigration Court for

adjudication in removal proceedings") (emphasis added). Here, once the NTA was issued in

March 2025, or, at least after Respondent's detention prevented her from attending the

biometrics appointment that had been scheduled for April 30, 2025, USCIS should have referred

the application to the Court. Based on the Immigration Court Practice Manual, Title 8 of the

C.F.R., and the relevant case law, Respondent's attorneys reasonably believed that the I-589 was

before the Court. Respondent should not be penalized with deportation to a country where she

fears persecution and torture due to any error by USCIS.

## II.    RESPONDENT'S ATTORNEYS WERE NOT AWARE OF THE JUNE 20 FILING DEADLINE IN THE JUNE 10 ORDER, AND WERE DILIGENTLY WORKING TOWARD THE JUNE 27 FILING DEADLINE.

Respondent is currently represented by two attorneys. The first attorney, Ms. Mohamad,

never received any notification of the June 10, 2025, order. Ms. Mohamad did not receive an

email notification through ECAS of the June 10, 2025, order, nor was that order ever mailed to

her. *See* **Exh. 5** (*Declaration of Sabrine Mohamad*). Her name and address do not appear on the

order, which may be why she did not receive it.

Respondent's second attorney, Professor Marouf, received an ECAS email on June 10,

2025, notifying her that the Court had filed an order in the case. **Exh. 6** (*Marouf Decl.*). But

Professor Marouf was traveling that day and did not see the email. *Id.*; *see also* **Exh. 10** (*Flight*

**Obj. App. 006**

*Itinerary to Boston*). She also never anticipated that the Court's order on her motion for substitution of counsel would identify a deadline to file an I-589. **Exh. 6** (*Marouf Decl.*). Based on her review of the record, the documents from prior counsel, and the bond proceedings, she reasonably believed that an I-589 was already before the Court. *Id.*; *see also* Section I, *supra*.

As for the mailed copy of the order that was sent to Professor Marouf's office, the Texas A&M Legal Clinic did not receive it until June 23, 2025, three days *after* the June 20 deadline. *See* **Exh. 6** (*Declaration of Fatma Marouf*); **Exh. 7** (*Declaration of Stephanie Roman, Clinic Coordinator at Texas A&M School of Law Legal Clinics)*; **Exh. 8** (*Mail Log for Texas A&M Legal Clinics*). The envelope from EOIR shows a mailing date of June 12, 2025, two days after the date on the order itself. **Exh. 8** (*Envelope for Order Dated June 10, 2025*).

On the day that the order arrived, Professor Marouf was at the detention center meeting with Respondent, and was not allowed to have her laptop or phone with her. **Exh. 6** (*Marouf Decl.*). She was also preparing to travel abroad the next morning. *Id.*; *see also* **Exh. 11** (*Flight itinerary to Halifax*). When Professor Marouf saw the order, she believed it was limited to granting her motion to substitute counsel for the reasons noted above, and did not see the text setting a filing deadline. **Exh. 6** (*Marouf Decl.*). In traveling, Prof. Marouf also relied on courts' usual practice of notifying all attorneys in the case about filing deadlines and other important matters. She never thought that she would receive an order with a filing deadline that wasn't also sent to her co-counsel.

In addition to these factors, Respondent's attorneys made diligent efforts to ensure that they were aware of every filing deadline in this case. On June 10, 2025, the same day of the Court's order, both Professor Marouf and Ms. Mohamad contacted the Los Fresnos Immigration Court by phone to ask about filing deadlines. On the morning of June 10, 2025, Professor

Marouf called the court clerk to ask if there were any filing deadlines in the case and had been told there were none. **Exh.6** (*Marouf Decl.*). Because Professor Marouf's EOIR-28 was still pending at that time, the clerk said she could not share more information. *Id.* Professor Marouf then asked Ms. Mohamad to call the court because Ms. Mohamad had an EOIR-28 on file. *Id.* Ms. Mohamad spoke with the clerk asking about filing deadlines, and was informed only of the July 27, 2025, deadline for filing documents. **Exh. 5** (*Mohamad Decl.*). The clerk never told Ms. Mohamad about any other deadline (past or future) for submitting an I-589 application. **Exh. 5** (*Mohamad Decl.*)

Professor Marouf also acted diligently by contacting prior counsel to find out about any filing deadlines. On June 9, 2025, the day before Professor Marouf entered her appearance, she emailed prior counsel Michael Musa-Obregon and specifically asked about any filing deadlines in the case. **Exh. 6** (*Marouf Decl.*). He responded that he would send her a schedule but never did, which is what prompted Professor Marouf to call the court on June 10. *Id.*

On June 26, 2025, only six days after the Court's deadline to file an I-589, Professor Marouf and Ms. Mohamad submitted an "updated I-589" to the Court as the first document in Tab A of their fillings. **Exh. 12** (*Excerpt from Tab A with amended I-589*). Also included was the receipt notice for the original, affirmatively filed I-589. *Id.* They called the document an updated I-589 because they believed that an I-589 had previously been submitted and were still not aware of any missed deadline. They also submitted a detailed declaration from Ms. Kordia that is 15 pages long, with single-spaced paragraphs, which was filed on June 27, 2025, as Tab P. **Exh. 13** (*Kordia Declaration in Tab P*). Respondent's attorneys respectfully request that the Court not hold this six-day delay in filing an I-589 against Respondent and ask the Court to reconsider its removal order.

**Obj. App. 008**

The effort that both Professor Marouf and Ms. Mohamad have put into this case is obvious from the evidentiary record. Had they known about the June 20 filing deadline for an application, they would certainly have met it. Both attorneys met with Ms. Kordia at Prairieland Detention Center multiple times to gather information for her declaration. *See* **Exh. 6** (*Marouf Decl.*). Ms. Mohamad repeatedly flew there from New Orleans. *Id.* They also collected corroborating declarations from family members and friends (Tabs N-O), two expert declarations (Tabs Q-R), medical records, a death certificate, ID documents, and extensive country conditions documents. Many of the documents required translation from Arabic. All of this evidence was filed by the July 27, 2025, deadline for supporting documents, totaling over 1,000 pages. Professor Marouf and Ms. Mohamad also prepared a detailed brief, which was submitted with the motion to accept an oversized filing. They did not learn about the June 20, 2025 deadline for submitting the I-589 until June 28, 2025, when they saw that that the motion for filing an oversized filing was denied and a removal order was issued instead.

The evidence that was accepted into the record on June 26 and 27, 2025, shows an objective risk of persecution and torture if Ms. Kordia is deported to Israel or the occupied Palestinian territories. Given this serious threat to her life and safety, any oversight concerning the June 20 deadline, as well as any uncertainty regarding whether USCIS referred or should have referred the case, should be resolved in Ms. Kordia's favor. Ms. Kordia is blameless in this matter and also thought her asylum application was pending with the Court. She should not be penalized with a removal order before even having her merits hearing. **Exh. 6** (Marouf Decl.).

### III. THE COURT'S SUDDEN REMOVAL ORDER DEPRIVES MS. KORDIA OF THE OPPORTUNITY TO REQUEST VOLUNTARY DEPARTURE AS A LAST RESORT FOR PURPOSE OF CONSULAR PROCESSING.

Finally, while Ms. Kordia should be allowed to pursue her asylum claim for the reasons

above and in the interest of justice, even if the Court refuses to reconsider that issue, a hearing should be scheduled for voluntary departure. Even if no application for relief is filed, a respondent normally has the opportunity to request voluntary departure at a hearing. Ms. Kordia's mother filed an I-130 petition on her behalf on June 5, 2017, and that priority date is now current. **Exh. 14** (*I-130 Receipt Notice*); **Exh. 15** (*Excerpted Chart from Visa Bulletin*).

With a voluntary departure order, rather than a removal order, Ms. Kordia should not trigger any inadmissibility bars. She has not accrued unlawful presence because F-1 students do not accrue unlawful presence until they are told by DHS that they are out of status. This did not occur in Ms. Kordia's case until *after* her asylum application was filed with USCIS. The affirmative filing of the I-589 also stopped the accrual of unlawful presence. Ms. Kordia could also apply for a waiver from USCIS in the event she has accrued any unlawful presence, based on extreme hardship to her U.S. citizen mother. Since Ms. Kordia fears for her life and safety if she has to return to Israel or the occupied Palestinian territories, she would seek voluntary departure to a third country as someone who is stateless, and try to consular process there.

## CONCLUSION

For all the foregoing reasons, Respondent, through her attorneys, respectfully requests that the Court reconsider its decision ordering removal and denying the filing of the oversized brief. Respondent and her attorneys are available in the event that the Court wishes to hold a hearing on this motion.

DATED: June 29, 2025                    Respectfully submitted,

                                        Fatma Marouf
                                        Professor of Law

Obj. App. 010

Director of the Legal Clinics

Texas A&M School of Law


*Sabrine Mohamad*

Southern Poverty Law Center

Obj. App. 011

Jo Ann McLane                                                                    **DETAINED**
Chief Counsel
Emily Swanson
Deputy Chief Counsel
Carlos A. Rodriguez Jr
Assistant Chief Counsel
U.S. Department of Homeland Security
U.S. Immigration & Customs Enforcement
Office of the Principal Legal Advisor
1015 Jackson-Keller Road, Suite 100
San Antonio, Texas 78213

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

———————————————————— )
                                               )
In the Matter of:                              )
                                               )
KORDIA, Leqaa                                  )          File No.: ██████████
                                               )
In bond proceedings                            )
———————————————————— )

## DEPARTMENT OF HOMELAND SECURITY
## EMERGENCY DISCRETIONARY STAY MOTION IN EOIR-43 CASE

EOIR – 1 of 35

**Obj. App. 012**

## INTRODUCTION

Pursuant to 8 C.F.R. § 1003.19(i)(1), the Department of Homeland Security (DHS) respectfully requests that the Board of Immigration Appeals (Board) issue, on an emergency basis, a discretionary stay of the Immigration Judge's April 3, 2025, order granting the respondent bond in the amount of $20,000. This case involves an EOIR-43 Automatic Stay, which expires on July 2, 2025. *See* 8 CFR 1003.19(i)(2). DHS requests the instant discretionary stay, pursuant to 8 C.F.R. § 1003.6(c)(5).. A Notice of Appeal of the immigration judge's bond decision was previously filed and accepted by the Board on April 15, 2025. A briefing schedule was issued on April 17, 2025, and a decision from the Board remains pending.

The Immigration Judge erred in ordering the respondent released on bond and setting bond at $20,000 because the respondent failed to meet her burden of establishing she is not a danger to persons or property and that she is not a danger to the community. The Immigration Judge further erred in finding that the respondent does not pose a flight risk. The DHS respectfully requests that the Board reverse the Immigration Judge's order granting the respondent's request for a change in custody status.

## STANDARD OF REVIEW

The Board has the authority to stay an Immigration Judge's order redetermining custody when DHS appeals the custody decision or on its own motion. 8 C.F.R. § 1003.19(i)(1). DHS may seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time. *Id.* The Board reviews an immigration judge's findings of fact, which includes predictive findings of what may or may not occur in the future, under a clearly erroneous standard of review. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 587–90 (BIA 2015). Inferences from direct and circumstantial evidence are also reviewed for

1

A235 642 062

**Obj. App. 013**

clear error. The Board reviews all questions of law, discretion, judgment, and all other issues on

appeal de novo. 8 C.F.R. § 1003.1(d)(3)(ii)).

The issue of whether the respondent is a danger to the community is a predictive finding

of fact that the Board reviews for clear error. *See Jurek v. Texas*, 428 U.S. 262, 275 (1976). While

the issue of whether the respondent poses a flight risk is also a predictive finding of fact that the

Board reviews for clear error, the factors that the Immigration Judge considers in setting a bond

amount for risk of flight are discretionary and thus reviewed de novo. *See Matter of Guerra*, 24

I&N Dec. 37, 40 (BIA 2006) (stating that an immigration judge has broad discretion in deciding

the factors that he may consider in custody redeterminations); *Matter of R-A-V-P-*, 27 I&N Dec.

803, 805 (BIA 2020) (citing *Guerra*, 24 I&N Dec. at 40)).

## SUMMARY OF THE ARGUMENT

The Immigration Judge erroneously granted the respondent's request for a change in

custody status and set bond in the amount of $20,000 after finding that she met her burden in

demonstrating that she is not a danger to the community under INA § 236(a).  Specifically, the

Immigration Judge found that the respondent did not pose a danger to the community after being

arrested for disorderly conduct at a protest near Columbia University after disregarding the police

officers' orders to disperse.  Moreover, the Immigration Judge found that the respondent did not

pose a danger to the community despite having sent numerous large payments to individuals in

Palestine and Jordan while not having work authorization or any proof of income.  Assuming

*arguendo* that the respondent demonstrated she was not a danger to the community, the

Immigration Judge erred in finding that the respondent established she is not a flight risk.  Here,

the Immigration Judge found that the respondent's family ties to the United States and potential

relief outweighed the fact that she initially hid from and evaded detection from Homeland Security

EOIR – 3 of 35

A235 642 062

**Obj. App. 014**

Investigations (HSI), and failed to provide any evidence of a financial sponsor or her and her family's financial resources. As such, the Board should reverse the Immigration Judge's finding that the respondent met her burden establishing she is not a danger to the community and does not pose a risk of flight, and order that the respondent be held without bond.

## STATEMENT OF FACTS

The respondent, a stateless native and citizen, last entered the United States as a B2 nonimmigrant visitor on March 19, 2016. Exh. 1. The respondent adjusted her status to an F-1 nonimmigrant on or about January 23, 2017. *Id.* On or about June 5, 2017, the respondent's United States citizen mother submitted a Form I-130, Petition for Alien Relative, on the respondent's behalf. *Id.* The petition was approved but a visa is not yet available for the respondent to adjust status. *Id.* On or about March 18, 2021, the respondent's F-1 visa was terminated in the Student & Exchange Visitor Information System (SEVIS) for failure to maintain her student status. *Id.* The respondent's F-1 visa was reinstated on or about May 5, 2021; however, it was again terminated in SEVIS on or about January 26, 2022, for failure to maintain her student status. *Id.* The respondent has no lawful status in the United States and has been unlawfully present in the United States since approximately January 26, 2022. *Id.* On or about March 15, 2025, DHS issued the respondent a Notice to Appear (NTA) charging her as removable from the United States under INA § 237(a)(1)(C)(i) for failure to maintain her F-1 status. *Id.* On April 3, 2025, the immigration judge granted the respondent's release from custody under a bond of $20,000. The immigration judge did not issue a written decision. The DHS argued that the respondent is a danger to the community given her arrest on April 30, 2024, at a protest that involved "yelling/blocking location and not following orders of police officers." Exh. 3 at 45. The DHS argued that this conduct shows a disregard for law enforcement authority and the laws of this country. The DHS also argued that

A235 642 062

**Obj. App. 015**

the evidence shows the respondent is sending large amounts of money to individuals in the Palestinian Authority and Jordan, but she does not have work authorization and provided no evidence of the source of these funds. Moreover, the evidence shows that the respondent's landlord and possible employer is a Hamas sympathizer. The respondent claimed that the money was sent to her family, specifically her aunt, and she was doing her mom a favor by going and sending the money on her behalf.

The immigration judge found that the DHS evidence only shows at most two transactions that the respondent sent over the past few years. The immigration judge found that based on the record, mainly the HSI investigation reports submitted by DHS, she does not believe that there is sufficient evidence to show that the respondent poses a danger to the United States. The immigration judge found that the DHS cannot make connections to show the respondent is giving material support to a terrorist organization without more evidence of who received the money.

With respect to flight risk, the immigration judge found that the respondent has extensive family ties, support in this country, and potential relief in this country if a visa becomes available through her approved Form I-130 Petition. The respondent also filed an I-589, Application for Asylum and for Withholding of Removal. The DHS argued that the respondent did not submit evidence of an immigration sponsor or any evidence of financial stability from anyone in the respondent's family. Moreover, the respondent has been working unlawfully in the United States and has been unlawfully present in the United States since January 26, 2022. Additionally, the respondent has not tried to gain lawful status since that time, until being detained by DHS. The respondent also refused to voluntarily meet with HSI agents, and it took her approximately one week to surrender herself to authorities. The evidence shows that the respondent was hiding from immigration officials and intentionally evading detection.

A235 642 062

EOIR – 5 of 35

**Obj. App. 016**

The immigration judge found that a bond of $20,000 is an appropriate amount to mitigate the flight risk and ensure that the respondent appears for future hearings, and it would also be a little sacrifice to the family if she does not show up and bond forfeited.

## ARGUMENT

### 1. THE IMMIGRATION JUDGE ERRED WHEN HE ORDERED THE RESPONDENT RELEASED ON BOND IN THE AMOUNT OF $20,000, WHERE THE RESPONDENT FAILED TO ESTABLISH THAT SHE IS NOT A DANGER TO THE COMMUNITY.

An alien in a custody determination hearing pursuant to INA § 236(a) must establish that he or she does not present a danger to persons or property. *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018). To evaluate whether an alien has met this burden, the Immigration Judge must consider whether he or she poses a threat to national security, a danger to the community at large, is likely to abscond, or is otherwise a poor bail risk. *Guerra*, 24 I&N Dec. at 40.

The question of whether an alien is a danger to the community is broader than determining if the record contains evidence of past violence or direct evidence of an inclination toward violence. *Matter of Fatahi*, 26 I&N Dec. 791, 795 (BIA 2016). An Immigration Judge should consider any evidence in the record that is probative and specific when determining whether an alien is a danger to the community. *Guerra*, 24 I&N Dec. at 41. This includes the "specific circumstances surrounding the alien's conduct" to determine whether bond is warranted, and if so, the appropriate amount. *Siniauskas*, 27 I&N Dec. at 208. The Immigration Judge should also consider:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal history, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

EOIR – 6 of 35

A235 642 062

**Obj. App. 017**

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Guerra*, 24 I&N Dec. at 40.

An Immigration Judge may not disregard or ignore relevant and material evidence when determining whether an alien is a danger to the community. *See generally* 8 C.F.R. § 1240.1(c) (requiring the Immigration Judge to receive and consider material and relevant evidence in removal proceedings); *see also Matter of Herrera Del Orden*, 25 I&N Dec. 589, 593–94 (BIA 2011) (instructing that an Immigration Judge should consider any relevant and probative evidence in a removal proceeding). If an alien cannot demonstrate that he or she is not a danger to the community, no bond should be set. *Fatahi*, 26 I&N Dec. at 793–94; *see also Urena*, 25 I&N Dec. at 141 ("An Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community.").

Here, the respondent has failed to establish that she is not a danger to the community. Evidence submitted by the DHS shows that between January 2021 to January 2025, the respondent made numerous transactions sending funds to individuals located in the Palestinian Authority and Jordan, some as large as $2,000. Exh. 3 at 4. The source and recipients of the funds remain under investigation by the DHS. The DHS evidence also shows that the respondent's landlord and possible employer is a Hamas sympathizer. Exh. 3 at 14, 16. Moreover, there has been no evidence presented in the instant matter, other than a statement from the claimant's attorney claiming that the money was sent to relatives, to negate or diminish any of the information contained in HSI's reports submitted to the court.

Moreover, the DHS evidence further shows that New York Police Department (NYPD) officers apprehended the respondent on April 30, 2024. Exh. 3 at 43–45. The incident record shows

A235 642 062

EOIR – 7 of 35

**Obj. App. 018**

she was apprehended because she was "blocking a gate . . . preventing anyone from entering & exiting" and that she "failed to comply" with police commands to disperse. Exh. 3 at 45.

As the respondent has not met her burden in establishing that she is not a danger to the community, the Immigration Judge erred in ordering the respondent released on bond in the amount of $20,000.

## 2. THE IMMIGRATION JUDGE ERRED WHEN HE ORDERED THE RESPONDENT RELEASED ON BOND IN THE AMOUNT OF $20,000, WHERE THE RESPONDENT FAILED TO ESTABLISH THAT SHE DOES NOT POSE A FLIGHT RISK.

Even assuming, *arguendo*, that the respondent met her burden to establish that she is not a danger to the community, the Immigration Judge nonetheless erred in granting her request for a change in custody status and setting bond in the amount of $20,000 because the respondent failed to show she is not a flight risk. Only if an alien demonstrates that he or she is not a danger to the community should an immigration judge then determine the extent of flight risk posed by the alien. *Urena*, 25 I&N Dec. at 141 (citing *Matter of Drysdale*, 20 I&N Dec. 815, 817–18 (BIA 1994)). An alien in a custody determination hearing pursuant to INA § 236(a) must establish that he or she does not present a risk of flight and is likely to attend future immigration proceedings. *R-A-V-P-*, 27 I&N Dec. at 804 (citing *Siniauskas*, 27 I&N Dec. at 207); 8 C.F.R. § 1236.1(c)(8)). In determining whether an alien is a flight risk, the Immigration Judge may consider "any 'probative and specific' evidence." *Id.* (citing *Guerra*, 24 I&N Dec. at 40-41). Similar to a dangerousness determination, this includes considering the "specific circumstances surrounding the alien's conduct" to determine whether bond is warranted, and if so, the appropriate amount. *Siniauskas*, 27 I&N Dec. at 208; *see also Guerra*, 24 I&N Dec. at 40. An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. *Guerra,*

**Obj. App. 019**

24 I&N Dec. at 40.  An Immigration Judge may decide to give greater weight to one factor over others, but the decision must be reasonable.  *Id.*

Here, the respondent has failed to establish that she does not pose a flight risk because she intentionally evaded detection by DHS. On March 6, 2025, a special agent with HSI contacted the respondent and told her that they needed to speak with her about her immigration status. Exh. 3 at 6. The respondent told the agent that she would meet him in the next 30 minutes, but she did not arrive. Exh. 3 at 6. The respondent's refusal to meet with HSI required an extensive investigation into her whereabouts. Exh. 3 at 6–21. *See Guerra*, 24 I&N Dec. at 40 (holding attempts by the alien to flee prosecution or otherwise escape from authorities is a relevant factor to find a flight risk). On March 13, 2025, the respondent finally self-surrendered to HSI. The DHS evidence indicates that the respondent was intentionally evading HSI agents and actively concealed herwhereabouts to avoid detection and apprehension for her immigration violations. Exh. 3 at 6–24.

Moreover, the respondent has failed to provide evidence demonstrating that a financial sponsor in the United States will ensure she appears at all future proceedings. As noted by the immigration judge, there is no information about what the respondent, her mother, or her uncle, who claims to have the money for her bond, do for work and how they support themselves. As such, the Immigration Judge did not have sufficient information to assess an appropriate bond amount to ensure that the respondent would show up for future proceedings and that it would be a disincentive to the family if she were to not show up to future proceedings.

Additionally, the respondent has provided no proof of any legal work history in the United States and has repeatedly violated the United States' immigration laws by falling out of her student visa status and continuing to reside in the United States without any legal status for over three

A235 642 062

**Obj. App. 020**

years. *Guerra*, 24 I&N Dec. at 40 (holding alien's history of immigration violations and employment history are relevant factors for bond proceedings). As the respondent has not met her burden in establishing that she does not pose a flight risk, the Immigration Judge erred in ordering the respondent released on bond in the amount of $20,000.

The Department of Homeland Security ("DHS"), by and through its Assistant Chief Counsel, attaches the following documents in support of the present Discretionary Stay Motion in EOIR-43 Case.

## TABLE OF CONTENTS

| TAB | Document |
|-----|----------|
| A | Form EOIR-26, Notice of Appeal |
| C | Immigration Judge Decision June 28, 2025 |
| D | Form I-862, Notice to Appear |

## CONCLUSION

The Immigration Judge erroneously granted the respondent's request for a change in custody status by setting bond in the amount of $20,000, because the respondent failed to meet her burden of establishing that she is not a danger to the community and does not pose a flight risk. Based on the foregoing facts, DHS respectfully requests that the Board, on an emergency basis, issue a discretionary stay of the Immigration Judge's April 3, 2025, order granting the respondent bond.

Respectfully submitted on the 2nd day of July, 2025.

CARLOS A
RODRIGUEZ JR

Digitally signed by CARLOS A
RODRIGUEZ JR
Date: 2025.07.02 16:14:11
-05'00'

Carlos A Rodriguez Jr
Assistant Chief Counsel

9

A235 642 062

**Obj. App. 021**

David Wallen
Deputy Chief Counsel
Jo Ann McLane
Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

A235 642 062

Obj. App. 022

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

---

MATTER OF:

Leqaa KORDIA, A████████

Respondent

---

<div style="border:1px solid black">

**FILED**

Jul 03, 2025

</div>

ON BEHALF OF RESPONDENT: Sabrine Mohamad, Esquire

ON BEHALF OF DHS: Anastasia S. Norcross, Assistant Chief Counsel

IN BOND PROCEEDINGS
On Motion for Stay of Removal before the Board of Immigration Appeals

Before: Mullane, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Mullane

MULLANE, Appellate Immigration Judge

STAY ORDER

The Department of Homeland Security has filed a motion for an emergency stay of the Immigration Judge's bond order, issued on April 3, 2025, ordering the respondent released from custody upon posting a bond of $20,000. After consideration of all information, the Board has concluded that the motion for emergency stay of the bond order will be granted.

ORDER: The motion for stay of execution of the bond order is granted.

**Obj. App. 023**