UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| LEQAA KORDIA, | § | |
| | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-1072-L-BT |
| | § | |
| KRISTI NOEM et al., | § | |
| | § | |
| Respondents-Defendants. | § | |
| | § | |
| | § | |
| | § | |

**PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS,
CONCLUSIONS, AND RECOMMENDATION**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

    A.    Ms. Kordia Is Unconstitutionally Confined, and Judge Rutherford Recommends Her Immediate Release. ................................................................................. 2

    B.    Shortly After Judge Rutherford's Recommendation, DHS Seeks, and the BIA Grants, a Discretionary Stay. ....................................................................... 5

III. STANDARD OF REVIEW ..................................................................................... 7

IV. ARGUMENT ............................................................................................................ 7

    A.    This Court Should Reach the Merits Claims Judge Rutherford Declined to Reach Without Remanding the Case Back to Her. ........................................ 8

    B.    This Court Should Grant Ms. Kordia's Motion on the Basis of Her First Amendment and Substantive Due Process Claims. ..................................... 10

        1.    This Court Has Habeas Jurisdiction Over Ms. Kordia's First Amendment and Substantive Due Process Claims. .................................................. 10

        2.    Ms. Kordia Is Likely to Succeed on Her First Amendment and Substantive Due Process Claims. ....................................................................................... 14

V. CONCLUSION ........................................................................................................ 17

CERTIFICATE OF SERVICE ..................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Aditya W. H. v. Trump*,
No. 25-cv-01976, 2025 WL 1420131 (D. Minn. May 14, 2025) ................................................ 16

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*,
754 F.3d 272 (5th Cir.2014) ................................................................................................... 7

*Boumediene v. Bush*,
553 U.S. 723 (2008) ................................................................................................................ 13

*Cummings v. Missouri*,
71 U.S. 277 (1866) .................................................................................................................. 2

*Davidson v. Georgia-Pac., L.L.C.*,
819 F.3d 758 (5th Cir. 2016) .................................................................................................. 7

*Drill Cutting Disposal Co. LLC v. Gutierrez*,
No. 15-cv-2532, 2016 WL 4541598 (W.D. La. Aug. 26, 2016) .............................................. 7

*Ercelik v. Hyde*,
No. 1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025) ............................................ 16

*F.B.I. v. Fikre*,
601 U.S. 234 (2024) ................................................................................................................ 2

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) .................................................................................................. 7

*Gutierrez-Soto v. Sessions*,
317 F. Supp. 3d 917 (W.D. Tex. 2018) ............................................................................. 13, 17

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ................................................................................................................ 13

*Kambo v. Poppell*,
No. SA-07-CV-800-XR, 2007 WL 3051601 (N.D. Tex. Oct. 18, 2007) .................................. 10

*Lloyd v. Birkman*,
127 F. Supp. 3d 725 (W.D. Tex. 2015) .................................................................................... 7

*Mahdawi v. Trump*,
136 F. 4th 443 (2d Cir. 2025) ........................................................................................... 14, 16

*Mahdawi v. Trump*,
No. 2:25-cv-389, 2025 WL 1243135 (D. Vt. Apr. 30, 2025) .................................... 16

*Mohammed H. v. Trump*,
No. 25-cv-1576, 2025 WL 1334847 (D. Minn. May 5, 2025) .................................. 16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977).................................................................................................. 15

*Najera v. United States*,
926 F.3d 140 (5th Cir. 2019) ................................................................................... 13

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025); ........................................................................... 15, 16

*Ozturk v. Trump*,
No. 2:25-cv-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ................................... 15

*Ozturk v. Trump*,
No. 2:25-cv-374, 2025 WL 1420540 (D. Vt. May 16, 2025) ................................... 15

*Riley v. Bondi*,
No. 23-1270, 2025 WL 1758502 (U.S. June 26, 2025) ............................................. 6

*Speaks v. Kruse*,
445 F.3d 396 (5th Cir. 2006) ..................................................................................... 7

*Suri v. Trump*,
No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025)............................... 16

*Tran v. Mukasey*,
515 F.3d 478 (5th Cir. 2008) ................................................................................... 12

*Zadvydas v. Davis*,
553 U.S. 678 (2001).................................................................................... 11, 12, 13

**Statutes**

8 U.S.C. § 1101(a)(43)(B) ........................................................................................... 6
8 U.S.C. § 1226(a) ........................................................................................... 6, 10, 13
8 U.S.C. § 1226(e) ..................................................................................................... 11
8 U.S.C. § 1231(a)(6).................................................................................................. 12
8 U.S.C. § 1231(b) ....................................................................................................... 6
8 U.S.C. § 1252(a)(2)............................................................................................ 11, 12

**Other Authorities**

June 20, 2025 Hr'g Tr., *Khalil v. Joyce*, 2:25-cv-1963 (D.N.J.) .................................................. 16
Suppl. Br., *Khalil v. Joyce*, 2:25-cv-01963, Dkt. 256 (D.N.J. May 14, 2025) ............................ 3
U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3 ......... 14

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................................ 7
Fed. R. Civ. P. 72 ..................................................................................................................... 7, 9

**Regulations**

8 C.F.R. § 1003.19 ................................................................................................................... 4, 13
8 C.F.R. § 1003.6 ................................................................................................................... 4, 5, 6
8 C.F.R. § 1240.15 ...................................................................................................................... 6
8 C.F.R. § 236.1 ....................................................................................................................... 13

Petitioner, Leqaa Kordia ("Ms. Kordia" or "Petitioner"), respectfully submits these objections to Magistrate Judge Rebecca Rutherford's Findings, Conclusions, and Recommendation, Dkt. 53 ("FCR"), which recommends the Court grant Ms. Kordia's Motion for Preliminary Injunction Ordering Release Pending Final Judgment, Dkt. 13 ("Motion"). In light of intervening factual developments since Judge Rutherford issued her FCR on June 27, 2025, Ms. Kordia requests this Court adopt Judge Rutherford's recommendation for Ms. Kordia's immediate release, grant the Motion, and order Respondents to immediately release her.

## I.    INTRODUCTION

The Court should adopt Judge Rutherford's recommendation that Ms. Kordia be ordered immediately released, grant Ms. Kordia's Motion, and order Respondents to release Ms. Kordia immediately pending a final decision on the merits. In a thorough and well-reasoned FCR, Judge Rutherford found that Ms. Kordia's confinement pursuant to the automatic stay provision codified at 8 C.F.R. § 1003.19(i)(2) likely violated her constitutional right to procedural due process, inflicted irreparable harm to her, and harmed the public interest. She therefore recommended this Court issue a preliminary injunction ordering Ms. Kordia's release pending final judgment.

However, on the evening of July 2, 2025, the Department of Homeland Security ("DHS") sought a discretionary stay from the Board of Immigration Appeals ("BIA"), which the BIA granted the very next morning, on July 3, 2025. Thus, Ms. Kordia is seemingly no longer confined under the automatic stay, which was the premise for her procedural due process claim and the sole ground that Judge Rutherford reached in finding Ms. Kordia likely to succeed on the merits.

These intervening developments make it imperative for this Court to address Ms. Kordia's remaining constitutional claims, which the immigration court and BIA have no power to consider. Since being confined on March 13, 2025, Ms. Kordia has exercised every procedural avenue at

her disposal to secure her liberty. First, she sought a bond hearing before an immigration judge, in which, on April 3, 2025, the immigration judge found her releasable on bond. DHS thwarted that bond decision by invoking an automatic stay, putting the immigration judge's order on hold for upwards of 120 days. Then, Ms. Kordia turned to federal court, where, on June 27, 2025, Judge Rutherford recommended Ms. Kordia's immediate release. DHS responded by asking the BIA for a discretionary stay, potentially undermining the basis of Judge Rutherford's FCR. Thus, two separate adjudicators in two separate fora have found Ms. Kordia should regain her liberty. And at every turn DHS has moved to nullify that result.

Fortunately, though, the "'Constitution deals with substance,' not strategies." *F.B.I. v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Cummings v. Missouri*, 71 U.S. 277, 324 (1866)). And this Court need not accept DHS's "heads we win, tails Ms. Kordia loses" procedural machinations. Rather, the Court should adopt Judge Rutherford's recommendation for Ms. Kordia's immediate release, on the basis of her remaining constitutional claims; grant Ms. Kordia's Motion; and order her immediate release pending final judgment.

## II.    BACKGROUND

### A. Ms. Kordia Is Unconstitutionally Confined, and Judge Rutherford Recommends Her Immediate Release.

Ms. Kordia is confined in Prairieland Detention Facility in Alvarado, Texas, 1500 miles from her family and community in New Jersey, because the current presidential administration disagrees with her support of Palestinian rights. Dkt. 1, Verified Pet. for Writ of Habeas Corpus, Appl. for Order to Show Cause & Compl. for Declaratory & Injunctive Relief ¶¶ 1, 11, 32 ("Verified Pet."). Since October 7, 2023, Ms. Kordia has lost over 100 family members to the devastation in Gaza, nearly an entire generation of her family. *Id.* ¶ 32. To mourn the loss of her family members and countless others, Ms. Kordia attended lawful protests in support of Palestinian

rights, including a protest on April 30, 2024, near Columbia University. *Id.* ¶¶ 32–34.

Since at least January 29, 2025, through Executive Orders, statements, and other actions, Respondents and other high-level government officials have repeatedly expressed their policy of targeting non-citizens who speak out in support of Palestinian rights. Motion at 12–14. Pursuant to this policy, Respondents have targeted multiple non-citizens for arrest, detention, transfer, and attempted deportation—including Ms. Kordia. *Id.* at 14–16; Dkt. 40, Reply Br. at 1 ("Reply") (listing successful habeas challenges in similar circumstances); *see also* Verified Pet. ¶¶ 62–99 (describing government efforts against Mahmoud Khalil, Ranjani Srinivasan, Dr. Badar Khan Suri, Yunseo Chung, Momodou Taal, Rümeysa Öztürk, and Mohsen Mahdawi). Secretary of the Department of Homeland Security ("DHS") Kristi Noem has smeared Ms. Kordia, in two press releases, without evidence, as "support[ing] Hamas" and being "anti-American." Dkt. 14-1, Pet'r's Sealed App. ("App.") at 29–39, 40 (PX 1-G & 1-I, Decl. of Georgina Guzman) ("Guzman Decl."). And in another pending case, the government described Ms. Kordia's confinement as "related to" the "Israel-Palestine conflict." *See* Suppl. Br. at 16, *Khalil v. Joyce*, 2:25-cv-01963, Dkt. 256 (D.N.J. May 14, 2025).

Pursuant to this policy of suppressing speech in support of Palestinian rights, Ms. Kordia has been confined since March 14, 2025, even though Immigration and Customs Enforcement ("ICE") officers rated her as a low risk with respect to both of the government's legally cognizable interests in civil immigration confinement (i.e., preventing danger to the community and/or risk of flight from immigration enforcement). App. at 72–73 (PX 2-A, Decl. of Mallory Manfredini) ("Manfredini Decl."). Ms. Kordia sought an administrative custody redetermination, commonly called a bond hearing. Mot. at 12–14; Verified Pet. ¶¶ 117–150. The immigration judge concluded that Ms. Kordia met her burden of demonstrating she was not a danger to the community or

otherwise unreleasable as a flight risk, ordering Ms. Kordia releasable on a $20,000 bond. App. at 146 (PX 2-C, Manfredini Decl.); Verified Pet. ¶ 154. Instead of releasing her, DHS doubled down on its retaliatory confinement of Ms. Kordia by invoking an automatic stay of the bond decision from the BIA—an exceedingly rare step in general and especially for an individual with Ms. Kordia's low-risk rating and lack of criminal history. *Id.* ¶¶ 156, 159; App. at 149 (PX 2-D, Manfredini); *id.* at 211 (PX 10, Decl. of Kerry Doyle ¶ 7) ("Doyle Decl."); *id.* at 171 (PX 4, Decl. of Cori Hash ¶ 10) ("Hash Decl."); *id.* at 178–79 (PX 6, Decl. of Jodi Goodwin ¶ 6) ("Goodwin Decl.").

On April 30, 2025, Ms. Kordia filed her habeas petition to challenge her unconstitutional confinement. Dkt. 1. Shortly thereafter, Ms. Kordia filed her Motion, arguing that her habeas claims present substantial questions of constitutional law and extraordinary circumstances and that she meets the requirements for a preliminary injunction. Dkt 13. Following submission of the parties' briefing, Judge Rutherford held a hearing on the Motion on June 5, 2025. Dkt. 50.

In a thorough and well-reasoned FCR, Judge Rutherford recommended this Court grant Ms. Kordia's Motion. In issuing her recommendation, Judge Rutherford found Ms. Kordia likely to succeed on her procedural due process claim, because the automatic stay procedures outlined in 8 C.F.R. §§ 1003.19(i)(2) and 1003.6(c) lack constitutionally required procedural protections for Ms. Kordia's significant liberty interest. FCR at 12–19. Noting that the procedural due process grounds were sufficient to grant Ms. Kordia's immediate release, Judge Rutherford "pretermit[ted] any discussion of" Ms. Kordia's First Amendment and substantive due process claims. *Id.* at 12. Judge Rutherford also found a preliminary injunction is necessary to prevent "a substantial threat of irreparable harm" and "is in the public interest." *Id.* at 19–21. Accordingly, Judge Rutherford recommended that this Court enter a preliminary injunction "ordering [Ms. Kordia's] immediate

release from immigration detention pending a final judgment on her underlying habeas claim." *Id.*

at 22.

**B. Shortly After Judge Rutherford's Recommendation, DHS Seeks, and the BIA Grants, a Discretionary Stay.**

Since the initiation of removal proceedings on March 13, 2025, Ms. Kordia has exercised

every tool at her disposal to regain her liberty, including seeking a custody redetermination before

an immigration judge and the present habeas proceedings in federal court. Two separate decision-

makers—the immigration judge and Judge Rutherford—have found Ms. Kordia demonstrated her

entitlement to release. And Judge Rutherford specifically found that Ms. Kordia had "already been

detained for more than two months since the [immigration judge] determined she should be

released," FCR at 17, on a likely unconstitutional basis, *id.* at 17–18.

Five days after Juge Rutherford issued her FCR, though, DHS sought an "emergency"

discretionary stay from the BIA at 5:18 PM on July 2, 2025. Suppl. App. at 306–40 (PX 13, DHS

Stay Br.).[1] By regulation, DHS can seek a discretionary stay "at any time after the filing of its

notice of appeal," 8 C.F.R. § 1003.6(c)(5), meaning there was no reason DHS had to wait until it

considered the stay request "an emergency."

Further, in its discretionary stay motion, DHS wrongly stated that the automatic stay in

Ms. Kordia's case was set to expire on July 2, 2025, the day DHS sought its discretionary stay.

Suppl. App. at 307 (PX 13, DHS Stay Br.). The relevant regulation, though, makes clear the stay

was not set to expire until "90 days after the filing of the notice of appeal," 8 C.F.R. § 1003.6(c)(4),

which occurred on April 15, 2025, App. at 149–51 (PX 2-D, Manfredini Decl.)—meaning the

---

[1] Ms. Kordia submits a Supplemental Appendix providing the hearing transcript required by Local Rule 72.2 and the BIA documents relevant to DHS's stay request. Consistent with Local Rule 7.2, the Supplemental Appendix continues the numbering and pagination conventions from Ms. Kordia's original Appendix, Dkt. 14-1, and begins at Petitioner's Exhibit 12 and Appendix page 226.

automatic stay was not set to lapse until July 14, 2025. And, in any event, the mere filing of a request for a discretionary stay here meant that the automatic stay would have "remain[ed] in effect . . . during the time it takes for the [BIA] to decide whether or not to grant a discretionary stay." 8 C.F.R. § 1003.6(c)(5).

Despite DHS's misrepresentations in its "emergency" request for the discretionary stay, the BIA granted DHS's request and did so without affording Ms. Kordia any fair opportunity to oppose it ahead of the BIA's grant. Suppl. App. at 343 (PX 14, BIA Stay Order).

Meanwhile, in the underlying removal proceedings, the immigration judge entered a removal order on Friday, June 27, 2025, the same day on which Judge Rutherford issued her FCR. The premise of the removal order is a deadline the immigration judge believed Ms. Kordia's immigration counsel to have missed, and Ms. Kordia has already filed a motion asking the immigration judge to reconsider the removal order, as well as a reply in support of that motion. If the motion to reconsider is not granted within the 30-day period available for noticing a direct appeal to the BIA of the removal order, *see* 8 C.F.R. § 1240.15, Ms. Kordia plans to file a timely direct appeal to the BIA of the removal order. The 30-day period for noticing a direct appeal to the BIA of the removal order and the appeal's pendency stay the order's execution, through the BIA's adjudication. *See* 8 C.F.R. § 1003.6(a).

These various procedural routes to pursuing applications for relief against removal, including asylum and related humanitarian protection from removal, mean that the removal period has not begun, 8 U.S.C. § 1231(b) (defining "removal period"), and the removal order is not administratively final, *Riley v. Bondi*, No. 23-1270, 2025 WL 1758502, at *5 (U.S. June 26, 2025) (citing to definition of finality of removal orders within 8 U.S.C. § 1101(a)(43)(B)). Consequently, Ms. Kordia presently and foreseeably remains confined under 8 U.S.C. § 1226(a), the same basis

for confinement DHS asserted before these developments.

## III.    STANDARD OF REVIEW

This Court reviews "*de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016). This Court "may [adopt] the Magistrate Judge's decision on any ground raised below and supported by the record, even if the Magistrate Judge did not reach the question." *Drill Cutting Disposal Co. LLC v. Gutierrez*, No. 15-cv-2532, 2016 WL 4541598, at *5 (W.D. La. Aug. 26, 2016) (citing *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014)); *see, e.g.*, *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 780 (W.D. Tex. 2015) (adopting Magistrate's recommendation "on different grounds" (citing *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.,* 754 F.3d 272, 276 (5th Cir.2014)).

Under Federal Rule of Civil Procedure 65, this Court can issue temporary injunctive relief. To enter a preliminary injunction, the Court must make the following four findings:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (quotations omitted).

## IV.    ARGUMENT

This Court should grant Ms. Kordia's Motion and order "her immediate release from immigration detention pending a final judgment on her underlying habeas claims." FCR at 22. Since Judge Rutherford issued her FCR, Ms. Kordia is no longer confined pursuant to the automatic stay provision that Judge Rutherford found likely unconstitutional. Ms. Kordia recognizes that this development complicates granting relief on the sole claim that Judge Rutherford reached and on which she found Ms. Kordia likely to succeed. Nonetheless, this Court

can and should order Judge Rutherford's recommended relief, because Ms. Kordia is likely to succeed on the merits of her First Amendment and substantive due process claims. And this Court should reach those claims without remanding for consideration before Judge Rutherford. For nearly three months, Respondents confined Ms. Kordia on grounds that Judge Rutherford found likely unconstitutional. FCR at 14–19. At oral argument, Respondents stated that they had put all the evidence they deemed necessary in the record. Suppl. App. at 231 (PX 12, June 5, 2025, Hr'g Tr. at 5:13–16) ("Tr."). Therefore, Ms. Kordia's First Amendment and substantive due process claims are fully before the Court, and they are likely to succeed on the merits, justifying Ms. Kordia's immediate release, as Judge Rutherford recommended.

**A. This Court Should Reach the Merits Claims Judge Rutherford Declined to Reach Without Remanding the Case Back to Her.**

This Court should order Judge Rutherford's recommended relief by reaching Ms. Kordia's First Amendment and substantive due process claims. Ms. Kordia sought a preliminary injunction on the basis of three constitutional claims, arguing her confinement violates: (1) the First Amendment as retaliation for protected expression in support of Palestinian rights; (2) procedural due process because DHS kept her confined via a procedure-less automatic stay provision that lacks any of the hallmarks of due process; and (3) substantive due process because her confinement is punitive and serves none of the lawful regulatory purposes the Supreme Court has identified for civil immigration confinement. Mot. at 20–32.

In her FCR, Judge Rutherford found Ms. Kordia likely to succeed on the merits of her procedural due process claim, FCR at 14–19, and, because an injunction would prevent irreparable harm and promote the public interest, *id.* at 19–21, recommended this Court grant the Motion by ordering Ms. Kordia's immediate release from confinement, *id.* at 21–22. The FCR rested on the constitutional violation inflicted by the automatic stay provision, which kept Ms. Kordia confined

for nearly three months without any process whatsoever. *Id.* at 14–19. However, on July 2, 2025, DHS sought, Suppl. App. at 315–40 (PX 13, DHS Stay Br.), and the BIA granted the next day, *id.* at 342–43 (PX 14, BIA Stay Order), a discretionary stay, without Ms. Kordia's having a chance to respond and without providing any reasoning.

Ms. Kordia and counsel are still evaluating the impact the BIA's stay order has on her procedural due process claim and anticipate defending her likelihood of success on the merits on that claim in her Response, currently due July 10, 2025. It is undeniable, though, that the BIA's grant of a discretionary stay alters the record and may impact the basis on which Judge Rutherford ruled, by raising questions of, for example, Respondents' voluntary cessation of the applicability of the automatic stay at issue in Ms. Kordia's procedural due process claim and whether the BIA's grant of a discretionary stay, in these circumstances, comported with due process.

In any event, this Court can and should grant Ms. Kordia's Motion and order her immediate release pending final judgment by reaching Ms. Kordia's other claims. Rule 72 of the Federal Rules of Civil Procedure gives this Court wide discretion when reviewing the FCR to "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge." Fed. R. Civ. P. 72(b)(3).

Here, the Court should adopt Judge Rutherford's recommendation for ordering Ms. Kordia immediately released, without returning the matter to her. Ms. Kordia has "already been detained for more than two months since the [immigration judge] determined she should be released," FCR at 17, which "violate[d] her procedural due process rights," FCR at 19. At the hearing before Judge Rutherford, both sides agreed that there are no additional facts necessary to resolving the Motion on the First Amendment and substantive due process claims. Suppl. App. at 231 (PX 12, Tr. at 5:8–16). The First Amendment and substantive due process claims are thus fully briefed with a

complete preliminary injunction record and ripe for this Court to decide. The additional time involved in a remand to Judge Rutherford would only serve to inflict further harm on Ms. Kordia, who has already experienced months of unconstitutional confinement.

### B. This Court Should Grant Ms. Kordia's Motion on the Basis of Her First Amendment and Substantive Due Process Claims.

The intervening developments in DHS's bond appeal only underscore the urgency of reaching Ms. Kordia's claims for relief that Judge Rutherford did not consider. The procedural gamesmanship that has complicated relief on Ms. Kordia's procedural due process claim bolsters the already voluminous record substantiating that Respondents are confining Ms. Kordia for a viewpoint-discriminatory and punitive purpose, which violates the Constitution. This Court should find Ms. Kordia likely to succeed on the merits of her First Amendment and substantive due process claims, adopt Judge Rutherford's recommendation for her immediate release, and order immediate release pending final judgment.

### 1. This Court Has Habeas Jurisdiction Over Ms. Kordia's First Amendment and Substantive Due Process Claims.

Judge Rutherford recommended the Court not reach the claims discussed above, at least in part, to avoid "complex questions about the extent of the Court's jurisdiction." FCR at 11. Ms. Kordia recognizes that "[t]he intersection of immigration and habeas corpus marks an evolving and challenging area of the law . . . ." FCR at 11 n.52 (quoting *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *3 (N.D. Tex. Oct. 18, 2007)). But as seven other courts in five different circuits have held in closely similar cases, this Court has habeas jurisdiction, because Ms. Kordia's claims challenge the extent of Respondents' confinement power, not the exercise of lawful discretion. Reply at 2–8.

In their briefing before Judge Rutherford, Respondents advanced the broad, unsupported, and incorrect argument that 8 U.S.C. § 1226(a), which permits them to "arrest[] and detain[]"

noncitizens pending removal proceedings, grants "the government discretion to decide whether to detain or release" Ms. Kordia for any reason—including her First Amendment activity, her religion, or the color of her skin. Dkt. 28, Resp. at 13. But that argument conflicts with over two decades of Supreme Court and Fifth Circuit case law, Reply at 3–7, and accepting Respondents' jurisdictional argument would deprive Ms. Kordia of any judicial forum for her First Amendment and substantive due process claim, raising serious constitutional questions the Supreme Court has instructed this Court to avoid, *id.* at 7–8.

At oral argument, Respondents retreated from the view that all detention under 1226(a) was discretionary within the meaning of 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii). *See* Suppl. App. at 261 (PX 12, Tr. at 35:9–22). Instead, Respondents offered two equally wrong jurisdictional arguments: (1) they claimed that the INA permits so-called "framework" challenges but prohibits "individualized" challenges, *id.* at 261, 266 (Tr. at 35:9–14, 40:6–41:17); and (2) they suggested that foreclosing habeas review of Ms. Kordia's First Amendment and substantive due process claims did not raise constitutional concerns because "[t]here is judicial review available after the removal proceeding[s]," *id.* at 270–71 (Tr. at 44:25–45:3).

Both Respondents' jurisdictional arguments are wrong, and the Court should exercise jurisdiction over the First Amendment and substantive due process claims and find Ms. Kordia likely to succeed on the merits of those claims.

**First,** the "framework" versus "individual" distinction rests on a misreading of the applicable Supreme Court and Fifth Circuit cases. In fact, those cases clarify that this Court has jurisdiction where a habeas petitioner alleges that her confinement exceeds the scope of the executive's lawful authority, even if that challenge involves some consideration of the petitioner's individual circumstances. In *Zadvydas v. Davis*, 553 U.S. 678 (2001), the Supreme Court

11

considered section 1252(a)(2)(B)(ii)'s application to a habeas petitioner's challenge to his confinement under 8 U.S.C. § 1231(a)(6), which says the government "'may' continue to detain [a noncitizen]" during the "post-removal-period." *Zadvydas*, 553 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). The government argued that the petitioner's confinement was discretionary and that the court lacked jurisdiction. *Id.* at 688. The Court rejected that argument by distinguishing between "exercise[s] of discretion" and challenges to "the extent of the [government's]" authority." *Id.* Section 1252(a)(2)(B)(ii) bars the former but not the latter because "the extent of that [detention] authority is not a matter of discretion." *Id.*

Crucially, and contrary to Respondents' suggestion at oral argument, *cf.* Suppl. App. at 266–67 (PX 12, Tr. at 40:20–41:9), *Zadvydas* authorizes challenges like Ms. Kordia's where the habeas petitioner argues that her confinement exceeds the limits of the executive's power, even where the claim turns, in part, on individualized facts about the petitioner. In *Zadvydas* itself, for example, the Court inquired into whether the government's confinement of the petitioners under 8 U.S.C. § 1231(a)(6) had a "sufficiently strong special justification" based on the government's "two regulatory goals," 533 U.S. at 690, by assessing whether "removal [of the petitioners] [was] no longer reasonably foreseeable," *id.* at 699. And, since *Zadvydas*, the Fifth Circuit has exercised jurisdiction and granted habeas relief where a petitioner's "removal [was] not reasonably foreseeable." *Tran v. Mukasey*, 515 F.3d 478, 485 (5th Cir. 2008).

Respondents' "framework-vs-individual" distinction is foreclosed by *Zadvydas*, because habeas cases will almost always turn on some individualized consideration of the petitioner's circumstances. Instead, the lesson of *Zadvydas* and *Tran* is that the Court has jurisdiction where the habeas petitioner's claims, like Ms. Kordia's, turn on whether the government's confinement has exceeded its lawful authority. The Fifth Circuit and district courts have consistently applied

this extent-of-authority line to assess the lawfulness of immigration confinement notwithstanding the fact that the claims turned on the individual circumstances of the claimant. *See, e.g.*, *Najera v. United States*, 926 F.3d 140, 144 (5th Cir. 2019) (holding "§ 1226(e) did not strip . . . jurisdiction" where plaintiff claimed his "detention violate[d] the federal TPS statute"); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 926 (W.D. Tex. 2018) ("While the Attorney General has the discretion to revoke [petitioners'] parole, the Attorney General doing so in a constitutionally impermissible manner would exceed his authority."); *see also* Reply at 3–7. Ms. Kordia's First Amendment and substantive due process claims challenge the extent of Respondents' confinement power, not the lawful exercise of their discretion; therefore, this Court has habeas jurisdiction.

**Second**, Respondents' suggestion that Ms. Kordia's interest in her liberty pending her removal proceedings can be vindicated, through a downstream petition for review to the Fifth Circuit of a removal order, is "absurd" and "staggering" because it would make Ms. Kordia's claims about the constitutionality of her confinement *during the pendency of her removal proceedings* "effectively unreviewable," as "the allegedly [unconstitutional] detention would have already taken place." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality op. of Alito, J.). Respondents' suggestion therefore distorts habeas jurisdiction, because it prevents any court from "conduct[ing] a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008).

Further, such a suggestion misconstrues what a court of appeals could even consider in a potential petition for review. The record of Ms. Kordia's bond proceedings will not form a part of her removal proceedings, such that they will not be incorporated into any final removal order the court of appeals would review. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(d); U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3(e), (f) (last

13

visited July 6, 2026), *available at* https://www.justice.gov/eoir/reference-materials/ic/chapter-9/3 [https://perma.cc/9A6W-AG9U]. "This means that …[the] court[] of appeal would not have a sufficient record to assess the constitutionality of the government's conduct" as to Ms. Kordia's confinement. *See Mahdawi v. Trump*, 136 F. 4th 443, 452 (2d Cir. 2025). Because administrative custody proceedings and removal proceedings are separate, a petition for review of a removal order is no substitute for this Court's exercising its habeas jurisdiction to assess the legality of Ms. Kordia's confinement *pending her removal proceedings*.

This Court has jurisdiction over Ms. Kordia's First Amendment and substantive due process claims, which the Court should exercise by finding Ms. Kordia likely to succeed on the merits of those claims.

2. *Ms. Kordia Is Likely to Succeed on Her First Amendment and Substantive Due Process Claims.*

The Court should adopt Judge Rutherford's recommendation ordering Ms. Kordia's immediate release and grant the Motion on one or more alternative bases that Judge Rutherford did not reach: Ms. Kordia is likely to succeed on the merits of her First Amendment and substantive due process claims. *See generally* Mot. at 21–27 (First Amendment) and 31–32 (substantive due process). Before Judge Rutherford, Respondents agreed that "the entirety of the evidence [they] want[ed] before the Court" was in the record. Suppl. App. at 231 (PX 12, Tr. at 5:13–16). Thus, at this stage of proceedings, uncontroverted record evidence demonstrates that Ms. Kordia's continued confinement is targeted, viewpoint-based punishment. Specifically, Respondents have not contested that Ms. Kordia engaged in protected First Amendment expression by advocating for Palestinian rights at lawful protests, including one such protest on April 30, 2024. Verified Pet. ¶ 34. Nor have they contested the mountain of evidence demonstrating that, but for this protected expression, Ms. Kordia would not be confined, *see Mt. Healthy City Sch. Dist. Bd. of Educ. v.*

14

*Doyle*, 429 U.S. 274, 287 (1977) (setting out but-for causation standard), including:

- Both as a candidate and since taking office, President Trump has used every tool in his considerable arsenal to identify, surveil, and confine non-citizens associated with support for Palestinian rights. This includes Executive Orders, Mot. at 4–5, public statements, App. at 5–27, 36–41 (PX 1A–F, 1-I, Guzman Decl.), and individual enforcement actions, *infra* at 15–16 (collecting similar cases).

- Secretary of Homeland Security Kristi Noem twice celebrated Ms. Kordia's confinement as part of this administration's suppression plan, falsely labeling Ms. Kordia, without evidence, as "support[ing] Hamas" and being "anti-American." App. at 29, 39–40 (PX 1-G & 1-I, Guzman Decl.).

- ICE's overnight transfer of Ms. Kordia from New Jersey, where she had immediate family and her then-counsel of record, violated ICE's own policies, which prohibit transfers in such circumstances. *Id.* at 196–97 (PX 9, ICE Policy 11022.1).

- DHS is continuing to confine her despite its own classification of Ms. Kordia as low risk across every relevant factor with no criminal history. *Id.* at 72–73 (PX 2-A, Manfredini Decl.).

- Uncontroverted testimony from immigration practitioners that Respondents' confinement of Ms. Kordia, and the procedural lengths they have gone to keep her confined, are highly unusual, *id.* at 165–67 (PX 3, Chandler Dec. ¶¶ 7–8, 11); *id.* at 170–71 (PX 4, Hash Dec. ¶¶ 5–6, 9); *id.* at 175 (PX 5, Gillman Dec. ¶ 5); *id.* at 179 (PX 6, Goodwin Dec. ¶ 7–8, 10), evincing a punitive and viewpoint-discriminatory purpose.

- In another pending case, the government recently described Ms. Kordia's confinement as "related to" the "Israel-Palestine conflict," Suppl. Br. at 16, *Khalil v. Joyce*, 2:25-cv-01963, Dkt. 256 (D.N.J. May 14, 2025).

Seven different district judges in five different circuits have evaluated a similar factual record and found the petitioner was likely to succeed on the merits of their First Amendment and substantive due process claims. *See Ozturk v. Trump* ("*Ozturk I*"), No. 2:25-cv-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) (ordering transfer and bail hearing on basis of First Amendment and substantive due process claims) *aff'd as amended sub. nom.*, *Ozturk v. Hyde* ("*Ozturk II*"), 136 F.4th 382 (2d Cir. 2025); *Ozturk v. Trump* ("*Ozturk III*"), No. 2:25-cv-374, 2025 WL 1420540 (D. Vt. May 16, 2025) (ordering immediate release pending final judgment on basis of First Amendment and substantive due process claims); *Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL

15

1243135 (D. Vt. Apr. 30, 2025) (same) *stay denied*, 136 F.4th at 456; *Aditya W. H. v. Trump*, No. 25-cv-01976, 2025 WL 1420131 (D. Minn. May 14, 2025) (same); *Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1334847 (D. Minn. May 5, 2025) (same); *Suri v. Trump*, No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025) (same); *Ercelik v. Hyde*, No. 1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025); *see also* Suppl. App. at 406 (PX 15, June 20, 2025 Hr'g Tr. at 62:14–25, *Khalil v. Joyce*, 2:25-cv-1963 (D.N.J.)) (ordering petitioner's release based, in part, on the "overwhelming unlikeliness the detention would be sought in a case of this sort" and the "chilling effect" of petitioner's detention). This Court should do the same.

Respondents asserted at oral argument that the above cases are distinguishable because the petitioners "had lawful status . . . until very recently." Supp. App. at 264 (PX 12, Tr. at 38:24–25); *see also* FCR at 8 n.33 (finding "the circumstances of the other petitioners/plaintiffs meaningfully distinguishable"). That proffered distinction has no import here. Each of the cases cited above involved petitioners contesting their confinement while conceding that their removal proceedings would be ongoing. *See, e.g.*, *Ozturk II*, 136 F.4th at 399 (Petitioner's "unlawful detention claims may be resolved without affecting [her] pending removal proceedings."); *Mohammed H.*, 2025 WL 1334847, at *3 ("Petitioner d[id] not seek to end his removal proceeding[s] . . . . [H]e simply s[ought] to end his allegedly unlawful confinement."); *Mahdawi*, 2025 WL 1243135, at *8 (finding "arrest[ing] [petitioner] to stifle speech . . . would be a violation of the Constitution [] quite separate from the removal procedures followed by the immigration courts"). Thus, Ms. Kordia is in the same legal position as the other similarly situated petitioners—she challenges her continued confinement during the pendency of ongoing removal proceedings.

Nor does the immigration judge's entry of a removal order, which Ms. Kordia has requested the judge reconsider, affect Ms. Kordia's claims. Legally, Ms. Kordia is in the exact

same position as she was when she filed this petition: confined under section 1226(a) with her removability still being litigated before the agency. And as Judge Guadarrama recognized in *Guterriez-Soto*, the government violates the First Amendment where the government confines someone "because of the content and message of [the petitioner's] political speech." 317 F. Supp. 3d at 394. Indeed, in *Gutierrez-Soto*, the petitioners had "final order[s] or removal," *id.* at 926, whereas Ms. Kordia still has multiple legal avenues by which she can and will contest the non-final removal order.

Respondents have not seriously contested the evidence demonstrating that they are confining Ms. Kordia because this administration disagrees with her support for Palestinian rights. That is flatly unconstitutional because it is viewpoint-discriminatory retaliation in violation of the First Amendment and imposing civil confinement for a punitive purpose in violation of the Fifth Amendment. Based on these grounds, the Court can adopt Judge Rutherford's recommendation for Ms. Kordia's immediate release from custody.

## V.    CONCLUSION

For the foregoing reasons, the Court should adopt Judge Rutherford's recommendation that Ms. Kordia be ordered immediately released, grant the Motion, and order Respondents to release Ms. Kordia immediately, pending final judgment on her habeas petition, for the reasons stated herein and in the FCR.

Respectfully submitted,

/s/ Travis Walker Fife
Travis Walker Fife
Texas State Bar No. 24126956
Randall Hiroshige
Texas State Bar No. 24124299
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
travis@texascivilrightsproject.org
randy@texascivilrightsproject.org

Charles S. Siegel
Texas State Bar No. 18341875
Caitlyn Silhan
Texas State Bar No. 24072879
Waters Kraus Paul & Siegel
3141 Hood Street, Suite 200
Dallas, Texas 75219
Telephone: 214-357-6244
Facsimile: 214-357-7252
siegel@waterskraus.com
csilhan@waterskraus.com

Sabrine Mohamad*
Louisiana State Bar No. 39989
Southern Poverty Law Center
P.O. Box 57089
New Orleans, LA 70157
Telephone: 504-418-9877
sabrine.mohamad@splcenter.org

Arthur Ago*
District of Columbia Bar No. 463681
Southern Poverty Law Center
1101 17th Street, NW
Suite 550
Washington, DC 20036
Telephone: 202-961-9325
arthur.ago@splcenter.org

Molly Petchenik
Texas State Bar No. 24134321
Texas Civil Rights Project
P.O. Box 17757

Dated: July 7, 2025

Austin, Texas 78760
Telephone: 512-474-5073
Facsimile: 512-474-0726
molly@texascivilrightsproject.org

Daniel Hatoum*
Texas State Bar No. 24099136
Erin D. Thorn*
Texas State Bar No. 24093261
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
Telephone: 512-474-5073
daniel@texascivilrightsproject.org
erin@texascivilrightsproject.org

Naz Ahmad*
New York State Bar No. 5327424
Amal Thabateh*
New York State Bar No. 5923826
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4630
naz.ahmad@law.cuny.edu
amal.thabateh@law.cuny.edu

Golnaz Fakhimi*
New York State Bar No. 5063003
Sadaf Hasan*
New York State Bar No. 6046023
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

* Admitted to practice PHV

**ATTORNEYS FOR PETITIONER-
PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on July 7, 2025, a true and correct copy of this document was properly

served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

/s/ Travis Walker Fife
Travis Walker Fife