IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

LEQAA KORDIA,

      Petitioner-Plaintiff,

v.

KRISTI NOEM, *et al.*,

      Respondents-Defendants.

Civil Action No. 3:25-CV-1072-L-BT

## RESPONSE TO AMENDED PETITION FOR WRIT OF HABEAS CORPUS

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  (214) 659-8626
Facsimile:  (214) 659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents

## Table of Contents

I.      Introduction ................................................................................................. 1

II.     Background ................................................................................................... 3

        A.      Kordia, a student-visa overstay, is arrested and placed in removal
                proceedings. ...................................................................................... 3

        B.      The Attorney General and DHS Secretary have discretionary
                authority to decide whether to detain an alien pending the
                completion of removal proceedings. ................................................. 3

        C.      Bond proceedings are ongoing in Kordia's immigration case. ..................... 5

        D.      Removal proceedings are also ongoing in the immigration court ................ 7

        E.      Kordia seeks a release from detention via her amended petition for
                writ of habeas corpus ....................................................................... 8

III.    Argument and Authorities .............................................................................. 9

        A.      Kordia is not entitled to any relief on her habeas claims challenging
                the government's decision to detain her.  (Counts I and II) .......................... 9

                1.      No jurisdiction exists to review the government's
                        discretionary decision to detain Kordia pending completion
                        of her removal proceedings because 8 U.S.C. §§ 1226(e)
                        and 1252(a)(2)(B) bar judicial review of the decision to detain
                        Kordia ...................................................................................... 9

                2.      Kordia's allegations of selective or allegedly improperly
                        motivated immigration enforcement action do not change
                        the calculus. ............................................................................ 13

                3.      Kordia's other jurisdictional arguments are unavailing. ................. 15

                4.      Even if jurisdiction were available, Kordia's claims
                        would still fail.......................................................................... 19

        B.      Kordia is not entitled to any relief on her habeas claims challenging
                the automatic stay provision or allocation of the burden of proof in
                bond proceedings.  (Counts III and IV) ........................................... 22

1.    Kordia's alleged liberty interest is insufficient to support any procedural due process claim. .......................................................... 22

2.    Even assuming a sufficient liberty interest, no procedural due process violations are shown. ............................................................ 24

IV.    Conclusion ................................................................................................ 28

# Table of Authorities

## Cases

*Ahmed v. Gonzales*,
   447 F.3d 433 (5th Cir. 2006) ................................................................ 23

*Ashley v. Ridge*,
   288 F. Supp. 2d 662 (D.N.J. 2003) ........................................................ 26

*Atemafac v. Wolf*,
   No. 6:20-CV-01697, 2021 WL 1972577 (W.D. La. Mar. 8, 2021) ............ 3, 25, 26

*Ayobi v. Castro*,
   No. SA-19-CV-01311-OLG, 2020 WL 13411861
   (W.D. Tex. Feb. 25, 2020) ................................................................ 27, 28

*Barrera-Romero v. Cole*,
   No. 1:16-CV-148, 2016 WL 7041710 (W.D. La. Aug. 19, 2016) ........................ 25

*Cardoso v. Reno*,
   216 F.3d 512 (5th Cir. 2000) ................................................................ 20

*Demore v. Kim*,
   538 U.S. 510 (2003) ................................................................ 3–4, 12

*Edwin A. v. ICE*,
   No. 3:24-CV-1363-L-BK, 2024 WL 4654396 (N.D. Tex. Oct. 10, 2024) ............ 16

*Edwin A. v. ICE*,
   No. 3:24-CV-1363-L-BK, 2024 WL 4654449 (N.D. Tex. Nov. 1, 2024) ............ 16

*Garcia v. Lacy*,
   No. H-12-3333, 2013 WL 3805730 (S.D. Tex. 2013) ........................................ 25

*Hadwani v. Gonzales*,
   445 F.3d 798 (5th Cir. 2006) ................................................................ 19

*Hernandez-Esquivel v. Castro*,
   No. 5-17-CV-0564-RBF, 2018 WL 3097029 (W.D. Tex. June 22, 2018) ............ 12

*In re D-J-*,
   23 I. & N. Dec. 572 (A.G. 2003) ................................................................ 4

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ................................................................. 12, 17, 18

*Kim v. Obama,*
    No. EP-12-CV-173, 2012 WL 10862140 (W.D. Tex. 2012) ................................. 25

*Loa-Herrera v. Trominski,*
    231 F.3d 984 (5th Cir. 2000) .................................................. 11, 12, 18–19

*Maramba v. Mukasey,*
    No. 3:08-CV-351-K, 2008 WL 1971378 (N.D. Tex. Apr. 28, 2008) ................... 11

*Najera v. United States,*
    926 F.3d 140 (5th Cir. 2019) ................................................................ 17

*Parra v. Perryman,*
    172 F.3d 954 (7th Cir. 1999) ................................................................ 23

*Petgrave v. Aleman,*
    529 F. Supp. 3d 665 (S.D. Tex. 2021) ...................................................... 4

*Reno v. Am.-Arab Anti-Discrimination Comm. (AADC),*
    525 U.S. 471 (1999) ............................................................. 13, 14, 21, 23

*Shabaj v. Holder,*
    718 F.3d 48 (2d Cir. 2013) .................................................................. 4

*Singh v. ICE,*
    No. H-22-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023) ........................... 20

*Wang v. Ashcroft,*
    260 F.3d 448 (5th Cir. 2001) ................................................................ 20

*United States ex rel. Barbour v. Dist. Dir. of Immigr. & Naturalization Serv.,*
    491 F.2d 573 (5th Cir. 1974) .............................................................. 4–5

*Zadvydas v. Davis,*
    553 U.S. 678 (2001) ..................................................................... 15, 16

*Zavala v. Ridge,*
    310 F. Supp. 2d 1071 (N.D. Cal. 2004) .................................................... 26

Statutes and Rules

6 U.S.C. § 557 ................................................................................ 4

8 C.F.R. § 236.1(g) ........................................................................................ 4

8 C.F.R. § 1003.1(a)(1) ................................................................................. 5

8 C.F.R. § 1003.1(g) ..................................................................................... 5

8 C.F.R. § 1003.1(h) ..................................................................................... 5

8 C.F.R. § 1003.6(c) ..................................................................................... 5

8 C.F.R. § 1003.6(c)(1) ................................................................................. 24

8 C.F.R. § 1003.6(c)(4) ................................................................................. 24

8 C.F.R. § 1003.6(d) ..................................................................................... 5

8 C.F.R. § 1003.19(a) ................................................................................... 4

8 C.F.R. § 1003.19(d) ................................................................................... 8

8 C.F.R. § 1003.19(i)(1) ................................................................................ 5

8 C.F.R. § 1003.19(i)(2) ................................................................................ 5

8 C.F.R. § 1236.1(d) ..................................................................................... 4

8 C.F.R. § 1236.1(d)(3) ................................................................................. 5

8 U.S.C. § 1226(a) ............................................................................... 3, 4, 10

8 U.S.C. § 1226(e) ............................................................................. 1, 10, 11

8 U.S.C. § 1252(a)(2)(B) .................................................................... 1, 10–11

8 U.S.C. § 1101(a)(47)(B) ............................................................................. 7

18 U.S.C. § 1101(a)(47)(B) ........................................................................... 28

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
    Pub. L. 104-208, 110 Stat. 3009-546 .................................................. 13

U.S. Dep't of Justice, Review of Custody Determinations,
    71 Fed. Reg. 57,873 (Oct. 2, 2006) ................................................ 25, 26

# I.      Introduction

Petitioner Leqaa Kordia seeks a writ of habeas corpus to require her release from immigration detention.  (*See* ECF No. 69 (amended petition for writ of habeas corpus).)  But there is no dispute that Kordia does not have legal status in this country—she last entered the United States on a tourist visa and later obtained a student visa, but then forfeited that (temporary) lawful status in this country after failing to comply with the conditions of her student visa by voluntarily leaving school.  (*See* ECF No. 69, ¶¶ 23, 25.)  On that basis, Kordia has been charged with removability and placed in removal proceedings in immigration court, and has also been detained pending those proceedings.

Notwithstanding these undisputed facts concerning her illegal status in this country, Kordia claims that her detention pending the completion of removal proceedings violates her rights, based primarily on allegations that she has been detained in retaliation for her protest activity in support of Palestine.  But a federal statute expressly authorizes the government to detain persons who are subject to removal proceedings, and per 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B), the federal courts lack jurisdiction to review the discretionary decision to hold Kordia in detention pending the completion of her immigration case.  For that reason alone, Kordia is not entitled to any relief on her habeas claims challenging the decision to detain her as allegedly motivated by improper considerations relating to her protest activities or otherwise improper.  Judicial review simply is not available for such claims.

Moreover, even if such claims were reviewable on the merits, Kordia fails to show any entitlement to relief.  Whether Kordia ultimately is granted bond in her immigration

case is still under administrative review and is not yet finalized, meaning that Kordia has not exhausted available administrative remedies. And in any event, the not-yet-finalized decisions that have been rendered thus far in Kordia's bond proceedings show no violation of her rights in connection with alleged retaliation for her protest activities. To the contrary, the Board of Immigration Appeals has already *upheld* the immigration judge's determination that Kordia's protest activities were not dangerous or threatening to police officers (even though Kordia was arrested by police at a protest), and thus that these activities are no bar to her potential release on bond. These decisions—by the very officials within the Executive Branch with responsibility for administratively adjudicating her removal and bond proceedings—show exactly the opposite of the alleged animus against protest activities that Kordia relies on for her claims.

Finally, Kordia also asserts that her procedural due process rights are threatened because the U.S. Department of Homeland Security (DHS) has the ability to invoke an "automatic stay" of any decision of the immigration judge to grant bond, pending further review by the Board of Immigration Appeals, and because she bears the burden of proof to show that release on bond is appropriate. But neither argument is availing. Because the automatic stay provides only a temporary, time-limited stay of any such bond decision while further administrative review is occurring, it does not offend the Constitution or otherwise violate Kordia's rights. And likewise, there is nothing problematic with the way the burden of proof is allocated in the bond proceedings.

For these reasons, and as further discussed herein, Kordia's amended petition for a writ of habeas corpus should be denied.

**Response to Amended Petition for Writ of Habeas Corpus – Page 2**

## II.    Background

### A.    Kordia, a student-visa overstay, is arrested and placed in removal proceedings.

Kordia is a Palestinian who entered the United States in 2016 on a tourist visa.

(ECF No. 69, ¶ 21.)  She later obtained a student visa and was enrolled at Bergen County

Career Advancement Training, Inc. until she withdrew from that school in 2022.  (ECF

No. 1, ¶¶ 27, 29; ECF No. 69, ¶ 23–25.)  As of that time, she was no longer in

compliance with the terms of her student visa and no longer had the temporary lawful

status in the United States that the student visa provided.  (*See* ECF No. 69, ¶ 25.)  In

March 2025, Kordia was arrested by DHS and removal proceedings were commenced in

immigration court.  (ECF No. 69, ¶ 78.)

### B.    The Attorney General and DHS Secretary have discretionary authority to decide whether to detain an alien pending the completion of removal proceedings.

Federal statute provides that "an alien may be arrested and detained pending a

decision on whether the alien is to be removed from the United States," and that "pending

such decision, the Attorney General . . . may continue to detain the arrested alien" or may

release her on bond or parole.  8 U.S.C. § 1226(a).  Such detention is referred to as

"discretionary detention," in recognition of the statute's use of "may" and to differentiate

it from the mandatory detention provision that applies to certain aliens in § 1226(c).  *See*

*Atemafac v. Wolf*, No. 6:20-CV-01697, 2021 WL 1972577, at *1 (W.D. La. Mar. 8,

2021).  There generally is no constitutional right to be released from detention during the

limited period of time during which removal proceedings are pending.  *See Demore v.*

*Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").

After the creation of DHS as part of the Homeland Security Act of 2002, the Attorney General's discretionary § 1226(a) authority to decide whether to detain or release an alien charged with removability has been delegated to a variety of actors within both DHS and the Department of Justice.  *See* 6 U.S.C. § 557; *Shabaj v. Holder*, 718 F.3d 48, 51 n.3 (2d Cir. 2013) (explaining that "the Homeland Security Act of 2002 mandates that references to the Attorney General are deemed to include DHS where, as here, the relevant agency functions have been transferred from the Department of Justice to DHS").

In particular, upon the arrest of an alien charged with removability, DHS first exercises discretion—through its component U.S. Immigration and Customs Enforcement—to determine whether the alien should be detained or released on bond or parole.  *See* 8 C.F.R. § 236.1(g); *see also Petgrave v. Aleman*, 529 F. Supp. 3d 665, 673–74 (S.D. Tex. 2021).

Next, if DHS opts for detention, that decision may be "redetermined" by an immigration judge (an employee of the Department of Justice) at the alien's request.  *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d); *see also Petgrave*, 529 F. Supp. 3d at 674.  During this time, the alien typically continues to remain in custody pending a decision on whether the alien is to be removed from the United States, unless the alien is released on bond or with conditional parole.  *See* 8 U.S.C. § 1226(a); *In re D-J-*, 23 I. & N. Dec. 572, 575–76 (A.G. 2003); *United States ex rel. Barbour v. Dist. Dir. of Immigr. &*

*Naturalization Serv.*, 491 F.2d 573, 578 (5th Cir. 1974).

Once the immigration judge acts on a custody redetermination, that decision is subject to further administrative review and revision at the option of the alien and/or DHS.  Either party has the ability to take an administrative appeal to the Board of Immigration Appeals, which is a tribunal whose members are appointed by the Attorney General within the Department of Justice's Executive Office for Immigration Review. *See* 8 C.F.R. §§ 1003.1(a)(1), 1236.1(d)(3).  Additionally, if DHS has previously determined that the alien should not be released and is appealing an immigration judge's determination otherwise, it may invoke an automatic stay provision to stay the alien's release until the earlier of (a) when the Board of Immigration Appeals rules on the matter or (b) the expiration of 90 days.  *See id.* §§ 1003.6(c), 1003.19(*i*)(2).  Alternatively, DHS has the option "at any time" to seek a discretionary stay from the Board of Immigration Appeals in order to stay the immigration judge's bond determination pending further review by the Board of Immigration Appeals.  *Id.* § 1003.19(*i*)(1).

Finally, if the Board of Immigration Appeals orders an alien's release, the DHS Secretary or another designated official may refer the matter for the Attorney General's personal consideration and decision, in which case the stay of the alien's release will be extended an additional 15 days.  *See id.* § 1003.6(d).  The Attorney General possesses the ultimate final decisionmaking authority over matters that come before the Board of Immigration Appeals.  *Id.* § 1003.1(g), (h).

**C.    Bond proceedings are ongoing in Kordia's immigration case.**

Consistent with the above provisions by which the Attorney General and DHS

Secretary, either through their delegees or personally, decide whether to detain an alien pending removal proceedings, DHS made an initial determination in Kordia's case to detain her at the time of her arrest in March 2025.  (ECF No. 1, ¶ 105.)

Kordia then sought redetermination of this decision by an immigration judge, who decided that Kordia could be released on bond.  (ECF No. 71-1 at 113.)  As part of the bond determination, the immigration judge considered whether Kordia posed a danger to the community due to her prior protest activity (which had resulted in her arrest by police at a protest near Columbia University) and also in light of evidence that she had sent money to unknown recipients in Palestine (which if sent in support of Hamas or other terrorist organizations would, of course, be problematic).  (ECF No. 71-1 at 114.)  Finding that there was no evidence that Kordia's protest activities were threatening or involved dangerous activity, and also that DHS "admitted that they do not know any information" about the recipients of the money transfers, the immigration judge found that Kordia was not a danger to the community and could be released on bond.  (ECF No. 71-1 at 114, 115.)

Shortly after the immigration judge issued that decision, DHS exercised its discretion to appeal to the Board of Immigration Appeals.  (ECF No. 71-1 at 118.)  The immigration judge's bond decision was stayed, first pursuant to DHS's invocation of the automatic stay and then, separately, by reason of a discretionary stay ordered by a member of the Board of Immigration Appeals.  (*See* ECF No. 71-1 at 118, 167.)

The Board of Immigration Appeals thereafter issued a decision on DHS's appeal of the immigration judge's bond decision.  (ECF No. 71-1 at 173.)  The Board of

Immigration Appeals first found no error in the immigration judge's "findings that [Kordia's] conduct during the April 30, 2024, protest [i.e., where she was arrested] was not dangerous, she did not threaten police officers, and that the charges filed against her were dropped in the interest of justice." (ECF No. 71-1 at 174 (bracketed material added).) However, the Board of Immigration Appeals found that a remand to the immigration judge was necessary on the separate issue relating to the money transfers to the Middle East and whether Kordia has shown a lack of dangerousness with respect to those transfers. (ECF No. 71-1 at 174.) Specifically, the Board of Immigration Appeals remanded to the immigration judge to "make more complete findings of fact, based on an updated record, regarding the extent of the money transfers from [Kordia] to persons in the Palestinian Authority and Jordan, including the specific identity of the recipients of the money transfers." (ECF No. 71-1 at 174.)

Most recently (and post-dating Kordia's amended petition), the immigration judge conducted another bond hearing on remand from the Board of Immigration Appeals to develop the record about Kordia's money transfers. (*See* ECF No. 74-1 at PageID 2488.) The immigration judge ultimately determined, once more, to grant bond, in an order issued on August 28, 2025. (ECF No. 74-1 at PageID 2490.) That same day, DHS gave notice of intent to appeal, with the effect that Kordia's release from bond is automatically stayed at this time for 10 days, pending DHS's submission of a notice of appeal and automatic-stay certification. (ECF No. 74-1 at PageID 2493.)

**D.    Removal proceedings are also ongoing in the immigration court.**

While the issue of bond has been in administrative litigation, Kordia's removal

proceedings have also been moving forward in front of the immigration judge, separate and apart from the bond proceedings.  *See* 8 C.F.R. § 1003.19(d).  The immigration judge initially issued a decision on June 27, 2025 ordering that Kordia be removed from the country based on her failure to file an application for relief against removal by the relevant deadline.  (ECF No. 71-1 at 179–80.)  However, after Kordia filed a motion to reopen the removal proceedings, in which she explained that it was her immigration counsel's error in failing to timely submit the necessary application, the immigration judge granted the motion, such that Kordia's removal proceedings were reopened and are proceeding with Kordia having the opportunity to seek relief on the merits.  (ECF No. 71-1 at 190–92.)

## E.    Kordia seeks a release from detention via her amended petition for writ of habeas corpus.

Meanwhile, Kordia also initiated this proceeding in late April 2025.  (*See* ECF No. 1.)  Her live pleading is an amended petition for habeas corpus,[1] in which Kordia alleges in Counts I and II that she has been detained in connection with her immigration case without any legitimate basis and in retaliation for her protest activity, and that this constitutes a violation of the First Amendment and of substantive due process.  (ECF No. 69, ¶¶ 182–200.)  She additionally asserts, in Counts III and IV, that procedural due process principles are violated by DHS's automatic-stay authority and by the allocation of the burden of proof in the bond proceedings.  (ECF No. 69, ¶¶ 201–18.)

---

[1] This pleading also contains a complaint setting forth certain non-habeas claims; however, litigation of those claims has been stayed pending the litigation of Kordia's habeas claims.  (*See* ECF No. 68.)

### III.    Argument and Authorities

Kordia is not entitled to any relief on her habeas claims.  As explained below, (A) no jurisdiction exists for her First Amendment and substantive due process claims that challenge the government's decision to detain her, and in any event those claims are meritless, and (B) there is no merit to her procedural due process claims that challenge DHS's ability to impose a limited-in-duration automatic stay of any bond decision of the immigration judge, pending further administrative review by the Board of Immigration Appeals, and the allocation of the burden of proof in the bond proceedings.

**A.    Kordia is not entitled to any relief on her habeas claims challenging the government's decision to detain her.  (Counts I and II)**

**1.    No jurisdiction exists to review the government's discretionary decision to detain Kordia pending completion of her removal proceedings because 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B) bar judicial review of the decision to detain Kordia.**

Kordia's First Amendment and substantive due process claims (Counts I and II of the amended petition) challenge the government's decision to detain her pending her removal proceedings (or, to be precise, the government's detention decision thus far—the administrative process has finished and therefore a final detention decision has not yet been issued by the Board of Immigration Appeals).  Specifically, Kordia argues that the decision to detain her was improperly taken without any legitimate basis and for retaliatory reasons based on Kordia's participation in pro-Palestine protest activities, allegedly in violation of the First Amendment or substantive due process.

As discussed above, though, a federal statute gives the government discretion to decide whether to detain or release an alien pending removal proceedings:  "an alien may

be arrested and detained pending a decision on whether the alien is to be removed from

the United States," and "pending such decision, the Attorney General . . . may continue to

detain the arrested alien" or may release her on bond or parole.  8 U.S.C. § 1226(a).  And

in a subsection titled "Judicial review," this same statute forecloses judicial review of the

government's determination in this regard, as follows:

> The Attorney General's discretionary judgment regarding the
> application of this section shall not be subject to review.  No
> court may set aside any action or decision by the Attorney
> General under this section regarding the detention of any
> alien or the revocation or denial of bond or parole.

*Id.* § 1226(e).

Additionally, a separate statute within the same subchapter of the U.S. Code

further insulates the government's discretionary decision to deny a release to an alien in

Kordia's position—including, specifically, in the habeas context:

> (B)  Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or
> nonstatutory), including section 2241 of title 28, or any other
> habeas corpus provision, and sections 1361 and 1651 of such
> title, and except as provided in subparagraph (D), and
> regardless of whether the judgment, decision, or action is
> made in removal proceedings, no court shall have jurisdiction
> to review—
>
> * * *
>
> > (ii)  any other decision or action of the Attorney General
> > or the Secretary of Homeland Security the authority
> > for which is specified under this subchapter to be in
> > the discretion of the Attorney General or the
> > Secretary of Homeland Security, other than the
> > granting of relief under section 1158(a) of this title.

*Id.* § 1252(a)(2)(B).

The combined effect of 8 U.S.C. §§ 1226(a), (e) and 1252(a)(2)(B) is clear: no jurisdiction exists to review Kordia's claims challenging the government's decision to detain her at this time. As the Fifth Circuit explained in *Loa-Herrera v. Trominski*, "§ 1226(a) . . . authorizes [the Attorney General] to grant parole," but "'[t]he Attorney General's discretionary judgment regarding the application of parole'—including the *manner* in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints—is 'not . . . subject to review'" given the statutory limitation on judicial review. 231 F.3d 984, 991 (5th Cir. 2000) (quoting 8 U.S.C. § 1226(e)).

The Fifth Circuit's analysis of a court's power to review the Attorney General's discretionary determination of whether to grant parole under § 1226(a) applies equally to that same subsection's bond-release authority—and to the flip side of both parole and bond under that subsection, detention. "[U]nder 8 U.S.C. § 1226(e) and the Fifth Circuit's decision in *Loa-Herrera*[], as well as 8 U.S.C. § 1252(a)(2)(B)(ii), [a district court] lack[s] jurisdiction to review the decision to deny release on bond itself or the Attorney General's discretionary judgment regarding the application of § 1226(a), 'including the manner in which that discretionary judgment is exercised . . . .'" *Maramba v. Mukasey*, No. 3:08-CV-351-K, 2008 WL 1971378, at *3 (N.D. Tex. Apr. 28, 2008) (quoting *Loa-Herrera*, 231 F.3d at 991).

As another court in this circuit has summarized, a "review process exists to determine whether a detainee may be released on bond," and "[t]his administrative

process gives the Attorney General discretion in determining whether there is a likelihood of removal as well as whether a detainee may be released and, if so, under what conditions." *Hernandez-Esquivel v. Castro*, No. 5-17-CV-0564-RBF, 2018 WL 3097029, at *10 (W.D. Tex. June 22, 2018). Thus, "[i]nsofar as [a petitioner] challenge[s] this discretionary decision on the merits, this Court lacks jurisdiction because the Attorney General's exercise of discretion is not reviewable." *Id.*

In light of the above authorities, Kordia's arguments that her detention is improper and/or based on allegedly impermissible factors in claimed violation of the First Amendment or substantive due process are premised on claims attacking the government's discretionary detention decision, and no judicial review is available. No jurisdiction exists for these claims, and she cannot obtain a preliminary injunction. To be sure, as the Fifth Circuit noted in *Loa-Herrera*, "the executive branch . . . has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review." 231 F.3d at 991. But the fact that Kordia contends that some constitutional violation occurred in connection with the decision to detain her in her removal proceedings—a contention that, as explained below, is meritless—does not grant this Court jurisdiction. *See id.* The law is clear that "§ 1226(e) precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding [her] detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore*, 538 U.S. at 516).

### 2. Kordia's allegations of selective or allegedly improperly motivated immigration enforcement action do not change the calculus.

The type of claims Kordia is attempting to raise against the government's immigration enforcement activities are not new ones. In the late 1990s, the Supreme Court considered similar claims by a group of aliens who alleged that the government had improperly targeted them for deportation based on their affiliation with the "Popular Front for the Liberation of Palestine," allegedly in violation of their First and Fifth Amendment rights. *See Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 473–74 (1999). At that time, the jurisdiction-stripping provision in § 1252(a)(2)(B) barring judicial review of discretionary decisions had only recently been passed by Congress and was not effective as to the *AADC* aliens' claims, because it applied only to new cases rather than pending cases. *See id.* at 486–87; *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, §§ 306, 309, 110 Stat. 3009-546, 3009-607, 3009-625. Nonetheless, the Supreme Court concluded that the *AADC* aliens' claims were barred by an even narrower jurisdiction-stripping provision that was effective in then-pending cases, which provision shielded from judicial review only Executive Branch decisions to "commence proceedings, adjudicate cases, or execute removal orders." *See AADC*, 525 U.S. at 473, 487. For the same reason that this narrower provision precluded the federal courts from conducting judicial review of the Executive Branch's discretionary decisions to commence removal proceedings in an allegedly unconstitutional manner, the broader and more robust jurisdiction-stripping provision in § 1252(a)(2)(B) bars Kordia's claims here that challenge another type of

discretionary decision (the decision to detain) under a similar theory.

The Supreme Court also stressed in *AADC* that immigration enforcement decisions are "particularly ill-suited to judicial review" for the same reasons that criminal prosecutions are, because factors such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake," and "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *AADC*, 525 U.S. at 490 (internal quotation marks and citation omitted). These considerations apply with at least equal force here; in fact, the Supreme Court actually says that they are "greatly magnified in the deportation context." *Id.*

Indeed, thinking practically about what kind of litigation Kordia's claims would require only confirms what the Supreme Court warned against. It is the Board of Immigration Appeals that will be ruling on the still-pending administrative appeal of the immigration judge's (currently stayed) bond decision—will members of that administrative tribunal be probed in discovery about their own deliberations and thought processes? And additionally, it is the Attorney General who ultimately has the authority to override, or to choose to leave in place, whatever bond decision the Board of Immigration Appeals makes, so will the Attorney General herself be interrogated about her rationale in deciding whether she acts or refrains from acting with respect to the

discretionary decision to detain Kordia or instead release her on bond or parole?  It is

respectfully submitted that to ask these questions is to answer them.  As § 1252(a)(2)(B)

makes clear, the discretionary detention decisions of the Attorney General (and her

delegees) are not subject to judicial review, whether through habeas or otherwise.

###    3.    Kordia's other jurisdictional arguments are unavailing.

Kordia has previously attempted to evade the jurisdiction-stripping effect of

§ 1252(a)(2)(B) by relying on *Zadvydas v. Davis*, 553 U.S. 678 (2001).  (*See* ECF No. 59

at 11–14; *see also* ECF No. 69, ¶¶ 192–93.)  But *Zadvydas* is inapplicable and does not

support her claims.  At issue in *Zadvydas* was the government's authority to continue

detaining certain aliens who were subject to administratively final orders of removal but

whose removals could not be effected within a statutory 90-day "removal period"

immediately after the orders became final.[2]  *Zadvydas*, 553 U.S. at 682.  A statute

authorized such post-removal-period detention, but the aliens argued that indefinite

detention under this statute would be constitutionally impermissible, causing the Supreme

Court to consider the question of "whether this post-removal-period statute authorizes the

Attorney General to detain a removable alien *indefinitely* beyond the removal period or

only for a period *reasonably* necessary to secure the alien's removal."  *Id.*

Before answering this question, however, the Supreme Court briefly considered

whether § 1252(a)(2)(B) barred jurisdiction over the aliens' claims, and concluded that it

did not.  *Id.* at 688.  Section 1252(a)(2)(B) was not a bar to jurisdiction, the Supreme

---

[2] This situation is not uncommon when, for example, an alien does not have travel and identity documents, or the alien is from a country that does not have diplomatic relations with the United States or otherwise refuses to facilitate the return of its own citizens.

Court explained, because the aliens were not challenging any discretionary decision to detain them, but rather were challenging only the "extent of the Attorney General's authority under the post-removal-detention statute"—i.e., whether the statute permitted indefinite detention or instead imposed a time limit on detention. *Id.* Having assured itself of federal jurisdiction, the Supreme Court went on to find that the post-removal-period statute carried a six-month presumptive time limit on detention, with further detention impermissible unless there was evidence showing a significant likelihood that a given alien's removal was likely in the reasonably foreseeable future. *Id.* at 701.

Here, Kordia's First Amendment and substantive due process claims do not correspond to any claim recognized as jurisdictionally cognizable in *Zadvydas*. To evaluate a *Zadvydas* claim, a court need look only to the statutory time constraints on post-removal-period detention identified by the Supreme Court and then measure those against the objective evidence of whether a particular alien's removal is imminent—for example, by ascertaining whether travel documents have been obtained for the alien, or whether a removal flight or other transport has been scheduled, or whether the government is routinely able to remove other aliens to the same destination country. *See, e.g.*, *Edwin A. v. ICE*, No. 3:24-CV-1363-L-BK, 2024 WL 4654396, at *3 (N.D. Tex. Oct. 10, 2024) (taking account of such evidence in assessing a *Zadvydas* claim), *rec. accepted*, 2024 WL 4654449 (N.D. Tex. Nov. 1, 2024). This analysis does not require inquiry into any subjective, discretionary decisionmaking of the Attorney General (or any delegated decisionmaker) concerning why a particular alien was detained and was not granted bond or parole. But that "why" question, in contrast, is precisely the inquiry that

Kordia's claims in this case would necessarily require adjudicating. Accordingly, nothing in *Zadvydas* supports jurisdiction for Kordia's claims, and as discussed elsewhere herein, other Supreme Court precedent (*AADC* and *Jennings*) as well as Fifth Circuit precedent (*Loa-Herrera*[3]) instead points in the opposite direction.

Any attempt by Kordia to rely on the Supreme Court's *Jennings* decision would also be misplaced. (*See* ECF No. 59 at 13; *see also* ECF No. 40 at 4.) In *Jennings*, the Ninth Circuit had found in a class action that the class of detained aliens had a statutory right to periodic bond hearings every six months while in immigration detention. 583 U.S. at 292. The Supreme Court first considered whether jurisdiction existed for this sort of claim (i.e., notwithstanding the jurisdiction strip applicable to claims challenging discretionary detention decisions), and concluded that jurisdiction had not been stripped because the aliens were challenging only the "statutory framework" authorizing their detention. *Id.* at 295–96.[4] The Court then proceeded to determine on the merits that there was no such statutory right to bond hearings every six months. *Id.* at 312.

Neither aspect of *Jennings*, its jurisdictional holding or its merits holding, supports Kordia's claim here. Kordia is not seeking generalized procedural relief on behalf of a

---

[3] Kordia's prior reliance on the Fifth Circuit's decision in *Najera v. United States*, 926 F.3d 140, 144 (5th Cir. 2019), is also unavailing. (ECF No. 59 at 13.) The plaintiff in *Najera* was litigating a tort claim for unlawful imprisonment against the government, based on allegations that he had been wrongly detained even though he possessed "temporary protected status" that allowed him to live and work in the country. 926 F.3d at 140–41. Kordia makes no similar claims. And additionally, the *Najera* plaintiff's period of imprisonment or detention entirely preceded any removal proceedings. *Id.* at 143. Kordia, in contrast, has been detained pending and in direct connection with her ongoing removal proceedings.

[4] As Kordia has noted, the jurisdictional section of the *Jennings* opinion was the product of a plurality of the Supreme Court, but with the dissenters apparently also agreeing about the jurisdictional issue. (*See* ECF No. 40 at 4 n.2.)

class in the form of another bond hearing (or series of bond hearings) in immigration court, but rather is seeking an individualized, substantive review of the specific circumstances of the decision to detain her, and her alone, in federal district court.  In *Jennings*, in contrast, the Supreme Court found that there was no jurisdictional bar to consideration of the aliens' claims only after stressing that the aliens were "not challenging the decision to detain them in the first place."  *Jennings*, 583 U.S. at 294. But that is precisely what Kordia is challenging in this case—the decision to detain her in the first place.  Far from supporting her case, then, *Jennings* makes clear why no jurisdiction exists.  *Jennings* also thereby provides an example of how "framework" challenges are permissible (as the government has recognized), but also shows that such challenges do not encompass the type of claim Kordia is raising here, which challenge a specific decision to detain a particular individual.

Kordia has attempted to re-characterize her claims as merely challenging the "extent of the government's authority," rather than the government's discretionary detention decision in her case.  (ECF No. 59 at 12.)  But again, as discussed above, adjudicating her claims would require delving into the specific, substantive decisionmaking process of the Attorney General's decision to detain her—to determine whether that decision occurred in a way that Kordia alleges exceeds the "extent of the government's authority" because it was allegedly retaliatory or otherwise improperly motivated.  This is a direct challenge to the exercise of discretionary decisionmaking, and Fifth Circuit precedent in *Loa-Herrera* makes clear that attempting to put a constitutional gloss on such a claim does not render it cognizable in federal court.  *See Loa-Herrera*,

231 F.3d at 991 (finding no jurisdiction to review the allegedly unconstitutional exercise of discretionary authority, with the unavailability of judicial review then prompting the court to note that "the executive branch . . . has an independent duty to uphold the Constitution, irrespective of whether its actions are subject to judicial review").  Put another way, Kordia's "constitutional claim is an abuse of discretion argument [cloaked] in constitutional garb, and as such, it must be rejected."  *Hadwani v. Gonzales*, 445 F.3d 798, 801 (5th Cir. 2006) (internal quotation marks and citation omitted).

Finally, contrary to Kordia's prior arguments that it would be "absurd" or "staggering" for there to be no jurisdiction for her claims (ECF No. 59 at 13), there is nothing absurd or staggering about the notion that the federal courts have not been vested with jurisdiction to superintend every aspect of immigration detainees' bond or parole status during pending removal proceedings.  The noninvolvement of the federal courts in such matters is, in fact, the normal order of things.  If the district courts did have jurisdiction to substantively review individual bond determinations in pending removal proceedings, one would expect to see such cases routinely in district court—as, for example, *Zadvydas* challenges are commonly seen.  The absence of such a body of caselaw is telling.  Instead, judicial review of the ultimate outcome of Kordia's removal proceedings will be available to her once there is a final decision in those proceedings, and the Constitution does not demand anything more.

### 4.    Even if jurisdiction were available, Kordia's claims would still fail.

As discussed above, the government disagrees that Kordia's First Amendment and substantive due process claims are cognizable in habeas at all, and therefore this Court

need not reach any merits issues associated with those claims.  That said, Kordia's claims would also fail even were jurisdiction to somehow exist.  As an initial matter, Kordia has not exhausted available administrative remedies.  As outlined above, (*see* pp. 5–8, *supra*), Kordia's bond proceedings are still ongoing and Kordia likewise is awaiting adjudication by the immigration judge of her claims against removal in the pending removal proceedings.  "Immigration habeas petitioners must exhaust administrative and judicial remedies available to them prior to seeking habeas relief through the district courts under 28 U.S.C. § 2241."  *Singh v. ICE*, No. H-22-3432, 2023 WL 3571958, at *2 (S.D. Tex. Apr. 26, 2023) (citing *Cardoso v. Reno*, 216 F.3d 512, 518 (5th Cir. 2000); *Wang v. Ashcroft*, 260 F.3d 448, 452–53 (5th Cir. 2001)).  "In the instant case, [Kordia] has not exhausted [her] available remedies for challenging [her] current detention."  *Id.* Specifically, the Board of Immigration Appeals has not weighed in on the immigration judge's latest ruling to grant bond to Kordia.  Habeas relief is therefore "unwarranted." *Id.*

Kordia's allegations of First Amendment and substantive due process violations also fail on the merits.  Her claims boil down to an argument that she has been selectively targeted for removal proceedings due to her attendance at a New York City protest in April 2024 (or for other similar activity or advocacy in support of Palestine). Importantly, though, Kordia does not dispute that the legal and factual predicates for her placement in removal proceedings exist independently of this protest activity—to wit, she concedes that she lost her student-visa status upon withdrawing from school in 2022. (*See* ECF No. 1, ¶ 3.)  She is, therefore, subject to removal proceedings even under her

own allegations, and "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against [her] deportation." *AADC*, 525 U.S. at 488. Well before her presence at any protest event, Kordia had lost her student-visa status due to her own actions in withdrawing from school, and thus her placement in removal proceedings—and her corresponding, statutorily-authorized detention—offends nothing in the Constitution.

Kordia's proffered narrative of alleged government retaliation also does not fit the actual facts, which are that both the immigration judge and the Board of Immigration Appeals have now found *in her favor* on the issue of whether her protest activities support a denial of bond. (*See* ECF No. 71-1 at 113, 173.) In addition, although Kordia essentially defaulted in the removal proceedings by failing to timely submit a necessary application, resulting in an order for Kordia's removal from the country, the immigration judge later ruled in Kordia's favor again by granting a motion to reopen the removal proceedings, so as to not prejudice Kordia by reason of her immigration counsel's deficiency[5] in failing to meet the relevant deadline. (ECF No. 71-1 at 190.)

None of these actions are consistent with Kordia's allegations that she is somehow the target of allegedly improper animus flowing from the President of the United States downward (as she suggests in paragraph 2 of her amended petition). (*See* ECF No. 69, ¶ 2.) To the contrary, the immigration judge and the Board of Immigration Appeals— which are part of the Executive Branch—have by now repeatedly ruled in Kordia's favor

---

[5] The undersigned understands that Kordia's counsel in this Court is not the same as immigration counsel who missed the deadline in the removal proceedings.

at various times in the course of her ongoing administrative proceedings, as discussed

above.  The record of the administrative proceedings thus shows no violation of Kordia's

First Amendment or substantive due process rights, but rather makes clear that the

administrative system is functioning as intended.  This Court's intervention in those

administrative proceedings is unwarranted and would be legally improper.

**B.    Kordia is not entitled to any relief on her habeas claims challenging the automatic stay provision or allocation of the burden of proof in bond proceedings.  (Counts III and IV)**

   **1.    Kordia's alleged liberty interest is insufficient to support any procedural due process claim.**

Kordia's procedural due process claims take issue with DHS's authority to invoke

an automatic stay to temporarily keep her in detention pending any administrative appeal

from the immigration judge's bond decision as well as the allocation of the burden of

proof in the bond proceedings.  (*See* ECF No. 69, ¶¶ 201–18.)  But Kurdi's asserted

liberty interest in alleged support of these claims is overstated, as Kordia overlooks that

for a person like her who is in removal proceedings due to a lack of legal status and

unlawful presence in the country, a federal statute expressly provides that she may be

detained during those proceedings.  *See* 8 U.S.C. § 1226(a).  The statute does not give a

detained alien any *right* to be released on bond.  *See id.*  And notably, Kordia does not

challenge the factual predicate for her removal proceedings—i.e., that she is a student-

visa overstay with no legal status in this country.  Moreover, Kordia has the ability to

secure her release from detention at any time by simply agreeing to leave the country.

"An alien in [Kordia's] position can withdraw [her] defense of the removal proceeding

and return to [her] native land, thus ending [her] detention immediately." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999). She "has the keys in [her] pocket." *Id.*

Thus, to the extent Kordia might intend to seek (or in fact be seeking) some kind of discretionary relief against removal (or seek a discretionary bond), she may be *statutorily* entitled to seek such relief, but that does not translate to a *constitutional* liberty interest. *See Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006) ("This circuit has repeatedly held that discretionary relief from removal, including an application for an adjustment of status, is not a liberty or property right that requires due process protection."). For this reason alone, she cannot show a sufficiently weighty liberty interest to support her procedural due process claims relating to the automatic stay or the allocation of the burden of proof.

Indeed, the Supreme Court has explained that when "deportation is sought simply because the time of permitted residence in this country has expired, or the activity for which residence was permitted has been completed" (considerations that apply exactly to Kordia's case), "deportation is necessary to bring to an end *an ongoing violation* of United States law." *AADC*, 525 U.S. at 491. That means the government has a strong interest to stop the ongoing violation of law engendered by Kordia's presence in the country. Kordia, on the other hand, does not have a valid interest in being permitted to reside freely anywhere within the United States without legal status—a situation that would foster exactly the sort of ongoing violation of the law that the Supreme Court noted. In the absence of any such liberty interest, no procedural due process claim is stated relating to the automatic stay provision or the burden of proof.

**2.    Even assuming a sufficient liberty interest, no procedural due process violations are shown.**

Nor can Kordia show any procedural due process violation, even assuming a sufficient liberty interest.  With respect to the automatic stay provision, Kordia complains that it can be invoked "without any procedural protections at all."  (ECF No. 69, ¶ 204.)  But that is not correct—the regulations in fact provide that DHS may only invoke the automatic stay by providing a "certification by a senior legal official that—(i) The official has approved the filing of the notice of appeal according to review procedures established by DHS; and (ii) The official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent."  8 C.F.R. § 1003.6(c)(1).  Such a certification was given in Kordia's case when the automatic stay was first invoked, and appears in the record.  (*See* ECF No. 14-1 at 161.)  DHS also filed a separate nine-page memo, in connection with the stay, explaining its basis for seeking Kordia's continued detention.  (ECF No. 14-1 at 152–60.)  The automatic stay is therefore not standardless and instead has meaningful procedural safeguards.

The automatic stay provision is also consistent with any applicable procedural due process requirements because it is limited in time.  In particularly, the 90-day limit on the detention period authorized by the automatic stay is an additional procedural safeguard that ensures there is no prolonged, unwarranted detention of an alien pursuant to the automatic stay.  *See* 8 C.F.R. § 1003.6(c)(4).  The relatively modest and limited time

period of 90 days is neither excessive nor indefinite in nature so as to run afoul of due

process principles.  In fact, courts have found far longer periods of immigration detention

to pass constitutional muster.  *See Atemafac*, 2021 WL 1972577, at *2 ("Here, the

Petitioner has been in custody for approximately twelve (12) months.  The Court finds

that this period is neither excessive nor of an indefinite nature.  Petitioner will be subject

to removal from the United States or will be granted asylum.  There is no indication that

her custody will last longer than the duration of her removal proceedings.  A twelve-

month period of pre-removal order detention in this case is reasonable."); *see also*

*Barrera-Romero v. Cole*, No. 1:16-CV-148, 2016 WL 7041710, at *5 (W.D. La. Aug. 19,

2016) (20 months); *Kim v. Obama*, No. EP-12-CV-173, 2012 WL 10862140, at *3 (W.D.

Tex. 2012) (one-and-a-half years); *Garcia v. Lacy*, No. H-12-3333, 2013 WL 3805730,

*5 (S.D. Tex. 2013) (27 months).

      The history of the automatic stay provision is also instructive in this regard, and

confirms that any constitutional requirements are satisfied by the current version of the

automatic stay.  Prior to 2006, the automatic stay provision did not include the 90-day

time limit that is now part of the regulation, and instead allowed for truly indefinite

continued detention.  *See* U.S. Dep't of Justice, Review of Custody Determinations, 71

Fed. Reg. 57,873, 57,874–76 (Oct. 2, 2006).  However, after some courts determined that

there were due-process problems associated with the automatic stay's continued

indefinite detention of an alien after an immigration judge had determined that bail was

appropriate,[6] the regulation was amended to add the 90-day limit on the automatic stay, along with other current constraints such as the need for higher-level supervisory approval. *See id.* These provisions adequately protect any possible procedural due-process interests by ensuring that any detention pursuant to the automatic stay is not unlimited in duration and is imposed only upon careful consideration at higher levels within DHS.

In short, due process is not offended by the limited-duration detention of an alien under the automatic stay while DHS's administrative appeal of the immigration judge's bond determination is pending before the Board of Immigration Appeals. As one court has explained, "[a]liens like Petitioner who are detained under § 1226(a) receive numerous procedural protections," and "[a]lthough § 1226(a) does not grant Petitioner an automatic right to release while her immigration proceedings are pending . . . it grants her a number of meaningful opportunities to raise arguments in support of her release." *Atemafac*, 2021 WL 1972577, at *2. Whatever procedural requirements the due process clause imposes with respect to the automatic stay are satisfied here.[7]

Finally, Kordia claims that procedural due process is violated by allocating the

---

[6] *See, e.g.*, *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 673–74 (D.N.J. 2003).

[7] Additionally, even if the automatic stay provision were assumed to violate due process, that would not preclude the government from continue to detain Kordia (or re-detaining her) under other applicable authority. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004) (ordering the unlimited automatic stay under a prior version of the regulation to be dissolved at a date one week after the court's ruling, so as to "afford the Government an opportunity" to seek an administrative order for the alien's detention under different authority); I, 288 F. Supp. 2d 662, 675 (D.N.J. 2003) (vacating an automatic stay under the prior version of the regulation but then staying that vacatur order for 30 days to give an opportunity for the government to seek other administrative relief to secure the alien's detention by other means).

burden of proof to her to show an entitlement to bond in the administrative removal proceedings. (ECF No. 69, ¶¶ 208–18) As an initial matter, though, this claim fails because Kordia fails to show any prejudice to her by reason of this allocation of the burden of proof. That is because, regardless of the burden of proof, the immigration judge and the Board of Immigration Appeals have thus far ruled in her favor on the issue of whether her protest activities show dangerousness, and the immigration judge has also now ruled in her favor by again granting bond on remand from the Board of Immigration Appeals. (ECF No. 71-1 at 113, 173.)

Furthermore, the single case Kordia cites from within the Fifth Circuit in support of this burden-of-proof claim, a district court decision out of the Western District of Texas, in inapposite and in fact shows why Kordia's claim here fails. (*See* ECF No. 69, ¶ 214 (citing *Ayobi v. Castro*, No. SA-19-CV-01311-OLG, 2020 WL 13411861, at *7 (W.D. Tex. Feb. 25, 2020)).) In *Ayobi*, the court considered an alien "who (i) had no criminal record, (ii) had been detained at that point for nearly two years, (iii) was facing additional detention as the result of reversible error by the immigration court, (iv) was being held in a prison-like facility, and (v) had a non-negligible chance of receiving relief from removal in the underlying immigration proceedings," and held that "at that point and under those circumstances, the Due Process Clause entitled [the alien] to an individualized bond hearing at which the government bore the burden of justifying his continued detention." 2020 WL 13411861, at *7. Kordia's situation is in no way similar. Among other things, she has been detained for a far shorter period of time (less than six months), and she does have a criminal record insofar as she was arrested and charged

with a crime in connection with her activities at a protest event in New York City (with the charges later dropped).  (*See* ECF No. 69, ¶ 3, 5.)  Under these circumstances, Kordia fails to show any constitutional defect in allocating to her the burden of proof in the bond proceedings.[8]  And, it is also clear that presumptions in favor of detention are not, in and of themselves, constitutionally problematic as a facial matter.  *Cf.* 18 U.S.C. § 3142(e)(2) (establishing a rebuttable presumption for detention pending trial in connection with certain criminal charges).

## IV.    Conclusion

Kordia is not entitled to any writ of habeas corpus, and her amended petition should be dismissed and/or denied.

---

[8] Moreover, even if there were some constitutional defect in the burden of proof, the remedy would at most be that a new bond hearing with the appropriate burden of proof would need to be held, not that Kordia is simply released by order of this Court.  *See Ayobi*, 2020 WL 13411861, at *9.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Ann E. Cruce-Haag
Assistant United States Attorney
Texas Bar No. 24032102
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone:  (806) 472-7351
Facsimile:  (806) 472-7394
ann.haag@usdoj.gov

Attorneys for Respondents

<u>Certificate of Service</u>

On September 2, 2025, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court.  I hereby certify that I have served all parties

electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney