UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| LEQAA KORDIA, | § | |
| | § | |
| | § | |
| Petitioner-Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-1072-L-BT |
| | § | |
| KRISTI NOEM et al., | § | |
| | § | |
| Respondents-Defendants. | § | |
| | § | |
| | § | |

**PETITIONER'S REPLY IN SUPPORT OF HER
AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 3

    A.    The Court Has Jurisdiction Over Ms. Kordia's First Amendment and Substantive Due Process Claims. ........................................................................................ 4

        1.    Neither Section 1226(e) nor 1252(a)(2)(B)(ii) strips jurisdiction................... 5

        2.    No practical problems would arise from exercising jurisdiction. .................... 9

        3.    Refusing to exercise jurisdiction would raise serious constitutional problems the Supreme Court has instructed this Court to avoid. .................................. 12

    B.    The Court Should Grant the Amended Petition on Ms. Kordia's First Amendment Claim. .................................................................................................................. 13

        1.    Undisputed evidence demonstrates that Ms. Kordia's confinement violates the First Amendment. ......................................................................................... 14

        2.    Respondents have not met their burden under Mt. Healthy as a matter of law. ……………………………………………………………………………...18

    C.    The Court Should Grant the Amended Petition on Ms. Kordia's Substantive Due Process Claim. ....................................................................................................... 20

    D.    No Exhaustion Requirement Applies, and Ms. Kordia Satisfied Any Exhaustion Requirement that Could Apply. ......................................................................... 22

    E.    The Court Should Grant the Amended Petition on Ms. Kordia's Procedural Due Process Claims. ........................................................................................... 24

        1.    The automatic stay violates Ms. Kordia's procedural due process rights....... 24

        2.    The allocation of the burden of proof violates Ms. Kordia's procedural due process rights. ......................................................................................... 29

III. CONCLUSION ............................................................................................................ 30

CERTIFICATE OF SERVICE .......................................................................................... 32

## TABLE OF AUTHORITIES

**Cases**

*Aditya W. H. v. Trump*,
782 F. Supp. 3d 691 (D. Minn. 2025) ................................................................. 11, 17

*Ahmed v. Gonzales*,
447 F.3d 433 (5th Cir. 2006) ..................................................................................... 26

*Anicasio v. Kramer*,
No. 25-cv-3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) .................................. 25

*Ayobi v. Castro*,
No. 19-cv-01311, 2020 WL 13411861 (W.D. Tex. Feb. 25, 2020) ........................... 29

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021) ..................................................................................... 13

*Boumediene v. Bush*,
553 U.S. 723 (2008) ................................................................................................... 12

*Cantu-Delgadillo v. Holder*,
584 F.3d 682 (5th Cir. 2009) ..................................................................................... 23

*Cardoso v. Reno*,
216 F.3d 512 (5th Cir. 2000) ..................................................................................... 24

*Carmona-Lorenzo v. Trump,*
No. 25-cv-3172, 2025 WL 2531521 (D. Neb. Sep. 3, 2025) ..................................... 25

*Demore v. Kim*,
538 U.S. 510 (2003) ................................................................................................. 5, 6

*Ercelik v. Hyde*,
No. 1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025) .............................. 17

*Feist v. La. Dep't of Just., Off. of the A.G.*,
730 F.3d 450 (5th Cir. 2013) ..................................................................................... 16

*Fernandez v. Lyons*,
No. 8:25-cv-506, 2025 WL 2531539 (D. Neb. Sep. 3, 2025) ..................................... 25

*Gallegos-Hernandez v. United States*,
688 F.3d 190 (5th Cir. 2012) ................................................................................. 22, 23

*Garcia Jimenez v. Kramer*,
No. 4:25-cv-3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025)...................................................... 25

*Gilani v. Gonzales*,
206 F. App'x 381 (5th Cir. 2006) ................................................................................................ 23

*Gul v. Rozos*,
163 F. App'x 317 (5th Cir. 2006) .................................................................................................. 9

*Günaydın v. Trump*,
No. 25-cv-01141, 2025 WL 1459154 (D. Minn. May 21, 2025) ...................................... 25, 27, 28

*Gutierrez-Soto v. Sessions*,
317 F. Supp. 3d 917 (W.D. Tex. 2018) ................................................................................ 7, 8, 12

*Hamdi v. Rumsfeld*,
542 U.S. 507 (2004) ....................................................................................................................... 5

*Hernandez-Esquivel v. Castro*,
No. 5-17-cv-0564, 2018 WL 3097029 (W.D. Tex. June 22, 2018)................................................. 9

*Hernandez-Lara v. Lyons*,
10 F.4th 19 (1st Cir. 2021)..................................................................................................... 29, 30

*Herrera Torralba v. Knight*,
No. 2:25-cv-03166, 2025 WL 2581792 (D. Nev. Sept. 2, 2025)................................................. 25

*INS v. St. Cyr*,
533 U.S. 289 (2001)........................................................................................................................ 5

*Jacinto v. Trump*,
No. 4:25-cv-3161, 2025 WL 2402271 (D. Neb. Aug. 19, 2025)............................................ 25, 28

*Jackson v. Indiana*,
406 U.S. 715 (1972)...................................................................................................................... 21

*Jennings v. Rodriguez*,
583 U.S. 281 (2018),....................................................................................................................... 6

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002) ....................................................................................................... 13

*Leal-Hernandez v. Noem*,
No. 1:25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025)............................... 21, 25, 27, 28

*Loa-Herrera v. Trominski*,
231 F.3d 984 (5th Cir. 2000) .................................................................................... 9

*Lozman v. Riviera Beach*,
585 U.S. 87 (2018) ........................................................................................... 8, 19

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ....................................................................... 7, 10, 13, 17

*Mahdawi v. Trump*,
781 F. Supp. 3d 214 (D. Vt. 2025) ..................................................................... 17, 21

*Maramba v. Mukasey*,
No. 3:08-cv-351-K, 2008 WL 1971378 (N.D. Tex. Apr. 28, 2008) .................................. 9

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................................ 24

*Matter of Adeniji*,
22 I. & N. Dec. 1102 (B.I.A. 1999) ........................................................................ 21

*Matter of C-*,
20 I & N 529 (1992) ............................................................................................ 23

*McCarthy v. Madigan*,
503 U.S. 140 (1992) ............................................................................................ 23

*Mohammed H. v. Trump*,
781 F. Supp. 3d 886 (D. Minn. 2025) ...................................................................... 21

*Mohammed H. v. Trump*,
No. 25-cv-1576, 2025 WL 1692739 (D. Minn. June 17, 2025) ............................... passim

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274 (1977) ............................................................................................ 14

*Najera v. United States*,
926 F.3d 140 (5th Cir. 2019) ............................................................................. 8, 9

*Nat'l Rifle Assoc. v. Vullo*,
602 U.S. 175 (2024) ............................................................................................ 18

*Oyelude v. Chertoff*,
125 F. App'x 543 (5th Cir. 2005) ........................................................................... 22

*Öztürk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ............................................................ 7, 10, 16, 17

*Öztürk v. Trump*,
779 F. Supp. 3d 462 (D. Vt. 2025) ............................................................ 12, 16

*Öztürk v. Trump*,
No. 2:25-cv-374, 2025 WL 1420540 (D. Vt. May 16, 2025) ...................................... 16

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) ................................................................ 26

*Pensamiento v. McDonald*,
315 F. Supp. 3d 684 (D. Mass. 2018) ........................................................ 29

*Perez v. Berg*,
No. 25-cv-494, 2025 WL 2541566 (D. Neb. Sep. 3, 2025) .................................... 25

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ........................................................................ 9, 10

*Robinson v. Jackson State Univ.*,
714 F. App'x 354 (5th Cir. 2017) ............................................................ 16

*Singh v. ICE*,
No. 22-cv-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023) ................................ 23

*Suri v. Trump*,
No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025) ................................ 17

*Suri v. Trump*,
No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) ................................ 7, 11, 17

*Tran v. Mukasey*,
515 F.3d 478 (5th Cir. 2008) ................................................................ 22

*Wang v. Ashcroft*,
260 F.3d 448 (5th Cir. 2001) ................................................................ 24

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................................................ 12

*Weinberg v. Salfi*,
422 U.S. 749 (1975) ........................................................................ 12

*Zadvydas v. Davis*,
553 U.S. 678 (2001) ...................................................................................... passim

## Statutes

28 U.S.C. § 2241 ................................................................................................. 4
8 U.S.C. § 1226(a) ............................................................................... 3, 4, 8, 13
8 U.S.C. § 1226(e) ...................................................................................... passim
8 U.S.C. § 1231(a) ...................................................................................... 6, 7, 9
8 U.S.C. § 1252(a) ...................................................................................... passim
8 U.S.C. § 1252(g) ............................................................................................ 10

## Other Authorities

Appellees' Br., *Najera v. United States*, No. 17-41212, 2018 WL 2722721 (5th Cir. May 11, 2018) ................................................................................................................. 8
*Sampio v. Hyde*, 1:25-cv-11981, Dkt. 27 (D. Mass. Sept. 9, 2025) ................ 25
TEX. DISCIPLINARY R. PROF'L CONDUCT 3.01 ................................................. 27
U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3 ......... 13

## Rules

Fed. R. Civ. P. 54 ............................................................................................... 3

## Regulations

8 C.F.R. § 1003.19 .................................................................................. 2, 13, 24
8 C.F.R. § 1003.6 ............................................................................................. 27
8 C.F.R. § 236.1 ............................................................................................... 13

Petitioner, Leqaa Kordia, respectfully requests this Court grant the Amended Petition for Writ of Habeas Corpus, Dkt. 69 ("Am. Pet." or "Amended Petition"), and order Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Josh Johnson, and Thomas Bergami ("Respondents") to immediately release Ms. Kordia from custody.

## I.    INTRODUCTION

This case presents three straightforward bases to grant the Amended Petition and order Ms. Kordia's immediate release.

**First,** the First Amendment. Respondents have not submitted *any* evidence controverting the existence of the current administration's institution of a policy to use civil immigration confinement to punish and suppress the protected expression of Ms. Kordia and countless others advocating for Palestinian rights. Respondents take the astonishing position that their confinement of Ms. Kordia is necessarily lawful because it is based on a discretionary, statutory authority to confine people chargeable as removable—end of story. Not so. The government's use of immigration confinement to chill and censor expression it does not like is a textbook viewpoint-based restriction on speech that violates the First Amendment. Recognizing the government's assault of protected expression for what it is, courts around the country have granted habeas relief in closely similar cases. This Court should do the same.

**Second,** substantive due process. Even if Ms. Kordia's confinement is not punishment for protected speech, Respondents have failed to substantiate *any* legally cognizable basis to justify her continued confinement. In fact, on the administrative record, the Department of Homeland Security ("DHS") recently (1) conceded that it has no public safety rationale for Ms. Kordia's confinement and (2) baldly asserted that flight risk somehow makes her unreleasable but without substantiating why any supposed flight risk could not be addressed through the $20,000 bond the immigration judge set and that Ms. Kordia's family stands ready to pay. Instead, DHS is subjecting

Ms. Kordia to administratively unreviewable confinement on the basis of its unilateral filing of a slip of paper to invoke the automatic stay provision codified at 8 C.F.R. § 1003.19. To deprive any person's liberty, including through civil immigration confinement, the government must offer some cognizable basis to justify ongoing confinement. Respondents have offered none, violating Ms. Kordia's substantive due process rights under the Fifth Amendment and requiring her immediate release.

**Third,** procedural due process. As Magistrate Judge Rebecca Rutherford and scores of other Courts have recently held, the automatic stay provision violates Ms. Kordia's procedural due process rights by perpetuating her confinement without any administrative procedure whatsoever to contest its basis. Thus, at a minimum, the Court should order Ms. Kordia's immediate release pending DHS's appeal of the immigration judge's order finding Ms. Kordia releasable on a $20,000 bond.

Respondents' primary response goes to jurisdiction and remedy. On jurisdiction, they claim the Court lacks power even to consider Ms. Kordia's First Amendment and substantive due process claims, no matter how viewpoint-discriminatory, punitive, retaliatory, or arbitrary their confinement of her is. That is wrong under binding Supreme Court and Fifth Circuit law and threatens the essential separation of powers for which habeas jurisdiction is an ancient and crucial safeguard.

As to remedy, in a footnote, Respondents suggest that granting relief on Ms. Kordia's procedural due process claims should not result in her release. But the record in this case amply demonstrates that Respondents' proposed remedy would be no remedy at all. Indeed, Respondents' last-minute procedural gamesmanship at the preliminary injunction stage has already delayed relief by several months. Any remedy short of release would be toothless.

The Court should grant the Amended Petition and order Ms. Kordia's immediate release on these bases. But should the Court require additional time to consider some of Ms. Kordia's claims, it can still immediately order Ms. Kordia's release on partial judgment while it considers her remaining claims more fully. Fed. R. Civ. P. 54; *see also* Dkt. 73.

## II.    ARGUMENT

The Court should grant Ms. Kordia's Amended Petition and order her immediate release from custody. Respondents did not introduce any evidence to controvert Ms. Kordia's Amended Petition and accompanying Appendix, Dkts. 69, 71, or any of the evidence accompanying her recent motion for a temporary restraining order, Dkts. 73, 74. That undisputed evidence establishes that DHS has conceded that it has no public-safety justification for confining Ms. Kordia and that it declined to cross-examine Ms. Kordia at her August 28, 2025, bond hearing, in which the immigration judge again found her releasable on bond. Dkts. 73, 74.[1]

Instead, Respondents raise numerous legal arguments, Dkt. 76 ("Resp."), which the Court should reject for the following reasons: (A) This Court has habeas jurisdiction because Ms. Kordia's substantive due process and First Amendment claims challenge the extent of the government's authority under 8 U.S.C. § 1226(a), not its exercise of discretion within its lawful authority; (B) Ms. Kordia's confinement violates the First Amendment because Respondents have not demonstrated by a preponderance of the evidence that they would be confining her in the absence of her protected speech; (C) Ms. Kordia's confinement violates her right to substantive due process under the Fifth Amendment, because her confinement is unconstitutional punishment and otherwise does not serve any lawful interest; (D) No exhaustion requirement applies to Ms.

---

[1] In light of DHS's re-invocation of the automatic stay provision, Ms. Kordia moved for a temporary restraining order, Dkt. 73, which Judge Rutherford consolidated with her consideration of the merits of the amended habeas petition, Dkt. 77.

Kordia's First Amendment and substantive due process claim because the agency lacks jurisdiction to consider those claims, making exhaustion futile; and (E) The automatic stay provision and the imposition of the burden of proof onto Ms. Kordia within her administrative custody proceedings violate Ms. Kordia's procedural due process rights under the Fifth Amendment because they create an impermissible risk that Respondents are erroneously depriving her of her physical liberty.

### A. The Court Has Jurisdiction Over Ms. Kordia's First Amendment and Substantive Due Process Claims.

Ms. Kordia's First Amendment and substantive due process claims fit squarely within this Court's habeas jurisdiction. 28 U.S.C. § 2241. Respondents' arguments to the contrary have been a moving target. First, in their preliminary injunction brief, they took the radical view that 8 U.S.C. § 1226(a), which permits them to "arrest[] and detain[]" noncitizens pending removal proceedings, grants "the government discretion to decide whether to detain or release" Ms. Kordia for any reason—including her First Amendment activity, her religion, or the color of her skin. Dkt. 28 at 13.[2] Then, at oral argument, they retreated from that view and hypothesized that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) permit "framework" challenges but foreclose "individualized" challenges. June 5, 2025, Hr'g Tr. at 35:9–14, 40:6–41:17, Dkt. 51. Now, in addressing the merits, Respondents seem not to know what their jurisdictional dividing line is. They now recognize that at least some individualized claims are permissible, Resp. at 21–22 (discussing *Zadvydas v. Davis*, 553 U.S. 678 (2001)), but argue that such challenges are justiciable only if they rely on "objective evidence," *id.* at 22.

For all Respondents' shape-shifting on jurisdiction, the Supreme Court, Fifth Circuit, and District Courts within the Fifth Circuit have been remarkably clear: Neither 8 U.S.C. § 1226(e)

---

[2] All page citations for docket entries are to the ECF-generated page number at the top of the document, rather than the page numbers in the footer of the document.

nor § 1252(a)(2)(B)(ii) forecloses jurisdiction when a habeas petitioner brings a constitutional challenge to the extent of the government's confinement power. And the practical problems Respondents assert with exercising jurisdiction in such cases either do not exist or are vastly overstated. Finally, refusing to exercise jurisdiction would raise serious constitutional problems the Supreme Court has instructed lower courts to avoid by exercising jurisdiction.

>    1.  *Neither Section 1226(e) nor 1252(a)(2)(B)(ii) strips jurisdiction.*

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "And, where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (citing *INS v. St. Cyr*, 533 U.S. 289, 308–309 (2001)). Respondents contend that sections 1226(e) and 1252(a)(2)(B)(ii) strip this Court's habeas jurisdiction. Section 1226(e) prohibits review of the government's "discretionary judgment" regarding the "detention of any [noncitizen]." 8 U.S.C. § 1226(e). Section 1252(a)(2)(B) limits judicial review of "[d]enials of discretionary relief" by prohibiting courts from reviewing "any other decision or action . . . specified . . . to be in the discretion of" the government. *Id.* § 1252(a)(2)(B)(ii). But the Supreme Court, Fifth Circuit, and District Courts within the Fifth Circuit have all consistently recognized that sections 1226(e) and 1252(a)(2)(B) only preclude judicial review of certain decisions made by immigration officials pursuant to their lawful exercise of discretion, not constitutional challenges to the extent of the government's authority.

For more than two decades, the Supreme Court has permitted constitutional challenges to the government's power to undertake civil immigration confinement as consistent with these provisions, because such challenges contest neither a "discretionary judgment," *id.* § 1226(e), nor a "decision or action . . . in the discretion" of the government, *id.* § 1252(a)(2)(B)(ii). *See, e.g.*,

*Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("[H]abeas corpus proceedings remain available []
for statutory and constitutional challenges to post-removal-period detention.").

In *Zadvydas*, the Supreme Court considered section 1252(a)(2)(B)(ii)'s application to a
habeas petitioner's challenge to his confinement under 8 U.S.C. § 1231(a)(6), which says the
government "'may' continue to detain [a noncitizen]" during the "post-removal-period."
*Zadvydas*, 553 U.S. at 683 (quoting 8 U.S.C. § 1231(a)(6)). The government argued that the
petitioner's confinement was discretionary and that the court lacked jurisdiction. *Id.* at 688. The
Court rejected that argument by distinguishing between "exercise[s] of discretion" and challenges
to "the extent of the [government's]" authority." *Id.* Section 1252(a)(2)(B)(ii) bars the former but
not the latter because "the extent of that [detention] authority is not a matter of discretion." *Id.*
Here, Ms. Kordia's claims turn on the extent of Respondents' confinement power, not how they
have weighed lawful considerations. Thus, the Court has jurisdiction.

The same is true of section 1226(e). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the
petitioners comprised classes of people held respectively under various statutes governing pre-
removal immigration confinement, including section 1226(a). *Id.* at 291. The plurality found it had
jurisdiction to consider the merits of the challenge, reasoning that "§ 1226(e) does not preclude
'challenges [to] the statutory framework,'" *id.* at 295 (quoting *Demore*, 538 U.S. at 516), because
"the extent of the Government's detention authority is not a matter of 'discretionary judgment,'
'action,' or 'decision,'" *id.* at 296 (quoting *Demore* 538 U.S. at 517).

Ms. Kordia's First Amendment and substantive due process claims are exactly the kinds of
claims the Supreme Court has said this Court has jurisdiction to review, because they challenge
whether the government has the authority to use its immigration confinement power to suppress
First Amendment activity or otherwise confine someone without a legally cognizable basis. *See*

*Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 925 (W.D. Tex. 2018) ("[The] First Amendment claim[] charge[s] the Attorney General with exceeding his lawful authority."). Three different circuits have considered and rejected similar jurisdictional arguments from the government attempting to foreclose their review. *See Öztürk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025); *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *8 (4th Cir. July 1, 2025); Am. Pet. App. at 303 (PX 23, *Khalil v. Joyce*, Nos. 25-2162, 25-2357 (3d Cir. July 30, 2025)).[3] The Court should do the same here by exercising jurisdiction over Ms. Kordia's challenges to the extent of the government's authority under section 1226(a).

Respondents raise several counterarguments, none of which withstand scrutiny. First, Respondents now concede that *Zadvydas* permits at least some individualized constitutional claims. *Compare* June 5, 2025, Hr'g Tr. at 40:20–41:9, Dkt. 51 *with* Resp. at 22. They attempt to distinguish Ms. Kordia's claim on the basis that *Zadvydas* involved "objective evidence," whereas her claims, they argue, turn on subjective motivations. Resp. at 22. This is both legally and factually incorrect. An "objective evidence" dividing line basis finds no support in *Zadvydas* itself, the statutory text, or Fifth Circuit case law. In *Zadvydas*, the Supreme Court was considering whether the government had a "sufficiently strong special justification" based on the government's "two regulatory goals" to justify continued confinement under 8 U.S.C. § 1231(a)(6). 533 U.S. at 690. That is indistinguishable from Ms. Kordia's substantive due process claim, for example, which challenges whether Respondents have a legally cognizable interest in continuing her confinement. Nor does the "objective evidence" distinction appear anywhere in the texts of sections 1226(e) and 1252(a)(2)(B)(ii). These jurisdiction-stripping provisions bar review of

---

[3] Citations to "Am. Pet. App." refer to the Appendix filed at Dkt. 71. Citations to "TRO App." refer to the Appendix filed at Dkt. 74.

discretionary decisions—not constitutional challenges to the scope of the government's authority to confine. *See Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d at 925. Ms. Kordia's claims fall squarely within the Court's habeas jurisdiction.

But even if some objective evidence requirement did apply, Ms. Kordia's First Amendment claims are supported by precisely the kind of objective evidence courts routinely rely on in constitutional litigation—executive orders, public statements by DHS targeting her protected political activity, internal DHS memoranda, and a pattern of DHS enforcement actions designed to suppress protected expression of noncitizens. *Infra* § B.1. Therefore, her First Amendment claims are supported by "objective evidence of a policy motivated by retaliation." *Lozman v. Riviera Beach*, 585 U.S. 87, 100 (2018). Similarly, her substantive due process relies on this same kind of objective evidence. *Infra* § II.C.

Next, Respondents claim *Jennings* only permits "'framework' challenges," Resp. at 24, but this argument is foreclosed by the Fifth Circuit's decision in *Najera v. United States*, 926 F.3d 140 (5th Cir. 2019). There, an individual noncitizen claimed his arrest and detention pursuant to 8 U.S.C. § 1226(a) "violate[d] the federal [Temporary Protected Status] statute." *Id.* at 144.[4] The Fifth Circuit held that section 1226(e) did not bar its "authority to review statutory and constitutional challenges" to immigration confinement. Here, Respondents attempt to distinguish *Najera* as involving a person "wrongfully detained even though he possessed 'temporary protected status' that allowed him to live and work in the country." Resp. at 23 n.3. That is a distinction without a difference because *Najera* demonstrates that, even though 8 U.S.C. § 1226(a) gives the Attorney General broad discretion, federal courts may evaluate the constitutional and statutory

---

[4] The government's appellate brief in *Najera* makes clear that the confinement at issue was under 8 U.S.C. § 1226(a), the same provision that Respondents here assert as the basis for Ms. Kordia's confinement. *See, e.g.*, Appellees' Br., *Najera v. United States*, No. 17-41212, 2018 WL 2722721, at *28 (5th Cir. May 11, 2018).

limits of that authority in individual cases, whether under the Temporary Protected Status statute or the First Amendment of the Constitution.

Lastly, none of the cases Respondents cite support their broad interpretation of sections 1226(e) and 1252(a)(2)(B)(ii). Respondents' principle case, *Loa-Herrera v. Trominski*, 231 F.3d 984 (5th Cir. 2000), pre-dates *Zadvydas*, *Jennings*, and *Najera*. Recognizing the Supreme Court's binding interpretation of section 1226(e) in these cases, the Fifth Circuit later concluded that "§ 1226(e) did not strip the district court of jurisdiction" to review constitutional and statutory challenges to detention. *Najera*, 926 F.3d at 143–44; *see also Gul v. Rozos*, 163 F. App'x 317, 318–19 (5th Cir. 2006) (finding jurisdiction over challenge to discretionary confinement under 8 U.S.C. § 1231(a)(6)).

Respondents' remaining cases only hurt their position. Respondents cite *Maramba v. Mukasey*, No. 3:08-cv-351-K, 2008 WL 1971378 (N.D. Tex. Apr. 28, 2008), and *Hernandez-Esquivel v. Castro*, No. 5-17-cv-0564, 2018 WL 3097029 (W.D. Tex. June 22, 2018), Resp. at 17–18, but both expressly exercised jurisdiction over constitutional challenges to otherwise discretionary confinement under sections 1226(a) and 1231(a)(6), respectively. *See Maramba*, 2008 WL 1971378, at *4 ("[F]ederal district courts have habeas jurisdiction to review constitutional and statutory challenges to detention." (collecting cases)); *Hernandez-Esquivel*, 2018 WL 3097029, at *2 ("[H]is habeas claims . . . do not involve a challenge to any discretionary decision[.]").

## 2.  *No practical problems would arise from exercising jurisdiction.*

Respondents also suggest, unmoored from any statutory text, that this Court should decline to exercise jurisdiction because Ms. Kordia's First Amendment and substantive due process claims are "particularly ill-suited to judicial review." Resp. at 20. To make that argument, respondents rely heavily on *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471 (1999).

Curiously, despite spending multiple pages discussing *AADC*, Respondents fail to cite the immigration provision at issue in that matter. *Cf.* Resp. at 13–15.

*AADC* was primarily concerned with the interpretation of 8 U.S.C. § 1252(g). Section 1252(g) is "narrow[ly]" tailored and "applies only to three discrete actions" that are subject to the Attorney General's discretion: "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *AADC*, 525 U.S. at 482 (citing 8 U.S.C. § 1252(g)). While there are "many other decisions or actions that may be part of the deportation process," *id.* at 482, they do not fall within 1252(g)'s limited scope because they do not interfere with "the Attorney General's exercise of prosecutorial discretion"—the "particular evil" that section 1252(g) "was directed against.," *id.* at 485 n.9; *accord Mahdawi*, 136 F.4th at 450.

*AADC*, then, is inapplicable to Ms. Kordia's claims, because, as the Second Circuit made clear in *Öztürk,* "her petition challenges unlawful **detention**, pending [removal] proceedings," not the decision to "commence proceedings, adjudicate cases, or execute removal orders" under 8 U.S.C. § 1252(g). 136 F.4th at 397. Respondents' invocation of prosecutorial discretion, Resp. at 20, is thus a mirage. As *Öztürk* emphasizes, claims of unlawful and retaliatory confinement are "independent of, and collateral to, the removal process," and therefore fall outside the jurisdictional bar. 136 F.4th at 397.

Nor does Respondents' parade of horribles match reality. *Cf.* Resp. at 20–21. They argue that adjudicating Ms. Kordia's First Amendment and substantive due process claims would require "examining the basis of a prosecution," thereby "threaten[ing] to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry." *Id.* at 20.  On that view, this case could require testimony from members of the Board of Immigration Appeals ("BIA") or the Attorney General herself. *Id.* But courts can and do account for the sensitive

government interests underlying immigration enforcement "without abdicating their legal responsibility to review the lawfulness of [a noncitizen's] continued detention." *Zadvydas*, 533 U.S. at 700.

Moreover, Ms. Kordia's substantive due process and First Amendment claims do not require such inquiry to the motives of high-level decision-makers. For example, multiple habeas courts have granted relief regarding substantive due process claims without taking any testimony. *See, e.g.*, *Mohammed H. v. Trump*, No. 25-cv-1576, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) (deciding on written submission: "Petitioner has established, and the Government has not sufficiently rebutted, that his detention is rooted in improper purposes and lacks an individualized legal justification."); *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025) (deciding on written submission where "[n]either side [] requested an evidentiary hearing"). Respondents' position is also inconsistent with its own litigation strategy in this matter—so far, Respondents have declined to factually contravene a single assertion made by Ms. Kordia with respect to their reasons for initially confining her and for keeping her confined since her arrest. Respondents have also declined, over a period of several months, to point to any evidence that would support cognizable legal justification for Ms. Kordia's continued detention, let alone one that could not be addressed by a $20,000 the immigration judge ordered.

Nor is there anything "novel about immigration detainees filing habeas petitions challenging their present confinement." *Suri*, 2025 WL 1806692, at *8. By contrast, Respondents' position that the Court should "permit[] the government to unconstitutionally detain noncitizens. . . leaving them to await the outcome of removal proceedings[,] presents a far greater risk of severe systemic damage" than allowing Ms. Kordia's claims to proceed. *Id.*

3. *Refusing to exercise jurisdiction would raise serious constitutional problems the Supreme Court has instructed this Court to avoid.*

Lastly, if the Court has any lingering doubts, the Supreme Court has instructed it to resolve those doubts in favor of finding habeas jurisdiction. Respondents' argument is that, even if Ms. Kordia is confined in retaliation for exercising her First Amendment rights or they lack any cognizable legal interest in her confinement, there is nothing the Court can do about it "whether through habeas or otherwise." Resp. at 21. The Supreme Court, though, has expressly instructed courts "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (quoting *Weinberg v. Salfi*, 422 U.S. 749, 762 (1975)). That is exactly what Respondents' argument does—it construes sections 1226(e) and 1252(a)(2)(B)(ii) to mean "no jurisdiction exists for [Ms. Kordia's] First Amendment and substantive due process claims." Resp. at 15.

The Suspension Clause requires that "the writ must be effective," meaning "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). In contravention of this vital protection, Respondents' position "boils down to a bold statement that no matter how egregious the type or quantity of First Amendment or due process violations committed by the government in detaining an individual, an Article III court *cannot* consider any alleged constitutional violations." *Öztürk v. Trump*, 779 F. Supp. 3d 462, 486 (D. Vt. 2025). Respondents' interpretation would thus violate the Suspension Clause by preventing Ms. Kordia (or any other noncitizen) from using the writ to "contest the legality of executive detention." *Boumediene*, 553 U.S. at 802; *see also Gutierrez-Soto*, 317 F. Supp. 3d at 926 ("[B]arring habeas jurisdiction with regard to Petitioners' [] First Amendment claim[], [] would implicate

12

constitutional concerns[.]").

Nor can Ms. Kordia raise these claims through the administrative custody process or to the Fifth Circuit via a petition for review. Neither the BIA nor the immigration judge have jurisdiction to review the constitutional claims presented here. *Infra* § II.D. And the Fifth Circuit's jurisdiction on a petition for review will not include any custody proceedings because the custody proceedings will not be incorporated into any final removal order the Court of Appeals would review. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(d); U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3(e), (f) (last visited July 6, 2026), *available at* https://www.justice.gov/eoir/reference-materials/ic/chapter-9/3 [https://perma.cc/9A6W-AG9U]. "This means that …[the] court[] of appeal would not have a sufficient record to assess the constitutionality of the government's conduct" as to Ms. Kordia's confinement. *Mahdawi*, 136 F.4th at 452.

Respondents' broad and shifting jurisdictional arguments misread sections 1226(e) and 1252(a)(2)(B)(ii), conflict with Supreme Court and Fifth Circuit precedent, raise more practical problems than they solve, and leave Ms. Kordia without any remedy, in this Court or otherwise. That result is wrong, and the Court should reject it by exercising jurisdiction over Ms. Kordia's First Amendment and substantive due process claims.

## B. The Court Should Grant the Amended Petition on Ms. Kordia's First Amendment Claim.

To succeed on her First Amendment claim, Ms. Kordia must demonstrate that (1) she engaged in protected activity; (2) her confinement would "chill a person of ordinary firmness from continuing to engage in that activity;" and (3) her confinement is "substantially motivated against [her] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002); *see also Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021) (applying the same

three-part framework to First Amendment retaliation claim challenging "revocation of [noncitizen's] bond"). If Ms. Kordia makes this *prima facie* case, then the burden shifts to Respondents to prove "by a preponderance of the evidence that [they] would have" confined Ms. Kordia "even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Respondents only contention is that, because Ms. Kordia's visa expired, they had a lawful basis to initiate removal proceedings, which, they take to me mean that the Court should permit the administrative process to go forward, ignoring her claims of unlawful confinement. Resp. at 26–28. That is factually and legally wrong: (1) Ms. Kordia has presented undisputed evidence demonstrating that her confinement is viewpoint-based discrimination in violation of the First Amendment; and (2) in light of that evidence, a lawful basis for *initiating* removal proceedings is legally insufficient to meet Respondents' burden to show they would have confined Ms. Kordia in the absence of her protest activity.

1. *Undisputed evidence demonstrates that Ms. Kordia's confinement violates the First Amendment.*

It is undisputed that Ms. Kordia has established the first two elements of her First Amendment claim. First, she engaged in protected activity by attending demonstrations in support of Palestinian rights. Am. Pet. ¶¶ 31–38. Second, physical confinement would chill a person of ordinary firmness from attending similar demonstrations in the future. Indeed, Respondents do not contest that the confinement of Ms. Kordia and other similarly situated individuals is, in fact, chilling the protected expression not only of Ms. Kordia, but also of students, scholars, journalists, and university professors, among others. *Id.* ¶¶ 141–50.[5]

As to causation, Respondents suggest, without evidence, that the basis for Ms. Kordia's

---

[5] Citations to the Amended Petition expressly incorporate by reference the accompanying evidence cited therein.

14

confinement is a lapse in her student visa. The crux, then, of the First Amendment issue is whether

the lapse in her visa adequately explains Respondents' continued confinement of Ms. Kordia under

*Mt. Healthy*. The record decisively demonstrates it does not, including:

- Since his inauguration, President Trump has made good on his campaign promise to "set that movement [for Palestinian rights] back 25 or 30 years." Am. Pet. ¶ 43. For example, on January 29, 2025, he issued an executive order directing agency heads to "identify[] all civil and criminal authorities . . . that might be used to combat anti-Semitism." The Executive Order also specifically authorizes DHS and the Secretary of State to investigate and remove noncitizens believed to be engaged in "antisemitic" activity. *Id.* ¶ 45. "Antisemitism," though, is defined to include lawful, protected expression, such as "claiming that the existence of a State of Israel is a racist endeavor." *Id.* ¶ 46.

- To implement that executive order, and other similar mandates, executive branch departments began holding interagency meetings to discuss "student protestors." *Id.* ¶ 50. In early March, DHS's Homeland Security Investigations established a "Tiger Team" that reviewed information on those believed to be "student protestors," whom the Tiger Team identified, in part, through arrest records from protests near university campuses. *Id.* ¶ 54.

- As part of their investigation into protestors, Tiger Team officers would surveil and track the relevant protestor, such as by visiting their known addresses. *Id.* ¶ 56. Tiger Team officers would then either recommend the person for visa revocation or otherwise take enforcement action against the person. *Id.* ¶ 57.

- Ms. Kordia was the second person surveilled, arrested, and confined pursuant to the suppression policy. *Id.* ¶¶ 72–73. HSI was able to identify Ms. Kordia via an arrest record from an April 30, 2024 protest near Columbia University. *Id.* Respondent Noem and DHS later confirmed, in press releases and an X post, that DHS targeted her because of her participation in demonstrations supporting Palestinian rights. *Id.* ¶¶ 82–83. In related litigation involving Mahmoud Khalil, the first public target of this suppression policy, the government described Ms. Kordia's confinement as "related to" the "Israel-Palestine conflict." *Id.* ¶ 83.

- DHS has surveilled, arrested, and confined, or attempted to confine, at least nine other noncitizens in eerily similar circumstances, including, in some cases, conducting virtually identical surveillance. *Id.* ¶¶ 87–139.

In addition to the government's creation of special agency procedures to target protestors

expressing a disfavored viewpoint, Respondents have not contested that Ms. Kordia's confinement

has involved multiple departures from standard agency practice, *Robinson v. Jackson State Univ.*,

714 F. App'x 354, 362 (5th Cir. 2017) ("'[D]eparture from typical policies and procedures' can

bolster an inference of pretext." (quoting *Feist v. La. Dep't of Just., Off. of the A.G.*, 730 F.3d 450,

455 (5th Cir. 2013)), including:

- ICE's overnight transfer of Ms. Kordia from New Jersey, where she had immediate family and her then-counsel of record, violated ICE's own transfer policies. Am. Pet. ¶¶ 84–85.

- Respondents are continuing to confine her despite its own classification of Ms. Kordia as low risk across every relevant factor with no criminal history. *Id.* ¶ 78.

- Uncontroverted testimony from immigration practitioners that Respondents' confinement of Ms. Kordia, and the procedural lengths they have gone to keep her confined, are highly unusual, *id.* ¶ 86, evincing a punitive and viewpoint-discriminatory purpose.

- DHS's now repeated invocation of the automatic stay provision, despite conceding on the record that Ms. Kordia had met her burden to prove she would not be a danger to the community, declining to cross-examine Ms. Kordia, and failing to provide any evidence of risk of flight. TRO App. at 5 (TRO PX 1, Decl. of Sarah Sherman-Stokes ¶¶ 6–7) ("Sherman-Stokes Decl.").

In response, Respondents do not offer any evidence at all. Instead, they argue that Ms.

Kordia "does not dispute that the legal and factual predicates for her placement in removal

proceedings exist independently of [her] protest activity." But Respondents' "evidentiary void

matters" because "[i]t leaves unrebutted the strong temporal and circumstantial link between the

Government's statements regarding international students, [Ms. Kordia's] public expression, and

the enforcement actions taken against [her]." *Mohammed H.*, 2025 WL 1692739, at *4.

To date, seven different District Judges in five different Circuits have evaluated a similar

factual record and found the petitioner was likely to succeed on the merits of their First

Amendment challenge to their continued confinement. *See Öztürk*, 779 F. Supp. 3d at 489–90,

*aff'd as amended sub. nom.*, *Öztürk*, 136 F.4th; *Öztürk v. Trump*, No. 2:25-cv-374, 2025 WL

1420540 (D. Vt. May 16, 2025) (ordering immediate release pending final judgment on basis of

First Amendment and substantive due process claims); *Mahdawi v. Trump*, 781 F. Supp. 3d 214

(D. Vt. 2025) (same) *stay denied*, 136 F.4th at 456; *Aditya W. H.*, 782 F. Supp. 3d (same); *Mohammed H.*, 2025 WL 1692739, *app. filed*, No. 25-2516 (8th Cir.); *Suri v. Trump*, No. 1:25-cv-480, 2025 WL 1392143 (E.D. Va. May 14, 2025) (same), *stay denied*, 2025 WL 1806692; *Ercelik v. Hyde*, No. 1:25-cv-11007, 2025 WL 1361543 (D. Mass. May 8, 2025); *see also* Am. Pet. App. at 308 (PX 24, June 20, 2025 Hr'g Tr. at 62:14–25, *Khalil v. Joyce*, 2:25-cv-1963 (D.N.J.)), *stay denied*, Nos. 25-2162, 25-2357 (3d Cir. July 30, 2025) (courtesy copy attached as PX 23) (ordering petitioner's release based, in part, on the "overwhelming unlikeliness the detention would be sought in a case of this sort" and the "chilling effect" of petitioner's detention).

Respondents did not address these related cases in their Response, but, at oral argument, they suggested that the above-cited cases are distinguishable because the petitioners "had lawful status . . . until very recently." June 5, 2025, Hr'g Tr. at 38:24–25, Dkt. 51. That is wrong. Each involved petitioners contesting their confinement while conceding that their removal proceedings would remain ongoing. *See, e.g.*, *Öztürk*, 136 F.4th at 399 (Petitioner's "unlawful detention claims may be resolved without affecting [her] pending removal proceedings."); *Mohammed H.*, 2025 WL 1692739, at *2 (Petitioner "is not seeking to pause or end his removal proceeding."); *Mahdawi*, 781 F. Supp. 3d at 228 (finding "arrest[ing] [petitioner] to stifle speech . . . would be a violation of the Constitution [] quite separate from the removal procedures followed by the immigration courts"). The same is true here: whatever happens in Ms. Kordia's removal case is separate and distinct from whether Respondents are confining her as retaliation for protected expression.

Next, Respondents take the immigration judge and the BIA's decisions regarding Ms. Kordia's custody determination as evidence that her confinement is not retaliatory. Resp. at 27. Obviously, though, none of those decisions resulted in her release, because DHS has exercised

other procedural avenues to keep her confined irrespective of what the immigration judge has ordered. And more fundamentally, neither of those decision-makers has authority to hear Ms. Kordia's claims challenging her confinement. *Infra* § II.D. Respondents acknowledge as much, recognizing that the "Attorney General possesses the ultimate final decisionmaking authority over matters that come before the [BIA]." Resp. at 11. The immigration judge herself observed that, due to limitations of the administrative process, there is really nothing she can do if higher level decision-makers are hellbent on keeping Ms. Kordia confined. TRO App. at 5 (PX 1, Sherman-Stokes Decl. ¶¶ 8–9).

2. *Respondents have not met their burden under* Mt. Healthy *as a matter of law.*

In addition to offering no contrary evidence, Respondents seemingly treat Ms. Kordia's lapse in status, by itself, as a sufficient non-retaliatory explanation. But that conclusory explanation fails as a matter of law under *Mt. Healthy*, for at least two reasons.

**First,** even if Respondents have a valid basis to initiate removal proceedings, they cannot use their civil confinement power to suppress speech. In *National Rifle Association v. Vullo*, 602 U.S. 175 (2024), for example, the Supreme Court found the National Rifle Association ("NRA") stated a First Amendment claim against a New York financial regulator who used the threat of penalties to convince insurance companies to stop doing business with the NRA. *Id.* at 183–85. The government argued that "pursuing conceded violations of the law" precluded finding a First Amendment violation. *Id.* at 195. The unanimous Court rejected that argument, because, while the regulator could "pursue violations of state insurance law, she [could not] do so in order to punish or suppress the NRA's protected message." *Id.* at 196. Critical to the Court was the fact "that the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech." *Id.* at 198. Similarly, an otherwise lawful basis to initiate removal proceedings cannot overcome the evidence of viewpoint-discriminatory confinement present in this case.

18

**Second,** Respondents mischaracterize Ms. Kordia's claims. Ms. Kordia is not arguing that a specific DHS agent intentionally arrested her to suppress speech, like she would have to in the run-of-the-mill retaliatory arrest claim. Instead, Ms. Kordia's claim is that she is being confined pursuant to an enforcement policy designed to punish noncitizens who advocated in support of Palestinian rights. Her claim, then, is more like *Lozman v. Rivieria Beach*, 585 U.S. 87, 99 (2018). There, the plaintiff alleged that a city "formed a premeditated plan to intimidate him in retaliation for his criticisms of city officials and his [] lawsuit." *Id.* at 100. The defendant argued that the arresting officer "acted in good faith" and "had [no] knowledge of [the plaintiff's] speech or any motive to arrest him for his earlier expressive activities." *Id.* at 99. The Supreme Court, though, rejected those arguments, reasoning that a retaliatory policy "is a particularly troubling and potent form of retaliation" that triggers "a compelling need for adequate avenues of redress." *Id.* at 100. In such circumstances, the plaintiff "need not prove the absence of probable cause." *Id.* Similarly, Ms. Kordia's claims turn on the existence of a retaliatory enforcement policy designed to chill, suppress, and punish disfavored speech by imposing immigration confinement. It is therefore irrelevant whether the arresting agents had an otherwise lawful basis to initiate removal proceedings because Ms. Kordia's claims turn on her retaliatory confinement carried out under a viewpoint-discriminatory policy.[6]

In the face of reams of evidence charting the government's plan to use civil immigration confinement to target those who have advocated in support of Palestinian rights, Respondents present no evidence and rest on the bare retort that Ms. Kordia's visa expired. But on the record

---

[6] Respondents again cite *AADC*, but as explained, *supra* § II.A.2, the prosecutorial discretion considerations underlying *AADC* do not apply to a challenge to retaliatory confinement predicated on a policy designed to use civil immigration confinement to punish noncitizens who express a viewpoint with which this administration disagrees. *See also Lozman*, 585 U.S. at 100–01 (observing that First Amendment claims challenging a "policy [a]s retaliation for prior, protected speech" presents "little risk of a flood of retaliatory arrest suits against high-level policymakers").

of this case and under the applicable law, Ms. Kordia has established a prima facie case of First Amendment retaliation, shifting the burden back to Respondents. Respondents have failed to meet that burden factually or legally. The Court should therefore grant the Amended Petition on Ms. Kordia's First Amendment claim and order her immediate release.

### C. The Court Should Grant the Amended Petition on Ms. Kordia's Substantive Due Process Claim.

Ms. Kordia's continued confinement violates her right to substantive due process. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action[,]" and it is unquestionably a fundamental right. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has recognized two justifications for immigration confinement: preventing flight and preventing danger to the community. *Zadvydas*, 533 U.S. at 690. Ms. Kordia's confinement violates her right to substantive due process in two ways: (1) it is unconstitutional punishment for engaging in protected expression, *supra* § II.B, and (2) it serves no legally cognizable purpose.

To date, Ms. Kordia has submitted voluminous evidence demonstrating that her initial and continued confinement has no relation to the government's interests in public safety or preventing flight. Dkt. 73 at 18 (citing TRO App. at 7–80 (PX 1-A, Sherman-Stokes Decl. Ex. A); Am. Pet. App., Dkt. 71-1 at 15–59 (PX 1, Motion for Bond and Custody Redetermination)). After previously arguing that her arrest at a protest and her transfer of funds to family members overseas rendered her a danger, Am. Pet. ¶ 169–71, DHS in the most recent bond hearing offered next to nothing to justify her confinement. It even affirmatively conceded it has no public-safety interest in her confinement. Dkt. 73 at 18 (citing TRO App. at 7–80 (PX 1-A, Sherman-Stokes Decl. Ex. A)). At no point since Ms. Kordia initially filed her habeas petition more than four months ago have Respondents submitted factual evidence or arguments to contravene her claims (or the immigration

20

judge's determinations) that she affirmatively demonstrated that her release on a $20,000 bond would pose neither a danger nor a flight risk. *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1113 (B.I.A. 1999) (placing burden on noncitizen seeking release on bond). Thus, Respondents' continued confinement of Ms. Kordia through the automatic stay provision "results in Petitioner's arbitrary detention violative of [Ms. Kordia's] substantive due process rights guaranteed by the Fifth Amendment." *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025, at *13 (D. Md. Aug. 24, 2025) (collecting cases).

Respondents do not identify any basis for Ms. Kordia's confinement other than her lapse in lawful status. Resp. at 26–28. Respondents seem to be arguing that they can confine any individual for any purpose if they happen to be placed in removal proceedings. The Supreme Court rejected that argument in *Zadvydas*.

There, the petitioners did not dispute that they violated the immigration laws and were subject to removal orders. *Zadvydas*, 533 U.S. at 684, 685 (describing petitioners). Nonetheless, the Court evaluated their due process claims by determining whether their confinement "had [a] reasonable relation to the purpose for which the individual [was] committed." *Id.* at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Accordingly, it is irrelevant whether Ms. Kordia has lawful status: "both removable and inadmissible [noncitizens] are entitled to be free from detention that is arbitrary or capricious." *Mahdawi*, 781 F. Supp. 3d at 231 (quotation omitted); *see Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 895 (D. Minn. 2025) ("Executive detention must rest on more than categorical, unsubstantiated, or facially deficient grounds."). Here, Respondents have not even tried to identify a permissible purpose for Ms. Kordia's initial or continued confinement, let alone an interest not addressed by payment of a $20,000 bond.

Respondents' argument is also circular: no noncitizen habeas petitioner could ever prevail

under it, because, to Respondents, the "factual predicate[] for [] placement in removal proceedings" justifies continued confinement no matter the circumstances, Resp. at 19, a proposition the Fifth Circuit has rejected. *See, e.g.*, *Tran v. Mukasey*, 515 F.3d 478, 485 (5th Cir. 2008) (affirming grant of habeas relief under *Zadvydas* to noncitizen subject to final order of removal); *Oyelude v. Chertoff*, 125 F. App'x 543, 547 (5th Cir. 2005) (reversing district court that dismissed a habeas petition from a noncitizen allegedly "remaining in the United States without authorization").

On this record, Respondents have no legally cognizable interest justifying Ms. Kordia's continued confinement. At worst, "[p]unishing Petitioner for protected speech or using [her] as an example to intimidate other[s] [] into self-deportation is abusive and does not reflect legitimate immigration detention purposes." *Mohammed H.*, 2025 WL 1692739, at *5 (citation omitted). But even if it is not strictly punishment, Respondents have given this Court no justification for why depriving her of liberty is necessary to address any flight risk that release on the bond the immigration judge has now twice ordered would not otherwise address. Thus, Ms. Kordia's confinement violates her right to substantive due process and the Court should grant the Amended Petition on that basis and order her immediate release.

### D.  No Exhaustion Requirement Applies, and Ms. Kordia Satisfied Any Exhaustion Requirement that Could Apply.

No exhaustion requirement applies to Ms. Kordia's claims. Even if one did, she satisfied it. **First,** Ms. Kordia need not exhaust claims "where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (quotation omitted). Respondents do not contest that both the immigration judge and BIA lack jurisdiction to even consider Ms. Kordia's constitutional challenges to her confinement. Am. Pet. ¶ 167; *see Cantu-Delgadillo v. Holder*, 584 F.3d 682, 687

(5th Cir. 2009)) (noting that "the BIA lacked jurisdiction to consider [petitioner's due process] challenges."); *Matter of C-*, 20 I & N 529, 532 (1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the [INA] and the regulations."). Ms. Kordia need not wait for the BIA to decide DHS's appeal, because the BIA has no authority to review or rule on the claims brought here. *See Gilani v. Gonzales*, 206 F. App'x 381, 383–84 (5th Cir. 2006) ("Because the BIA does not have jurisdiction to decide the constitutionality of acts of Congress, exhaustion is not required." (citation omitted)). Exhaustion is not required because any "attempt to exhaust such remedies would be a patently futile course of action." *Gallegos-Hernandez*, 688 F.3d at 194. Even the immigration judge, who has twice ordered Ms. Kordia releasable on bond, assessed that Ms. Kordia was only likely to be released through habeas litigation. TRO App. at 5 (PX 1, Sherman-Stokes Decl. ¶¶ 8-9).

**Second**, Ms. Kordia has availed herself of the administrative process. She has now twice received a favorable custody redetermination from the immigration judge, and does not challenge that determination here. Am. Pet. ¶ 167– 71; TRO App. at 4–5 (TRO PX 1, Sherman-Stokes Decl. ¶¶ 2–11) (describing second custody hearing). But because of jurisdictional limits on the immigration judge's and BIA's authority, there is no avenue for her to challenge her unconstitutional confinement through the administrative process. According to Respondents, then, Ms. Kordia must remain confined, waiting on an administrative procedure that has no power to consider her constitutional claims and does not afford her any procedural protections. They are wrong. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

The cases Respondents rely on are plainly inapposite. In *Singh v. ICE*, No. 22-cv-3432, 2023 WL 3571958 (S.D. Tex. Apr. 26, 2023), the petitioner did not seek a bond hearing before the immigration judge, which Ms. Kordia has already done twice and was found releasable on bond

both times. *Id.* at *2. Next, both *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000), and *Wang v. Ashcroft*, 260 F.3d 448 (5th Cir. 2001), involved review of immigration relief squarely within the jurisdiction of the immigration judge and BIA, not a constitutional challenge to confinement the agency has no power to resolve. *Cf. Cardoso*, 216 F.3d at 518 (finding failure to exhaust "review of the immigration judge's denial of her request for adjustment of status"); *Wang*, 260 F.3d at 452 (finding noncitizen failed to request "the BIA to exercise its authority" to review "the deportation order").

### E. The Court Should Grant the Amended Petition on Ms. Kordia's Procedural Due Process Claims.

Respondents do not dispute that this Court has jurisdiction to review Ms. Kordia's procedural due process challenges. Resp. at 28–34; *see also* Findings, Conclusions, and Recommendation, Dkt. 53 at 12 & n.55 ("FCR"). Nor do Respondents engage with the controlling *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), factors for assessing procedural due process challenges to immigration confinement. On this record, Ms. Kordia has demonstrated that both the automatic stay provision and allocation of the burden of proof in her administrative custody proceedings violate procedural due process.

#### 1.   *The automatic stay violates Ms. Kordia's procedural due process rights.*

The automatic stay provision codified at 8 C.F.R. § 1003.19(i)(2) enables DHS to keep Ms. Kordia confined pending its appeal of a favorable bond decision by merely filing a sheet of paper, without having to make any showing or providing Ms. Kordia any opportunity to respond or challenge her confinement. The appropriate remedy for this violation is release from custody pending DHS's further administrative appeal of the immigration judge's August 28, 2025, order finding Ms. Kordia releasable on a $20,000 bond that her family stands ready to pay.

    i. <u>The automatic stay provision violates procedural due process.</u>

  The automatic stay regulation violates procedural due process because it interferes with a significant liberty interest, has a high risk of erroneous deprivation of liberty, and more robust procedures would not burden the government. *See* FCR at 14–19; *see also* Dkts. 13 at 35–40; 40 at 18–21; 73 at 14–17. Respondents' arguments to the contrary are wrong.

  **First,** and notably, Respondents fail to address Judge Rutherford's original FCR, finding that the automatic stay provision violates due process. Nor do they contend with any similar decision, not even to suggest why the Court should decline to find those decisions from district courts in four different circuits persuasive. *See, e.g.*, *Günaydın v. Trump*, No. 25-cv-01141, 2025 WL 1459154, at *9 (D. Minn. May 21, 2025); *Mohammed H.*, 2025 WL 1692739, at *5; *Leal-Hernandez*, 2025 WL 2430025, at *14; *Carmona-Lorenzo v. Trump,* No. 25-cv-3172, 2025 WL 2531521, at *4 (D. Neb. Sep. 3, 2025); *Herrera Torralba v. Knight*, No. 2:25-cv-03166, 2025 WL 2581792, at *13 (D. Nev. Sept. 2, 2025); *Sampio v. Hyde*, 1:25-cv-11981, Dkt. 27 (D. Mass. Sept. 9, 2025); *see also Perez v. Berg*, No. 25-cv-494, 2025 WL 2541566, at *3–4 (D. Neb. Sep. 3, 2025); *Anicasio v. Kramer*, No. 25-cv-3158, 2025 WL 2374224, at *4 (D. Neb. Aug. 14, 2025); *Jacinto v. Trump*, No. 4:25-cv-3161, 2025 WL 2402271, at *3 (D. Neb. Aug. 19, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-3162, 2025 WL 2374223, at *4 (D. Neb. Aug. 14, 2025); *Fernandez v. Lyons*, No. 8:25-cv-506, 2025 WL 2531539, at *4 (D. Neb. Sep. 3, 2025).

  Instead, Respondents recycle the same cases they did at the preliminary injunction stage to argue that Ms. Kordia lacks a liberty interest because her confinement is "relatively modest and limited." Resp. at 30–31. But "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." FCR at 16 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). The cases they cite to the contrary involve individuals whose confinement is mandatory under 8 U.S.C. §

1226(c). Resp. at 31. As Judge Rutherford already explained, each of "those cases are distinguishable. Here, Petitioner is not subject to mandatory detention, and she requested a bond hearing almost immediately." FCR at 17 n.72. Respondents next cite *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), reasoning that Ms. Kordia can "secure her release" by "simply agreeing to leave the country." Resp. at 28. However, *Parra* is distinguishable for the same reasons Judge Rutherford identified with respect to the other cases: it involved an individual subject to mandatory confinement under section 1226(c)(1) who conceded his removability. *Parra*, 172 F.3d at 956.

Respondents then go even further afield by relying on cases that have nothing to do with an individual's liberty interest in being free from confinement. As to *Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006), Respondents quote the very language that reveals its inapplicability: Ms. Kordia is not claiming a liberty interest in discretionary relief from removal, but in punitive, retaliatory, or arbitrary government custody. Resp. at 29. *AADC* likewise has no bearing here as that case considered the initiation of removal proceedings, not confinement. *See supra* § II.A.2.

Ms. Kordia's liberty interest is even greater now than it was when she first filed this case because DHS has once again invoked the automatic stay, Dkt. 73 at 15—meaning, without this Court's intervention, Ms. Kordia faces another three months or more of unlawful confinement without any process, *id.*

**Second**, "there are no procedural safeguards to prevent prolonged, unwarranted detention[,]" because the automatic "stay takes effect without requiring DHS to meet—or even consider—any threshold standard and Petitioner has no opportunity to challenge the imposition of the stay." FCR at 16. The risk of erroneous deprivation is obvious in this case, since DHS conceded on the record that Ms. Kordia met her burden of showing she would not pose a danger if released and declined to cross-examine her on flight risk. DHS also submitted *no* evidence at the second

26

custody hearing to controvert the evidence of Ms. Kordia's interests in continuing to appear in immigration court or substantiate why she presents any flight risk unaddressable by the $20,000 bond the immigration judge ordered. Dkt. 73 at 16. Nonetheless, DHS filed a sheet of paper to keep her confined immediately and mandatorily after the hearing. *Id.* As one District Judge recently put it, "[t]he automatic stay declares: "Heads, I win. Tails, you lose." *Leal-Hernandez*, 2025 WL 2430025, at *14.

Nevertheless, Respondents argue that the automatic stay provides "meaningful procedural safeguards[,]" because, unlike a prior version of the regulation, it now requires a senior DHS official to certify its own filing and there are restrictions on the duration of the automatic stay. Resp. at 31–32. As to the certification, it only requires certifying the appeal has "evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent." 8 C.F.R. § 1003.6(c)(1). That requirement, though, "merely restates an attorney's existing ethical obligations" to not advance frivolous arguments. *Günaydın*, 2025 WL 1459154, at *9; *see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.01. More importantly, this certification does not actually require DHS to meet any threshold standard reviewable by a Court, so the "regulation permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions." *Günaydın*, 2025 WL 1459154, at *8.

For the same reason, this Court should reject Respondents' argument that DHS's decision to submit a legal memo simultaneous to noticing their appeal of the first bond decision (several days after filing the form to effectuate the automatic stay) provided Ms. Kordia with adequate process, Resp. at 30, because the stay remains in effect until BIA decides DHS's appeal on the merits or the stay lapses. At that point, "[e]ven if the BIA ultimately upholds the IJ's decision to

release [Ms. Kordia] on bond, . . . the damage will already have been done." FCR at 17–18 (quotation omitted). That DHS made legal arguments in support of their appeal of the first bond decision does not address the due process concerns at issue with unilaterally preventing effectuation of the immigration judge's order.

As to the restrictions on the duration of the stay, "the mere fact that [Ms. Kordia's] detention will not be indefinite does not mean it comports with due process," FCR at 17, as the "present scheme still permits the essentially unreviewable detention of a noncitizen for lengthy periods of time, in excess of 120 days from the date of appeal," *Günaydın*, 2025 WL 1459154, at *9 n.10.

ii.  <u>Release from custody on the terms ordered by the immigration judge is the appropriate remedy.</u>

In a footnote, Respondents suggest that even if the automatic stay procedure were unconstitutional, that would not "preclude the government from continue [sic] to detain Kordia (or re-detaining her) under other applicable authority." Resp. at 32 n.7. It is unclear what hypothetical "other applicable authority" Respondents are referring to, but, based on the circumstances of this case, the appropriate relief to remedy the invocation of the automatic stay provision is an order directing Respondents to release Ms. Kordia pending any appeal of the immigration judge's August 28, 2025, order, TRO App. at 83–87 (PX 2, Aug. 28, 2025 Bond Order). Such a remedy is necessary to obviate any further procedural gamesmanship on Respondents' part, Dkt. 73 at 16, and is also supported by recent cases from other Courts finding it "inappropriate to stay [the Court's] order so that the Government may seek a discretionary stay." *Leal-Hernandez*, 2025 WL 2430025, at *15; *see, e.g.*, *Mohammed H.*, 2025 WL 1692739, at *8 (releasing petition on "conditions previously imposed by the Immigration Judge"); *Jacinto*, 2025 WL 2402271, at *5 (same).

2. *The allocation of the burden of proof violates Ms. Kordia's procedural due process rights.*

The allocation of the burden of proof in her custody proceedings also violates Ms. Kordia's procedural due process rights because it has resulted in her continued confinement. Am. Pet. ¶¶ 208–18; *see also Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Ayobi v. Castro*, No. 19-cv-01311, 2020 WL 13411861, at *7 (W.D. Tex. Feb. 25, 2020).

Respondents claim Ms. Kordia failed to show prejudice by the allocation of the burden of proof because the BIA ruled in her favor with respect to her dismissed charges from the protest, Resp. at 33, but that is blatantly wrong. The basis of the BIA's decision was that Ms. Kordia bore the burden of proving she is not a danger and that she "should have been able to provide more corroboration of her claims" regarding the money transfers. Am. Pet. ¶ 176. Ms. Kordia was therefore clearly prejudiced by the allocation of the burden in her first custody determination and subsequent appeal because she would have "been released on bond had the government been forced to prove. . . that [Ms. Kordia] was a. . . danger to the community." *Ayobi*, 2020 WL 13411861, at *8.

Still, Respondents argue her claim fails because unlike the petitioner in *Ayobi*, Ms. Kordia has been confined for a shorter amount of time and has a "criminal record" consisting of charges dismissed in the interests of justice before ever having to appear before a court. Resp. at 33–34; *see also* Am. Pet. ¶ 38. But courts have concluded that the government bears the burden with respect to individuals with similar histories and lengths of confinement. *See*, *e.g.*, *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 694 (D. Mass. 2018) (ordering that the government must prove danger or flight risk to re-detain petitioner who had a misdemeanor conviction and was detained for three months).

"This very case evidences how the allocation of the burden of proof can affect the

likelihood of [] error." *Hernandez-Lara*, 10 F.4th at 31. Ms. Kordia remains confined, because the BIA placed the burden on her to disprove supposed dangerousness. On remand, though, DHS offered no evidence on the issue of Ms. Kordia's dangerousness, stated it was satisfied that she had met her burden, did not cross-examine her testimony about her motives to continue appearing in immigration court, offered no rebuttal evidence to substantiate why any supposed flight risk would not be addressed by release on the bond, and then doubled down on its invocation of an automatic stay to bar Ms. Kordia's release. TRO App. at 5 (PX 1, Sherman-Stokes Decl. ¶ 7). Since the allocation of the burden has resulted in Ms. Kordia's continued confinement, it violates her procedural due process rights. Accordingly, this Court should order Ms. Kordia's release on this basis unless and until the government meets its burden of proving at a constitutionally adequate hearing the necessity of confinement to prevent danger or flight risk.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant the Amended Petition on one or more counts and order Respondents to immediately release Ms. Kordia from custody.

*(Signatures on following page)*

Dated: September 9, 2025

Respectfully submitted,

*/s/ Travis Walker Fife*
Travis Walker Fife
Texas State Bar No. 24126956
Randall Hiroshige
Texas State Bar No. 24124299
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
travis@texascivilrightsproject.org
randy@texascivilrightsproject.org

Charles S. Siegel
Texas State Bar No. 18341875
Caitlyn Silhan
Texas State Bar No. 24072879
Waters Kraus Paul & Siegel
3141 Hood Street, Suite 200
Dallas, Texas 75219
Telephone: 214-357-6244
Facsimile: 214-357-7252
siegel@waterskraus.com
csilhan@waterskraus.com

Molly Petchenik
Texas State Bar No. 24134321
Texas Civil Rights Project
P.O. Box 17757
Austin, Texas 78760
Telephone: 512-474-5073
Facsimile: 512-474-0726
molly@texascivilrightsproject.org

Daniel Hatoum
Texas State Bar No. 24099136
Erin D. Thorn*
Texas State Bar No. 24093261
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
Telephone: 512-474-5073
daniel@texascivilrightsproject.org
erin@texascivilrightsproject.org

Naz Ahmad*
New York State Bar No. 5327424
Amal Thabateh*
New York State Bar No. 5923826
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4630
naz.ahmad@law.cuny.edu
amal.thabateh@law.cuny.edu

Golnaz Fakhimi*
New York State Bar No. 5063003
Sadaf Hasan*
New York State Bar No. 6046023
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

* *Admitted to practice PHV*

**ATTORNEYS FOR PETITIONER-PLAINTIFF**

31

**CERTIFICATE OF SERVICE**

I certify that on September 9, 2025, a true and correct copy of this document was properly

served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*Travis Walker Fife*
Travis Walker Fife