# 2d IJ Bond Decision

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
PORT ISABEL IMMIGRATION COURT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | IN BOND PROCEEDINGS |
| | ) | |
| **KORDIA, Leqaa** | ) | A ▮▮▮▮▮▮▮▮ |
| | ) | |
| RESPONDENT | ) | **DETAINED** |

**ON BEHALF OF RESPONDENT**:
Sarah Shermon-Stokes, Esq.

**ON BEHALF OF THE DEPARTMENT**:
Stacy Norcross, Esq.

**BOND MEMORANDUM**

Respondent is a thirty-two-year-old female, native and citizen of stateless. Exhibit (Exh.) 1-B, Tab G. The Department placed Respondent in custody following an encounter on March 13, 2025, in Newark, New Jersey. Exh. 3-B at 23. On March 27, 2025, Respondent filed a bond redetermination request. Exh. 1-B. At the bond hearing on April 3, 2025, the Court granted Respondent's request for a change in custody status, setting her bond at $20,000. *See* Order of the Immigration Judge (April 3, 2025).

The Department appealed the Court's order, and on August 11, 2025, the Board remanded proceedings for "more complete findings of fact regarding the extent of the respondent's money transfers, including how many transfers she made, how often, the amount of money transferred in each transaction, and the identity and geographic location of the recipients of each money transfer from the respondent." L-K-, AXXX-XXX-062, at 3 (BIA Aug. 11, 2025). Based on such findings, the Court must determine whether Respondent has met her burden that she is not a danger to the community. *Id.* Pursuant to the Board's remand, the Court ordered Respondent to submit additional documents and evidence. Respondent filed additional evidence on August 27, 2025. Exhs. 4-B; 4A-B. On August 28, 2025, the Court held a bond hearing and again granted Respondent's request for a change in custody status, setting her bond at $20,000. *See* Order of the Immigration Judge (August 29, 2025). This memorandum provides the basis for the Court's grant of bond.

In a custody determination, the Court should first determine whether a noncitizen poses a danger to the community and, if not, whether she is likely to appear for future proceedings before the Court. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The Constitution does not guarantee noncitizens in removal proceedings a right to release on bond. *Carlson v. Landon*, 342 U.S. 524, 534 (1952). An applicant bears the burden to establish she merits release on bond. *Matter of Guerra*, 24 I&N Dec. at 40; *Matter of Adeniji*, 22 I&N Dec. 1102, 1112 (BIA 1999). When a noncitizen is not subject to mandatory detention, the Court has broad discretion in deciding

whether she will be released. *Matter of Guerra*, 24 I&N Dec. at 39; *see also Carlson v. Landon*, 342 U.S. at 540. A noncitizen who poses a danger to persons or property shall not be released during pending removal proceedings. *See Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994). In the absence of a conviction, evidence of serious criminal conduct, including police reports, which is "probative and specific" to the danger a respondent poses to her community may outweigh other factors and provide a reasonable basis for denying bond. *Matter of Guerra*, 24 I&N Dec. at 40; *see also Matter of Siniauskas*, 27 I&N Dec. 207, 208-09 (BIA 2018) (stating immigration judges may consider both arrests and convictions in custody determinations).

Here, the Court finds that Respondent is not a danger to the community. The Board affirmed the prior finding of this Court that Respondent's "conduct during the April 30, 2024, protest was not dangerous, she did not threaten police officers, and that the charges filed against her were dropped in the interest of justice." L-K-, AXXX-XXX-062, at 2 (BIA Aug. 11, 2025). Accordingly, the only issue before the Court as to Respondent's danger to the community is her money transfers to persons in the Palestinian Authority. Respondent provided evidence that demonstrates the money was sent to family members for their living expenses, not to support a terrorist organization.

Respondent submitted her Western Union money transfer history from 2017 through 2025. Exh. 4-B, Tab J. The report reveals that Respondent has sent money to seven different individuals. *Id.* The Court will go through them individually. First, Respondent sent money to her brother, ██████████████ who lives in the West Bank. The dates and amounts of the transfers are as follows:

- 10/20/2017: $300
- 10/27/2017: $300
- 12/26/2017: $200
- 05/16/2018: $300
- 06/13/2018: $100
- 06/28/2018: $50
- 08/17/2018: $100
- 05/23/2019: $350
- 08/16/2019: $400
- 01/10/2020: $300
- 10/17/2020: $150
- 11/16/2020: $150
- 08/08/2021: $500
- 10/15/2021: $100
- 12/29/2021: $100

Exh. 4-B, Tab J. The report shows that Respondent has made fifteen money transfers to her brother over a five-year period, averaging around three a year. Next, Respondent sent money to her brother's wife, ██████████████████ who also lives in the West Bank. The dates and amounts of the transfers are as follows:

- 02/13/2020: $100
- 02/15/2020: $1,000
- 02/16/2020: $600
- 03/19/2020: $300
- 06/18/2020: $300
- 02/12/2021: $100
- 04/28/2021: $200

Exh. 4-B, Tab J. The report shows that Respondent has made seven money transfers to her sister-in-law in the course of two years. Respondent submitted a statement which explains that she sent money to her brother and sister-in-law to help them pay their rent and utilities, as well as to buy

gifts for their daughters (Respondent's nieces). Exh. 4A-B, Tab A. Specifically in 2020, Respondent saved up money to send to them to help them catch up on their rent. *Id.* Respondent's brother submitted a statement, confirming that the money was used for expenses such as rent, electricity, gas, water, and medical expenses. Exh. 4A-B, Tab C.

Next, Respondent presented evidence that she helped her mother send money to extended family members who were struggling financially.[1] Exh. 4A-B, Tab A. On behalf of her mother, Respondent sent the following amounts of money to her cousin, ███████████ who lives in Gaza:

- 10/05/2020: $2,000
- 01/13/2021: $1,000
- 04/13/2021: $1,000
- 04/29/2022: $1,100

Exh. 4-B, Tab J. ███ submitted a letter stating that he used the money for living expenses. Exh. 4-B, Tab I. Next, on behalf of her mother, Respondent sent $900 to her cousin ██████████ in Gaza on 06/03/2021 and on 06/07/2021. Exh. 4-B, Tab J. ███████ submitted a statement attesting that she used the money for her family's living expenses. Exh. 4-B, Tab G. Next, Respondent sent her aunt ████████ in Gaza $1,000 on 11/15/2021, $600 on 12/01/2021, and $1,000 on 03/13/2022. *Id.*; Exh. 3-B at 35.[3] The money was to help ████ after her home and business were destroyed. Exh. 4A-B, Tabs A-B, E. Next, Respondent sent money to her cousin ██████████ in Gaza, totaling $2,000 on 02/14/2024 and $1,000 on 04/22/2024. Exh. 4-B, Tab J. ████████ attested that he used the money for living expenses for his family. Exh. 4-B, Tab H. Finally, most recently, Respondent sent her cousin ██████████ who lives in the United Arab Emirates $1,000 on 02/24/2025 on behalf of her mother. *Id.* The money was for a medical procedure. Exh. 4A-B, Tabs A, F.

All these recipients submitted statements that they did not use the money to support any criminal or terrorist organization and that they have never been involved in a terrorist organization or activity themselves.[4] *See generally* Exhs. 4-B; 4A-B. The Court has carefully examined the transactions, and there is no evidence in the record that the money Respondent sent overseas provided support to any terrorist organizations. Rather, the evidence overwhelmingly demonstrates that the money was sent to Respondent's extended family members who were in desperate need of financial assistance. Respondent also presented evidence of her good character, including letters from her family, friends, and school. *See* Exh. 1-B, Tabs J- M. She has been in the U.S. since 2016 and has not had any encounters with law enforcement other than at the protest in 2024. Thus, the Court finds that Respondent has met her burden to prove that she is not a danger to the community.

Where an immigration judge concludes an applicant is not a danger to the community, the Court must next consider whether the applicant is a flight risk unlikely to appear for future proceedings. *See Matter of Patel*, 15 I&N Dec. 666 (1976) (factors unique to each noncitizen must be evaluated in determining suitability for release from custody). In making this decision, the Court

---

[1] Respondent's mother has eleven siblings and many nephews and nieces. Exh. 4A-B, Tab B.
[2] ████████████████████
[3] This includes Respondent's one money transfer through Money Gram.
[4] The Court notes that Respondent's sister-in-law did not submit a statement, but her husband, Respondent's brother, submitted a statement for both of them. Exh. 4A-B, Tab C.

can consider many factors including: (1) whether the applicant has a fixed address in the United States; (2) her length of residence in the United States; (3) her family ties in the United States, and whether they may entitle her to reside permanently in the United States in the future; (4) her employment history; (5) her record of appearance in court; (6) her criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) her history of immigration violations; (8) any attempts to flee prosecution or otherwise escape from authorities; and (9) her manner of entry to the United States. *Matter of Guerra*, 24 I&N Dec. at 40. This list of factors is not exhaustive, and any reliable evidence in the record may be considered. 8 C.F.R. § 1003.19(d). An immigration judge may give greater or lesser weight to any given factor or factors, provided the ultimate conclusion is reasonable. *Matter of Guerra*, 24 I&N Dec. at 40. Family and community ties may demonstrate the applicant is not a flight risk, but generally do not demonstrate she is not a danger to the community. *Siniauskas*, 27 I&N Dec. at 209-210.

Here, the Court finds that Respondent is not a significant flight risk such that a reasonable bond would not assure her appearance. Respondent entered the United States in 2016 and has remained in the U.S. since that time. She has lived with her mother in New Jersey since entering and plans to return to her mother's house after being released from detention. Respondent has deep family ties in the U.S., and specifically in the New York/New Jersey area. She lives with her U.S. citizen mother, stepfather, and brother, and testified that her sister often comes over to visit. Respondent also has a U.S. citizen aunt and uncle and multiple cousins in the U.S. *See* Exh. 1-B. Respondent's mother suffers from medical conditions and relies on Respondent's help. Exh. 4A-B, Tab A. Further, Respondent's stepbrother, ▮▮▮ has autism and intellectual disabilities. *Id.* Respondent's mother states that Respondent helped her care for ▮▮▮ before she was detained. Exh. 4A-B, Tab B. Respondent submitted many letters from her friends and family, attesting that she is a valued member of their community and an integral part of her family. Exh. 1-B, Tabs J-M. She has deep roots in her community after living there for nine years. She testified that she attends the local mosque and is involved in community events.

Respondent did not submit corroborating documentation of her family's ability to financially support her, but she testified that she has been employed as a waitress and was trying to start her own business before being detained. Further, her uncle testified that he and Respondent's mother own their own homes and that they will financially support Respondent. Moreover, the family's ability to post the $20,000 bond in April is evidence that they will be able to financially support Respondent. The Department argues that Respondent avoided ICE custody because she did not come home when she knew ICE officers were there. However, Respondent claims that she wanted to consult with an attorney before speaking with immigration officials. Exh. 1-B, Tab A. After she consulted with her attorney, she voluntarily reported to ICE with her counsel where she was detained. *Id.* The Court finds that her choice to hire an attorney before speaking with ICE does not suggest that she would fail to appear at future hearings.

Finally, Respondent has multiple avenues for relief which incentivize her appearance at future hearings. Respondent has an approved I-130 petition filed by her mother. Exh 1-B, Tab D. The visa is likely to become current in the next year, and Respondent will then be eligible to adjust. *Id.* Respondent also has applications for asylum, withholding of removal, and protection under the Convention Against Torture pending with the Court. Exh. 1-B, Tab F. Considering all these

factors, the Court concludes Respondent has a significant incentive to appear for any future proceedings and that she will likely do so. Thus, she has met her burden to show that she is not a significant flight risk.

In sum, Respondent met her burden of demonstrating to the Court she is not a danger to the community, and the Department failed to provide evidence that shows otherwise. Further, the Court finds Respondent is not a flight risk based on her family and community ties and eligibility for future relief and that a reasonable bond would assure all appearances. Accordingly, the Court grants the Respondent's application for custody redetermination and reinstates a $20,000 bond.

Accordingly, the following order shall be entered:

## ORDER

**IT IS HEREBY ORDERED** Respondent be **RELEASED** from custody of the Department upon the payment of a **$20,000 BOND**.

**Dated:** September 15, 2025

TARA NASELOW-
NAHAS
Digitally signed by TARA
NASELOW-NAHAS
Date: 2025.09.15 13:38:51
-05'00'

**Tara Naselow-Nahas**
**Assistant Chief Immigration Judge**

RE:  KORDIA, LEQAA

File:  █████████████

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [E] ALIEN's ATT/REP  [E] DHS
DATE:  _____09/15/2025_____  BY:  COURT STAFF _____SP-M___
    Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

C1

# DHS Notice of Appeal

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order.*

**1.** List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

Kordia, Leqaa ███████████

For Official Use Only

**!** **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.** I am ☐ the Respondent/Applicant ☒ DHS-ICE *(Mark only one box.)*

**3.** I am ☒ DETAINED ☐ NOT DETAINED *(Mark only one box.)*

**4.** My last hearing was at  Prairieland Detention Center, Alvarado, TX  *(Location, City, State)*

**5.** **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated_____.

☒ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated August 29, 2025_____ . (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court? ☐ Yes. ☒ No.)

☐ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated_____.

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR – 1 of 9

**Page 1 of 3**

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

**6.** **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

See attached.

*(Attach additional sheets if necessary)*

> **⚠ WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals?  ☐ Yes  ☒ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal?  ☐ Yes  ☒ No

**9.** If you are unrepresented, do you give consent to the BIA Pro Bono Project to have your case screened by the Project for potential placement with a free attorney or accredited representative, which may include sharing a summary of your case with potential attorneys and accredited representatives? *(There is no guarantee that your case will be accepted for placement or that an attorney or accredited representative will accept your case for representation)*  ☐ Yes  ☒ No

> **⚠ WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.
>
> If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

**10.** **Print Name:**  Anastasia Norcross

**11.** **Sign Here:** ▶  X ANASTASIA S NORCROSS  Digitally signed by ANASTASIA S NORCROSS Date: 2025.09.11 16:31:50 -05'00'  **9/11/2025**

Signature of Person Appealing
*(or attorney or representative)*

Date

**12.**

| Mailing Address of Respondent(s)/Applicant(s) | Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|---|
| Leqaa Kordia | Sarah Sherman-Stokes |
| (Name) | (Name) |
| 1209 Sunflower Ln. | ▮ ███████████ |
| (Street Address) | (Street Address) |
| | |
| (Apartment or Room Number) | (Suite or Room Number) |
| Alvarado, TX 76009 | ████████████ |
| (City, State, Zip Code) | (City, State, Zip Code) |
| | |
| (Telephone Number) | (Telephone Number) |

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**13.**

### PROOF OF SERVICE (You Must Complete This)

I Anastasia Norcross _____ mailed or delivered a copy of this Notice of Appeal

(Name)

on September 11, 2025 _____ to Leqaa Kordia _____

(Date)    (Opposing Party)

at 1209 Sunflower Ln. Alvarado, TX 76009

(Number and Street, City, State, Zip Code)

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

| **SIGN HERE** ➤ | X ANASTASIA S NORCROSS | Digitally signed by ANASTASIA S NORCROSS Date: 2025.09.11 16:32:14 -05'00' |
|---|---|---|
| | Signature | |

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee payment receipt, fee, or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

### HAVE YOU?

☐ Read all of the General Instructions.
☐ Provided all of the requested information.
☐ Completed this form in English.
☐ Provided a certified English translation for all non-English attachments.
☐ Signed the form.

☐ Served a copy of this form and all attachments on the opposing party, if applicable.
☐ Completed and signed the Proof of Service
☐ Attached the required fee payment receipt, fee, or Fee Waiver Request.
☐ If represented by attorney or representative, attach a completed and signed EOIR-27 for each respondent or applicant.

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

## INTRODUCTION

The U.S. Department of Homeland Security (DHS) respectfully submits this Notice of Appeal in lieu of a brief from the Immigration Judge's August 29, 2025, decision granting the respondent's request for a change in custody status and setting bond in the amount of $20,000 pursuant to Section 236(a) of the Immigration and Nationality Act (INA).[1]  The Immigration Judge erred in ordering the respondent released on bond and setting bond at $20,000 because the respondent failed to meet her burden of establishing she does not pose a flight risk.  The DHS respectfully requests that the Board of Immigration Appeals (Board) reverse the Immigration Judge's order granting the respondent's request for a change in custody status.

DHS further requests that this case be adjudicated by a three-member panel.  The instant appeal meets the criteria for three-member panel review because the facts and circumstances of this case present: (1) the need to review a decision by an Immigration Judge that is not in conformity with the law or with applicable precedents; and (2) the need to reverse a decision of an Immigration Judge, other than a reversal under 8 C.F.R. § 1003.1(e)(5); 8 C.F.R. § 1003.1(e)(6)(iii), (v)–(vi).

## ISSUE PRESENTED

1.  Did the Immigration Judge erroneously order the respondent released on bond in the amount of $20,000 where the respondent failed to meet her burden of establishing that she does not pose a flight risk despite intentionally evading detection by DHS, failing to provide any financial information, and remaining out of legal status for over 3 years?

## STANDARD OF REVIEW

The Board reviews an Immigration Judge's findings of fact, which includes predictive findings of what may or may not occur in the future, under a clearly erroneous standard of review.

---

[1] As noted on Form EOIR-26 at question 8, DHS will not be filing a brief in this case.  Thus, this Notice of Appeal includes the entirety of DHS's arguments on appeal.

8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 587–90 (BIA 2015). Inferences from direct and circumstantial evidence are also reviewed for clear error. The Board reviews all questions of law, discretion, judgment, and all other issues on appeal de novo. 8 C.F.R. § 1003.1(d)(3)(ii)). Whether the respondent poses a risk of flight is a question of judgment that is reviewed *de novo*; however, the factual findings underlying that determination is reviewed for clear error. *Matter of Beltrand-Rodriguez*, 29 I&N Dec. 76, 77 (BIA 2025).

## SUMMARY OF THE ARGUMENT

The Immigration Judge erred in finding that the respondent established she is not a flight risk. Here, the respondent failed to provide any evidence of a financial sponsor. Similarly, the respondent failed to provide evidence of her and her family's financial resources. Moreover, the Immigration Judge found that the respondent's family ties to the United States and potential relief outweighed the fact she initially hid and evaded detection from Homeland Security Investigations (HSI). As such, the Board should reverse the Immigration Judge's finding that the respondent met her burden establishing she is not a danger to the community and does not pose a risk of flight, and order that the respondent be held without bond.

## STATEMENT OF FACTS

The respondent, a stateless native and citizen, last entered the United States as a B2 nonimmigrant visitor on March 19, 2016. Exh. 1. The respondent adjusted her status to an F-1 nonimmigrant on or about January 23, 2017. *Id.* On or about June 5, 2017, the respondent's United States citizen mother submitted a Form I-130, Petition for Alien Relative, on the respondent's behalf. *Id.* The petition was approved but a visa is not yet available for the respondent to adjust status. *Id.* On or about March 18, 2021, the respondent's F-1 visa was terminated in the Student & Exchange Visitor Information System (SEVIS) for failure to maintain her student status. *Id.* The

respondent's F-1 visa was reinstated on or about May 5, 2021; however, it was again terminated in SEVIS on or about January 26, 2022, for failure to maintain her student status. *Id.* The respondent has no lawful status in the United States and has been unlawfully present in the United States since approximately January 26, 2022. *Id.* On or about March 15, 2025, DHS issued the respondent a Notice to Appear (NTA) charging her as removable from the United States under INA § 237(a)(1)(C)(i) for failure to maintain her F-1 status. *Id.*

On April 3, 2025, the Immigration Judge granted the respondent's release from custody under a bond of $20,000. The DHS appealed the bond grant, and the Board remanded the case for the Immigration Judge to make a more complete finding of fact regarding the extent of the respondent's money transfers to Palestine and Jordan. L-K-, AXXX-XXX-062 (BIA Dec. Jul. 3, 2025). On August 28, 2025, the Immigration Judge held another bond hearing. The respondent submitted evidence, including Western Union records and letters from her family members, to show that she sent money to family members in Palestine and other surrounding countries. Exh. 4. The DHS argued that the respondent is a flight risk primarily because she failed to submit evidence of an immigration sponsor or any evidence of financial stability from anyone in the respondent's family. Moreover, the respondent has been working unlawfully in the United States and has been unlawfully present in the United States since January 26, 2022. Additionally, the respondent has not tried to gain lawful status since that time, until being detained by DHS. The respondent also refused to voluntarily meet with HSI agents, and it took her approximately one week to surrender herself to authorities. The evidence shows that the respondent was hiding from immigration officials and intentionally evading detection.

The Immigration Judge found that a bond of $20,000 is an appropriate amount to mitigate the flight risk and ensure that the respondent appears for future hearings.

EOIR – 6 of 9

## ARGUMENT

**1.  THE IMMIGRATION JUDGE ERRED WHEN SHE ORDERED THE RESPONDENT RELEASED ON BOND IN THE AMOUNT OF $20,000, WHERE THE RESPONDENT FAILED TO ESTABLISH THAT SHE DOES NOT POSE A FLIGHT RISK.**

The Immigration Judge erred in granting the respondent's request for a change in custody status and setting bond in the amount of $20,000 because the respondent failed to show she is not a flight risk.  Only if an alien demonstrates that he or she is not a danger to the community should an Immigration Judge then determine the extent of flight risk posed by the alien.  *Matter of Urena*, 25 I&N Dec. 140, 141(BIA 2009) (citing *Matter of Drysdale*, 20 I&N Dec. 815, 817–18 (BIA 1994)).  An alien in a custody determination hearing pursuant to INA § 236(a) must establish that he or she does not present a risk of flight and is likely to attend future immigration proceedings.  *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020) (citing *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018)); 8 C.F.R. § 1236.1(c)(8)).  In determining whether an alien is a flight risk, the Immigration Judge may consider "any 'probative and specific' evidence."  *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40-41 (BIA 2006)).  Similar to a dangerousness determination, this includes considering the "specific circumstances surrounding the alien's conduct" to determine whether bond is warranted, and if so, the appropriate amount.  *Siniauskas*, 27 I&N Dec. at 208; *see also Guerra*, 24 I&N Dec. at 40.  An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations.  *Guerra,* 24 I&N Dec. at 40.  An Immigration Judge may decide to give greater weight to one factor over others, but the decision must be reasonable.  *Id.*

Here, the respondent did not establish that she does not pose a flight risk because she failed to provide any evidence demonstrating that a financial sponsor in the United States will help ensure she appears at all future proceedings. *See Matter of Dobrotvoskii,* 29 I&N Dec. 211 (BIA 2025)

(holding that in bond proceedings, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk). The record is void of any statement or affidavit from a sponsor expressing a willingness to provide support to the respondent that could assist in her appearance at future proceedings. *Id*. at 213. The respondent does not have work authorization in the United States and there is no evidence to demonstrate what the respondent or her family do for work and how they support themselves. As such, the Immigration Judge did not have sufficient information to assess an appropriate bond amount to ensure that the respondent would show up for future proceedings and that it would be a disincentive to the family if she were to not show up to future proceedings.

Additionally, the respondent has repeatedly violated the United States' immigration laws by falling out of her student visa status and continuing to reside in the United States without any legal status for over three years. *Guerra*, 24 I&N Dec. at 40 (holding alien's history of immigration violations and employment history are relevant factors for bond proceedings). As noted by the Immigration Judge, although the respondent has an approved I-130 petition through her mother, there is no visa number immediately available to her. Moreover, the Immigration Judge indicated that the respondent had an "uphill battle" in terms of her asylum application. As such, any relief is speculative at this stage.

Moreover, the respondent has failed to establish that she does not pose a flight risk because she intentionally evaded detection by DHS. On March 6, 2025, a special agent with HSI contacted the respondent and told her that they needed to speak with her about her immigration status. Exh. 3 at 6. The respondent told the agent that she would meet him in the next 30 minutes, but she did not arrive. Exh. 3 at 6. The respondent's refusal to meet with HSI required an extensive investigation into her whereabouts. Exh. 3 at 6–21. *See Guerra*, 24 I&N Dec. at 40 (holding

attempts by the alien to flee prosecution or otherwise escape from authorities is a relevant factor to find a flight risk). On March 13, 2025, the respondent finally self-surrendered to HSI. The DHS evidence indicates that the respondent was intentionally evading HSI agents and actively concealed here whereabouts to avoid detection and apprehension for her immigration violations. Exh. 3 at 6–24.

As the respondent has not met her burden in establishing that she does not pose a flight risk, the Immigration Judge erred in ordering the respondent released on bond in the amount of $20,000.

## CONCLUSION

The Immigration Judge erroneously granted the respondent's request for a change in custody status by setting bond in the amount of $20,000, because the respondent failed to meet her burden of establishing she does not pose a flight risk. The DHS therefore requests that the Board reverse the Immigration Judge's order granting the respondent's request for a change in custody status.

Respectfully submitted on September 11, 2025,

_____
Stacy Norcross
Assistant Chief Counsel
Mary Jane Zamarripa
Deputy Chief Counsel
Jo Ann McLane
Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

# DHS Motion for Discretionary Stay

Jo Ann McLane                                                    **DETAINED**
Chief Counsel
Jo Ann McLane
Mary Jane Zamarripa
Deputy Chief Counsel
Stacy Norcross
Assistant Chief Counsel
Office of the Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
Port Isabel Detention Center
27991 Buena Vista Blvd.
Los Fresnos, Texas 78566

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| KORDIA, Leqaa | )    File No.: ██████ |
| | ) |
| In bond proceedings | ) |
| | ) |

## DEPARTMENT OF HOMELAND SECURITY'S
## EMERGENCY MOTION FOR DISCRETIONARY STAY

## INTRODUCTION

Pursuant to 8 C.F.R. § 1003.19(i)(1), the Department of Homeland Security (DHS) respectfully requests that the Board of Immigration Appeals (Board) issue, on an emergency basis, a discretionary stay of the Immigration Judge's August 29, 2025, order granting the respondent bond in the amount of $20,000.

The Immigration Judge erred in ordering the respondent released on bond and setting bond at $20,000 because the respondent failed to meet her burden of establishing she does not pose a flight risk. The DHS respectfully requests that the Board of Immigration Appeals (Board) reverse the Immigration Judge's order granting the respondent's request for a change in custody status. Simultaneously with this motion for an emergency stay, the DHS is filing a notice to appeal the Immigration Judge's bond decision.

## STANDARD OF REVIEW

The Board has the authority to stay an Immigration Judge's order redetermining custody when DHS appeals the custody decision or on its own motion. 8 C.F.R. § 1003.19(i)(1). DHS may seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time. *Id.* The Board reviews an Immigration Judge's findings of fact, which include predictive findings of what may or may not occur in the future, under a clearly erroneous standard of review. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 587–90 (BIA 2015). Inferences from direct and circumstantial evidence are also reviewed for clear error. The Board reviews all questions of law, discretion, judgment, and all other issues on appeal de novo. 8 C.F.R. § 1003.1(d)(3)(ii)). Whether the respondent poses a risk of flight is a question

of judgment that is reviewed *de novo*; however, the factual findings underlying that determination is reviewed for clear error. *Matter of Beltrand-Rodriguez*, 29 I&N Dec. 76, 77 (BIA 2025).

## STATEMENT OF FACTS

The respondent, a stateless native and citizen, last entered the United States as a B2 nonimmigrant visitor on March 19, 2016. Exh. 1. The respondent adjusted her status to an F-1 nonimmigrant on or about January 23, 2017. *Id.* On or about June 5, 2017, the respondent's United States citizen mother submitted a Form I-130, Petition for Alien Relative, on the respondent's behalf. *Id.* The petition was approved but a visa is not yet available for the respondent to adjust status. *Id.* On or about March 18, 2021, the respondent's F-1 visa was terminated in the Student & Exchange Visitor Information System (SEVIS) for failure to maintain her student status. *Id.* The respondent's F-1 visa was reinstated on or about May 5, 2021; however, it was again terminated in SEVIS on or about January 26, 2022, for failure to maintain her student status. *Id.* The respondent has no lawful status in the United States and has been unlawfully present in the United States since approximately January 26, 2022. *Id.* On or about March 15, 2025, DHS issued the respondent a Notice to Appear (NTA) charging her as removable from the United States under INA § 237(a)(1)(C)(i) for failure to maintain her F-1 status. *Id.*

On April 3, 2025, the Immigration Judge granted the respondent's release from custody under a bond of $20,000. The DHS appealed the bond grant, and the Board remanded the case for the Immigration Judge to make more complete findings of fact regarding the extent of the respondent's money transfers to Palestine and Jordan. L-K-, AXXX-XXX-062 (BIA Aug. 11 2025). On August 28, 2025, the Immigration Judge held another bond hearing. The respondent submitted evidence, including Western Union records and letters from her family members, to show that she sent money to family members in Palestine and other surrounding countries. Exh. 4.

The DHS argued that the respondent is a flight risk primarily because she failed to submit evidence of an immigration sponsor or any evidence of financial stability from anyone in the respondent's family. Moreover, the respondent has been working unlawfully in the United States and has been unlawfully present in the United States since January 26, 2022. Additionally, the respondent has not tried to gain lawful status since that time, until being detained by DHS. The respondent also refused to voluntarily meet with HSI agents, and it took her approximately one week to surrender herself to authorities. The evidence shows that the respondent was hiding from immigration officials and intentionally evading detection.

The Immigration Judge found that a bond of $20,000 was an appropriate amount to mitigate the flight risk and ensure that the respondent appears for future hearings.

## ARGUMENT

The Immigration Judge erred in granting the respondent's request for a change in custody status and setting bond in the amount of $20,000 because the respondent failed to show she is not a flight risk. Only if an alien demonstrates that he or she is not a danger to the community should an immigration judge then determine the extent of flight risk posed by the alien. *Matter of Urena*, 25 I&N Dec. 140, 141(BIA 2009) (citing *Matter of Drysdale*, 20 I&N Dec. 815, 817–18 (BIA 1994)). An alien in a custody determination hearing pursuant to INA § 236(a) must establish that he or she does not present a risk of flight and is likely to attend future immigration proceedings. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020) (citing *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018)); 8 C.F.R. § 1236.1(c)(8)). In determining whether an alien is a flight risk, the immigration judge may consider "any 'probative and specific' evidence." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40-41 (BIA 2006)). Similar to a dangerousness determination, this includes considering the "specific circumstances surrounding the alien's conduct" to determine

EOIR – 4 of 24

whether bond is warranted, and if so, the appropriate amount. *Siniauskas*, 27 I&N Dec. at 208; *see also Guerra*, 24 I&N Dec. at 40. An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. *Guerra,* 24 I&N Dec. at 40. An Immigration Judge may decide to give greater weight to one factor over others, but the decision must be reasonable. *Id.*

Here, the respondent did not establish that she does not pose a flight risk because she failed to provide any evidence demonstrating that a financial sponsor in the United States will help ensure she appears at all future proceedings. *See Matter of Dobrotvoskii,* 29 I&N Dec. 211 (BIA 2025) (holding that in bond proceedings, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk). The record is void of any statement or affidavit from a sponsor expressing a willingness to provide support to the respondent that could assist in her appearance at future proceedings. *Id.* at 213. The respondent does not have work authorization in the United States and there is no evidence to demonstrate what the respondent or her family do for work and how they support themselves. As such, the Immigration Judge did not have sufficient information to assess an appropriate bond amount to ensure that the respondent would show up for future proceedings and that it would be a disincentive to her family if she were to not show up to future proceedings.

Additionally, the respondent has repeatedly violated the United States' immigration laws by falling out of her student visa status and continuing to reside in the United States without any legal status for over three years. *Guerra*, 24 I&N Dec. at 40 (holding that an alien's history of immigration violations and employment history are relevant factors for bond proceedings). Although, the respondent has an approved I-130 petition through her mother, there is no visa number immediately available to her. Moreover, the Immigration Judge indicated that the

respondent had an "uphill battle" in terms of her asylum application. As such, any relief is speculative at this stage.

Moreover, the respondent has failed to establish that she does not pose a flight risk because she intentionally evaded detection by DHS. On March 6, 2025, a special agent with HSI contacted the respondent and told her that they needed to speak with her about her immigration status. Exh. 3 at 6. The respondent told the agent that she would meet him in the next 30 minutes, but she did not arrive. Exh. 3 at 6. The respondent's refusal to meet with HSI required an extensive investigation into her whereabouts. Exh. 3 at 6–21. *See Guerra*, 24 I&N Dec. at 40 (holding attempts by the alien to flee prosecution or otherwise escape from authorities is a relevant factor to find a flight risk). On March 13, 2025, the respondent finally self-surrendered to HSI. The DHS evidence indicates that the respondent was intentionally evading HSI agents and actively concealed her whereabouts to avoid detection and apprehension for her immigration violations. Exh. 3 at 6–24.

As the respondent has not met her burden in establishing that she does not pose a flight risk, the Immigration Judge erred in ordering the respondent released on bond in the amount of $20,000.

**CONCLUSION**

The Immigration Judge erroneously granted the respondent's request for a change in custody status by setting bond in the amount of $20,000, because the respondent failed to meet her burden of establishing that she does not pose a flight risk. Based on the foregoing facts, DHS respectfully requests that the Board, on an emergency basis, issue a discretionary stay of the Immigration Judge's August 29, 2025, order granting the respondent bond.

Respectfully submitted on the 11th day of September, 2025.

_____

Stacy Norcross
Assistant Chief Counsel
Mary Jane Zamarripa
Deputy Chief Counsel
Jo Ann McLane
Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

Leqaa Kordia

████████████

**PROOF OF SERVICE**

On September 10, 2025, I caused a copy of this Emergency Motion for a Discretionary Stay and any attached pages to the respondent, Leqaa Kordia, at the following address: 1209 Sunflower Lane Alvarado, TX 76009.

On September 10, 2025, I caused a courtesy copy of this Emergency Motion for a Discretionary Stay and any attached pages to the respondent's counsel, Sarah Sherman-Stokes, at the following address: ████████████████████████

_____

Stacy Norcross
Assistant Chief Counsel

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an
Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and
"A" Number(s) on the face of the check or money order.*

**1.**

List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

Kordia, Leqaa ███████████

For Official Use Only

⚠ **WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.**  I am  ☐ the Respondent/Applicant  ☒ DHS-ICE *(Mark only one box.)*

**3.**  I am  ☒ DETAINED  ☐ NOT DETAINED *(Mark only one box.)*

**4.**  My last hearing was at  Prairieland Detention Center, Alvarado, TX  *(Location, City, State)*

**5.**

**What decision are you appealing?**

*Mark only one box below*. *If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated_____.

☒ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated
August 29, 2025_____. (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court?  ☐ Yes.  ☒ No.)

☐ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated_____.

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

EOIR – 9 of 24

**Page 1 of 3**

**6.** **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

See attached.

*(Attach additional sheets if necessary)*

> **!** **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☒ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☐ Yes ☒ No

**9.** If you are unrepresented, do you give consent to the BIA Pro Bono Project to have your case screened by the Project for potential placement with a free attorney or accredited representative, which may include sharing a summary of your case with potential attorneys and ☐ Yes ☒ No accredited representatives? *(There is no guarantee that your case will be accepted for placement or that an attorney or accredited representative will accept your case for representation)*

> **!** **WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.
>
> If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

**10.** **Print Name:** Anastasia Norcross

**11.** **Sign Here:** ▶ X ANASTASIA S NORCROSS   Digitally signed by ANASTASIA S NORCROSS   Date: 2025.09.11 16:31:50 -05'00'   **9/11/2025**

Signature of Person Appealing
*(or attorney or representative)*

Date

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

**12.**

| Mailing Address of Respondent(s)/Applicant(s) | Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|---|
| Leqaa Kordia | Sarah Sherman-Stokes |
| (Name) | (Name) |
| 1209 Sunflower Ln. | ▮▮ ▮▮▮▮▮▮▮▮ |
| (Street Address) | (Street Address) |
| | |
| (Apartment or Room Number) | (Suite or Room Number) |
| Alvarado, TX 76009 | ▮▮▮▮▮▮▮▮ |
| (City, State, Zip Code) | (City, State, Zip Code) |
| | |
| (Telephone Number) | (Telephone Number) |

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**13.**

### PROOF OF SERVICE (You Must Complete This)

I Anastasia Norcross _____ mailed or delivered a copy of this Notice of Appeal
(Name)

on September 11, 2025 _____ to Leqaa Kordia _____
(Date)                              (Opposing Party)

at 1209 Sunflower Ln. Alvarado, TX 76009 _____
(Number and Street, City, State, Zip Code)

☐ No service needed. I electronically filed this document, and the opposing party is participating in ECAS.

| SIGN HERE ➡ | X ANASTASIA S NORCROSS | Digitally signed by ANASTASIA S NORCROSS Date: 2025.09.11 16:32:14 -05'00' |
|---|---|---|
| | Signature | |

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee payment receipt, fee, or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

### HAVE YOU?

☐ Read all of the General Instructions.
☐ Provided all of the requested information.
☐ Completed this form in English.
☐ Provided a certified English translation for all non-English attachments.
☐ Signed the form.

☐ Served a copy of this form and all attachments on the opposing party, if applicable.
☐ Completed and signed the Proof of Service
☐ Attached the required fee payment receipt, fee, or Fee Waiver Request.
☐ If represented by attorney or representative, attach a completed and signed EOIR-27 for each respondent or applicant.

EOIR – 11 of 24

Form EOIR-26
Rev. Nov. 2022
Exp. Jan. 2026

## INTRODUCTION

The U.S. Department of Homeland Security (DHS) respectfully submits this Notice of Appeal in lieu of a brief from the Immigration Judge's August 29, 2025, decision granting the respondent's request for a change in custody status and setting bond in the amount of $20,000 pursuant to Section 236(a) of the Immigration and Nationality Act (INA).[1]  The Immigration Judge erred in ordering the respondent released on bond and setting bond at $20,000 because the respondent failed to meet her burden of establishing she does not pose a flight risk.  The DHS respectfully requests that the Board of Immigration Appeals (Board) reverse the Immigration Judge's order granting the respondent's request for a change in custody status.

DHS further requests that this case be adjudicated by a three-member panel.  The instant appeal meets the criteria for three-member panel review because the facts and circumstances of this case present: (1) the need to review a decision by an Immigration Judge that is not in conformity with the law or with applicable precedents; and (2) the need to reverse a decision of an Immigration Judge, other than a reversal under 8 C.F.R. § 1003.1(e)(5); 8 C.F.R. § 1003.1(e)(6)(iii), (v)–(vi).

## ISSUE PRESENTED

1. Did the Immigration Judge erroneously order the respondent released on bond in the amount of $20,000 where the respondent failed to meet her burden of establishing that she does not pose a flight risk despite intentionally evading detection by DHS, failing to provide any financial information, and remaining out of legal status for over 3 years?

## STANDARD OF REVIEW

The Board reviews an Immigration Judge's findings of fact, which includes predictive findings of what may or may not occur in the future, under a clearly erroneous standard of review.

---

[1] As noted on Form EOIR-26 at question 8, DHS will not be filing a brief in this case.  Thus, this Notice of Appeal includes the entirety of DHS's arguments on appeal.

8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I&N Dec. 586, 587–90 (BIA 2015). Inferences from direct and circumstantial evidence are also reviewed for clear error. The Board reviews all questions of law, discretion, judgment, and all other issues on appeal de novo. 8 C.F.R. § 1003.1(d)(3)(ii)). Whether the respondent poses a risk of flight is a question of judgment that is reviewed *de novo*; however, the factual findings underlying that determination is reviewed for clear error. *Matter of Beltrand-Rodriguez*, 29 I&N Dec. 76, 77 (BIA 2025).

## SUMMARY OF THE ARGUMENT

The Immigration Judge erred in finding that the respondent established she is not a flight risk. Here, the respondent failed to provide any evidence of a financial sponsor. Similarly, the respondent failed to provide evidence of her and her family's financial resources. Moreover, the Immigration Judge found that the respondent's family ties to the United States and potential relief outweighed the fact she initially hid and evaded detection from Homeland Security Investigations (HSI). As such, the Board should reverse the Immigration Judge's finding that the respondent met her burden establishing she is not a danger to the community and does not pose a risk of flight, and order that the respondent be held without bond.

## STATEMENT OF FACTS

The respondent, a stateless native and citizen, last entered the United States as a B2 nonimmigrant visitor on March 19, 2016. Exh. 1. The respondent adjusted her status to an F-1 nonimmigrant on or about January 23, 2017. *Id.* On or about June 5, 2017, the respondent's United States citizen mother submitted a Form I-130, Petition for Alien Relative, on the respondent's behalf. *Id.* The petition was approved but a visa is not yet available for the respondent to adjust status. *Id.* On or about March 18, 2021, the respondent's F-1 visa was terminated in the Student & Exchange Visitor Information System (SEVIS) for failure to maintain her student status. *Id.* The

respondent's F-1 visa was reinstated on or about May 5, 2021; however, it was again terminated in SEVIS on or about January 26, 2022, for failure to maintain her student status. *Id.* The respondent has no lawful status in the United States and has been unlawfully present in the United States since approximately January 26, 2022. *Id.* On or about March 15, 2025, DHS issued the respondent a Notice to Appear (NTA) charging her as removable from the United States under INA § 237(a)(1)(C)(i) for failure to maintain her F-1 status. *Id.*

On April 3, 2025, the Immigration Judge granted the respondent's release from custody under a bond of $20,000. The DHS appealed the bond grant, and the Board remanded the case for the Immigration Judge to make a more complete finding of fact regarding the extent of the respondent's money transfers to Palestine and Jordan. L-K-, AXXX-XXX-062 (BIA Dec. Jul. 3, 2025). On August 28, 2025, the Immigration Judge held another bond hearing. The respondent submitted evidence, including Western Union records and letters from her family members, to show that she sent money to family members in Palestine and other surrounding countries. Exh. 4. The DHS argued that the respondent is a flight risk primarily because she failed to submit evidence of an immigration sponsor or any evidence of financial stability from anyone in the respondent's family. Moreover, the respondent has been working unlawfully in the United States and has been unlawfully present in the United States since January 26, 2022. Additionally, the respondent has not tried to gain lawful status since that time, until being detained by DHS. The respondent also refused to voluntarily meet with HSI agents, and it took her approximately one week to surrender herself to authorities. The evidence shows that the respondent was hiding from immigration officials and intentionally evading detection.

The Immigration Judge found that a bond of $20,000 is an appropriate amount to mitigate the flight risk and ensure that the respondent appears for future hearings.

EOIR — 14 of 24

## ARGUMENT

**1. THE IMMIGRATION JUDGE ERRED WHEN SHE ORDERED THE RESPONDENT RELEASED ON BOND IN THE AMOUNT OF $20,000, WHERE THE RESPONDENT FAILED TO ESTABLISH THAT SHE DOES NOT POSE A FLIGHT RISK.**

The Immigration Judge erred in granting the respondent's request for a change in custody status and setting bond in the amount of $20,000 because the respondent failed to show she is not a flight risk. Only if an alien demonstrates that he or she is not a danger to the community should an Immigration Judge then determine the extent of flight risk posed by the alien. *Matter of Urena*, 25 I&N Dec. 140, 141(BIA 2009) (citing *Matter of Drysdale*, 20 I&N Dec. 815, 817–18 (BIA 1994)). An alien in a custody determination hearing pursuant to INA § 236(a) must establish that he or she does not present a risk of flight and is likely to attend future immigration proceedings. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020) (citing *Matter of Siniauskas*, 27 I&N Dec. 207 (BIA 2018)); 8 C.F.R. § 1236.1(c)(8)). In determining whether an alien is a flight risk, the Immigration Judge may consider "any 'probative and specific' evidence." *Id.* (citing *Matter of Guerra*, 24 I&N Dec. 37, 40-41 (BIA 2006)). Similar to a dangerousness determination, this includes considering the "specific circumstances surrounding the alien's conduct" to determine whether bond is warranted, and if so, the appropriate amount. *Siniauskas*, 27 I&N Dec. at 208; *see also Guerra*, 24 I&N Dec. at 40. An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. *Guerra,* 24 I&N Dec. at 40. An Immigration Judge may decide to give greater weight to one factor over others, but the decision must be reasonable. *Id.*

Here, the respondent did not establish that she does not pose a flight risk because she failed to provide any evidence demonstrating that a financial sponsor in the United States will help ensure she appears at all future proceedings. *See Matter of Dobrotvoskii,* 29 I&N Dec. 211 (BIA 2025)

(holding that in bond proceedings, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk). The record is void of any statement or affidavit from a sponsor expressing a willingness to provide support to the respondent that could assist in her appearance at future proceedings. *Id*. at 213. The respondent does not have work authorization in the United States and there is no evidence to demonstrate what the respondent or her family do for work and how they support themselves. As such, the Immigration Judge did not have sufficient information to assess an appropriate bond amount to ensure that the respondent would show up for future proceedings and that it would be a disincentive to the family if she were to not show up to future proceedings.

Additionally, the respondent has repeatedly violated the United States' immigration laws by falling out of her student visa status and continuing to reside in the United States without any legal status for over three years. *Guerra*, 24 I&N Dec. at 40 (holding alien's history of immigration violations and employment history are relevant factors for bond proceedings). As noted by the Immigration Judge, although the respondent has an approved I-130 petition through her mother, there is no visa number immediately available to her. Moreover, the Immigration Judge indicated that the respondent had an "uphill battle" in terms of her asylum application. As such, any relief is speculative at this stage.

Moreover, the respondent has failed to establish that she does not pose a flight risk because she intentionally evaded detection by DHS. On March 6, 2025, a special agent with HSI contacted the respondent and told her that they needed to speak with her about her immigration status. Exh. 3 at 6. The respondent told the agent that she would meet him in the next 30 minutes, but she did not arrive. Exh. 3 at 6. The respondent's refusal to meet with HSI required an extensive investigation into her whereabouts. Exh. 3 at 6–21. *See Guerra*, 24 I&N Dec. at 40 (holding

attempts by the alien to flee prosecution or otherwise escape from authorities is a relevant factor to find a flight risk). On March 13, 2025, the respondent finally self-surrendered to HSI. The DHS evidence indicates that the respondent was intentionally evading HSI agents and actively concealed here whereabouts to avoid detection and apprehension for her immigration violations. Exh. 3 at 6–24.

As the respondent has not met her burden in establishing that she does not pose a flight risk, the Immigration Judge erred in ordering the respondent released on bond in the amount of $20,000.

## CONCLUSION

The Immigration Judge erroneously granted the respondent's request for a change in custody status by setting bond in the amount of $20,000, because the respondent failed to meet her burden of establishing she does not pose a flight risk. The DHS therefore requests that the Board reverse the Immigration Judge's order granting the respondent's request for a change in custody status.

Respectfully submitted on September 11, 2025,

_____
Stacy Norcross
Assistant Chief Counsel
Mary Jane Zamarripa
Deputy Chief Counsel
Jo Ann McLane
Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

EOIR – 17 of 24



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**PORT ISABEL IMMIGRATION COURT**

Respondent Name:

    KORDIA, LEQAA

To:

    Sherman-Stokes, Sarah R

    ███████████

A-Number:

    ███████████

Riders:

In Custody Redetermination Proceedings

Date:

08/28/2025

☐ Unable to forward - no address provided.

☑ Attached is a copy of the **decision of the Immigration Judge.** This decision is final unless an appeal is filed with the Board of Immigration Appeals within 30 calendar days of the date of the mailing of this written decision. See the enclosed forms and instructions for properly preparing your appeal. Your notice of appeal, attached documents, and fee or fee waiver request must be mailed to:

        Board of Immigration Appeals
        Office of the Clerk
        P.O. Box 8530
        Falls Church, VA 22041

☐ Attached is a copy of the decision of the immigration judge as the result of your Failure to Appear at your scheduled deportation or removal hearing. This decision is final unless a Motion to Reopen is filed in accordance with Section 242B(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252B(c)(3) in deportation proceedings or section 240(b)(5)(c), 8 U.S.C. § 1229a(b)(5)(c) in removal proceedings. If you file a motion to reopen, your motion must be filed with this court:

        Immigration Court

☐ Attached is a copy of the decision of the immigration judge relating to a Reasonable Fear Review. Pursuant to 8 C.F.R. § 1208.31(g)(1), no administrative appeal is available.

☐ Attached is a copy of the decision of the immigration judge relating to a **Credible Fear Review.** This is a final order. No appeal is available.

☐ Other:

Date:

Immigration Judge: NASELOW-NAHAS, TARA 08/28/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ P ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : KORDIA, LEQAA | A-Number : ████████

Riders:

Date: 08/29/2025 By: Mayorga, Nancy, Court Staff



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**PORT ISABEL IMMIGRATION COURT**

Respondent Name:

KORDIA, LEQAA

To:

Sherman-Stokes, Sarah R

A-Number:

Riders:
In Custody Redetermination Proceedings

Date:
08/28/2025

### AMENDED ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☐  Denied, because

☑  Granted. It is ordered that Respondent be:
　　☐  released from custody on his own recognizance.
　　☑  released from custody under bond of $ 20,000.00
　　☐  other:

☑  Other:
　　Following BIA remand bond in the amount of $20,000.00 is reinstated.

EOIR – 20 of 24

Immigration Judge: NASELOW-NAHAS, TARA 08/28/2025

Appeal:    Department of Homeland Security: ☐ waived  ☑ reserved
           Respondent:                      ☑ waived  ☐ reserved

Appeal Due: 09/29/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ P ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : KORDIA, LEQAA | A-Number : ███████

Riders:

Date: 08/29/2025 By: Mayorga, Nancy, Court Staff

DEPARTMENT OF HOMELAND SECURITY

**NOTICE TO APPEAR**

DOB: 12/11/1992

Event No: XNK2503000016

| In removal proceedings under section 240 of the Immigration and Nationality Act: |
|---|

Subject ID: ▮▮▮▮▮▮▮                                          File No: ▮▮▮▮▮▮

In the Matter of:

Respondent: **LEQAA KORDIA AKA: KORDIA, Leqaa M A**                         currently residing at:

**1209 Sunflower Ln Alvarado, TEXAS 760092810**                    ▮▮ ▮▮▮▮▮▮
(Number, street, city, state and ZIP code)                         (Area code and phone number)

☐ You are an arriving alien.

☐ You are an alien present in the United States who has not been admitted or paroled.

☒ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of STATELESS and a citizen of STATELESS;

3. You were admitted to the United States at Jamaica, New York on or about September 18, 2016 as a unknown manner;

4. You were granted a change of status to a F-1 non-immigrant student;

5. You were terminated by Bergen County Career Advancement Training, Inc. - BCCAT on January 26, 2022.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(1)(C)(i) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you failed to maintain or comply with the conditions of the nonimmigrant status under which you were admitted.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8CFR 208.30    ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

**27991 BUENA VISTA BLVD,  LOS FRESNOS, TEXAS 78566. PRAIRIELAND DETENTION CTR**
(Complete Address of Immigration Court, including Room Number, if any)

on __May 6, 2025__ at __8:30 am__    to show why you should not be removed from the United States based on the
    (Date)              (Time)

charge(s) set forth above.                         **E #6885 KLEIN - (a)SDDO**
                                                (Signature and Title of Issuing Officer)

Date: __March 15, 2025__                              **Dallas, Texas**
                                                        (City and State)

EOIR - 22o6f324

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____      _____
*(Signature and Title of Immigration Officer)*      *(Signature of Respondent)*

Date: _____

---

### Certificate of Service

This Notice To Appear was served on the respondent by me on __March 15, 2025__, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail
[ ] Attached is a credible fear worksheet.
[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the __English__ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____      K8224 GATES-JONES - Deportation Officer
*(Signature of Respondent if Personally Served)*      *(Signature and Title of officer)*

---

DHS Form I-862 (6/22)                                                                 Page 2 of 3

**Privacy Act Statement**

**Authority:**

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

EOIR – 24oof324

# Petitioner's Response to DHS's Stay Motion

Sarah Sherman-Stokes                                    **DETAINED**
Boston University School of Law
Immigrants' Rights Clinic



Naz Ahmad
Amal Thabateh
CUNY School of Law
CLEAR project
2 Court Square West, 5th Floor
Long Island City, NY 11101

Golnaz Fakhimi
Sadaf Hasan
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005

*Pro Bono Attorneys for Respondent*

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BOARD OF IMMIGRATION APPEALS**
**FALLS CHURCH, VIRGINIA**

|  |  |  |
|---|---|---|
| | : | |
| **IN THE MATTER OF** | : | |
| | : | |
| LEQAA KORDIA | : | **File No.: A**  |
| | : | |
| **In Custody Redetermination** | | |
| **Proceedings** | : | |
| | : | |

**RESPONDENT'S OPPOSITION TO THE DEPARTMENT'S MOTION FOR**
**DISCRETIONARY STAY**

## PRELIMINARY STATEMENT

This matter is now before the Board of Immigration Appeals ("BIA") for a second time solely on the issue of custody redetermination. Respondent, Leqaa Kordia ("Ms. Kordia"), respectfully requests that the BIA deny the motion of the Department of Homeland Security ("DHS") for a discretionary stay of the Immigration Judge's second order finding her releasable upon payment of a $20,000 bond. Ms. Kordia submits that DHS has not met the requirements for a discretionary stay.

## PROCEDURAL BACKGROUND

On March 13, 2025, Ms. Kordia voluntarily appeared with legal counsel at a pre-arranged meeting at the Immigration and Customs Enforcement ("ICE") office in Newark, New Jersey, after DHS agents contacted her about one week prior. IJ Bond Mem., Sept. 15, 2025, at 4 ("IJ Second Bond Mem."). At that meeting, ICE took her into custody and served her with a Notice to Appear ("NTA"), charging her as removable under Immigration and Nationality Act ("INA") § 237(a)(1)(C)(i) for failing to maintain her nonimmigrant status.

On March 27, 2025, Ms. Kordia filed a Motion for Bond and Custody Redetermination. IJ Bond Mem., Apr. 16, 2025,  at 1 ("IJ First Bond Mem.").  On April 3, 2025, the IJ conducted a bond hearing that lasted nearly an hour. *Id.* The Immigration Judge ("IJ") considered record evidence submitted by the parties, including testimony by both Ms. Kordia and her uncle. Several of Ms. Kordia's family and community members also attended the hearing. *Id.* At the bond hearing, DHS claimed Ms. Kordia was a danger because of her involvement in an April 2024 protest and because she had sent money overseas to individuals in Palestine. *Id.* at 2. DHS speculated, based on no evidence, that the recipients could have connections to Hamas. *Id.* The

1

Court roundly rejected that contention and DHS's arguments overall about supposed "danger." *Id.* at 2–3. The Court also made findings that Ms. Kordia presented a moderate risk of flight. *Id.* at 3. The Court granted Ms. Kordia's request for release on bond, setting her bond at $20,000. *Id.*

On April 4, 2025, DHS filed Form EOIR-43, noticing its intent to appeal the decision, automatically staying the judge's decision. On April 15, 2025, DHS noticed its appeal of the IJ's decision. In that notice and its subsequent briefing to the BIA, DHS asserted arguments about purported flight risk by wrongly claiming that Ms. Kordia "intentionally evaded detection by DHS," "failed to provide evidence demonstrating that a financial sponsor in the United States will ensure she appears at all future proceedings," and "provided no proof of any legal work history in the United States and has repeatedly violated the United States' immigration laws by falling out of her student visa status and continuing to reside in the United States." *See* DHS Not. of Appeal, Apr. 15, 2025, at 8–9. Ms. Kordia dispelled those arguments in her briefing to the BIA, pointing to record evidence demonstrating that the IJ's finding concerning flight risk was not clearly erroneous. Resp't's BIA Br., May 8, 2025, at 17–23.

On July 2, 2025, DHS sought a further discretionary of the immigration judge's April 3, 2025, order granting Ms. Kordia release on $20,000 bond. On July 3, 2025, the BIA granted this request, without affording Ms. Kordia an opportunity to respond as to why a discretionary stay was inappropriate.

On August 11, 2025, the BIA remanded the proceedings for "more complete findings of fact regarding the extent of the respondent's money transfers, including how many transfers she made, how often, the amount of money transferred in each transaction, and the identity and geographic location of the recipients of each money transfer from the respondent." BIA Dec.,

2

Aug. 11, 2025, at 1. The Board left undisturbed the IJ's initial findings on flight risk, which the parties had fully briefed. *Id*. at 2–3.

Pursuant to the Board's remand, the Court ordered Ms. Kordia to submit additional documents and evidence concerning the money transfers and their bearing on the question of putative danger to the community and scheduled a second custody redetermination hearing for August 28, 2025. *See* IJ Order, Aug. 22, 2025. Respondent filed additional evidence concerning the money transfers on August 27, 2025. *See* Resp't's Br. on Remand, Aug. 27, 2025.

On August 28, 2025, the Court held a bond hearing and again granted Ms. Kordia's request for a change in custody status, once again setting her bond at $20,000 after finding that she is not a danger to the community nor unreleasable as a flight risk. IJ Second Bond Mem., Sept. 15, 2025, at 1. After a review of Ms. Kordia's money transfers, the Court found that she met her burden to prove that she is not a danger to the community. *Id*. at 2–4. The Court found "there is no evidence in the record that the money Respondent sent overseas provided support to any terrorist organizations. Rather, the evidence overwhelmingly demonstrates that the money was sent to the Respondent's extended family members who were in desperate need of financial assistance." *Id*.

Additionally, the Court determined that Ms. Kordia is not a flight risk such that a reasonable bond would not assure her appearance. *Id*. at 4–5. The IJ made multiple factual findings concerning Ms. Kordia's lengthy residence in the United States, with her immediate family, including her U.S. citizen mother and stepfather, U.S. citizen aunt, uncle, and cousins. *Id*. at 4. The IJ specifically found that Ms. Kordia "plans to return to her mother's house" in New Jersey "after being released from detention." *Id*. at 4. Ms. Kordia's uncle had testified that he and

3

his sister (Ms. Kordia's mother) own their homes and that they would "financially support" Ms. Kordia. *Id.* at 4. Based on the record evidence spanning the two bond hearings held respectively on April 3 and August 28, 2025, the IJ found that Ms. Kordia demonstrated she is a "valued member of her community," "an integral part of her family," "has deep roots in her community after living there for nine years," and that her "family's ability to post the $20,000 bond in April is evidence that they will be able to financially support Respondent." *Id.* at 4–5.

On August 28, 2025, DHS filed Form EOIR-43, noticing its intent to appeal the decision of the IJ that day, which found Ms. Kordia for the second time to be releasable on bond. DHS's filing automatically stayed the IJ's August 28 decision. On September 11, 2025, DHS filed its notice of appeal of the IJ's August 28 decision, as well as an emergency motion for a discretionary stay of it.

## STANDARD OF REVIEW

The standard for determining whether a stay pending judicial review should be granted is set out in *Nken v. Holder*, 556 U.S. 418 (2009). In *Nken*, the Court confirmed that the four factors to be considered are:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*See Nken v. Holder*, at 434. *See also Lembou v. Garland,* 845 Fed. App'x. 363 (5th Cir. 2021).

In determining whether a noncitizen merits release on bond, immigration judges consider factors such as:

> "(1) whether the respondent has a fixed address in the United States, (2) length of residence in the United States, (3) family ties in the United States, (4) eligibility for relief, (5) the respondent's employment history, (6) the respondent's criminal record, the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the respondent's record of appearance in court, (8) and/or whether the respondent is capable to place a reasonable bond."

*See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). This list of factors is not exhaustive, and any reliable evidence in the record may be considered. 8 C.F .R. § 1003 .19(d). An immigration judge may give greater or lesser weight to any given factor or factors, provided the ultimate conclusion is reasonable. *Matter of Guerra*, 24 I&N Dec. at 40. Family and community ties may demonstrate the applicant is not a flight risk. *Matter of Siniauskas*, 27 I&N Dec. 207, 209-210 (BIA 2018).

Finally, the Board defers to the IJ's findings of fact unless clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i). Predictive factual findings, such as findings of future risk of flight or dangerousness, are factual findings subject to clear error review. *See Matter of Z-Z-O*, 26 I. & N. 586 (BIA 2015); *Morales-Morales v. Barr,* 933 F. 3d 456, 464 (5th Cir. 2019).

I.    **DHS's Failure to Meet Its Burden to Justify a Discretionary Stay Results in Procedural Default**

The BIA should consider DHS in procedural default for its failure to argue the traditional standard for a stay pending judicial review as set forth in *Nken v. Holder*, 556 U.S. 418 (2009). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of adjudicatory discretion. *See id.* at 433-434. *See also Clinton v. Jones*, 520 U.S. 681,

5

708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). In its filing, DHS made no arguments justifying a discretionary stay of the immigration judge's removal, whether under the traditional *Nken* factors or otherwise. Nor did DHS make any arguments to substantiate the "emergency" nature of its request.

**II.    The *Nken* Factors Weigh Against DHS's Emergency Discretionary Stay Request.**

Even in the absence of procedural default, none of the four *Nken* factors favor DHS's request for an emergency discretionary stay. The first two factors are the "most critical." *Id.* The undisputed evidence establishes that Ms. Kordia is neither a danger nor a flight risk. As set forth below, DHS cannot prevail in substantiating any legally cognizable basis to invoke an emergency discretionary stay to justify Ms. Kordia's continued confinement after an immigration judge has twice found her releasable upon payment of a bond.

a. <u>DHS Is Unlikely to Succeed on the Merits.</u>

First, DHS has not demonstrated a likelihood of success on the merits in demonstrating that the immigration judge "clearly erred" in finding Ms. Kordia did not pose a significant risk of flight. As noted above, an immigration judge's clear error review is significantly deferential to the finder of fact, precluding reversal unless the BIA is left with the definite and firm conviction that the factual findings are not supported by the record. *Matter of Luz Mercedes Macazani-Martinez*, Respondent, 2023 WL 4060100, at *1 (affirming IJ's decision to grant Respondent's application for adjustment of status based on finding no clear error in the factual findings where two permissible views of the evidence on the issue of material misrepresentation were presented). *See also Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension*

*Trust for S. Cal.*, 508 U.S. 602, 623 (1993) (holding that a finding is "clearly erroneous" when the reviewing body, evaluating all of the evidence, is left with the firm and definite conviction that a mistake has been made); *Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (holding that on clear error review, "[a] finding that is 'plausible' in light of the full record–even if another is equally or more so–must govern").

DHS has sought an emergency discretionary stay to keep Ms. Kordia confined despite the IJ's conducting a thorough review of the evidentiary record on the issue of flight risk—not once but twice. *See* DHS Not. of Appeal, Sep. 11, 2025; DHS Emergency Mot. for Discretionary Stay, Sep. 11, 2025; IJ Second Bond Mem., Sep. 15, 2025; IJ First Bond Mem., Apr. 16, 2025. The Board itself has affirmed these same factual findings after DHS's first bond appeal—remanding *only* for "more complete findings of fact" on whether Ms. Kordia met her burden of proving she is not a danger in connection with money transfers to family abroad. *See* BIA Dec., Aug. 11, 2025, at 2. Upon consideration of related briefing from the parties, this Board deferred to and did not disturb the Immigration Judge's factual findings in the Immigration Judge's first bond order that Ms. Kordia had met her burden of proving her degree of flight risk is low enough that a bond of $20,000 would ensure her presence at future immigration hearings. *Id.*

In her new, second decision, the Immigration Judge once again determined that Ms. Kordia is releasable on bond and undercuts DHS's rehashed assertions that Ms. Kordia is a flight risk by affirming her prior findings. As set forth below, the Immigration Judge has made multiple and repeated fact findings granting Ms. Kordia's release on bond based on her close family and community ties in the U.S and eligibility for future relief. *See* IJ Second Bond Mem., Sep. 15, 2025, at 5.

As the Immigration Judge clarified in the first bond hearing, the proper inquiry in assessing flight risk is whether Ms. Kordia has any forms of relief–not whether immigration laws have been violated. *See* Apr. 3, 2025, Hrg. at 43:45–44:19. Despite DHS's assertions that Ms. Kordia's avenues to relief are "speculative," the Immigration Judge found *again* that Ms. Kordia has "multiple avenues for relief which incentivize her appearance at future hearings" based on an approved I-130 that is "likely to become current in the next year" at which point Ms. Kordia will "be eligible to adjust." *See* IJ Second Bond Mem., Sep. 15, 2025, at 4. In considering the soon-to-be current adjustment application, in addition to Ms. Kordia's applications for asylum, withholding of removal, and protection under CAT, the IJ concluded that Ms. Kordia "has significant incentive to appear for any future proceedings and that she will likely do so." *Id.* at 5.

In response to DHS's unsubstantiated assertions that Ms. Kordia intentionally evaded detection by ICE, the IJ cited to record evidence in her second decision that "Respondent claims that she wanted to consult with an attorney before speaking with immigration officials. After she consulted with her attorney, she voluntarily reported to ICE with her counsel where she was detained. The Court finds that her choice to hire an attorney before speaking with ICE does not suggest she would fail to appear at future hearings." *See* IJ Second Bond Mem., Sep. 15, 2025, at 4. DHS mischaracterizes Ms. Kordia's diligent steps to secure legal counsel and comply with immigration laws while conceding that Ms. Kordia in fact voluntarily "self-surrendered to HSI." *See* DHS Mot. for Emergency Stay, Sep. 11, 2025, at 4. Moreover, the record clearly demonstrates that Ms. Kordia and her family possess the financial means to support her upon release from custody. The Immigration Judge has repeatedly found that Ms. Kordia provided sufficient evidence regarding a financial sponsor noting that Ms. Kordia's mother and uncle

"own their own homes and that they will financially support Respondent" and further, that "[t]he family's ability to pay the $20,000 bond in April is evidence that they will be able to financially support the Respondent." *See* IJ Second Bond Mem., Sep. 15, 2025, at 4; IJ First Bond Mem., Apr. 16, 2025, at 4. And this Board left those findings undisturbed after review of the parties' briefing in its remand decision. *See* BIA Dec., Aug. 11, 2025.

          1)  *Matter of Dobrotvorskii* is Inapplicable.

The recent decision of the Board in *Matter of Dobrotvorskii*, 29 I&N Dec. 207 (BIA 2025), issued after the immigration judge granted bond, is inapplicable here, and does not alter the calculus that DHS is unlikely to succeed on the merits of its appeal. DHS is unlikely to succeed in showing that the IJ clearly erred in determining that Ms. Kordia had presented sufficient evidence of family and community ties and financial support such that she does not present a significant risk of flight.

At the August 28, 2025, hearing, DHS argued that Ms. Kordia presented a risk of flight because she had not provided evidence of a financial sponsor. As the Board laid out, the existence of a financial sponsor is relevant only insofar as it "relates directly to whether the [noncitizen] has a fixed address" and to the degree of the non-citizen's "community ties." *See Matter of Dobrotvorskii*, 29 I&N Dec. 211, 214 (BIA 2025). But Ms. Kordia has provided proof of a fixed address where she will live if released. At both hearings, she stated unequivocally that she would reside with her mother, stepfather, and brother in ▮▮▮▮▮ New Jersey, and her mother provided an affidavit the same. *See* Apr. 3, 2025, Hrg. at 33:58-34:10; Aug. 28, 2025, Hrg., Track 2, at 12:08–13:07; Exh. 4A-B, Tab B (Resp't's Br. on Remand, Aug. 27, 2025, at Tab B (Decl. of ▮▮▮▮▮▮). Ms. Kordia has also provided substantial evidence of significant

9

community ties in ████, where she has lived consistently for nine years since arriving in the United States. *See* Resp'ts' Br. on Remand, Aug. 27, 2025, at 6–8 (citing evidence entered onto the custody redetermination record at the Apr. 3, 2025, bond hearing: Bond Ex. 1-B, Tabs J, K, M; Bond Ex. 2-B). Beyond her U.S. citizen mother, stepfather, and stepbrother, Ms. Kordia also has a U.S. citizen uncle, aunt, and cousins. *See* IJ Second Bond Mem., Sept. 15, 2025, at 4. And multiple friends and community members identified her as a "valued member of the community." *Id.* at 4.  Her uncle also testified at the April 3, 2025, hearing that both he and his sister, Ms. Kordia's mother, own their homes, which the immigration judge took into account in determining whether Ms. Kordia would receive financial support once released. *See Id.* at 4; *see also* IJ First Bond. Mem., Apr. 16, 2025, at 3 ("her uncle testified that he and Respondent's mother own their own homes and that they will financially support Respondent."). Moreover, the Immigration Judge has noted that her family members were willing and able to pay a substantial bond of $20,000 to secure her release which is clear "evidence that they will be able to financially support the Respondent". See IJ Second Bond Mem., Sep. 15, 2025, at 4; IJ First Bond Mem., Apr. 16, 2025, at 3; Apr. 3, 2025, Hrg. at 37:54-38:00 (uncle's testimony concerning bond money raised); *see also* Pet'r's TRO App. at 81–82 (Ex. 1-B, Decl. of Hamzah Abushaban), *Kordia v. Noem*, Case 3:25-cv-01072-L-BT, ECF No. 73-1 (testimony from Ms. Kordia's cousin about having paid the $20,000 bond ordered through the Apr. 3, 2025, bond hearing and trying to pay the $20,000 bond ordered through the Aug. 28, 2025, bond hearing but being informed by DHS he could not do so). Ms. Kordia also testified that she had previously worked, and although she did so without lawful authorization, the IJ noted at the August 28, 2025, hearing that Ms. Kordia would soon be eligible to apply for work authorization and would

10

be able to work lawfully if released. Aug. 28, 2025, Hrg. at 22:19 - 23:30 (Track 2).

In contrast to the Respondents in *Dobrotvorskii* and *Matter of R-A-V-P*, 27 I&N. Dec. 803 (BIA 2020), Ms. Kordia has a lengthy period of stable residence in the U.S., strong community and family ties, and proof of a fixed address. Unlike Ms. Kordia, the Respondents in *R-A-V-P* and *Dobrotvorskii* did not submit evidence of any period of stable, fixed residence in the U.S., nor significant family and community ties. Additionally, Ms. Kordia's family ties potentially entitle her to regularize her status, unlike the Respondents in *R-A-V-P* or *Dobrotvorskii*. Also, unlike the Respondents in *Dobrotvorskii* and *R-A-V-P*, in Ms. Kordia's case a specific individual, her mother, a U.S. citizen, who knows Ms. Kordia, and owns her own home, has provided a declaration under penalty of perjury stating that Ms. Kordia would be able to reside with her and that she would support Ms. Kordia. *Compare Dobrotvorskii*, at 214, *with* Exh. 4A-B, Tab B (Resp't's Br. on Remand, Aug. 27, 2025, at Tab B (Decl. of ██████████) (testimony under penalty of perjury from Ms. Kordia's mother corroborating that Ms. Kordia would live with her upon her release); Aug. 28, 2025, Hrg., Track 2, at 12:08–13:07 (Ms. Kordia's sworn testimony concerning living with her mother upon her release at the residence where her mother has resided for approximately 30 years). Also in contrast to *Dobrotvorskii*, there is not any conflicting evidence in the record of the bond proceedings concerning her mother's fixed address. *See* 29 I&N Dec. at 214 ("There is no explanation from either the respondent or the sponsor as to which of the multiple addresses, if any, is [the proposed sponsor's] fixed address, and whether the respondent will be residing with him at the address upon release from custody."). Ms. Kordia testified at the August 28, 2025, bond hearing that her family had lived at that same Paterson, New Jersey address for nearly 30 years. Aug. 28, 2025, Hrg., Track 2, at 12:08–13:07.

11

At each bond hearing, the IJ did not clearly err in determining that Ms. Kordia had significant family and community ties and evidence of financial support such that she could be released on payment of a $20,000 bond. On each occasion, the IJ carefully considered the record evidence, weighed credibility, and made detailed factual findings concluding that Ms. Kordia is releasable on a $20,000 bond. *See* IJ Second Bond Mem., Sep. 15, 2025, at 4–5; IJ First Bond Mem., Apr. 3, 2025, at 3. In seeking a stay, DHS is effectively asking this Board to relitigate the very same issue of flight risk that has already been extensively brief and resolved, not once but twice. The fact that the Immigration Judge has twice reached the same conclusion after independent evidentiary review underscores the strength and reliability of those factual findings—particularly given that this Board itself has already considered the parties' briefing on the issue of flight risk and declined to disturb the IJ's original finding that Ms. Kordia was not a significant flight risk. DHS's position rests solely on reasserting claims that have been thoroughly considered and rejected by both the IJ and this Board. Without providing new evidence to overturn the Immigration Judge's determination that it could not have otherwise proffered at the August 28, 2025, bond hearing, DHS faces an uphill battle to succeed on the merits in demonstrating the IJ clearly erred in finding Ms. Kordia is not a significant flight risk.

a. DHS Will Not Suffer Harm Absent a Stay

DHS will not be irreparably injured absent a stay of the custody redetermination order. DHS has now conceded that Ms. Kordia does not pose a danger to the community, so it cannot claim any irreparable injury from her release on that basis. *See* DHS Notice of Appeal, Sep. 11, 2025; DHS Mot. for Emergency Discretionary Stay, Sep. 11, 2025. As to the government's interest in ensuring completion of the removal proceedings, Ms. Kordia's release on $20,000

bond will not prevent completion of her removal proceedings. Ms. Kordia will remain in removal proceedings if released from custody; the government will still be able to pursue her removal. Ms. Kordia's next appearance before the immigration court is October 23, 2025. Her release on $20,000 bond will not prevent Ms. Kordia from attending her next immigration court hearing—the IJ has rightly found, twice, based on record evidence, that the bond payment suffices to ensure continued appearances in immigration court. Moreover, the government will benefit from effectuating her release, as it will no longer have to bear the expense of Ms. Kordia's continued, and prolonged, detention.

b. Issuance of a Discretionary Stay Will Substantially Injure Ms. Kordia.

The third *Nken* factor requires the BIA to consider whether granting the stay will cause substantial injury to other interested parties. Here, issuance of the discretionary stay will substantially injure Ms. Kordia. DHS has confined Ms. Kordia for over six months, since March 13, 2025. Courts have recognized that prolonged detention can cause irreparable harm to confined people and that such harm weighs heavily against granting a stay. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting constitutional concerns that arise from indefinite detention of people subject to final removal orders). Continued confinement imposes significant and irreparable harm to Ms. Kordia, including her continued loss of liberty and separation from her family and community. Ms. Kordia's ongoing confinement also harms her family, especially her mother, who is disabled. *See* Second IJ Bond Memo., Sep. 15, 2025, at 4 ("Respondent's mother suffers from medical conditions and relies on Respondent's help. Exh. 4A-B, Tab A [Suppl. Decl. of Leqaa Kordia]. Further, Respondent's step-brother, ███, has autism and intellectual disabilities. *Id.* Respondent's mother states that Respondent helped her care for ███

before she was detained. Ex. 4A-B, Tab B [Decl. of ███████, Ms. Kordia's mother]"). Ms. Kordia has been ordered released twice by the IJ; twice the Court has determined that she is neither a danger to the community nor a flight risk. Accordingly, the third *Nken* factor weighs strongly against granting the stay, as the injury suffered by Ms. Kordia and her family from her continued confinement is substantial and immediate.

   c.   The Public Interest Weighs in Favor of Denying the Department's Motion for a Stay

As to the fourth *Nken* factor, the BIA must consider whether granting or denying the government's motion for a discretionary stay best serves the public interest. Here, the public interest weighs heavily in favor of denying DHS's motion. The government's interest in enforcing immigration laws is relevant but not absolute. Courts have long recognized that the public interest also encompasses respect for individual liberty, due process, and the humane treatment of detainees. Prolonged confinement undermines these principles—especially after two IJ decisions have ordered Ms. Kordia releasable on bond because she poses no danger to the community and because any risk of flight she may present is addressable through conditioning release on bond. The Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), emphasized that the Constitution embodies "a strong presumption that Congress does not intend to authorize the indefinite detention of [noncitizens]." *Id.* at 690. The Court further recognized that continued confinement beyond a reasonable period constitutes an "unreasonable infringement on the liberty of the [noncitizen]," which implicates the public interest. *Id.* at 701–02. Moreover, indefinite or prolonged confinement imposes significant societal costs, including strain on government

14

resources, erosion of public confidence in the immigration system's fairness and legitimacy as well as a significant impact on family and community life. The public interest is ill-served by confining individuals without sufficient justification, particularly when they have already been twice cleared for release by IJs. Lastly, it is in the public's interest to deny DHS's motion for a discretionary stay given that DHS has pursued Ms. Kordia's initial and continued detention in retaliation for the exercise of her First Amendment rights– attending a demonstration in support of Palestinian rights. *See Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at \*9 (4th Cir. July 1, 2025) ("A stay here would allow the government to immediately re-detain Suri, which would further chill speech protected by the First Amendment."). Protecting constitutional freedoms, especially free speech, is a fundamental public interest that outweighs any speculative government interest in continued detention. *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.,* 39 F.4th 95, 109 (3d Cir. 2022) ("[t]here is a strong public interest in upholding the requirements of the First Amendment."); *see also Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) ("protecting First Amendment freedoms [is] always in the public interest.") (quotation omitted). Allowing detention under these circumstances risks chilling protected expression and undermines the core values upon which the legal system is founded. *See Öztürk v. Hyde*, 136 F.4th 382, 403 (2d Cir. 2025) ("[f]aced with such a conflict between the government's unspecific financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to Öztürk on the other, we have little difficulty concluding 'that the balance of hardships tips decidedly' in her favor.") (citation omitted). On balance, the public interest clearly leans in favor of releasing Ms. Kordia.

15

The BIA should deny DHS's emergency request for a discretionary stay to keep Ms. Kordia confined despite incontrovertible evidence that she is neither a danger nor a flight risk—as is supported by recent cases from other Courts finding it "inappropriate to stay [the Court's] order so that the Government may seek a discretionary stay." *Leal-Hernandez*, 2025 WL 2430025, at \*15; *see, e.g., Mohammed H.*, 2025 WL 1692839, at \*8 (releasing petition on "conditions previously imposed by the Immigration Judge"); Jacinto, 2025 WL 2402271, at \*5 (same). In sum, DHS fails both procedurally and substantively in its request to reverse the IJ's order granting release on bond for a *second* time when Ms. Kordia has already met her burden in proving she is neither a danger nor flight risk.

## CONCLUSION

For all of the above reasons, DHS has failed to establish why a discretionary stay of the immigration judge's second order finding the Respondent releasable on a $20,000 bond should be granted.

Date: September 16, 2025

Respectfully submitted,

Sarah Sherman-Stokes, Esq.
Boston University School of Law
Immigrants' Rights Clinic

Naz Ahmad
Amal Thabateh
CUNY School of Law
CLEAR project
2 Court Square West, 5th Floor
Long Island City, NY 11101

16

Golnaz Fakhimi
Sadaf Hasan
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005

*Pro bono attorneys for Respondent*

17

**PROOF OF SERVICE**

On September 16, 2025, Sarah Sherman-Stokes, served a copy of **RESPONDENT'S OPPOSITION TO THE DEPARTMENT'S MOTION FOR A DISCRETIONARY STAY** on the Department of Homeland Security, Immigration and Customs Enforcement, Office of the Principal Legal Advisor, via filing with the ECAS system.

_____
Sarah Sherman-Stokes

09/16/2025

Date

# BIA Grant of Disc. Stay

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Sherman-Stokes, Sarah R**
**Boston University School of Law**

████████████████

**DHS/ICE OFFICE OF CHIEF COUNSEL - PEP**
**27991 BUENA VISTA BLVD**
**LOS FRESNOS TX 78566**

Name: **KORDIA, LEQAA**            **A** ████████

**Date of this Notice:    9/15/2025**

Enclosed is a copy of the Board's stay decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Paralegal

NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

---

MATTER OF:

Leqaa KORDIA, A███████████

Respondent

---

<div style="border:1px solid black;">

**FILED**

Sep 15, 2025

</div>

ON BEHALF OF RESPONDENT: Sarah R. Sherman-Stokes, Esquire

ON BEHALF OF DHS: Stacy Norcross, Assistant Chief Counsel

IN BOND PROCEEDINGS
On Motion for Stay of Removal before the Board of Immigration Appeals

Before: Mullane, Appellate Immigration Judge

MULLANE, Appellate Immigration Judge
STAY ORDER

The Department of Homeland Security has filed a motion for an emergency stay pending appeal of the Immigration Judge's bond order, issued on August 28, 2025, ordering the respondent released from custody upon posting a bond of $20,000. After consideration of all information, the Board has concluded that the motion for emergency stay of the bond order pending appeal will be granted.

ORDER: The motion for stay of the bond order is granted.