# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

LEQAA KORDIA,

                Petitioner-Plaintiff,

v.

KRISTI NOEM et al.,

                Respondents-Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 3:25-cv-1072-L-BT

## PETITIONER'S SUPPLEMENTAL BRIEF RESPONDING TO ECF NO. 95

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

I. BACKGROUND ......................................................................................................... 1

    A. Ms. Kordia Challenges Her Unconstitutional Confinement. ........................................ 1

    B. Respondents Will Likely Continue Confining Ms. Kordia for Many More Months, Putting Her Health at Serious Risk. .................................................................................. 4

II. ARGUMENT ............................................................................................................. 6

    A. The Court Should Order Release on the Basis of Ms. Kordia's Substantive Due Process Claim. ..................................................................................................... 6

        1. The prolonged and increasing duration of Respondents' confinement without a constitutionally adequate basis violates substantive due process. ........................... 6

        2. None of the INA's jurisdiction-stripping provisions apply. ..................................... 9

        3. The Court should order release on the $20,000 bond set by the immigration judge.. ……………………………………………………………………………….10

    B. The Court Can Consider Ms. Kordia's Health Condition in Determining Whether to Issue Emergency or Expedited Relief. ......................................................................... 12

III. CONCLUSION ........................................................................................................ 13

CERTIFICATE OF SERVICE ......................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Beltran v. Wolf*,
473 F. Supp. 3d 688 (N.D. Tex. 2020) ........................................................................ 13

*Bolante v. Keisler*,
506 F.3d 618 (7th Cir. 2007) ...................................................................................... 12

*Boumediene v. Bush*,
553 U.S. 723 (2008).................................................................................................... 12

*Calley v. Callaway*,
496 F.2d 701 (5th Cir. 1974) ................................................................................ 12, 13

*Demore v. Kim*,
538 U.S. 510 (2003)................................................................................................... 8, 9

*Foucha v. Louisiana*,
504 U.S. 71 (1992)........................................................................................................ 6

*Iza v. Arnott*,
No. 6:25-CV-3392, 2026 WL 67152 (W.D. Mo. Jan. 8, 2026)..................................... 11

*Jacinto v. Trump*,
796 F.Supp.3d 584 (D. Neb. 2025).............................................................................. 11

*Kambo v. Poppell*,
No. 07-CV-800, 2007 WL 3051601 (W.D. Tex. Oct. 18, 2007)..................................... 7, 8, 9, 10

*Kansas v. Hendricks*,
521 U.S. 346 (1997)...................................................................................................... 6

*L.G.M. v. LaRocco*,
788 F. Supp. 3d 401 (E.D.N.Y. 2025) ......................................................................... 11

*Leal-Hernandez v. Noem*,
803 F. Supp. 3d 409 (D. Md. 2025).......................................................................... 7, 11

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001)........................................................................................ 12

*N.Z.M. v. Wolf*,
No. 5:20-CV-24, 2020 WL 2813557 (S.D. Tex. May 28, 2020)................................... 8, 9, 10, 11

*Nken v. Holder*,
556 U.S. 148 (2012).................................................................................................... 3

*Ostrer v. United States*,
584 F.2d 594 (2d Cir. 1978)...................................................................................... 12

*Preiser v. Rodriguez,*
411 U.S. 475 (1973).................................................................................................. 10

*Schlup v. Delo*,
513 U.S. 298 (1995).................................................................................................. 10

*U.S. ex rel Ackerman v. Pennsylvania*,
133 F. Supp. 627 (W.D. Pa. 1955)............................................................................ 13

*Zadvydas v. Davis*,
533 U.S. 678 (2001)........................................................................................... 6, 8, 9

**Other Authorities**

Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267 (Feb. 6, 2026) . 4

EOIR, Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025),
https://www.justice.gov/eoir/ media/1344986/dl?inline [https:// perma.cc/88C5-MU4N]. ....... 4

TRAC Immigration, *Immigration Court Backlog*,
https://tracreports.org/phptools/immigration/backlog/. ............................................................ 4

**Rules**

Fed. R. Civ. P. 25 ..................................................................................................... 1

Petitioner, Leqaa Kordia, submits this supplemental brief in response to this Court's order, Dkt. 95, and respectfully requests this Court grant the Amended Petition for Writ of Habeas Corpus, Dkt. 69 ("Am. Pet." or "Amended Petition"), and order Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Robert Cerna,[1] and Thomas Bergami ("Respondents") to immediately release Ms. Kordia from custody upon payment of the $20,000 bond set twice by the immigration judge.

## I.    BACKGROUND

For more than eleven months, Respondents have confined Ms. Kordia over 1,500 miles from home in the Prairieland Detention Facility ("PDF") as punishment for her support for Palestinian lives and freedom. But even if the government is not punishing Ms. Kordia on the basis of her First Amendment activity, her continued confinement violates substantive due process, which requires the government to justify prolonged civil immigration confinement with a sufficiently compelling justification. Respondents have not provided any such justification, let alone a compelling one, especially as Ms. Kordia approaches one year of confinement and will likely endure many more months without this Court's intervention. And should the Court require additional time, evidence, or briefing on Ms. Kordia's other claims, it can release Ms. Kordia on bail pending final judgment on Ms. Kordia's substantive due process claim in light of the serious deterioration of her health while incarcerated.

### A. Ms. Kordia Challenges Her Unconstitutional Confinement.

Respondents began confining Ms. Kordia at PDF on March 14, 2025. Ms. Kordia filed this habeas case challenging her unconstitutional confinement at PDF on April 30, 2025. Pet. for Writ of Habeas Corpus, Dkt. 1. Shortly thereafter, she moved for a preliminary injunction ordering release pending final judgment, arguing she was likely to succeed on the merits, that her case

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Robert Cerna, now the acting Director of ICE's Dallas Field Office, is automatically substituted for his predecessor, Josh Johnson.

presented extraordinary circumstances warranting release, and that a preliminary injunction was necessary to prevent irreparable harm and served the public interest. Mot. for Prelim. Inj., Dkt. 13. On June 27, 2025, this Court found Ms. Kordia likely to succeed on her procedural due process challenge to the Department of Homeland Security's ("DHS") automatic stay regulation, and recommended granting Ms. Kordia's motion. Findings, Conclusions, and Recommendation ("FCR"), Dkt. 53. But before briefing on the FCR completed, DHS sought, and the Board of Immigration Appeals ("BIA") granted, a discretionary stay, thereby arguably mooting the relief this Court recommended. *See* Resp'ts' Objs. to FCR, Dkt. 57 at 15–17 (arguing mootness).[2] In light of these changed circumstances, the District Court recommitted the Motion for Preliminary Injunction to this Court, Dkt. 65, and this Court consolidated that motion with the merits at the parties' request, Dkt. 68.

Ms. Kordia filed the operative Amended Petition on August 18, 2025. There, Ms. Kordia alleged that her continued confinement is unconstitutional because it: (1) constitutes unconstitutional retaliation for her First Amendment activity supporting Palestinian rights, Am. Pet., Dkt. 69 ¶¶ 182–89; (2) violates substantive due process because the government lacks a cognizable legal interest in her confinement, which otherwise amounts to punishment for protected activity, *id.* ¶¶ 190–200; (3) is being prolonged by DHS's use of the automatic stay regulation, which is unconstitutional as applied to Ms. Kordia, *id.* ¶¶ 201–07; and (4) violates procedural due process by placing the burden of proof on her to justify her release, *id.* ¶¶ 208–18.[3]

After filing her Amended Petition, and just days before Respondents' response was due,

---

[2] All page citations are to the ECF-generated page number at the top of the filed document.
[3] The Parties agreed to stay consideration of Ms. Kordia's claims under the Religious Freedom Restoration Act until the habeas claims are resolved. Dkt. 67. The Court stayed the claims on these terms shortly thereafter. Dkt. 68.

the immigration judge held a second bond hearing where Ms. Kordia presented dozens of pages of evidence demonstrating that she poses neither a danger nor a risk of flight. TRO App., Dkt. 74-1 at 8–80. DHS submitted no evidence and affirmatively conceded Ms. Kordia does not pose a danger, maintaining only that she is a flight risk but without any rebuttal for why any risk of flight is not addressable through conditioning release on bond. *Id.* at 5. DHS also chose not to cross-examine Ms. Kordia. *Id.* The immigration judge once again found Ms. Kordia releasable on a $20,000 bond, *id.* at 86, which her family tried to pay but DHS refused, *id.* at 86. Less than 24 hours after the second bond hearing, DHS invoked the automatic stay power that this Court previously found likely unconstitutional. *Id.* at 89. Ms. Kordia immediately moved for a temporary restraining order seeking release on the terms ordered by the immigration judge, Dkt. 73, and this Court consolidated that motion with the merits of the Amended Petition, Dkt. 77.

After briefing on the Amended Petition completed, *see* Dkts. 76, 80, the Parties notified the Court of two additional developments: First, as this Court had already held the automatic stay provision likely unconstitutional as applied to Ms. Kordia, DHS moved for a discretionary stay of the second bond order on the date its notice of appeal of the same was due to the BIA. Dkt. 82. The BIA, in an unreasoned opinion, granted the stay without hearing from Ms. Kordia, or considering the traditional stay factors as laid out in *Nken v. Holder*, 556 U.S. 148 (2012). *Id.* At the Court's invitation, the Parties filed supplemental briefs on the impact of the BIA's discretionary stay. Dkts. 84, 85.

Then, on November 18, 2025, the Parties notified the Court that an immigration judge had granted Ms. Kordia withholding of removal to Israel but denied her asylum. Dkt. 89. In the Joint Status Report concerning these developments, Ms. Kordia explained how the grant of withholding of removal further undermined any putative concerns about flight risk not otherwise addressable

3

through bond or other reasonable conditions. *Id*. at 1–3. Ms. Kordia and DHS cross-appealed the immigration judge's order, which is currently pending before the BIA. In addition, DHS's appeal of the immigration judge's second bond order remains pending at the BIA. Through this procedural gamesmanship, DHS placed Ms. Kordia in a worse position than when it first used the automatic stay because there is no deadline for the BIA to issue a decision on the bond appeal. *See* Am. Pet. ¶¶ 172.[4]

### B. Respondents Will Likely Continue Confining Ms. Kordia for Many More Months, Putting Her Health at Serious Risk.

Ms. Kordia has now been confined for over eleven months. By the time Respondents file their Response to this Brief, it will be over one year. And since Ms. Kordia and DHS have both appealed the immigration judge's order in the removal proceedings (granting withholding of removal to Ms. Kordia but denying her asylum), Ms. Kordia will likely remain confined for many more months as the BIA considers her appeal. According to the Department of Justice ("DOJ"), in 2025, nearly 100,000 appeals were filed with the BIA, but the BIA only completed 35,362 appeals.[5] The DOJ has called the BIA's caseload "unprecedented," 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026), resulting in "lengthy appeal backlogs," *id.* at 5268. In 2025, the average time from DHS serving a Notice to Appear ("NTA") (the charging document that begins the removal process) to case completion before the agency was 770 days.[6] DHS served Ms. Kordia with an NTA on March 13, 2025. It is therefore likely to be many months, if not years, before Ms. Kordia's removal proceedings before the immigration court system (including the BIA) conclude. Her confinement

---

[4] The regulations are silent as to how long the BIA may take to decide a bond appeal if DHS substitutes its unilateral automatic stay with a request for a discretionary stay before the automatic stay-period expires.

[5] EOIR, Adjudication Statistics: All Appeals Filed, Completed, and Pending (Nov. 18, 2025), https://www.justice.gov/eoir/ media/1344986/dl?inline [https:// perma.cc/88C5-MU4N].

[6] TRAC Immigration, *Immigration Court Backlog*, https://tracreports.org/phptools/immigration/backlog/.

will only grow more prolonged if Ms. Kordia must petition the Fifth Circuit for review of any BIA decision affirming the denial of asylum or reversing the grant of withholding of removal. All in all, Ms. Kordia's confinement could last many years longer as she continues to vindicate her interests in contesting and avoiding forced removal.

Over the past eleven months, Ms. Kordia's health condition has significantly deteriorated while incarcerated at PDF. As previously alleged, Ms. Kordia has suffered from malnutrition, depression, and sleep deprivation since being confined. Am. Pet., Dkt. 69 ¶¶ 151–65. She suffered from, and continues to suffer from, near-daily headaches and dizziness. *Id.* ¶ 165. These adverse health effects culminated on February 6, 2026, when Ms. Kordia was in the shower, experienced a seizure, and hit her head. Mot. App., Dkt. 94-1 at 82. The seizure followed a week where Ms. Kordia was so physically weak she could not lift a phone to her head during a family visit. *Id.* at 81.

After waking up in the medical unit and vomiting, PDF employees transferred her to a hospital. *Id.* at 82. Ms. Kordia spent the next 72 hours chained to a hospital bed with shackles restricting movement of her wrists and ankles. *Id.* at 83. The guards watching her kept her shackled when she used the bathroom or took a shower. *Id.*

The doctors evaluating her performed an MRI and EEG, *id.*, which revealed that Ms. Kordia likely has epilepsy, *id.* at 88–89, 117. According to Dr. Audrey Nath, a neurologist board certified in clinical neurophysiology and epilepsy who reviewed Ms. Kordia's hospital records, it is possible that Ms. Kordia had, or would have in the future, a seizure lasting over five minutes, which has a mortality rate between 4.6 and 39%. *Id.* at 89. Dr. Nath also observed that ████████

████████████████████████████████████████████████████

███████████████████████████   ██████████████████████

███████████████████████ *Id.* Consistent with Ms. Kordia's own experience, Dr. Nath observed that sleep deprivation is common in the carceral setting due to noise, excessive lighting, and uncomfortable bedding. *Id.* She concluded, "[s]leep deprivation is a well-known trigger ██ ██████████ meaning Ms. Kordia is ███████████████████████████ ████████████████████████

## II.  ARGUMENT

The Court has permitted Ms. Kordia to file a supplement brief addressing two issues: (A) the effect of her continued confinement on her substantive due process claim; and (B) the impact, if any, of her recent hospitalization and diagnosis on the consolidated motions for interim relief. Dkt. 95.

### A.  The Court Should Order Release on the Basis of Ms. Kordia's Substantive Due Process Claim.

The Court can grant the Amended Petition or order interim relief on the basis of Ms. Kordia's substantive due process claim, especially in light of the prolonged and increasing length of her confinement and Respondents' lack of any cognizable interest in it. Embracing this narrower theory would not require the Court to reach Ms. Kordia's other claims. If the Court adopts this approach, the appropriate remedy is release from custody.

   *1.  The prolonged and increasing duration of Ms. Kordia's confinement without a constitutionally adequate basis violates substantive due process.*

Civil confinement is only justified "in special and 'narrow' nonpunitive 'circumstances' where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (first quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and then quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The Supreme Court has identified two such special justifications that can justify civil immigration confinement: ensuring the appearance of noncitizens in immigration court and

preventing danger to the community. *Id.* An immigration judge has twice found that Ms. Kordia's

continued confinement does not serve either of these interests. TRO App., Dkt. 74-1 at 86; Am.

Pet. App., Dkt. 71-1 at 113–16. Nor have Respondents, in this case, made any effort to "explain

what 'special justification' exists to deny [Ms. Kordia] the liberty the [immigration judge] ordered

subject to bond." *Leal-Hernandez v. Noem*, 803 F. Supp. 3d 409, 426 (D. Md. 2025). In the bond

proceedings, DHS even *conceded* that Ms. Kordia had demonstrated her release would not pose a

danger to the community. DHS offered no evidence in support of its position that only confinement

could sufficiently address any flight-risk concerns or why conditioning release on bond would not

do so. TRO App., Dkt. 74-1 at 5. Following the second bond hearing, the immigration judge also

granted Ms. Kordia withholding of removal, a form of protection against forced removal to Israel

that Ms. Kordia is motivated to defend, including through continued engagement with the

immigration court system and any related appearances. Dkt. 89 at 1. Her family stands ready to

post the bond the immigration judge has set not once but twice. TRO App., Dkt. 74-1 at 82.

"[T]here is simply no good reason to deny [Ms. Kordia] [her] freedom pending completion of the

removal proceedings." *Kambo v. Poppell*, No. 07-CV-800, 2007 WL 3051601, at \*20 (W.D. Tex.

Oct. 18, 2007) (quotation omitted).

      Ms. Kordia's confinement is virtually identical to the petitioner released on substantive due

process grounds in *Kambo*. There, DHS charged the petitioner as removable for overstaying his

visa. *Id.* at \*1. An immigration judge granted him bond, but DHS invoked the automatic stay

provision and later sought and received a discretionary stay. *Id.* After the immigration judge

granted the petitioner immigration relief, DHS appealed that grant to the BIA. *Id.* at \*2. In granting

the habeas petition on substantive due process grounds, the court reasoned that, although the

petitioner "may [not] be subject to indefinite detention, the [g]overnment must still justify its

continued detention with an adequate regulatory purpose." *Id.* at \*20. But the government "was unable or unwilling to articulate any such [adequate regulatory] purpose." *Id.* Especially in light of the immigration judge's finding that "discretionary factors weighed in favor of release on bond," *id.* at \*19, the court found "there [was] simply no good reason to deny [petitioner] his freedom pending completion of the removal proceedings," *id.* at \*20.

Ms. Kordia's confinement is even more egregious: she has been twice found releasable on bond by the immigration judge, was granted withholding of removal, and yet is still likely to experience many more months, if not years, of confinement, for no legitimate governmental purpose. The sheer length of confinement—over eleven months and growing—magnifies the deprivation of Ms. Kordia's liberty and Respondents' lack of justification for it. *See N.Z.M. v. Wolf*, No. 5:20-CV-24, 2020 WL 2813557, at \*2 (S.D. Tex. May 28, 2020) (Noncitizens "subjected to unreasonably prolonged and unnecessary detention have a due process right to be released from custody.") (collecting cases). The growing length of her prolonged confinement also distinguishes her case from situations where the Supreme Court has authorized far shorter periods of civil immigration confinement. *Cf. Zadvydas*, 533 U.S. at 701 (limiting presumptive reasonableness of confinement for effectuating final removal order to six months); *Demore v. Kim*, 538 U.S. 510, 529 (2003) (concluding that mandatory detention under 8 U.S.C. § 1226(c) did not raise constitutional questions where such detention was "completed in an average time of 47 days and a median of 30 days.").

Respondents previously suggested that Ms. Kordia's substantive due process claim "boil[s] down to an argument that she has been selectively targeted for removal proceedings due to her attendance at a New York City protest[.]" Resp. to Am. Pet., Dkt. 76 at 26. This Court should grant Ms. Kordia's substantive due process claim if it found that Respondents confined her as

8

punishment for exercising her First Amendment rights. Reply, Dkt. 80 at 21–29. But reaching that issue is not necessary to vindicate her substantive due process interests here. Instead, the Court need only follow *Zadvyda*s, *Kambo*, and *N.Z.M.* by holding that Respondents have failed to justify their prolonged confinement of Ms. Kordia with a legally cognizable interest. *See Zadvydas*, 533 U.S. at 690; *Kambo*, 2007 WL 3051601, at \*20; *N.Z.M.*, 2020 WL 2813557, at \*3.

2.   *None of the INA's jurisdiction-stripping provisions apply.*

Granting relief on Ms. Kordia's substantive due process claim also fits comfortably within this Court's habeas jurisdiction. Ms. Kordia's substantive due process claim merely requires the Court to evaluate whether section 1226(a) permits continued confinement of over a year where the government has not demonstrated any cognizable justification for continued confinement. *See supra* § II.A.1; Reply, Dkt. 80 at 27–29; Mot. for Prelim. Inj., Dkt. 13 at 39–40. The Supreme Court has repeatedly held that that question falls within this Court's jurisdiction. *See, e.g.*, *Zadvydas*, 533 U.S. at 688 (finding challenge to prolonged confinement under section 1231(a) "challenge[s] the extent of the [government's] authority[,]" which was "not a matter of discretion" under section 1252(a)(2)(B)(ii)"); *Demore*, 538 U.S. at 517 (finding section 1226(e) does not strip jurisdiction over challenge to prolonged confinement under section 1226(c) where claim "challenges the statutory framework that permits [] detention without bail"). That is why, in *Kambo*, the court found it had "jurisdiction to consider a constitutional challenge to section 1226(a) and the extent of the [government's] authority under section 1226(a)." 2007 WL 3051601, at \*10.

Respondents' principal jurisdiction arguments misconstrue Ms. Kordia's substantive due process claim as an allegation that she has been "improperly targeted," Resp. to Am. Pet., Dkt. 76 at 19, which requires "inquiry into [] subjective, discretionary decision-making of the Attorney General (or any delegated decisionmaker) concerning why [Ms. Kordia] was detained," *id.* at 22. For the reasons previously explained, that characterization of Ms. Kordia's claims and the relevant

9

case law is wrong. Reply, Dkt. 80 at 11–20. But that characterization is even more incoherent now,

more than eleven months after the initial decision to confine Ms. Kordia. Evaluating whether Ms.

Kordia's confinement has a sufficiently compelling justification does not raise the concerns

Respondents have previously urged around subjective motivations. Rather, the Court could reach

the substantive due process claim without saying anything about whether Ms. Kordia is confined

pursuant to the government's policy and practice of punishing noncitizens supportive of

Palestinian rights. All the substantive due process claim requires is demonstrating that the

government lacks a cognizable legal interest in ongoing confinement. *See Kambo*, 2007 WL

3051601, at \*20. The Court should therefore exercise its jurisdiction by holding Ms. Kordia's

continued confinement violates substantive due process.

3. *The Court should order release on the $20,000 bond set by the immigration judge.*

The Court should order Ms. Kordia's release on the terms set by the immigration judge.

"[H]abeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995).

"[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v.*

*Rodriguez,* 411 U.S. 475, 484 (1973). Consistent with this traditional function, courts have ordered

release on bond as a remedy for substantive due process violations. *See, e.g.*, *Kambo,* 2007 WL

3051601, at \*20 (reinstating a prior Immigration Judge's order and releasing petitioner on bond

based on substantive due process violations); *N.Z.M.*, 2020 WL 2813557, at \*3 (ordering release

on unsecured bond on basis of substantive due process claim). In *N.Z.M.*, the court ordered release

as a remedy, rather than a bond hearing, because it found "the IJ would be unlikely to conduct a

meaningful hearing," meaning that "ordering a bond hearing before an IJ may be futile." 2020 WL

2813557, at \*3. The court also observed that the government did "not even suggest that [p]etitioner

[was] a flight risk or a danger to the community." *Id.*

10

The Court should order release on the terms set by the immigration judge. *See, e.g., Leal-Hernandez*, 803 F. Supp. 3d at 428 (ordering release on terms set by immigration judge based on substantive due process challenge to automatic stay provision); *Jacinto v. Trump*, 796 F.Supp.3d 584, 592 (D. Neb. 2025) (same); *see also Iza v. Arnott*, No. 6:25-CV-3392, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) (releasing petitioner on terms of his original parole where "[t]here was no evidence from his conduct that he was a flight risk"). An immigration judge has already ruled in Ms. Kordia's favor twice at bond hearings. Like the petitioners in *N.Z.M.* and *Kambo*, Ms. Kordia has presented voluminous evidence that Respondents have no legally cognizable interest in her continued confinement. TRO App., Dkt. 74-1 at 7–80; Am. Pet. App., Dkt. 71-1 at 15–59. And like *N.Z.M.*, ordering another bond hearing would be futile because DHS could once again invoke the automatic stay provision to thwart the immigration judge's order. What is more, an immigration judge granted Ms. Kordia relief from removal, further diminishing any legitimate regulatory interest by Respondents in continued confinement.

In the alternative, the habeas court can hold its own bail hearing and determine whether Respondents can prove by clear and convincing evidence that Ms. Kordia must remain in custody. Settled case law has long acknowledged that the power to set bail in habeas proceedings is "a legal and logical concomitant of the court's habeas corpus jurisdiction." *N.Z.M.*, 2020 WL 2813557, at *3 (releasing petitioner on unsecured bond where the government did "not even suggest that [p]etitioner [was] a flight risk or a danger to the community"). Ordering a bond hearing before an immigration judge could also "require more oversight by the Court or more protracted proceedings." *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 407 (E.D.N.Y. 2025). Holding the Court's own bond hearing would be a more efficient and effective remedy than ordering an immigration judge to conduct a *third* bond hearing, which will likely result in the same cycle of DHS blocking

11

the effectuation of the bond order via the automatic and discretionary stay provisions.

**B. The Court Can Consider Ms. Kordia's Health Condition in Determining Whether to Issue Emergency or Expedited Relief.**

The Court can consider Ms. Kordia's deteriorating and life-threatening health condition in deciding whether to issue a preliminary injunction or temporary restraining order. Ms. Kordia has recognized that challenges to the conditions of her confinement are properly brought in a civil rights lawsuit, not habeas. *See* Dkts. 65, 95; June 5, 2025 Tr. at 75:2–76:11. At the same time, longstanding Fifth Circuit precedent authorizes courts to grant claims for release on bail during the pendency of habeas proceedings where: (1) the petitioner "raise[s] substantial constitutional claims upon which [s]he has a high probability of success," and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Calley v. Callaway*, 496 F.2d 701, 702 & n.1 (5th Cir. 1974) (collecting cases). As Judge Posner put it, the "[i]nherent judicial authority to grant bail to persons who have asked for relief in an application for habeas corpus is a natural incident of habeas corpus[.]" *Bolante v. Keisler*, 506 F.3d 618, 620 (7th Cir. 2007) (Posner, J.). The authority to release a petitioner on bail ensures the Court has "sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008); *see Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) ("A district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of [her] custody.") (quoting *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)).

One category of "extraordinary circumstances" is serious medical conditions that could worsen to such a point that the habeas remedy would no longer be effective if delayed. *See Calley*, 496 F.2d at 702 n.1 (describing "serious deterioration of the petitioner's health while incarcerated" as an "example[] of extraordinary circumstances" justifying release on bail pending final

12

judgment) (citing *U.S. ex rel Ackerman v. Pennsylvania*, 133 F. Supp. 627, 630 (W.D. Pa. 1955)). In *Ackerman*, the court ordered a habeas petitioner's release pending final judgment based on testimony from a doctor that the petitioner's "mental condition" and "emotional upset" was causing "his liver [to] pour[] excessive sugar into his blood," resulting in "the rapid progress of [his] diabetes and the rapid deterioration of his vision." 133 F. Supp. at 628–29.

Ms. Kordia's likely diagnosis of epilepsy, and the possibility of a future fatal seizure or head trauma, constitute extraordinary circumstances justifying release on bail pending final judgment. As Dr. Nath observed after evaluating Ms. Kordia's hospital records, a prolonged seizure "has a mortality rate up to 39%." Mot. App., Dkt. 94-1 at 89. The sleep-deprivation Ms. Kordia has experienced, and will continue to experience, while incarcerated increases that risk. *Id.* at 89–90. Ms. Kordia acknowledges that her likely diagnosis of epilepsy and Respondents' corresponding treatment of that diagnosis are not the bases of her claims for habeas relief. She is not challenging her underlying medical treatment or sleep deprivation in this action. *Cf. Beltran v. Wolf*, 473 F. Supp. 3d 688, 692 (N.D. Tex. 2020) (dismissing habeas petition that "focuse[d] on the conditions of [] confinement unrelated to the face or duration of [] detention"). Rather, the serious deterioration of her health constitutes an extraordinary circumstance justifying release on bail to "make the habeas remedy effective." *Calley*, 496 F.2d at 702. As in *Ackerman*, "justice requires" releasing her to reduce her risk of a fatal seizure or head trauma "pending an ultimate decision as to whether [she] is under legal or illegal custody." 133 F. Supp. at 630.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the Amended Petition on one or more counts and order Respondents to immediately release Ms. Kordia from custody on the terms set by the immigration judge.

Dated: February 24, 2026

Respectfully submitted,

*/s/ Travis Walker Fife*
Travis Walker Fife
Texas State Bar No. 24126956
Randall Hiroshige
Texas State Bar No. 24124299
Sarah Beebe
Texas State Bar No. 24069362
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
travis@texascivilrightsproject.org
randy@texascivilrightsproject.org
sbeebe@texascivilrightsproject.org

Charles S. Siegel
Texas State Bar No. 18341875
Caitlyn Silhan
Texas State Bar No. 24072879
Waters Kraus Paul & Siegel
3141 Hood Street, Suite 200
Dallas, Texas 75219
Telephone: 214-357-6244
Facsimile: 214-357-7252
siegel@waterskraus.com
csilhan@waterskraus.com

Daniel Hatoum
Texas State Bar No. 24099136
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
Telephone: 512-474-5073
daniel@texascivilrightsproject.org

Naz Ahmad*
New York State Bar No. 5327424
Amal Thabateh*
New York State Bar No. 5923826
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4630
naz.ahmad@law.cuny.edu
amal.thabateh@law.cuny.edu

Golnaz Fakhimi*
New York State Bar No. 5063003
Sadaf Hasan*
New York State Bar No. 6046023
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

* *Admitted to practice PHV*

**ATTORNEYS FOR PETITIONER-PLAINTIFF**

15

## CERTIFICATE OF SERVICE

I certify that on February 24, 2026, a true and correct copy of this document was properly

served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

*Travis Walker Fife*
Travis Walker Fife
