IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| LEQAA KORDIA, | § § § | |
| Petitioner-Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:25-cv-1072-L-BT |
| KRISTI NOEM et al., | § § | **(Decision Requested by March 10, 2026)** |
| Respondents-Defendants. | § § § § | |

## PETITIONER'S EMERGENCY RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER ON COUNTS II & III OF HER AMENDED HABEAS PETITION

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iii

I. INTRODUCTION .......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 1

    A. DHS Is Confining Ms. Kordia at the Prairieland Detention Facility. ............................ 1

    B. The BIA Remands Ms. Kordia's Case to the IJ to Issue a New Bond Order After Determining the Initial Bond of $20,000 As Insufficient to Deter A "Significant Flight Risk." ............................................................................................................... 2

III. NATURE & STAGE OF PROCEEDINGS ................................................................ 3

IV. STANDARD OF REVIEW .......................................................................................... 3

V. ARGUMENT ............................................................................................................... 3

    A. Ms. Kordia Is Likely to Succeed on the Merits of Her Challenge to the Automatic Stay Provision and on the Merits of Her Challenge to a Discretionary Stay Absent Meaningful Process. ........................................................................................... 4

        1.  Ms. Kordia is Likely to Succeed on the Merits of Challenge to the Automatic Stay Provision. ........................................................................................... 4

        2.  Ms. Kordia Is Likely to Succeed on the Merits of Challenge to the Discretionary Stay Provisions As Applied to Her. ................................................ 7

    B. Ms. Kordia Is Likely to Succeed on the Merits of Her Substantive Due Process Claim. …………………………………………………………………………………..9

        1.  The Automatic Stay Provision Violates Ms. Kordia's Substantive Due Process Rights. ................................................................................................. 9

        2.  A Third Discretionary Stay Would Violate Ms. Kordia's Substantive Due Process Rights. ....................................................................................... 12

    C. The Remaining Factors Favor Issuing a Temporary Restraining Order .................... 13

VI. CONCLUSION .......................................................................................................... 15

CERTIFICATE OF SERVICE ....................................................................................... 17

CERTIFICATE OF CONFERENCE .............................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Anicasio v. Kramer*,
   No. 4:25 Civ. 3158, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) ........................................ 11

*Aparicio v. Noem*,
   No. 25-CV-01919, 2025 WL 2998098 (D. Nev. Oct. 23, 2025) .......................................... 11

*Arcos v. Noem*,
   No. 4:25-cv-04599, 2025 WL 2856558 (S.D. Tex. Oct. 8, 2025) ..................................... 6, 9

*Arias Gudino v. Lowe,*
   785 F. Supp. 3d 27 (M.D. Pa. 2025) ...................................................................... 13

*Ashley v. Ridge*,
   288 F. Supp. 2d 662 (D.N.J. 2003) ........................................................................ 10

*B.D.V.S. v. Forestal*,
   No. 1:25-cv-1968, 2025 WL 2855743 (S.D. Ind. Oct 8, 2025) .................................... 6

*Barrera v. Tindall*,
   No. 3:25-civ-541, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025) .................................. 6

*Bezmen v. Ashcroft*,
   245 F. Supp. 2d 446 (D. Conn. 2003) ..................................................................... 10

*Carlon v. Kramer*,
   No. 25-CV-3178, 2025 WL 2624386 (D. Neb. Sept. 11, 2025) .................................... 11

*Carlos v. Noem*,
   No. 25-CV-01900, 2025 WL 2896156 (D. Nev. Oct. 10, 2025) ................................... 11

*Castillo v. De Andra-Ybarra*,
   No. CV 25-1074, 2025 WL 3251223 (D.N.M. Nov. 21, 2025) ................................... 11

*Castro-Vasquez v. Thompson*,
   No. H-25-5164, 2026 WL 206761 (S.D. Tex. Jan. 27, 2026) ................................. 5, 6

*De Leon Hernandez v. Bondi*,
   No. 25-CV-1384, 2025 WL 3217037 (W.D. La. Nov. 18, 2025) ................................ 6, 11

*Dominguez-Lara v. Noem*,
   No. 25-CV-01553, 2025 WL 2998094 (D. Nev. Oct. 24, 2025) .................................. 11

*Fernandez v. Lyons*,
   No. 8:25CV506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025) ................................ 11

*Foucha v. Louisiana*,
   504 U.S. 71 (1992) ................................................................................................... 9

*Garay v. Perry*,
   No. 1:25-CV-2215, 2025 WL 3540070 (E.D. Va. Dec. 10, 2025) ........................... 7

*Garcia Jimenez v. Kramer*,
   No. 4:25-CV-03162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) ................... 11, 12

*Garcia Picazo v. Sheehan*,
   No. C25-4057, 2025 WL 3006188 (N.D. Iowa Oct. 27, 2025) ............................... 11

*Garcia v. Simon*,
   No. 1:25-CV-1663-MSN-LRV, 2025 WL 4053172 (E.D. Va. Oct. 27, 2025) ....... 11

*Goorakani v. Lyons*,
   No. 25 CIV. 9456 (DEH), 2025 WL 3632896 (S.D.N.Y. Dec. 15, 2025)................ 7

*Guasco v. McShane*,
   No. 25-CV-1650, 2025 WL 3270201 (M.D. Pa. Nov. 24, 2025) ........................... 11

*Günaydın v. Trump*,
   784 F. Supp. 3d 1175 (D. Minn. 2025) ................................................................ 6, 7

*Gutierrez v. Thompson*,
   No. 4:25-4695, 2025 WL 3187521 (S.D. Tex. Nov. 14, 2025) ............................ 5, 6

*Hasan v. Crawford*,
   800 F. Supp. 3d 641 (E.D. Va. 2025) ................................................................... 10

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ................................................................................ 13

*Herrera v. Knight*,
   798 F. Supp. 3d 1184 (D. Nev. 2025) ................................................................... 10

*J.G.O. v. Francis*,
   No. 25-CV-7533, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025)............................ 13

*J.M.P. v. Arteta*,
   807 F. Supp. 3d 265 (S.D.N.Y. 2025)............................................................. passim

*Jacinto v. Kramer*,
    796 F. Supp. 3d 588 (D. Neb. 2025) ............................................................... 6, 10

*Leal-Hernandez v. Noem*,
    803 F. Supp. 3d 409 (D. Md. 2025) ............................................................... 6

*M.P.L. v. Arteta*,
    No. 25-CV-5307, 2025 WL 3288354 (S.D.N.Y. Nov. 25, 2025) ........................ 6, 13

*Maldonado v. Olson*,
    795 F. Supp. 3d 1134 (D. Minn. 2025) ........................................................... 6

*Maldonado Vazquez v. Feeley*,
    805 F. Supp. 3d 1112 (D. Nev. 2025) ............................................................ 6, 10

*Martinez v. Noem*,
    No. 5:25-CV-01007-JKP, 2025 WL 2598379 (W.D. Tex. Sep. 8, 2025) ............... 6

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ..................................................................................... 7

*Maza v. Hyde*,
    807 F. Supp. 3d 42 (D. Mass. 2025) ............................................................... 10

*Mendez v. Noem*,
    No. 25-CV-02062, 2025 WL 3124285 (D. Nev. Nov. 7, 2025) .......................... 11

*Merchan-Pacheo v. Noem*,
    No.1:25-cv-03860, 2026 WL 88526 (D. Colo. Jan 12, 2026) ............................. 6, 11

*Merino v. Ripa*,
    No. 25 Civ. 23845, 2025 WL 2941609 (S.D. Fla. Oct. 15, 2025) ....................... 6

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................... 2

*Nuziard v. Minority Bus. Dev. Agency*,
    676 F. Supp. 3d 473 (N.D. Tex. 2023) ............................................................ 14

*O.F.C v. Almodovar*,
    No. 25-cv-9816, 2026 WL 74262 (S.D.N.Y. Jan. 6, 2026) ............................... 6

*Palma v. Trump*,
    No. 25-CV-3176, 2025 WL 2624385 (D. Neb. Sept. 11, 2025) ......................... 11

*Perez Sales v. Mattos*,
  No. 25-CV-01819, 2025 WL 3237366 (D. Nev. Nov. 19, 2025) ............................................. 11

*Perez v. Berg*,
  798 F. Supp. 3d 955 (D. Neb. 2025) ...................................................................................... 10

*Perez v. Kramer*,
  No. 25-CV-3179, 2025 WL 2624387 (D. Neb. Sept. 11, 2025) ............................................. 11

*Perez-Regalado v. Feeley*,
  No. 2:25-cv-02409, 2026 WL 36112 (D. Nev. Jan. 6, 2026) .................................................. 6

*Quispe v. Crawford*,
  No. 1:25-cv-1471, 2025 WL 2783799 (E.D. Va. Sep. 29, 2025) ........................................ 6, 11

*Quispe-Ardiles v. Noem*,
  No. 1:25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025) ....................................... 11

*Rodriguez Cabrera v. Mattos*,
  No. 25-CV-01551, 2025 WL 3072687 (D. Nev. Nov. 3, 2025) ............................................. 11

*Rodriguez v. Noem,*
  No, 26-cv-48, 2026 WL 280625 (D. Nev. Feb. 3, 2026) ........................................................ 6

*Rueda Torres v. Francis,*
  No. 25-CV-8408, 2025 WL 3168759 (S.D.N.Y. Nov. 13, 2025) ........................................... 7

*Salgado v. Mattos*,
  No. 25-CV-01872, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) ........................................... 11

*Sampiao v. Hyde*,
  799 F. Supp. 3d 14 (D. Mass. 2025) ....................................................................................... 6

*Silva v. Larose*,
  No. 25-CV-2329, 2025 WL 2770639 (S.D. Cal. Sept. 29, 2025) .......................................... 11

*Singh v. Lewis*,
  No. 25-CV-2677, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025) ......................................... 11

*Smith v. Tarrant Cnty. Coll. Dist.*,
  670 F. Supp. 2d 534 (N.D. Tex. 2009) .................................................................................... 3

*Speaks v. Kruse*,
  445 F.3d 396 (5th Cir. 2006) .................................................................................................. 3

*Uritsky v. Ridge*,
    286 F. Supp. 2d 842 (E.D. Mich. 2003)................................................................. 10

*Zabadi v. Chertoff*,
    No. C 05-01796 WHA, 2005 WL 1514122 (N.D. Cal. June 17, 2005).................................. 11

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) .................................................................................. 9, 12

*Zavala v Ridge*,
    310 F. Supp. 2d 1071 (N.D. Cal. 2004) ............................................................... 10

**Rules**

Fed. R. Civ. P. 65............................................................................................ 8, 9

**Regulations**

8 C.F.R. § 1003.19............................................................................................ 3, 4, 9
8 C.F.R. § 1003.6.............................................................................................. 3, 4

Petitioner, Leqaa Kordia, respectfully requests this Court issue a temporary restraining order prohibiting: (1) Department of Homeland Security and Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Robert Cerna, and Thomas Bergami (collectively, "Respondents") from invoking a third automatic stay following a potential order of release on bond from the immigration judge; and (2) Respondent Bondi and the Board of Immigration Appeals from granting a third discretionary stay of any potential order of release on bond without adequate procedural protections. Petitioner requests relief **before March 10, 2026**, when her next bond hearing is scheduled.

## I.     INTRODUCTION

Almost a full year after Ms. Kordia was arrested in her home state of New Jersey and shuttled to Prairieland Detention Center in Alvarado, Texas, and despite being ordered released on bond two separate times, Ms. Kordia remains confined**.** Without emergency relief, Respondents are poised to repeat this cycle for a *third* time. As a third bond hearing approaches, there is a significant risk that Respondents will repeat their prior use of unconstitutional procedural machinations to keep Ms. Kordia confined in violation of the Constitution, unless this Court acts swiftly.

## II.     BACKGROUND

### A.  DHS Is Confining Ms. Kordia at the Prairieland Detention Facility.

The history of Respondent's procedural machinations to keep Ms. Kordia unlawfully confined is well documented. Amended Petition for Habeas Corpus, Dkt. 69, ¶¶ 169-174 ("Am. Pet."); Dkt. 73; Dkt. 82. Twice, an immigration judge has ordered Ms. Kordia released on bond. *Id.* Twice, DHS has invoked the automatic stay to prevent her release. App. to Am. Pet. at 118 (PX 4, DHS Notice of Appeal), Dkt. 70; App. at 89 (PX 3, Department of Homeland Security, Form

EOIR-43, Aug. 28, 2025).[1] Twice, DHS sought, without arguing under the traditional stay factors, a further discretionary stay of the same bond order. Dkt. 70, PX 5, at 131-141; Dkt. 82-1, App. at 18-25. Twice, the BIA has issued unreasoned opinions, without considering the traditional stay factors in *Nken v. Holder*, 556 U.S. 148 (2012) and granted discretionary stays without providing Ms. Kordia a meaningful opportunity to respond. Now, Ms. Kordia is scheduled to have a third bond hearing on March 10, 2026, and Respondents are poised to repeat this cycle, repeating behavior this Court has already found likely to violate the constitution. Findings, Conclusions, and Recommendation ("FCR"), Dkt. 53, at 18-19.

## B. The BIA Remands Ms. Kordia's Case to the IJ to Issue a New Bond Order After Determining the Initial Bond of $20,000 As Insufficient to Deter A "Significant Flight Risk."

On March 3, 2026, more than six months after the IJ ruled for the second time that Ms. Kordia could be released on a $20,000, the BIA remanded the second bond order. The BIA determined that the amount of bond set by the IJ was "insufficient" to account for the alleged risk of flight Ms. Kordia poses. App. at 8, (PX A, BIA Order, Mar. 3, 2026). The BIA directed the IJ to "conduct further proceedings" and "issue a new bond order." *Id.*

On March 6, 2026, the court scheduled Ms. Kordia for a bond hearing on March 10, 2026 at 8:30am. App. at 10 (PX B, EOIR Order Mar. 6, 2026). Since the BIA's decision on March 3, 2026, the Parties have conferred on whether they could agree to a stipulated bond amount and, if not, whether Respondents would agree not to seek a stay (whether automatic or discretionary) if the immigration judge found Ms. Kordia releasable for a third time. On the evening of March 6, 2026, counsel for the Parties conferred via telephone on these issues and the instant motion.

---

[1] All page citations are to the ECF-generated page number at the top of the document rather than the page number at the footer.

Respondents are opposed to the relief sought, but their counsel acknowledged the forthcoming filing and will receive notice via electronic filing consistent with Fed. R. Civ. P. 65.

## III.    NATURE & STAGE OF PROCEEDINGS

Ms. Kordia's consolidated Amended Petition and motions for preliminary injunction and temporary restraining order remain pending before this Court. Dkts. 13, 67, 69, 73, 77. In addition to being full briefed on the merits, the Court can also grant Ms. Kordia's request for relief on bail in light of the extraordinary circumstances her continued confinement poses. *See* Dkts. 13, 96. This Motion only concerns Ms. Kordia's challenges to the procedures that will be used to keep her confined, which Respondents have previously conceded the Court has jurisdiction to consider.

## IV. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 65, to enter a temporary restraining order, the Court must find four factors, on balance, weigh in Plaintiffs' favor:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (quotations omitted); *see also Smith v. Tarrant Cty. Coll. Dist.*, 670 F. Supp. 2d 534, 537 (N.D. Tex. 2009).

## V. ARGUMENT

This Court should grant Petitioner's Motion and issue a temporary restraining order, prohibiting Respondents from invoking and executing the automatic stay provision a third time, and prohibiting the Board of Immigration Appeals from granting a third discretionary stay of a bond order without adequate procedural safeguards. **First,** as Judge Rutherford has already found, Ms. Kordia is likely to succeed on the merits of her procedural due process challenge to the automatic-stay provision, codified at 8 C.F.R. § 1003.19(i)(2). FCR at 16. Ms. Kordia is also likely

to succeed on the merits of her procedural due process as applied challenge to the discretionary stay because it has deprived her of her liberty without constitutionally adequate procedural protections. **Second,** Ms. Kordia is likely to succeed on her substantive due process claim because, as her April 3, 2025 and August 28, 2025, custody hearings and even the BIA's March 3, 2026 bond opinion make clear, she is likely to show her continued civil confinement serves no lawful purpose. **Third,** the remaining factors favor issuing a temporary restraining order. Ms. Kordia is likely to suffer irreparable harm absent a prohibitory order from this Court , in the form of continued unconstitutional confinement, and the equities favor Ms. Kordia.  By contrast, Respondents would face little or no harm from Ms. Kordia's release because they have conceded she presents no danger to the community and because whatever risk of flight she presents would be sufficiently addressed by the posting of bond.

### A. Ms. Kordia Is Likely to Succeed on the Merits of Her Challenge to the Automatic Stay Provision and on the Merits of Her Challenge to a Discretionary Stay Absent Meaningful Process.

*1. Ms. Kordia is Likely to Succeed on the Merits of Challenge to the Automatic Stay Provision.*

Respondents have violated Ms. Kordia's procedural due process rights by executing two automatic stays of her release and are positioned to unlawfully prolong her confinement absent urgent intervention by tis Court. There is every reason to believe that, given the BIA's second remand for the IJ to set a higher bond amount, Respondents would repeat this procedural gamesmanship in violation of Ms. Kordia's procedural due process rights. Ms. Kordia's prior arguments as they relate to the inadequacies of the automatic stay provision are laid out in her Amended Petition, Dkt. 69, her prior Motion for Preliminary Injunction, Dkt. 13, and Motion for Temporary Restraining Order, Dkt. 73. Respondents have refused to confirm that they would not invoke the automatic stay for a third time. *See* App. at 13, ¶ 8 (PX C, Decl. of Travis Fife) ("Fife

Decl.").

As Judge Rutherford previously found when assessing the constitutional sufficiency of the auto-stay, the *Mathews* factors all favor Ms. Kordia. FCR at 14–19; *see, e.g.*, Dkt. 13 at 35–39; Dkt. 40 at 18–21; Dkt. 60 at 11.

**First,** Ms. Kordia is likely to show she has a strong liberty interest in her release. FCR at 16. Ms. Kordia's interest is even greater now than when Judge Rutherford first considered her Motion for Preliminary Injunction because DHS has already kept her confined for over eleven months. Now that the BIA has once again remanded the bond decision to the IJ, DHS will be able to prevent her release by invoking the automatic stay for the **third** time.

**Second,** the risk of erroneous deprivation when DHS uses the automatic stay is high because "the provision applies only to those persons who *prevailed* in a bond hearing before an IJ." *Gutierrez v. Thompson*, No. 4:25-4695, 2025 WL 3187521, at *8 (S.D. Tex. Nov. 14, 2025) (collecting cases); *see also* FCR at 16-17.

**Third,** Respondents "point to no weighty governmental interest favoring [Ms. Kordia's] continued detention, especially in view of the IJ's previous determination that [she] is eligible for release on bond." *Castro-Vasquez v. Thompson*, No. H-25-5164, 2026 WL 206761, at *5 (S.D. Tex. Jan. 27, 2026). Indeed, for months, DHS *has ceased disputing* lack of dangerousness and received a full opportunity during the August 28, 2025 second bond hearing to contest and rebut the record evidence from Ms. Kordia that substantiates her community ties, family support, and incentives to appear in immigration court. Their failure to do so a second time obviates any flight risk that cannot be ameliorated through the posting of a bond set by the IJ.

Since the FCR issued on June 27, 2025, numerous courts have similarly found that the automatic stay's procedure violates individuals' procedural due process rights. *See, e.g.*, *Günaydın*

*v. Trump*, 784 F. Supp. 3d 1175, 1190 (D. Minn. 2025); *Maldonado v. Olson*, 795 F. Supp. 3d

1134, 1154 (D. Minn. 2025); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1148 (D. Nev.

2025); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 20 (D. Mass. 2025); *Leal-Hernandez v. Noem*, 803

F. Supp. 3d 409, 426 (D. Md. 2025) ; *J.M.P. v. Arteta*, 807 F. Supp. 3d 265, 288 (S.D.N.Y. 2025);

*Jacinto v. Kramer*, 796 F. Supp. 3d 588, 591 (D. Neb. 2025); *Castro-Vasquez*, 2026 WL 206761,

at *4-5; *De Leon Hernandez v. Bondi*, No. 25-CV-1384, 2025 WL 3217037, at *2-3 (W.D. La.

Nov. 18, 2025); *Gutierrez*, 2025 WL 3187521, at *7-8; *Arcos v. Noem*, No. 4:25-cv-04599, 2025

WL 2856558 at *2-4 (S.D. Tex. Oct. 8, 2025); *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025

WL 2598379, at *2-6 (W.D. Tex. Sep. 8, 2025); *Merchan-Pacheo v. Noem*, No.1:25-cv-03860,

2026 WL 88526, at *16 (D. Colo. Jan 12, 2026); *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL

3288354, at *12 (S.D.N.Y. Nov. 25, 2025); *Merino v. Ripa*, No. 25 Civ. 23845, 2025 WL 2941609,

at *4 (S.D. Fla. Oct. 15, 2025); *B.D.V.S. v. Forestal*, No. 1:25-cv-1968, 2025 WL 2855743, at *3

(S.D. Ind. Oct 8, 2025); *Quispe v. Crawford*, No. 1:25-cv-1471, 2025 WL 2783799, at *9 (E.D.

Va. Sep. 29, 2025); *Barrera v. Tindall*, No. 3:25-civ-541, 2025 WL 2690565, at *7 (W.D. Ky.

Sep. 19, 2025).

As this Court has already found, FCR at 16-18, Ms. Kordia is therefore likely to succeed

on the merits of her procedural due process claim, and this Court should prohibit Respondents

from invoking the automatic stay after Ms. Kordia's *third* bond hearing. *See, e.g., Rodriguez v.*

*Noem,* No, 26-cv-48, 2026 WL 280625, at * 5 (D. Nev. Feb. 3, 2026) (ordering bond hearing and

enjoining government from invoking automatic stay as unconstitutional); *O.F.C v. Almodovar,* No.

25-cv-9816, 2026 WL 74262, at *16 (S.D.N.Y. Jan. 6, 2026) (ordering DHS to justify detention

by clear and convincing evidence, and enjoining DHS from invoking the automatic stay on a bond

grant or arguing that the IJ lacked jurisdiction); *Perez-Regalado v. Feeley*, No. 2:25-cv-02409,

2026 WL 36112, at *6 (D. Nev. Jan. 6, 2026) (enjoining ICE from invoking an automatic stay after a bond grant); *Rueda Torres v. Francis,* 2025 WL 3168759, at *6 (S.D.N.Y. Nov. 13, 2025) (same); *Garay v. Perry*, No. 1:25-CV-2215, 2025 WL 3540070, at *4 (E.D. Va. Dec. 10, 2025) (releasing petitioner immediately, ordering a bond hearing within 14 days, and enjoining ICE from arguing the IJ lacks jurisdiction or from invoking the automatic stay); *Goorakani v. Lyons*, No. 25 CIV. 9456 (DEH), 2025 WL 3632896, at *12 (S.D.N.Y. Dec. 15, 2025) (enjoining DHS from invoking the automatic stay provision after ordering a bond hearing).

   2. *Ms. Kordia Is Likely to Succeed on the Merits of Challenge to the Discretionary Stay Provisions As Applied to Her.*

   The application of the discretionary stay to Ms. Kordia has not comported with due process. Am. Pet., Dkt. 69, ¶175; Dkt. 82. The BIA twice granted stays without providing Ms. Kordia a meaningful opportunity to respond or applying any apparent standards—let alone the traditional stay factors. While a discretionary stay might serve as an alternative procedure that could ameliorate the risks of erroneous deprivation if it applied the traditional stay factors, *Gunaydin*, 784 F. Supp. 3d at 1189, here the BIA has granted discretionary stays that have effectively operated as automatic stays as applied to Ms. Kordia. *See J.M.P.*, 807 F. Supp. 3d at 294 ("That is why cases suggesting that, in light of due process concerns, a discretionary stay is normally a sound alternative to an automatic one are inapposite here.").

   "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). Both discretionary stays issued by the BIA failed to provide Ms. Kordia a meaningful opportunity to be heard. First, after Judge Rutherford issued an FCR finding the application of the automatic stay of Ms. Kordia's release likely unconstitutional, FCR at 21–22, Respondent DHS quickly moved for a discretionary administrative stay of Ms. Kordia's release. Am. Pet. ¶ 175;

Am. Pet. App. Dkt. 70 at 131-166 (PX 5, DHS Emergency Mot. For Discretionary Stay). And the BIA—under Respondent Bondi's control—granted that request in less than a day through an unreasoned order without hearing from Ms. Kordia. Am. Pet. ¶ 175; Am. Pet. App. Dkt. 70 at 169 (PX 6, BIA Order Granting Discretionary Stay). Fewer than twenty-four hours is not a meaningful opportunity to respond, "particularly where, as here, there was no advance notice that the window [of opportunity to respond] would be closing." *J.M.P.*, 807 F. Supp. 3d at 292.

Respondents also deprived Ms. Kordia of a meaningful opportunity to respond to the second discretionary stay request where Ms. Kordia's counsel received notice of DHS's motion for a discretionary stay on September 15, 2025. Ms. Kordia's counsel immediately filed an opposition to the motion the next day only to learn that the BIA had already granted the discretionary stay before Ms. Kordia submitted her response. *See* Dkt. 82-1 at 44-60, 65.

Discretionary stays made without consideration of the traditional stay factors violate procedural due process. *See* FCR at 18 (discussing how discretionary stay could comport with due process if traditional stay factors applied). Here, as in *JMP v. Arteta*, neither order reveals that *any* standards were required or applied by the Board when granting the stay. *See* 807 F. Supp. 3d at 293. The Board's July 3, 2025 and Sep. 15, 2025 stay orders both read, "After consideration of all information, the Board has concluded that the motion for emergency stay of the bond order pending appeal will be granted." Dkt. 70 at 169 (PX 6, BIA Order Granting Discretionary Stay); Dkt. 82-1 at 65. On their face, the orders do not indicate that the BIA reviewed any standards—let alone the traditional stay factors—or considered any individualized circumstances such as whether Ms. Kordia would continue to experience unlawful detention or DHS's concession that Ms. Kordia was not a danger to the community. In both instances, the Board had before it only the government's "emergency" motions for discretionary stays which did not address any of the stay

factors. *Cf.* Dkt. 70 at 131-166 (PX 5, DHS Emergency Mot. For Discretionary Stay); Dkt 82-1 at 19-25.

Like automatic stays, discretionary stays also create a risk of erroneous deprivation because those subject to discretionary stays "'are those whose detention an IJ has already determined to be unsupported by sufficient evidence[,]'. . . "following an adversarial hearing and individualized consideration of the evidence." *J.M.P.*, 807 F. Supp. 3d at 291 (*quoting Arcos*, 2025 WL 2856558, at \*2). A discretionary stay of any custody redetermination order absent any meaningful opportunity for Ms. Kordia to respond, and absent the Board's consideration of the traditional stay factors, is functionally an automatic stay that creates an exceptionally high risk of erroneous deprivation.

Finally, there is no weighty governmental interest in permitting the BIA to grant yet a third discretionary stay of a bond order for Ms. Kordia's release, without any consideration of the traditional stay factors. If Respondents are quibbling over the bond amount, Ms. Kordia should not remain detained while further litigation proceeds over such amount.

**B. Ms. Kordia Is Likely to Succeed on the Merits of Her Substantive Due Process Claim.**

*1. The Automatic Stay Provision Violates Ms. Kordia's Substantive Due Process Rights*

Respondent's continued confinement of Ms. Kordia through use of the automatic stay violates her substantive due process rights. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action," and it is unquestionably a fundamental right. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has recognized two justifications for civil immigration confinement: preventing danger to the community and flight from immigration enforcement. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Respondents' imminent use of the automatic stays and discretionary stays to

prevent Ms. Kordia's release with no constitutionally adequate basis for confinement would constitute unlawful punishment.

To date, Ms. Kordia has submitted reams of evidence demonstrating that her continued confinement is not necessary to serve any legally permissible purpose, including declarations from family members, Ms. Kordia's testimony, DHS's own Risk Classification Assessment rating to be her low risk across all relevant factors, her lack of criminal record, and troves of evidence to counter DHS's speculative arguments that Ms. Kordia is a danger to the community and/or a flight risk. *See generally*, TRO App. at 7–80 (PX 1-A, Sherman-Stokes Decl. Ex. A); Am. Pet. App., Dkt. 71-1 at 15–59 (PX 1, Motion for Bond and Custody Redetermination). In response, DHS offered next to nothing. DHS conceded that Ms. Kordia met her burden on dangerousness. TRO App. at 5 (PX 1, Sherman-Stokes Decl. ¶ 7). And while Ms. Kordia testified that she would attend all court proceedings and live with her family if released, DHS's attorney declined to cross-examine her but nevertheless argued that Ms. Kordia poses a flight risk if released. *Id.* ¶ 6. To date, the record makes abundantly clear that Respondents have no cognizable interest that justifies Ms. Kordia's ongoing confinement that release on bond could not otherwise address.

Notably, a legion of district courts have found that the automatic stay provision violates noncitizen detainees' substantive due process rights. *See, e.g.*, *J.M.P.*, 807 F. Supp. 3d at 283; *Jacinto v. Kramer*, 796 F. Supp. 3d 588, 591–92 (D. Neb. 2025); *Herrera v. Knight*, 798 F. Supp. 3d 1184, 1203 (D. Nev. 2025); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112, 1149 (D. Nev. 2025); *Perez v. Berg*, 798 F. Supp. 3d 955, 962 (D. Neb. 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 658 (E.D. Va. 2025); *Maza v. Hyde*, 807 F. Supp. 3d 42, 50 (D. Mass. 2025); *Zavala v Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004); *Bezmen v. Ashcroft*, 245 F. Supp. 2d 446, 450–51 (D. Conn. 2003); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 669 (D.N.J. 2003); *Uritsky v.*

*Ridge*, 286 F. Supp. 2d 842 (E.D. Mich. 2003); *De Leon Hernandez v. Bondi*, No. 25-CV-1384, 2025 WL 3217037, at *2 (W.D. La. Nov. 18, 2025); *Merchan-Pacheo*, 2026 WL 88526, at *16 (D. Colo. Jan. 12, 2026); *Guasco v. McShane*, No. 25-CV-1650, 2025 WL 3270201, at *3 (M.D. Pa. Nov. 24, 2025); *Castillo v. De Andra-Ybarra*, No. CV 25-1074, 2025 WL 3251223, at *7 (D.N.M. Nov. 21, 2025); *Perez Sales v. Mattos*, No. 25-CV-01819, 2025 WL 3237366, at *4 (D. Nev. Nov. 19, 2025); *Salgado v. Mattos*, No. 25-CV-01872, 2025 WL 3205356, at *15 (D. Nev. Nov. 17, 2025); *Mendez v. Noem*, No. 25-CV-02062, 2025 WL 3124285, at *5 n.6 (D. Nev. Nov. 7, 2025); *Rodriguez Cabrera v. Mattos*, No. 25-CV-01551, 2025 WL 3072687, at *14 (D. Nev. Nov. 3, 2025); *Garcia Picazo v. Sheehan*, No. C25-4057, 2025 WL 3006188, at *3 (N.D. Iowa Oct. 27, 2025); *Garcia v. Simon*, No. 1:25-CV-1663-MSN-LRV, 2025 WL 4053172, at *1 (E.D. Va. Oct. 27, 2025); *Dominguez-Lara v. Noem*, No. 25-CV-01553, 2025 WL 2998094, at *4 (D. Nev. Oct. 24, 2025); *Aparicio v. Noem*, No. 25-CV-01919, 2025 WL 2998098, at *5–6 (D. Nev. Oct. 23, 2025); *Carlos v. Noem*, No. 25-CV-01900, 2025 WL 2896156, at *7 (D. Nev. Oct. 10, 2025); *Quispe-Ardiles v. Noem*, No. 1:25-CV-01382-MSN-WEF, 2025 WL 2783800, at *8 (E.D. Va. Sept. 30, 2025); *Quispe V. Crawford*, No. 1:25-CV-01381, 2025 WL 2783799, at *8 (E.D. Va. Sept. 29, 2025); *Silva v. Larose*, No. 25-CV-2329, 2025 WL 2770639, at *5 (S.D. Cal. Sept. 29, 2025); *Singh v. Lewis*, No. 25-CV-2677, 2025 WL 2699219, at *5 (W.D. Ky. Sept. 22, 2025); *Palma v. Trump*, No. 25-CV-3176, 2025 WL 2624385, at *4 (D. Neb. Sept. 11, 2025); *Perez v. Kramer*, No. 25-CV-3179, 2025 WL 2624387, at *4 (D. Neb. Sept. 11, 2025); *Carlon v. Kramer*, No. 25-CV-3178, 2025 WL 2624386, at *4 (D. Neb. Sept. 11, 2025); *Fernandez v. Lyons*, No. 8:25CV506, 2025 WL 2531539, at *4 (D. Neb. Sept. 3, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-CV-03162, 2025 WL 2374223, at *4 (D. Neb. Aug. 14, 2025); *Anicasio v. Kramer*, No. 4:25 Civ. 3158, 2025 WL 2374224, at *4 (D. Neb. Aug. 14, 2025); *Zabadi v. Chertoff*, No. C 05-01796

WHA, 2005 WL 1514122, at *1 (N.D. Cal. June 17, 2005). This Court should do the same here and prohibit Respondents from invoking the automatic stay as a violation of Ms. Kordia's substantive due process rights.

   2.  *A Third Discretionary Stay Would Violate Ms. Kordia's Substantive Due Process Rights*

   For the same reason, a third discretionary stay would violate Ms. Kordia's substantive due process rights. The government may not continue detention absent an individualized showing that further confinement is necessary to serve a permissible regulatory objective. *See, e.g. Garcia Jimenez v. Kramer,* 2025 WL 2374223, at *4 ("The governmental interest in the continued detention of these least-dangerous individuals, in contravention of the order of a neutral fact-finder, does not outweigh the liberty interest at stake."). Confinement that is untethered to such justification violates substantive due process. *Zadvydas,* 533 U.S. at 690. Given that Respondents have sought, obtained, and issued discretionary stays on two occasions without constitutionally adequate justifications, Ms. Kordia has every reason to expect that Respondents will do so again. This would trap Ms. Kordia in another months-long cycle of seeking bond, being ordered release, and waiting for appeal of the bond order.

   Twice now Respondents have requested an emergency discretionary stay, and on both occasions the BIA has granted such requests without providing Ms. Kordia a meaningful opportunity to respond or applying the traditional stay factors. *See supra* at 8-9. Ms. Kordia is at risk of yet another period of detention that is untethered to any demonstrated necessity, in violation of her substantive due process rights.

   Additionally, the BIA's second remand is clear: Ms. Kordia can be released upon payment of a bond. App. at 8 (PX A, BIA Order, Mar. 3, 2026). The BIA's simultaneous remand for the IJ to conduct further fact-finding on the issue of withholding of removal only bolsters the point that

Ms. Kordia is not a risk of flight because it is a form of protection against removal that Ms. Kordia is motivated to continue to defend vigorously. *See id.* at 5, n.1. As such, she has every incentive to continue attending court and fighting removal through the administrative process, which will take several months or even years.

Without Court intervention, DHS is poised to repeat the same cycle. DHS's actions in other cases evince as much. *See J.M.P. v. Arteta*, 807 F. Supp. 3d 265 (S.D.N.Y. 2025), *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 3288354 (S.D.N.Y. Nov. 25, 2025); *J.G.O. v. Francis*, No. 25-CV-7533, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025).

**C.  The Remaining Factors Favor Issuing a Temporary Restraining Order**

The remaining factors—irreparable harm, the balance of hardships, and the public interest—favor an order for prohibiting the use of automatic and discretionary stays to further Ms. Kordia's confinement.

First, irreparable harm. When a deprivation of a constitutional right is involved, "no further showing . . . is necessary" to establish irreparable harm. FCR at 19 (quotation omitted). Further, "in the immigration context, unlawful detention is a sufficient irreparable injury." *Arias Gudino v. Lowe,* 785 F. Supp. 3d 27, 42 (M.D. Pa. 2025). Here, the prospect of Ms. Kordia's continued unlawful confinement pursuant to the automatic and discretionary stays unquestionably constitutes irreparable harm.

In Ms. Kordia's case, irreparable harm has been and will continued to be compounded by "subpar medical and psychiatric care in ICE detention facilities" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The threat of irreparable injury to her mental and physical health is now greater than it even was in April 2025, when DHS first prolonged Ms. Kordia's confinement through the cycle of bond hearing, automatic stay, and discretionary stay. As noted previously to

the Court, Ms. Kordia has suffered a seizure while detained and received a likely diagnosis of epilepsy. Dkt. 93-1, at 88. Ms. Kordia may experience further seizures in confinement, because of the conditions in carceral settings, and there is a chance those seizures could be fatal. Dkt. 93-1, at 89-90.

Second, the public interest favors prohibiting the government from utilizing obstructive procedural machinations that prevent Ms. Kordia's release because "[a]n injunction protecting Petitioner's interest in being free from unconstitutional detention is in the public interest." FCR at 21 & n. 84 (quoting *Nuziard v. Minority Bus. Dev. Agency*, 676 F. Supp. 3d 473, 485 (N.D. Tex. 2023)).

The balance of hardships also weighs in favor of Ms. Kordia as the government has no valid interest in prolonging her unconstitutional confinement. Here, Ms. Kordia has a "compelling interest in release from detention that likely violates" the constitution, FCR at 20, an interest that would be implicated and burdened if Respondents are free to invoke and execute automatic and discretionary stays for a third time. While the Government may have a generalized "interest in preventing danger to the community and ensuring appearance at future proceedings," *JMP*, 807 F. Supp. 3d 294, that interest is belied in this specific case, where (1) DHS's own Risk-Classification Assessment rated Ms. Kordia "low"; and (2) DHS conceded that Ms. Kordia is not a danger to the community more than six months ago, Dkt. 73-1, PX 1, ¶ 7 and therefore there could be some amount of bond that would adequately address any concern about flight. Likewise, Respondents' abstract interest in "the enforcement of the immigration laws and the removal of [noncitizens]" is not served by Ms. Kordia's continued confinement. FCR at 20 (quoting Dkt. 28, Resp'ts' Resp. at 16).

## VI. CONCLUSION

For the foregoing reasons, this Court should put an end to Respondents' unconstitutional procedural machinations by granting Ms. Kordia's motion for a temporary restraining order prohibiting Respondents from (1) invoking a third automatic stay of a bond order granting Ms. Kordia release upon payment of bond at the March 10, 2026 hearing; and (2) granting a discretionary stay of the same.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Travis Walker Fife*
Travis Walker Fife
Texas State Bar No. 24126956
Sarah Beebe
Texas State Bar No. 24069362
Randall Hiroshige
Texas State Bar No. 24124299
Texas Civil Rights Project
P.O. Box 1108
Houston, Texas 77251-1108
travis@texascivilrightsproject.org
sbeebe@texascivilrightsproject.org
randy@texascivilrightsproject.org

Charles S. Siegel
Texas State Bar No. 18341875
Caitlyn Silhan
Texas State Bar No. 24072879
Waters Kraus Paul & Siegel
3141 Hood Street, Suite 200
Dallas, Texas 75219
Telephone: 214-357-6244
Facsimile: 214-357-7252
siegel@waterskraus.com
csilhan@waterskraus.com

Daniel Hatoum
Texas State Bar No. 24099136
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
Telephone: 512-474-5073
daniel@texascivilrightsproject.org

Naz Ahmad*
New York State Bar No. 5327424
Amal Thabateh*
New York State Bar No. 5923826
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4630
naz.ahmad@law.cuny.edu
amal.thabateh@law.cuny.edu

Golnaz Fakhimi*
New York State Bar No. 5063003
Sadaf Hasan*
New York State Bar No. 6046023
Muslim Advocates
1032 15th Street Northwest, Unit 362
Washington, D.C. 20005
(202) 655-2969
golnaz@muslimadvocates.org
sadaf@muslimadvocates.org

* *Admitted to practice PHV*

**ATTORNEYS FOR PETITIONER-PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on March 6, 2026, a true and correct copy of this document was properly

served on all counsel of record in accordance with the Federal Rules of Civil Procedure.

<u>/s/ Travis Walker Fife</u>
Travis Fife

**<u>CERTIFICATE OF CONFERENCE</u>**

I certify that on March 4, 2026 and March 6, 2026 Travis Fife for Petitioner-Plaintiff and

Brian Stoltz for Respondents conferred via telephone and email. Respondents are opposed.

<u>/s/ Travis Walker Fife</u>
Travis Fife